# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FILED**

MAY **0 3** 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Carrie Wilkins,    )
as next friend of the minor child,    )
D.W.    )
and    )
D.W., individually    )
2909 South Dakota Ave, NE    )
Washington, DC 20018    )
    )
Plaintiffs,    )
    )    Case: 1:07-cv-00808
v.    )    Assigned To : Bates, John D.
    )    Assign. Date : 05/03/2007
    )    Description: CIVIL RIGHTS-NON. EMPLOY.
GOVERNMENT OF THE    )
DISTRICT OF COLUMBIA    )
A Municipal Corporation    )
    )
Defendant.    )
    )
Serve:    )
Robert Spagnoletti,    )
Attorney General    )
District of Columbia    )
441 4th Street, N.W.    )
Washington, DC 20001    )
    )
and    )
    )
Mayor Adrian Fenty    )
Office of the Secretary    )
1350 Pennsylvania Avenue, N.W.    )
Washington, DC 20004    )
    )

## COMPLAINT

## JURISDICTION

1.    Plaintiffs brings this Complaint seeking relief from an adverse decision regarding the

**RECEIVED** of a free appropriate public education ("FAPE"), pursuant to the Individuals

APR 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

with Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C.§§ 1400 *et seq*. This Court has jurisdiction pursuant to 28 U.S.C.§§ 1331 and 1343; and pendant jurisdiction pursuant to 5 D.C.Mun. Regs.§§ 3000 *et seq*. Declaratory relief is authorized by 28 U.S.C.§§ 2201 and 2202.

2.  Plaintiff is the mother of the minor child, D.W., and they resided in the District of Columbia during the time of the underlying administrative proceedings.

3.  Defendant is a municipal corporation. As one of its governmental functions, Defendant operates the District of Columbia Public Schools System ("DCPS"). DCPS is responsible for affording children with disabilities in the District of Columbia all rights pursuant to IDEIA and is responsible for issuing checks in payment of reasonable attorneys' fees and costs incurred by the Plaintiffs who prevail in pursuing claims under IDEIA.

## FACTS

### A.    Historical Background

4.  D.W. is an 11 year old student at Thurgood Marshall Educational Center ("Marshall E.C.").

5.  D.W. has chronic bronchial asthma and Attention Deficit Hyperactivity Disorder ("ADHD"), for which he has an individualized education plan ("IEP").

6.  D.W.'s current IEP dated May 23, 2006 classifies his disabilities as Other Health Impairment ("OHI") for ADHD and asthma and calls for 17.5 hours of specialized instruction and one hour of speech and language services per week.

7.  D.W.'s chronic asthma causes him to be absent from school when the condition is aggravated. The Plaintiff had requested DCPS to provide home bound services during

2

the asthma related absences.

8.  As the result of a due process hearing held on July 12, 2005, Hearing Officer Butler-Truesdale issued a Hearing Officer's Decision ("HOD") on July 22, 2005 ordering DCPS to, *inter alia,* convene a multi-disciplinary team ("MDT") meeting to review all evaluations and medical documents, revise the IEP if necessary, determine placement and determine compensatory education if warranted.

9.  DCPS never convened the HOD ordered meeting.

10. Pursuant to the Blackman Jones Consent Decree, a rebuttable presumption of harm exists where DCPS fails to comply with the terms of an HOD. *See Blackman v. District of Columbia,* 454 F. Supp. 2d 1 (D.D.C. 2006)(Consent Decree at ¶ 74).

11. The Plaintiff filed a due process complaint notice on January 26, 2006 seeking, *inter alia,* enforcement of the HOD.

12. On May 2, 2006, DCPS convened a resolution meeting in an attempt to resolve the due process complaint notice.

13. At the resolution meeting, Ms. Tiffany Batson, the special education coordinator ("SEC") at Marshall E.C. stated that DCPS cannot in good faith agree to provide home bound specialized instruction and speech and language services, but agreed to convene an IEP meeting and have the parties present who have authority to make those decisions.

14. A due process hearing convened in front of Hearing Officer Butler Truesdale on May 22, 2006.

15. At the hearing, Ms. Batson testified under oath that DCPS would be convening an MDT / IEP meeting the very next day, May 23, 2006, with the appropriate people in attendance,

3

who have authority to permit home bound instruction for D.W.'s asthma-related absences.

## B.    The May 23, 2006 MDT Meeting

16.    On May 23, 2006, DCPS convened the MDT meeting. This meeting was convened prior to Hearing Officer Butler-Truesdale issuing her HOD from the May 22, 2006 hearing.

17.    At the May 23, 2006 MDT meeting, the IEP team agreed that D.W. needs home bound instruction for his asthma-related absences.

18.    The team also agreed to the number of hours that should be implemented as D.W.'s compensatory education plan.

19.    Additionally at the meeting, the Plaintiff requested that DCPS conduct an updated psycho-educational evaluation for D.W.

20.    Contrary to Ms. Batson's testimony at the hearing and statements at the resolution meeting, DCPS did not have someone at the MDT meeting with authority to make decisions about home bound instruction for D.W.'s asthma related-absences.

21.    The IEP team members, including D.W.'s special education teacher, regular education teacher, and speech and language pathologist, as well as the Plaintiff, all agreed that D.W.'s asthma-related absences have negatively impacted D.W.'s educational progress, and thus D.W. should be given home bound instruction when the asthma-related absences become excessive.

22.    The Plaintiff expressed her concerns at the meeting that she feels D.W. is a throw-away child because DCPS is not giving him the services he needs, even though she has been requesting such services since as far back as 2003.

23.    At the meeting, the Plaintiff suggested a plan where if D.W. has asthma-related absences

for 3 consecutive days, then the parent would notify the school and the school would send a tutor and related service providers to D.W.'s home. If the absences were less than 3 consecutive days, the school would send home work packets.

24. At the meeting, Ms. Batson stated that she could not authorize such services.

25. The Plaintiff then requested that the principal, or someone who could authorize the services, participate in the meeting.

26. The principal, Ms. Powell, then entered the meeting, and also stated that Marshall E.C. does not have the authority to make the decision regarding home bound services.

27. At the meeting, DCPS could only offer that the Parent apply for Visiting Instruction Services ("VIS") through Sharpe Health School.

28. No one from VIS was at the meeting to explain what services VIS provides.

29. While the Plaintiff was not entirely satisfied with the VIS offer, she accepted it and submitted the paperwork for VIS to begin for D.W. for the end of the 2005-2006 school year.

30. Additionally, at the meeting, the IEP team agreed to a compensatory education plan for D.W. of 4 hours per day for 5 weeks (essentially 100 hours) to be implemented over the summer and which would include specialized instruction and speech and language services.

31. There was disagreement about where DCPS would provide the compensatory education.

32. Ms. Batson offered to provide the compensatory education through the summer school program at the school site.

33. The parent objected to this because D.W.'s asthma is significantly worse in the summer

months, which limits his ability to go outside and go to the school. The parent requested that DCPS provide the compensatory education at the home over the summer.

34.     Ms. Batson refused to consider this option and stated that D.W. would only receive the compensatory education if he came to the school.

35.     Finally, at the meeting, the parent notified DCPS that the triennial evaluation was coming due for D.W.

36.     The parent requested that DCPS conduct a psycho-educational evaluation to 1) determine D.W.'s present levels of performance, and 2) update his triennial evaluations.

37.     Ms. Batson refused to conduct the psycho-educational evaluation, stating that the evaluation was not warranted because the team was not considering a change in disability.

38.     Ms. Batson stated that they only conduct reevaluations when there is a suspected change in disability.

39.     Ms. Batson also stated that even though the triennial was due soon, they would still not be conducting the psycho-educational evaluation because there was not a suspected change in disability.

40.     Counsel for parent explained to Ms. Batson the requirements for conducting reevaluations, and that pursuant to 34 C.F.R. § 300.303(b)(2), a reevaluation must occur at least once every three years, unless the parent and school agree that a reevaluation is not warranted.

41.     The parent did not agree that a reevaluation was not warranted and maintained her request for the psycho-educational evaluation.

42.     After the meeting, DCPS did not issue a prior notice indicating their refusal to conduct the evaluation that the parent requested.

43.    After the meeting, Hearing Officer Butler-Truesdale issued her HOD on June 2, 2006 ordering the team to convene a meeting to discuss the issues already discussed at the May 23, 2006 MDT meeting.

44.    The Plaintiff sent a letter to DCPS stating that if DCPS's position was the same as it was at the May 23, 2006 meeting, the Plaintiff saw no need to convene another meeting.

45.    The letter also stated that if DCPS's position had changed, the meeting should be convened.

46.    DCPS did not respond to the letter and no subsequent meeting was held.

## C.    The August 25, 2006 Due Process Hearing.

47.    On June 22, 2006[1], the Plaintiff filed a Motion for Expedited Hearing requesting, *inter alia*, DCPS to fund an independent psycho-educational evaluation, DCPS to fund the 100 hours of compensatory education services agreed to by the IEP team, and DCPS to provide home bound instruction for D.W.'s asthma-related absences.

48.    The Plaintiff filed the Motion for Expedited Hearing with the Student Hearing Office and the Chief Hearing Officer.

49.    The Plaintiff also sent a courtesy copy to Hearing Officer Butler-Truesdale in an effort to keep her apprised of the status of the case and also request that she retain jurisdiction since the facts are complicated and she was already familiar with the case.

50.    On August 9, 2006, Chief Hearing Officer Smith issued an order granting the Plaintiff's

---

[1]    Since the request for due process hearing was submitted in June 2006, the law regarding which party bears the burden of proof had not yet changed. Thus, when the hearing convened in August 2006, the burden of proof was still on DCPS. *See* DCPS Student Hearing Office Standard Operating Procedures ("SOP") § 700.5.

Motion and scheduling the hearing for August 25, 2006.

51.    The hearing convened on August 25, 2006 in front of Hearing Officer Butler-Truesdale.

52.    At the hearing the following issues were addressed: whether DCPS denied D.W. FAPE by

1) failing to conduct the psycho-education evaluation after the parent requested it

and despite the fact that the triennial evaluation was coming due;

2) failing to implement the compensatory education plan agreed to by the IEP

team; and

3) failing to provide appropriate home-bound instruction and related services due

to D.W.'s asthma-related absences.

53.    The DCPS attorney, Ms. Tiffany Puckett, argued at the Hearing that DCPS was going to

conduct the psycho-educational soon (in September 2006), since it expired almost one

month ago (in August 2006).

54.    Ms. Batson, the SEC at Marshall E.C., however, testified under oath that DCPS had no

intention of conducting the psycho-educational once it expired because they did not

suspect a change in disability.

55.    On cross-examination Ms. Batson testified that DCPS was not going to conduct a psycho-

educational even in light of the fact that the triennial was expiring soon.

56.    The parent testified that, at the time of the hearing, DCPS had not contacted her to

schedule the evaluation.

57.    DCPS offered no evidence to show that they were planning to schedule this evaluation.

58.    When the parties began addressing the issue of implementing the compensatory education

plan at the Hearing, Ms. Puckett, the attorney for DCPS, argued that D.W. was not eligible

8

for extended school year services ("ESY"), which allows a student to receive services over the summer, and thus there was no denial of FAPE.

59.   Ms. Puckett further argued that not implementing a compensatory education plan is not a denial of FAPE because the school was planning on implementing the compensatory education plan once school started.

60.   Contrary to the arguments made by Ms. Puckett, the MDT team agreed to the compensatory education plan and that it was to be implemented over the summer months.

61.   The only disagreement was where the compensatory education services would take place, at the local school or at home.

62.   The parent testified that DCPS did not contact her to inform her that the compensatory education plan was going to be implemented during the school year, rather than during the summer as agreed to by the MDT team.

63.   Next, the parent testified as to the home bound services and that at the end of the 2005-2006 school year, after the May 22, 2006 meeting, D.W. received some home bound instruction through VIS.

64.   The parent testified that the hours of academic instruction provided by VIS were not enough to meet his IEP.

65.   D.W.'s IEP calls for 17.5 hours per week of pull-out special education and one hour per week of speech and language services.

66.   The parent testified that D.W. only received 4 hours of academic instruction per week from VIS and did not receive any speech and language services.

67.   The testimony of Ms Elma Smith, VIS Coordinator, revealed that VIS can only provide a

maximum 4 hours of home instruction per week and does not provide related services.

68.    Ms. Smith further testified that VIS is not intended to take the place of school; rather it is a temporary service for students who have a one time period of absence due to a one time medical problem, such as a broken leg or some type of surgery.

69.    The testimony of Ms. Smith revealed that VIS is not provided on an "as needed" basis for students like D.W. with chronic reoccurring health problems.

70.    Ms. Smith explained that in order for VIS to work, the parent will have to re-apply for the service every single time D.W.'s asthma flares up.

71.    At the hearing, Hearing Officer Butler-Truesdale issued an interim order on the record requiring the parties to convene an MDT meeting on September 19, 2006.

72.    The Hearing Officer ordered the team to reconvene to determine if more hours of home instruction are needed to fill in the gap between the 4 hours that VIS can provide and the 17.5 hours on D.W.'s IEP.

73.    The Hearing Officer ordered the parties to submit Status Reports no later than September 27, 2006 to update the Hearing Officer on the outcome of the MDT meeting.

74.    Since DCPS's argument was that they, at the local school level, did not have the authority to provide more than what VIS offers, the Hearing Officer stated that she would incorporate into her HOD whatever number of hours of home bound instruction the IEP team agreed on that D.W. needs for asthma-related absences, and the Hearing Officer would order DCPS to provide it.

75.    Hearing Officer Butler-Truesdale also ordered the parties to submit closing arguments in writing by September 1, 2006.

76. The Hearing Officer never issued the Interim Order on paper, but the MDT meeting was convened as ordered.

77. The Plaintiff submitted her closing argument in writing on September 1, 2006.

78. DCPS did not submit a closing argument.

### D. The September 19, 2006 MDT Meeting Convened Pursuant to the First Interim Order.

79. Pursuant to the interim order, the MDT meeting convened on September 19, 2006.

80. The parent's counsel explained to the MDT team that, pursuant to the Hearing Officer's verbal interim order, the team was to discuss how many hours of home bound instruction D.W. needs per week for his asthma related absences.

81. The parent proposed a plan that when D.W. is absent for more than three days, she will fax a note, either signed by herself or the doctor[2], to the school indicating that he has been absent due to his medical condition.

82. Ms. Batson, the SEC at Marshall E.C., stated the plan that DCPS was willing to implement for D.W.:  DCPS would provide a work packet to D.W., (by way of his siblings), if he is out of school, due to his asthma, for more than 3 days.  Upon his return to school, D.W. will receive one hour per week, based on the number of days absent, of one-on-one tutoring by the special education teacher's aide.

83. The parent stated her concern that the team was supposed to come up with a number of hours for home bound instruction for D.W.'s asthma-related absences.

---

[2]    The team agreed that there may be instances where D.W.'s asthma is so severe that he cannot attend school, yet not severe enough to warrant a trip to the doctor because his mother has treatment equipment in her home. In these cases, the team agreed that a doctor's note is not necessary, but that the parent should send a note to the school indicating that D.W. is absent due to his asthma.

84.  Ms. Batson stated that she did not feel comfortable discussing the number of hours for home bound instruction.

85.  Counsel for the parent reminded Ms. Batson that this is what the Hearing Officer told the team to discuss.

86.  Ms. Batson then left the meeting to call the Office of General Counsel ("OGC") for DCPS.

87.  While Ms. Batson was on the phone with the DCPS OGC, the rest of the team members, which included D.W.'s general education teacher, special education teacher, speech and language pathologist, school psychologist, and staff from the VIS program, discussed how many hours of home bound instruction D.W. would need.

88.  The team reviewed D.W.'s educational progress, which clearly demonstrated that he did not make educational progress for the 2005-2006 school year.

89.  The team agreed that D.W. needs to receive the one hour of speech and language services per week, whether or not he is absent.

90.  The team also discussed the hours of instruction that D.W. would be missing on a weekly basis when he is absent.

91.  The team agreed that not only would D.W. be missing the 17.5 hours of specialized instruction on his IEP, but he will also be missing all of his general education instruction.

92.  The parent then stated that D.W. could handle two hours of tutoring per day when he is absent.

93.  Some of the team members had concerns that if D.W. was too sick to go to school, he may not be receptive to a tutor for two hours per day.

94.  The parent, however, stated that while D.W. may be too sick to attend school, he can

12

handle two hours per day of tutoring because he would be utilizing his medication and treatment equipment at home.

95.    Ms. Batson came back to the meeting after speaking with the OGC.

96.    Ms. Batson reiterated that DCPS would only be offering to provide work packets to D.W. for asthma related absences.

97.    The general education teacher and other members of the MDT team did not agree with this proposal and were concerned as to who would teach D.W. the work packets when he was absent.

98.    The general education teacher, Ms. Whitaker, informed the team that she herself had a child with asthma and thus could empathize with the parent's concerns.

99.    When the parent asked how the teacher's child's needs were addressed, the teacher stated that she had to quit working and home school her child, because she could not get home bound instruction put into place by DCPS.

100.    After listening to the MDT team's concerns, Ms. Batson informed the team that she spoke with OGC.

101.    While Ms. Puckett, the DCPS attorney handling the case, was not available, Ms. Batson spoke with a different attorney from DCPS, Ms. Rashida Wilson.

102.    Ms. Batson relayed to the team what Ms. Wilson had told her: that DCPS was not required to provide home bound instruction for D.W.

103.    The parent expressed her disagreement with the DCPS position and reiterated that D.W. can and should receive 2 hours per day of home bound instruction for asthma related absences over 3 days, as well as the one hour per week of speech and language services

13

that is on his IEP.

104.   The MDT team agreed that two hours per day of tutoring should be adequate to make up for his lost specialized instruction, as well as the time lost in the general education class.

105.   Ms. Batson stated that she understood the parent's position, but that she did not have the authority to discuss home tutoring.

106.   Ms. Batson reiterated DCPS's position that DCPS at the local school is unable to provide any other relief for the parent other than sending home work packets.

107.   Additionally, it was determined that VIS services would no longer be provided to D.W. unless and until he was absent for three consecutive weeks.

108.   The VIS coordinator, Ms. Smith, stated that since D.W.'s asthma is intermittent, he does not qualify for VIS instruction, unless the parent can provide doctor's documentation that D.W. will be out of school for more than 3 weeks.

109.   Ms. Smith explained that VIS is only offered for students who are absent from school due to a long term medical problem, such as a broken leg.

110.   Ms. Smith further explained that VIS is not available on an "as needed" basis for students like D.W. who have intermittent and recurring medical problems.

111.   The team then discussed the compensatory education plan that was agreed to by the MDT team at the meeting on May 23, 2006.

112.   At the May 23, 2006 MDT meeting, the team agreed that DCPS would provide 100 hours of compensatory education (4 hours per day for 5 weeks) , including specialized instruction and speech and language services, to be implemented over the summer 2006.

113.   The parent had requested that DCPS provide the compensatory education at home since

14

D.W.'s asthma is much worse in the summer.

114.  DCPS's position was that D.W. must attend school to receive the compensatory education.

115.  DCPS stated that they could not send service providers and tutors to D.W.'s house to implement the compensatory education plan.

116.  D.W. was unable to attend school due to his medical condition during the summer months, and thus did not receive the compensatory education during the summer of 2006.

117.  Ms. Batson stated that the compensatory education plan would begin the next day on September 20, 2006.

118.  The parent asked whether the compensatory education would be given after school.

119.  Ms. Batson stated that the DCPS policy is not to provide compensatory education services after school, but rather to provide the compensatory education during the school day.

120.  The parent disagreed with this method of implementing the compensatory education because compensatory education is supposed to supplement the student's current services and compensate for prior services not given; compensatory education is not supposed to take time away from the student's current programming.

121.  Ms. Batson's plan to implement the compensatory education by extending D.W.'s time in speech and language and specialized instruction was contingent upon D.W. being healthy and able to attend school.

122.  Ms. Batson would not consider other options for implementing the compensatory education plan, even in light of D.W.'s asthma related absences.

123.  The final issue brought up at the September 19, 2006 MDT meeting was D.W.'s transportation.

124.    D.W.'s IEP calls for transportation in the form of bus tokens.

125.    At the start of the school year, however, Ms. Batson informed the parent that tokens were no longer being given out for special education students.

126.    The parent's counsel sent a letter to Ms. Batson and the Office of Special Education inquiring about the tokens and asking DCPS to provide an alternate mode of transportation, such as a school bus, if tokens were no longer an option.

127.    When this issue was addressed at the meeting, Ms. Batson questioned whether D.W. even qualified for transportation.

128.    The parent showed Ms. Batson the IEP and transportation data form that Ms. Batson herself filled out for D.W.

129.    Ms. Batson's only response was that DCPS is not providing tokens for special education students.

130.    Without the bus tokens, D.W. was forced to walk to school, which is up a large hill, and in turn aggravated his asthma condition.

131.    On September 27, 2006, the Plaintiff submitted her status report outlining in detail everything that happened at the September 19, 2006 meeting and attaching the supporting documentation.

132.    DCPS did not submit a status report.

### E.    The Second Interim Order.

133.    On October 23, 2006, the Plaintiff, through counsel, sent a letter to Hearing Officer Butler-Truesdale inquiring about the status of a final HOD, as it had been over 60 days since the hearing convened and over 30 days since the Plaintiff submitted her status report.

134.   Pursuant to the Blackman Jones Consent Decree, there is a rebuttable presumption of harm
       for HODs which are late or untimely issued. *See Blackman v. District of Columbia,* 454 F.
       Supp. 2d 1 (D.D.C. 2006)(Consent Decree at ¶ 74).

135.   On November 13, 2006, Hearing Officer Butler-Truesdale issued a second interim order.

136.   The Interim Order required DCPS to immediately start providing transportation for D.W.

137.   The Order also requested that DCPS and the Plaintiff submit more documents for the
       Hearing Officer's review, including documentation of D.W.'s attendance for the 2006-
       2007 school year and encounter tracking forms regarding the compensatory education plan
       and his related services.

138.   The Plaintiff requested the documents from DCPS, but did not receive a response or any
       documents from DCPS.

139.   Thus, on December 5, 2006, the Plaintiff submitted what she had in her possession as the
       supplemental documents that Hearing Officer Butler-Truesdale requested.

140.   Included in the Plaintiff's submission was a signed affidavit from D.W.'s mother
       regarding his attendance.

141.   Upon information and belief, DCPS submitted supplemental documentation to Hearing
       Officer Butler-Truesdale, but did not provide copies to the Plaintiff.

142.   On December 20, 2006, the Plaintiff sent a letter to Hearing Officer Butler-Truesdale and
       Ms. Tiffany Puckett in the Office of General Counsel requesting that DCPS provide copies
       of its supplemental disclosure to the Plaintiff.

143.   By January 9, 2007, the Plaintiff still had not received copies of DCPS's supplemental
       disclosure.

144. Additionally, it had been over 120 days since the hearing convened, and the Hearing Officer had still not issued a final HOD.

145. The Plaintiff attempted to resolve the matter of the overdue HOD by contacting Hearing Officer Butler-Truesdale via letter on January 9, 2007, with copies to Chief Hearing Officer David Smith and Ms. Puckett, inquiring about the status of the HOD and informing Hearing Officer Butler-Truesdale about Plaintiff's concerns regarding the HOD being extremely overdue.

### F.    The Tele-Conference Convened on the Record on January 10, 2007.

146. In response to the Plaintiff's letter, Hearing Officer Butler-Truesdale contacted counsel for Plaintiff and DCPS[3] via telephone on or around January 9, 2007 and informed counsel for Plaintiff that she had not received Plaintiff's supplemental disclosure on December 5, 2006.

147. Hearing Officer Butler-Truesdale stated that she could not render a decision and issue a final HOD since the Plaintiff had not submitted her supplemental disclosures.

148. Counsel for the Plaintiff stated that she not only hand delivered the supplemental disclosure to the SHO, but also faxed a copy to Hearing Officer Butler-Truesdale.

149. Plaintiff's counsel informed the Hearing Officer that the Plaintiff's supplemental disclosure was date stamped that it was received by the SHO on December 5, 2006.

---

[3]    Counsel for DCPS, Ms. Puckett, was not available for the phone conference, however the conversation between Hearing Officer Butler-Truesdale and Plaintiff's counsel took place on Ms. Puckett's voicemail, so as to prevent any *ex parte* communications.

150. The Plaintiff's counsel informed the Hearing Officer that she also had fax confirmations that the supplemental disclosure was faxed to the SHO and Hearing Officer Butler-Truesdale's home office.

151. Hearing Officer Butler-Truesdale maintained that she did not receive the Plaintiff's supplemental disclosures.

152. The Plaintiff, thus, submitted her supplemental disclosure for a second time via fax to both the SHO and Hearing Officer Butler-Truesdale's home office on January 10, 2007.

153. During the phone conversation on January 9, 2007, Hearing Officer Butler-Truesdale informed counsel for the Plaintiff that she would be putting D.W.'s case back on the calendar for hearing.

154. Counsel for Plaintiff objected to another hearing as the evidence was already submitted and there was no need for another hearing.

155. After the phone conversation ended, Hearing Officer Butler-Truesdale scheduled another hearing for January 19, 2007.

156. On January 10, 2007, the Plaintiff filed a Motion to Remove the Hearing from the Calendar with Chief Hearing Officer David Smith.

157. Chief Hearing Officer David Smith denied the Plaintiff's Motion to Remove the Hearing from the Calendar reasoning that Hearing Officer Butler-Truesdale would have to decide the Motion since she had previously presided over the matter.

158. Also on January 10, 2007, Hearing Officer Butler-Truesdale contacted counsel for Plaintiff and counsel for DCPS again for another teleconference.

159. The teleconference on January 10, 2007 took place on the record with Hearing Officer

Butler-Truesdale, Ms. Puckett from the OGC, and counsel for Plaintiff.

160.  Hearing Officer Butler-Truesdale stated that she did not think she had enough evidence to make a decision and that she needed more information regarding D.W. currently for the 2006-2007 school year.

161.  Counsel for the Plaintiff reminded Hearing Officer Butler-Truesdale that DCPS still had the burden of proof in this case, and that issues regarding the 2006-2007 school year are outside the narrow scope of the due process complaint filed.

162.  During the teleconference, Ms. Puckett verbally joined in counsel for the Plaintiff's Motion to Remove the Hearing from the Calendar.

163.  Both Ms. Puckett and counsel for the Plaintiff were in agreement that the evidence had been entered, there was no need to reconvene the hearing, and Hearing Officer Butler-Truesdale needed to make a decision and issue a final HOD.

164.  During the teleconference Hearing Officer Butler-Truesdale stated that she would not stand for evidence being entered on the record by the Plaintiff indicating that she had not timely reviewed the record to make a decision.

165.  Hearing Officer Butler-Truesdale admonished counsel for the Plaintiff for suggesting on the record that the Hearing Officer had delayed in making a ruling and issuing a final HOD.

166.  Hearing Officer Butler-Truesdale then began stating that she was going to rule against D.W. because there was not enough evidence to support the claim.

167.  The Plaintiff, through counsel, respectfully reminded Hearing Officer Butler-Truesdale to carefully review all evidence going back to June and August, when the hearing convened,

20

because the Hearing Officer had already indicated on the record that there was a denial of FAPE to D.W.

168.    Before ending the teleconference, counsel for Plaintiff reiterated the three issues in the complaint: the home bound services for asthma-related absences, the psycho-educational evaluation, and the implementation of the 100 hours of compensatory education.

169.    After the teleconference, DCPS sent a copy of its supplemental disclosure to counsel for the Plaintiff.

170.    Included in the supplemental disclosure were attendance records for D.W. for the 2006-2006 school year and some encounter tracking forms.

171.    Ms. Puckett, counsel for DCPS, did not submit any evidence to show that DCPS was implementing the compensatory education plan agreed to by the MDT team on May 23, 2006.

172.    Ms. Puckett also did not submit any evidence to show that DCPS had conducted or scheduled the psycho-educational evaluation.

173.    Ms. Puckett presented no evidence that the parent and DCPS agreed that the psycho-educational evaluation was not warranted.

174.    The only evidence in the record regarding the psycho-educational evaluation was that the parent had requested DCPS conduct it, and that the evaluation expired in August 2006.

175.    The due process hearing scheduled for January 19, 2007 did not go forward.

176.    On January 22, 2007, Hearing Officer Butler-Truesdale issued the final HOD (see attached) denying the Plaintiff all requested relief and finding that DCPS did not deny D.W. FAPE.

177.    The January 22, 2007 HOD is replete with factual errors, as it lists incorrect dates and timelines of events that occurred.

## COUNT I

178.    The Plaintiff repeats and realleges paragraphs 1-177.

179.    The Hearing Officer erred by not timely issuing her HOD. At no time did the Plaintiff waive her rights pursuant to 34 C.F.R. § 300.515 and D.C.M.R. tit. 5 §3021.10.  *See also* SOP § 400.1(B).  The Hearing Officer did not issue her final HOD until over six months after the request for due process hearing was filed and over fours months from when the hearing convened.  Pursuant to the Blackman Jones Consent Decree, there is a rebuttable presumption of harm for overdue HODs. *See Blackman v. District of Columbia*, 454 F. Supp. 2d 1 (D.D.C. 2006)(Consent Decree at ¶ 74).

## COUNT II

180.    The Plaintiff repeats and realleges paragraphs 1-179.

181.    The Hearing Officer erred in scheduling another hearing to convene.  Hearing Officer Butler-Truesdale had no authority or jurisdiction in scheduling a hearing to convene, as neither party has requested a hearing date, and the prior hearing was not continued. *See* Student Operating Procedures ("SOP") § 402.  At no time did either DCPS or the Plaintiff request a continuance and the Hearing Officer did not declare a recess at the end of the August 25, 2006 hearing. *See* SOP § 402 (B)(11).  Additionally, the original request for due process was for an expedited hearing.  Pursuant to § 402 (B)(13), no continuances shall be granted for expedited hearings.  Neither party requested a continuance and the hearing convened and concluded on August 25, 2006.

22

## COUNT III

182.  The Plaintiff repeats and realleges paragraphs 1-181.

183.  The Hearing Officer erred in requesting documentation from the 2006-2007 school year and considering evidence outside the scope of the complaint. The Motion for Expedited Due Process Hearing was filed June 27, 2006. Anything occurring after the filing of the complaint is outside the scope of issues to be litigated.

## COUNT IV

184.  The Plaintiff repeats and realleges paragraphs 1-183.

185.  The Hearing Officer erred by placing the burden of proof on the Plaintiff. The United Stated Supreme Court held that, absent a state law indicating otherwise, the burden of persuasion in IDEIA cases falls on the party bringing the complaint. *See Schaffer v. Weast,* 546 U.S. 49 (2005). The District of Columbia Municipal Regulations placed the burden of proof on DCPS in IDEIA cases. It was not until July 1, 2006 that the District of Columbia amended the regulation and placed the burden on the party bringing the IDEIA claim. However, the Plaintiff's Motion for Expedited Hearing was filed on June 27, 2006, prior to the change in District of Columbia law. Thus, the burden was still on DCPS in the underlying case. The HOD, however, states that the Plaintiff has failed to present substantial evidence that DCPS has failed to provide services.

## COUNT V

186.  The Plaintiff repeats and realleges paragraphs 1-185.

187.  The Hearing Officer erred when she stated on the record at the August 25, 2006 due

process hearing that there was a denial of FAPE for lack of services provided at the end of the 2005-2006 school year, but then stated at the January 10, 2007 teleconference that any harm for a denial of services to D.W. was minimal. The Hearing Officer erred in not incorporating into her final HOD the denial of FAPE for the failure of DCPS to provide services at the end of the 2005-2006 school year.

## COUNT VI

188.   The Plaintiff repeats and realleges paragraphs 1-187.

189.   The Hearing Officer erred in not ordering DCPS to implement the 100 hours of compensatory education agreed to by the multi-disciplinary team on May 23, 2006.

## COUNT VII

190.   The Plaintiff repeats and realleges paragraphs 1-189.

191.   The Hearing Officer erred by not ordering DCPS to fund a psycho-educational evaluation.

## COUNT VIII

192.   The Plaintiff repeats and realleges paragraphs 1-191.

193.   The Hearing Officer erred in relying on DCPS's argument that a change in disability was not suspected and thus a psycho-educational evaluation was not warranted.

## COUNT IX

194.   The Plaintiff repeats and realleges paragraphs 1-193.

195.   The Hearing Officer erred in determining that the DCPS attendance records were more credible evidence than a sworn affidavit from the Plaintiff. According to the Blackman-Jones Interim Report, the DCPS attendance records are inaccurate and unreliable, as the same attendance report can never be reproduced twice. *See* Blackman-Jones Interim

Report of the Evaluation Team for the Period August 24, 2006 – January 17, 2007 (civil action number 97-1629, document 1934).

## COUNT X

196.    The Plaintiff repeats and realleges paragraphs 1-195.

197.    The Hearing Officer erred by including inaccurate and incorrect factual dates and timelines in the HOD, which resulted in an inaccurate record and an incorrect finding of no denial of FAPE, to wit:

1.    The hearing date on page one of May 22, 2006 is incorrect. The Hearing convened on one day, August 25, 2006.

2.    Section III, page two references documents submitted into evidence at the May 2006 hearing. The May 2006 hearing was a prior hearing and the Hearing Officer had previously issued a final HOD.

3.    Section III, page two refers to documents that the Plaintiff submitted on July 31, 2006 labeled DW-1 through DW-5. The Plaintiff did not submit documents on July 31, 2006.

4.    Section III, page two states that the Plaintiff's disclosures were both mislabeled and unidentified. This is incorrect. On August 18, 2006, Plaintiff submitted a labeled and tabbed disclosure of documents DW-01 through DW-21. Plaintiff submitted a supplemental disclosure of labeled and tabbed documents DW-22 through DW-29 on December 5, 2006.

5.    Page four indicates that the Plaintiff did not follow correct procedures with regard to filing her Motion for Expedited Hearing. The Motion was filed

25

with the Student Hearing Office, Chief Hearing Officer David Smith, and a courtesy copy to Hearing Officer Butler-Truesdale.

6.     Section V, page five, paragraph one states that DCPS convened a meeting on September 19, 2006 pursuant to the written HOD issued on June 2, 2006. The September 19, 2006 meeting was convened pursuant to the interim order issued on the record on August 25, 2006. DCPS had already convened a meeting pursuant to the June 2, 2006 HOD on May 23, 2006. This was possible because the order for DCPS to convene the meeting was put on the record verbally on May 22, 2006, even though the written order did not come out until afterwards on June 2, 2006.

7.     Section V, page five, paragraph one states that the Plaintiff fails to allege who was absent at the September 19, 2006 meeting. However, the subject of the complaint was which DCPS personnel were not at the May 23, 2006 meeting. At the May 23, 2006 meeting, DCPS did not have the proper individuals at the meeting and thus the Plaintiff filed her due process complaint

8.     Section V, page five, paragraph one states that DCPS did not indicate at the September 19, 2006 meeting that they did not have authority to provide home instruction. This is incorrect. The meeting notes state that DCPS cannot provide any other relief for the parent other than sending work packets home.

9.     Section V, page six, paragraph three refers to a letter from Dr. Nguyen on

26

November 8, 2006. There is no letter dated November 8, 2006 from Dr. Nguyen in the record.

10.    Section V, page seven, paragraph one states that the June 2, 2006 HOD instructed the Plaintiff to provide medical records to DCPS 48 hours prior to the HOD ordered MDT meeting, which convened on September 19, 2006. No such order is in the June 2, 2006 HOD. Additionally, as stated above, the meeting convened on September 19, 2006 was pursuant to a verbal interim order on August 25, 2006.

11.    Section V, page seven, paragraph three, the Hearing Officer again states that the September 19, 2006 meeting was convened pursuant to the June 2, 2006 HOD. The meeting convened on September 19, 2006 was pursuant to a verbal interim order on August 25, 2006.

12.    Section V, page seven, paragraph four references Plaintiff's exhibit number five dated June 5, 2006. The Plaintiff did not submit a document number five dated June 5, 2006.

13.    Section V, page eight, paragraph one states that the Plaintiff filed her Motion for Expedited Hearing on August 1, 2006. This is incorrect. The Plaintiff filed her Motion for Expedited Hearing on June 27, 2006.

## COUNT XI

198.    The Plaintiff repeats and realleges paragraphs 1-197.

199.    The Hearing Officer abused her authority when she allowed her personal prejudices to enter into the impartial decision making process.

27

**WHEREFORE**, Plaintiffs respectfully requests this Court to reverse the January 22, 2007 HOD, finding a denial of a free, appropriate, public education by DCPS, and:

1. Issue a judgment for Plaintiffs and against Defendant on all aforementioned counts;

2. Order DCPS to provide D.W. with home-bound instruction and related services providers when his asthma-related absences are three or more consecutive days;

3. Order DCPS to send work packets home to D.W. when his asthma-related absences are less than three days;

4. Order DCPS to fund an independent psycho-educational evaluation and convene an MDT meeting within 10 days to review the evaluation, revise the IEP, and determine placement;

5. Order that DCPS be required to fund independent services providers to implement the 100 hours of compensatory education for D.W.;

6. Order an award of compensatory education in the form of independent tutoring and speech and language services for the delay in issuing a final HOD;

7. Order an award of attorneys fees and costs to Plaintiff; and

8. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

William E. Houston, Esq.
Counsel for the Plaintiffs
D.C. Bar No. 450223
Dalton, Dalton, & Houston, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314-1837
(703) 739-4300, (703) 739-2323 (F)

# District of Columbia Public Schools

## Office of Management Services

Tonya Butler-Truesdale, Due Process Hearing Officer
825 North Capitol Street, N.E.; Room 8076
Washington, D.C. 20002
(202) 518-6867
Facsimile: (202) 442-5556

## Confidential

| | |
|---|---|
| D          W          , STUDENT ) | |
| ) | |
| Date of Birth: December 12, 1995 ) | |
| ) | |
| Petitioner, ) | Hearing Date: May 22, 2006 and |
| ) | August 25, 2006 |
| ) | |
| v. ) | |
| ) | |
| DISTRICT OF COLUMBIA PUBLIC ) | Held at: 825 North Capitol Street, N.E. |
| SCHOOLS ) | |
| Respondent. ) | 8th Floor |
| ) | Washington, D.C. 20002 |

## FINAL ORDER

Counsel for Parent:

Jessica Smith, Esquire
Dalton, Dalton & Houston, PC
1008 Pendleton Street,
Alexandria, VA 22314
(703) 739-4300
Fax: (703) 739-2323

Counsel for DCPS:

Tiffany Puckett, Esquire
Office of the General Counsel, DCPS
825 North Capitol Street, N.E.
9th Floor
Washington, D.C. 20002

*In the Matter of D.W.*

## I.    JURISDICTION

The Due Process Hearing was convened and this Order is written pursuant to the *Individuals with Disabilities Education Improvement Act of 2004 (I.D.E.I.A.)*, 20 U.S.C. Section 1400 et seq.; 34 C.F.R. Section et seq.; 5 D.C.M.R. Section 3000.; Section 143 of the D.C. Appropriations Act, effective October 21, 1998; and the Rules of the Board of Education of the District of Columbia.

## II.    DUE PROCESS RIGHTS

Parent's counsel waived a formal reading of the due process rights.

## III.    FIVE-DAY DISCLOSURE

Petitioner: Presented Carrie Wilkins, Petitioner's mother as a witness and submitted disclosures identified as DW1-DW22 without objection at the May 2006 hearing. On July 31, 2006 Petitioner submitted untabbed disclosures labeled DW1-DW5. These documents should have been labeled and identified as DW23-DW28. These disclosures are not enumerated in the disclosure letter received by the DCPS Student Hearing Office on August 1, 2006. On December 5, 2006, the Petitioner submitted untabbed and unlabled documents misidentified as DW22-DW29. For purposes of this Order, these documents will be identified as DW29-DW36.

Respondent: Presented Willie Green, Visiting Instructor Services Teacher, Elma Smith, Special Education Visiting Instruction Services Coordinator, and Tiffany Batson, Special Education Coordinator. DCPS submitted a disclosure letter without objection.

## IV.    STATEMENT OF THE CASE

On June 2, 2006 a Final Order was issued for Petitioner regarding the allegation that DCPS failed to:

1.  comply with a July 22, 2005 Hearing Officer's Determination;
2.  properly notify and schedule the date, time and place of the MDT/IEP meeting with Petitioner's counsel;
3.  develop an appropriate annual IEP for 2005-2006 school year;
4.  develop current IEPs for the 2004-2005 and 2005-2006 school years;
5.  provide speech and language therapy services; and,
6.  provide one-on-one tutoring services.

*In the Matter of D.W.*

The July 22, 2005 Hearing Officer's Determination ordered that:

a. DCPS shall convene a MDT/IEP meeting to review all evaluations, medical documents, revise the IEP if necessary, discuss and determine placement and compensatory education, if warranted;

b. **Parent's counsel shall provide relevant medical documentation at least 48 hours prior to the meeting (emphasis added);**

c. All meetings will be scheduled through parent's counsel;

d. If Placement is to a DCPS public school, DCPS shall have five (5) calendar days to issue the prior notice of placement. If placement is to a non-public or private school, DCPS shall have thirty (30) calendar days and if placement is to a residential facility DCPS shall have sixty (60) calendar days to issue the prior notice of placement; and,

e. Any delay in meeting any of the deadlines in this Order because of Petitioner's absence or failure to respond promptly to scheduling requests, or that of Petitioner's representatives, will extend the deadlines by the number of days attributable to Petitioner or Petitioner's representatives. DCPS shall document with affidavits and proofs of service for any delays caused by Petitioner or Petitioner's representatives.

On June 2, 2006 this hearing officer issued a subsequent Final Order awarding the following relief:

1. DCPS shall within fourteen calendar days of the issuance of this Order convene an MDT meeting to comply with the July 22, 2005 Hearing Officer's Determination. The team shall also use the encounter tracking forms to determine the quantity of missed hours of speech and language services. The team shall consider all existing evaluations and medical documentation to determine the appropriateness of the additional disabilities of SLI and OHI to Petitioner's IEP, placement, and compensatory education warranted for the failure to comply with the July 22, 2005 Hearing Officer's Determination;

2. If the team determines that a change of placement is warranted, DCPS shall issue prior notice of placement. If Placement is to a DCPS public school, DCPS shall have five (5) calendar days to issue the prior notice of placement. If placement is to a non-public or private school, DCPS shall have thirty (30) calendar days and if placement is to a residential facility DCPS shall have sixty (60) calendar days to issue the prior notice of placement;

*In the Matter of D.W.*

3. All meetings will be scheduled through parent's counsel; and, DCPS will be granted a day for day extension for any delay caused by counsel for the parent/guardian, the parent/guardian, the student, or the educational advocate

On June 27, 2006, the Petitioner attempted to file a Motion for an Expedited Hearing but, misdirected it by addressing it to this hearing officer (who had already issued a final order for the Petitioner). According to the DCPS Standard Operating Procedures, the motion should have been forwarded directly to the Student Hearing Officer since it is the Student Hearing Office which schedules hearings and not the individual hearing officers. On July 31, 2006, the Petitioner forwarded a letter regarding the status of the Expedited Hearing request and a request that this Hearing Officer retain jurisdiction. Counsel for the Petitioner was contacted by this Hearing Officer in order to inform the party of the correct filing procedure and advise the Petitioner that the issue of jurisdiction retention was not relevant since a final order had already been issued and the scheduling issue would be resolved by the student hearing office.

The Student Hearing Office scheduled an expedited hearing on August 25, 2006. The hearing was convened as scheduled. The complaint alleged that DCPS failed to:

1.  convene an appropriate IEP meeting with all necessary individuals present to authorize home bound instruction and related services;
2.  implement his IEP and provide him with the specialized instruction and related services indicated on his IEP;
3.  draft an appropriate IEP that will meet his needs when he is unable to attend school due to his medical condition;
4.  come up with an appropriate compensatory education plan given his medical condition and inability to be physically present at school; and,
5.  agree to conduct a psycho-educational evaluation which the parent requested at the May 23, 2006 meeting.

Attorney Advisor Tiffany Puckett appeared in person for DCPS. Attorney Jessica Smith appeared in person behalf of Petitioner. There is no written DCPS Response to the Complaint in the Student Hearing Office folder. The Petitioner did not assert that a Response had not been received by the Petitioner.

This Hearing Officer issued an Interim Order requesting that the parties submit the following information prior to the issuance of a Final Order on the Expedited Hearing Complaint:

a.  Petitioner's attendance records from August 28, 2006 to present;
b.  Encounter tracking forms for related services rendered since August 28, 2006;
c.  the records of any medically documented absences; and,
d.  the compensatory education plan completed at the September 2006 MDT meeting.

*In the Matter of D. W.*

The Interim Order also asked that the documents be submitted as soon as possible by facsimile to (202) 442-5556 and mandated that DCPS immediately commence transportation services if such services are note already being provided. On December 5, 2006, amongst other documents, the Petitioner submitted an affidavit from the parent dated December 4, 2006, two letters from the Petitioner's Physician dated August 29, 2006 and September 8, 2006 and a August 28, 2006 Physician's Certificate. DCPS forwarded the Petitioner's then current attendance records and encounter tracking forms.

## V.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

DCPS convened an appropriate IEP meeting with all necessary individuals present to authorize home bound instruction and related services. On September 19, 2006 DCPS convened a meeting pursuant to a June 2, 2006 Hearing Officer's Determination and a verbal order put on record on August 25, 2006. The meeting was attended by the following DCPS personnel:

Ola Aremo-Special Education Teacher
Jennifer Penn-DCPS School Psychologist
Jennifer Williams-Speech Pathologist
Elma Smith-Special Education Visiting Instruction Services Coordinator
Willie Green Visiting Instruction Teacher

The Petitioner fails to allege who was absent at the IEP meeting that should have been present. The IEP meeting notes do not indicate that any DCPS personnel suggested that the issues to be addressed were beyond their immediate authority. As stated on August 25, 2006, DCPS has several criteria for students to qualify for home-bound instruction. The team communicated those criteria at the September 13, 2006 meeting and these are the same criteria which Ms. Smith testified about on August 25, 2006. DCPS did agree to provide at home work packets and one-on-one tutoring for one hour a week for each day missed in excess of three school days.

This hearing officer requested records for any medically documented absences in the November 2006 Interim Order. The Petitioner tendered a Physician's Certificate which diagnosis him with moderate/persistent asthma that is treated with Albutrol which the Petitioner is to have with him at all times at school. The Petitioner also tendered an affidavit from the parent, Carrie Wilkins which asserts that the Petitioner was chronically ill on the following thirty-five school days. August 28, 2006, August 29, 2006, September 8, 2006, September 13, 2006, September 14, 2006, September 15, 2006, September 20, 2006, September 21, 2006, September 22, 2006, September 25, 2006, September 28, 2006, September 29, 2006, October 6, 2006, October 9, 2006, October 10, 2006, October 13, 2006, October 16, 2006, October 20, 2006, October 23, 2006, October 24, 2006, October 27, 2006, October 30, 2006, November 3, 2006, November 7, 2006, November 8, 2006, November 9, 2006, November 10, 2006, November 15, 2006,

*In the Matter of D.W.*

November 16, 2006, November 17, 2006, November 20, 2006, November 21, 2006, November 22, 2006, November 30, 2006; and December 4, 2006.

The attendance records submitted by the school for August 11, 2006 to November 27, 2006 indicate that the Petitioner accrued at total of twenty-one and a half absences. The same record identities only nine and one half of those absences as excused absences. A comparison of the school records and the mother's affidavit indicates that there are only nine days which the parent and the school agree that the Petitioner was absent from August 11, 2006 to November 27, 2006. Of those nine days which both the school and the Petitioner acknowledge the Petitioner's absence only four of those days are excused absences. The parent maintains that there were thirty-three school days during which the Petitioner was ill from August 11, 2006 to November 27, 2006 while the school records indicate that the total absences for the same period was twenty-one and a half days.

There are a total of fourteen school days during which the school indicates the Petitioner was absent that the parent has not identified. Seven of those same absent days are identified as excused absences indicative of some parental communication with the school regarding these absences. Yet, the parent did not list these days on her list. The parent has failed to provide a record of any written communication between the doctor and the school or the parent and the school regarding these absences since the September 2006 MDT meeting. There is only one doctor's note in the record for a day which the school records reflect an excused absence, November 8, 2006. As a result of the substantial discrepancies less weight can be given to parent's recollection of her son's attendance from August 2006 to November 27, 2006. The parent has failed to forward any earlier or later communication records between the parent and the school or the school and the physician. No reason has been proffered for this failure.

The parent also tendered two letters from a physician, Dr. N.D.Nguyen. The first letter is dated August 29, 2006 and states, "I examined [the Petitioner] for the first time on August 28, 2006 during his sick visit...Although his asthma can flare at any point he should attend school whenever possible...He may miss intermittent episodes of school because of his asthma but not more than three or four days... [Petitioner] should and must attend school whenever possible... Should he miss more than three to four days of school he will need home tutoring...." In the November 8, 2006 communication, Dr. Nguyen reiterated that home schooling may be necessary if the Petitioner is hospitalized or home from school more than three days. Statements attributed to the mother in the MDT meeting notes further cloud the reliability of the medical information provided by Dr. Nguyen. On September 19, 2006, the meeting notes attribute the following statements to the mother.

1. [Petitioner] can't take Albuterol and doesn't have any at school;
2. Dr. Nguyen has only seen [Petitioner] once; and
3. The doctor's record of [the Petitioner] is large.

6

*In the Matter of D.W.*

Interestingly, the seemingly more reliable DCPS attendance records only contain one time increments where the Petitioner was absent in excess of three school days. Those dates are October 24, 2006 through October 27, 2006. The absences during this period are categorized as unexcused and the record does not contain any notification of illness from the parent to the school. Although this hearing officer, on June 2, 2006, asked the parent to provide relevant medical documentation at least 48 hours prior to the MDT meeting which was convened not convened until September 19, 2006, the MDT meeting notes do not reflect that the team was privy to the "large" medical record the parent alluded to in the meeting.

Absent Petitioner's large medical record and proof that DCPS was aware of the contents of this record, this hearing officer can not make a finding of fact that DCPS failed to draft an appropriate IEP that will meet his needs when he is unable to attend school due to Petitioner's medical condition.

There is also insufficient evidence in the record to support the June 27, 2006 allegation that the Respondent failed to implement his IEP and provide him with the specialized instruction and related services indicated on his IEP. Relief was granted for this same claim on June 2, 2006 when the team was ordered to reconvene with encounter tracking forms and determine the quantity of missed services. As a result of this Order the team convened on September 19, 2006 and completed a compensatory education plan which awarded the Petitioner fifty hours of speech and language services and fifty hours of specialized instruction for all services missed between August 29, 2005 and May 23, 2006. To assure the delivery of related services, this hearing officer requested the encounter tracking form in existence from the date of the September 19, 2006 meeting to November 27, 2006. Those records indicate that sixteen speech sessions should have been completed. Yet, only four sessions were completed by the Petitioner. On three of the scheduled sessions, the school was closed or the provider was unavailable. The Petitioner was absent or unavailable to the service provider for nine of the scheduled sessions. All of the missed sessions are consistent with the schools attendance records with the exception of one day, October 3, 2006. Petitioner has failed to present substantial evidence that the school has failed to render speech and language services.

The Petitioner's assertion that the compensatory education plan is inappropriate is equally perplexing given that the Petitioner was awarded compensatory education as early as May 23, 2006 for a period of missed services from August 29, 2005 to May 23, 2006. On May 23, 2006, DCPS offered five weeks of specialized instruction and speech and language services during summer school. The subsequent September 19, 2006 compensatory education plan offered the student fifty hours of specialized instruction and fifty hours of speech and language instruction. The only explanation given for the alleged inappropriateness of these plans is that the Petitioner allegedly needs home instruction for **absences in excess of five consecutive days.** See, *Petitioner's Exhibit#5 dated June 5, 2006.* The attendance records received to date do not indicate that the Petitioner has been absent more than four consecutive days. Petitioner has never

*In the Matter of D. W.*

proffered how DCPS would be put on notice that the Petitioner is about to become ill for more than three or five school days given the intermittent nature of his respiratory condition (moderate asthma).

Finally, the Petitioner's assertion that the IEP team failed to agree to conduct a psycho-educational evaluation as requested at the May 23, 2006 meeting was not ripe at the time it was plead. The motion for expedited hearing was filed on August 1, 2006. The triennial expiration of the then most recent psycho-educational would not have expired until August 7, 2006. Moreover, since the parent did not present the team with any information indicating a possible change in the Petitioner's disability classification, the team only agreed to complete an educational evaluation, review the 2003 psychological evaluation and, perform a speech and language evaluation prior to the expiration of the August 7, 2003 psycho-educational.

## VI.    ORDER

Upon consideration of Petitioner's request for a due process hearing, the parties' Five Day Disclosure Notices, the testimony presented at the hearing, and the representations of the parties' counsel at the hearing, this 25th day of August 2006, it is hereby

ORDERED, that the Petition is **DISMISSED PREJUDICE**

Tonya M. Butler-Truesdale, Esquire
Hearing Officer

January 22, 2007
Date

Issued: 01/22/07
Student Hearing Office, DCPS

8

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

*Carrie Wilkins*

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 11001
(EXCEPT IN U.S. PLAINTIFF CASES)

PRO SE (NP)

## DEFENDANTS

*Government of the DC*

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Case: 1:07-cv-00808
Assigned To : Bates, John D.
Assign. Date : 05/03/2007
Description: CIVIL RIGHTS-NON. EMPLOY.

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in item III)

## III CITIZEN... FOR PLAINTIF...

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ☐ A. Antitrust

☐ 410 Antitrust

### ☐ B. Personal Injury/ Malpractice

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ☐ C. Administrative Agency Review

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ☐ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (If not administrative agency review or Privacy Act

| □ G. *Habeas Corpus/ 2255* | □ H. *Employment Discrimination* | □ I. *FOIA/PRIVACY ACT* | □ J. *Student Loan* |
|---|---|---|---|
| □ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | □ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | □ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| □ K. *Labor/ERISA (non-employment)* | □ L. *Other Civil Rights (non-employment)* | □ M. *Contract* | □ N. *Three-Judge Court* |
|---|---|---|---|
| □ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting & Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | □ 441 Voting (if not Voting Rights Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>☒ 440 Other Civil Rights<br>□ 445 American w/Disabilities-Employment<br>□ 446 Americans w/Disabilities-Other | □ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment & Enforcement of Judgment<br>□ 153 Recovery of Overpayment of Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding   □ 2 Removed from State Court   □ 3 Remanded from Appellate Court   □ 4 Reinstated or Reopened   □ 5 Transferred from another district (specify)   □ Multi district Litigation   □ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 USC

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS □ ACTION UNDER F.R.C.P. 23    DEMAND $ ○    Check YES only if demanded in complaint    **JURY DEMAND:** □ YES   ☒ NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   □ YES   □ NO    If yes, please complete related case form.

**DATE**    **SIGNATURE OF ATTORNEY OF RECORD**   NCD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

N:\forms\js-44.wpd