# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CARRIE WILKINS,<br>As next friend of the minor child,<br>D.W.<br>and<br>D.W., individually<br><br>       Plaintiffs,<br><br>       v.<br><br>DISTRICT OF COLUMBIA<br><br>       Defendant. | Civil No. 07-808 (JDB) |

## FILING OF ADMINISTRATIVE RECORD

Attached is "part two" of the administrative record, and the record documents themselves in this proceeding. Due to the large size of this record, Defendant split the documents into two separate filings. The index of records is attached to "part one." Consistent with LCvR 5.4(f), Defendant has redacted personal information about the minor D.W.[1]

Respectfully submitted,

LINDA SINGER
Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Edward P. Taptich*
EDWARD P. TAPTICH [#012914]
Chief, Equity Section II

---

[1] Defendant has redacted the minor's name, date of birth, and social security number.

/s/ Amy Caspari
AMY CASPARI [#488968]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-7794
amy.caspari@dc.gov

December 14, 2007

Sharpe Health School                202 576 6166                p.3

82 305

## PUBLIC SCHOOLS OF THE DISTRICT OF COLUMBIA

### PHYSICIAN'S CERTIFICATE OF PUPIL'S INABILITY TO ATTEND SCHOOL

Date  4-25-03

To the Board of Education:
This is to certify that ███████████ ████████ ███-95
                                                    Name                        Birth Date

M        956 Miss. Ave. SE,       McGoeny Elem.
Sex           Address                        School          Grade

has been under my care since _____ and is physically unable to attend school
at this time. This pupil will probably be able to return to school within _____ weeks
or _____ months or _____ years.

*This patient is Asthmatic*          (Signed) _____ M.D.
*and has other allergic*             Address  3924 Minnesota Ave
*Dermatoses. By history*             Telephone #  202 398 808_
*her illness keeps her*

### CONFIDENTIAL STATEMENT

Physician will check appropriate items in the following four columns and fill in *diagnosis* and
*remarks* below.

*Please provide this student with the needed tutors*

| Anatomical Location | Types of Lesions | Degree of Disability | Prognosis |
|---|---|---|---|
| Skin | Physical | Complete | Permanent |
| Head | Mental | Partial | Partial Improvement |
| Eyes | Nervous | | Complete Recovery |
| Ears | Organic | | |
| Throat | Functional | | D.C. Chartered Health Center |
| Joints | Communicable | | 3924 Minnesota Ave., NE |
| Upper Limbs R L | Noncommunicable | | Washington, D.C. 20019 |
| Lower Limbs R L | Infectious | | Fax # (202) 827-7815 |
| Spine | Noninfectious | | |
| Thorax | Spastic Paralysis | | |
| Lungs | Flaccid Paralysis | | |
| Heart | | | |
| Abdomen | | | |
| Gastro Intestinal Tract | | | |
| Genito Urinary Tract | | | |
| Nervous System | | | |
| General | | | |

Diagnosis and Remarks  *Severe Recurrent Allergies, Asthma*

Would the child be able to receive instruction at home by a visiting teacher? *Yes*
Please return to: Sharpe Health School; Route #2 or 4300 13th Street, NW.
Washington, DC 20011; Telephone: (202) 576-6161; Fax: (202) 576-6166

**D.C. CHARTERED**
**HEALTH · CENTER**

3924 Minnesota Ave., N.E.
Washington, D.C. 20019

(202) 398-8683

Patient _____ Date 8/17/4

Address _____ Age ___ Phone # _____

Rx ⟨ ⟩ ___ has had
numerous Recurrent Respiratory
illnesses including Asthma
which have interrupted her
attendance at School

DW-05

Refill: _____ times.          ☐ Dispense as Written

Physician's
Signature _____ M.D. / D.O.   DEA # _____

36

Acct. # 82385    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    12/16/02
WASHINGTON DC 20002    DE SPAIN    95
320 FIRST ST. NE    (202) 561-7089
CAP ASSOC FED MEMBERS (833672547)
WASHINGTON DC 20002
Insured Party: DESMOND J WILKINS

(202) 398-8683

Date _____

R̶x̶

D_____ has Asthma

If during exercise or at
any time he experiences
breathing difficulties refer for medical
care
or call 911

Refill: _____ times.    ☐ Dispense as Written

Physician's
Signature _____ M.D./D.O. ____ DEA # _____

361

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
DIVISION OF SPECIAL EDUCATION
825 N. CAPITOL ST., N.E.
WASHINGTON, D.C. 20002

CONFIDENTIAL

## SPEECH AND LANGUAGE EVALUATION REPORT

**NAME:** De████████w█
**DOB/AGE:** █████1995 - 7 years, 3 months
**ADDRESS:** 950 Mississippi Avenue, Apt. 2B
Washington, DC 20032
**SCHOOL:** McGogney Elementary
**GRADE:** 1
**EXAMINER:** Richard Kalunga, MS, CCC-SLP
**TITLE:** Speech-Language Pathologist

### I. Reason for Referral and Background Information

D█████ s a 7 year-old male who was referred for a speech and language evaluation by the school MDT. D█████d underwent speech and language assessment on 4/14/03. Please refer to the social history report for comprehensive background information.

D█████was seen by Caroline Tan, M.D. on 3/11/03 and 3/20/03 and diagnosed with ADHD combined, severe type and oppositional defiant disorder. Audiological testing on 2/27/03 revealed normal hearing thresholds and middle ear function. Loud congested breathing was noted and an ENT consult was recommended. D█████is asthmatic.

### II. Tests Administered

Clinical Evaluation of Language Fundamentals (CELF-3)
Peabody Picture Vocabulary Test-Third Edition (PPVT-III)
Expressive One-Word Picture Vocabulary Test (EOWPVT)
Informal Language Sample

### III. Evaluation Results

#### A. Language

D█████ receptive and expressive language skills were formally evaluated using the CELF-3. The CELF-3 provides a measure of receptive and expressive language skills across form and content. The receptive language tasks evaluate the ability to translate spoken word combinations into their intended meanings. The expressive language tasks evaluate the ability to communicate ideas, feelings, or intentions using the spoken word.

CELF-3 provides three norm-referenced composite scores. The CELF-3 Total Language score quantifies D█████ overall language performance. Receptive and Expressive Language scores provide a comparison of performance in these broad areas of language. Each composite score is on a scale that has a mean of 100 and a standard deviation of 15.

Subtest standard scores provide measures of specific aspects of language form and content, and can be used to compare D█████performance to performances of others of his age (the norm

group). Subtest standard scores are on a scale with a mean of 10 and a standard deviation of 3 The results are tabulated below:

| | Raw Score | Standard Score (SS) | Confidence Interval (68% Level) SS | PR | Confidence Interval (90% Level) | S | NCE |
|---|---|---|---|---|---|---|---|
| Sentence Structure | 11 | 4 | 2 to 6 | 2 | 1 to 9 | 1 | 7 |
| Concepts and Directions | 6 | 5 | 4 to 6 | 5 | 2 to 9 | 2 | 15 |
| Word Classes | 0 | 3 | 2 to 4 | 1 | 1 to 2 | 1 | 1 |
| RECEPTIVE LANGUAGE SCORE | — | 53 | 48 to 58 | 1 | 1 to 1 | 1 | 1 |
| Word Structure | 19 | 8 | 7 to 9 | 25 | 16 to 37 | 4 | 36 |
| Formulated Sentences | 4 | 5 | 4 to 6 | 5 | 2 to 9 | 2 | 15 |
| Recalling Sentences | 15 | 5 | 4 to 6 | 5 | 2 to 9 | 2 | 15 |
| EXPRESSIVE LANGUAGE SCORE | — | 75 | 71 to 79 | 5 | 3 to 8 | 2 | 15 |
| TOTAL LANGUAGE SCORE | — | 62 | 59 to 65 | 1 | 1 to 1 | 1 | 1 |
| AGE EQUIVALENT 4-11 | | | | | | | |
| *SUPPLEMENTARY SUBTESTS* | | | | | | | |
| Listening To Paragraphs | 7 | 8 | 6 to 10 | 25 | 9 to 50 | 4 | 36 |

Difference between Expressive Language and Receptive Language Scores = 22 (prevalence is less than or equal to 10%)

* PR = Percentile Rank
* S = Stanine
* NCE = Normal Curve Equivalent

### CELF-3 TOTAL LANGUAGE SCORE

D_____ CELF-3 Total Language score is 62   This score is within the very low range of functioning.

### CELF-3 RECEPTIVE LANGUAGE SCORE

The Receptive Language score reflects D_____'s ability to process and understand verbal communication. This score is obtained by adding standard scores for three receptive subtests and converting that sum to a standard score. D_____'s Receptive Language score is 53, which is in the very low range of functioning

### CELF-3 EXPRESSIVE LANGUAGE SCORE

The Expressive Language score reflects D_____ ability to express himself verbally. This score is obtained by adding standard scores for three expressive subtests and converting that sum to a standard score. De_____ Expressive Language score is 75, which is in the low range of functioning.

363

*CELF-3 SUBTEST SCORES*

*Sentence Structure*

De█████ received a standard score of 4 on the Sentence Structure subtest. This is a receptive language subtest used to measure De█████'s understanding of simple, compound, and complex sentences. D█████'s score is 1.5 or 2 standard deviations below the mean, which is in the low range of functioning.

*Concepts and Directions*

De█████ received a standard score of 5 on the Concepts and Directions subtest. This is a receptive subtest used to evaluate De█████'s ability to interpret, recall, and execute oral commands of increasing length and complexity. The commands or directions contain concepts of logical operations. D█████ score is 1.5 or 2 standard deviations below the mean, which is in the low range of functioning.

*Word Classes*

De█████ standard score on the Word Classes subtest is 3. This is a receptive subtest that is used to evaluate De█████'s ability to understand word relationships. He was presented with four words per item and had to identify the two words that are related. D█████ score is 2 or more standard deviations below the mean, which is in the very low range of functioning.

*Word Structure*

De█████ received a standard score of 8 on the Word Structure subtest. This is an expressive subtest designed to assess De█████ ability to use primary morphological rules of English in structured elicitation. The use of plurals, pronouns, and regular and irregular verb tenses are targeted in the subtest. De█████ score indicates average morphological skills.

*Formulated Sentences*

De█████ performance on the Formulated Sentences subtest yielded a standard score of 5. This subtest is used to assess De█████ ability to formulate compound and complex sentences. This expressive language subtest required De█████ to produce sentences containing specific nouns, verbs, adjectives, adverbs, and conjunctions. De█████ score is 1.5 or 2 standard deviations below the mean, which is in the low range of functioning.

*Recalling Sentences*

De█████ standard score on the Recalling Sentences subtest is 5. This subtest is used to evaluate De█████'s ability to recall and repeat compound and complex sentence structures. De█████ score is 1.5 or 2 standard deviations below the mean, which is in the low range of functioning.

*Listening To Paragraphs*

De█████ received a standard score of 8 on this subtest. This is a receptive language task that evaluates De█████ ability to interpret information presented in spoken paragraphs. Questions associated with the paragraphs increase in complexity, requiring responses based on factual to inferential information. De█████ score is within the average range.

Vocabulary

De█████'s receptive vocabulary was assessed using the PPVT-III. A standard score ranging from 85 to 115 is considered to be average performance on the test. De█████ obtained a standard score of 80. Desmond's expressive vocabulary was assessed using the EOWPVT by asking him to name objects, actions, and concepts pictured in illustrations. A standard score ranging from 85 to

364

115 is considered to be average performance on the test. D████ ████ained a standard score of 71

**B. Phonology and Oral Mechanism**
Assessment indicates age appropriate articulatory performance. Furthermore, oral speech mechanism strength, range of motion and motor planning for speech and non-speech acts are age appropriate

**C. Fluency**
Assessment of D█████ speech fluency indicates no abnormalities in rate, rhythm, or the forward flow of speech.

**D. Voice**
Assessment of ████████ vocal functioning revealed normal loudness, rate, range, and pitch relative to age and gender

**IV. Summary and Recommendations**
D████ is a 7-year-old male who was seen for a speech and language assessment on 4/14/03 at McGogney Elementary School. ████████ speech and language where evaluated using both formal and informal assessment techniques. The formal testing instruments used include the CELF-3, PPVT-III, and EOWPVT. D█████ Total Language score was 62. D█████'s score places his overall language abilities in the below average range. Desmond received a Receptive Language score of 53 and an Expressive Language score of 75. Word structure knowledge and comprehension of short stories are areas of relative strength for D█████ De█████ obtained standard scores of 80 and 71on the PPVT-III and EOWPVT respectively

Eligibility for special education services should be determined by an interdisciplinary team following review of all pertinent information including that outlined in this report.

The following are recommended:
1. Obtain D██████ full attention before presenting instruction or key concepts in classroom activities.
2. Use simple, direct language when giving instructions.
3. Provide visual aids to supplement verbal classroom activities.
4. Restate, rephrase, and monitor new vocabulary concepts.
5. Frequently ask De█████ to repeat or rephrase directions or key concepts after they are presented to ensure full comprehension.
6. Expand on De█████'s sentences and provide models for more complex utterances.
7. Utilize preferential seating to reduce distractions that may affect D█████'s ability to focus and remain on task.

It has been a pleasure working with Desmond. If I can be of further resource, please feel free to contact me through McGogney Elementary School.

Richard Kalunga, MS, CCC-SLP
Speech-Language Pathologist

04/17/03

First Home Care Corporation

August 19, 2002

Gladys McGogney Elementary School
3400 Wheeler Road, S.E.
Washington, D.C. 20032

RE: W████ De████████

To Whom It May Concern:

This is to inform you that De██████ meets the criteria for a diagnosis of Attention Deficit Hyperactivity Disorder, combined type. He is receiving somatic treatment with psychostimulants to address his motoric hyperkinesis, easy distractibility, impulsivity, lack of organizational ability seen in school, home and social settings.

ADHD is a chronic neurobiological disorder that needs a high level of structure, behavioral management techniques and classroom interventions with the help of teachers and parents to use techniques such as positive reinforcement, stimulating instructional aides., and a lower class ratio for a more individualized Attention.

Although D██████ chronic medical condition (asthma) has an impact on his school attendance, it is a separate entity from his psychiatric diagnosis as this is not contributing to any existing ADHD symptomatology and must be addressed separately from his medical illness. Therefore, I strongly feel that D██████ill benefit to be in a structured, smaller classroom setting with special education services to address his special needs.

Thank you for your continued support on this matter. It is highly appreciated as we are all working for the best interest of the child.

Yours truly,

Caroline Tan, M.D.
Child and Adolescent Psychiatrist

June 5, 2003

First Home Care Corporation
DC Chartered Health Center
3924 Minnesota Avenue
Washington, D.C. 20019

McGogney Elementary School
RE: W▇▇▇ De▇▇▇

To Whom It May Concern:

This is to inform you that D▇▇▇▇▇ Wilkins had an initial psychiatric evaluation at this facility on 2/11/03 and had been seen in an ongoing basis. He was given a diagnosis of Attention Deficit Hyperactivity Disorder , Oppositional Defiant Disorder and is receiving somatic treatment to address the ADHD symptomatology. He needs to be monitored in biweekly basis for medication monitoring and implementation of behavior modification strategies.

It is recommended for De▇▇▇▇ Wi▇▇▇ to receive special education services in a small classroom setting that can provide structure and supervision.

Thank you for your cooperation on this matter.

Caroline Tan, M.D.
Child & Adolescent Psychiatrist

DW-08 367

# SCHOOL HEALTH PROGRAM/GOVERNMENT OF THE DISTRICT OF COLUMBIA MEDICAL REVIEW OF RECORDS

DATE: 10/05/03

NAME: D██████ W████████

BIRTHDATE: 12/12/95

PARENT/GUARDIAN: Carrie Wilkins

ADDRESS: 950 Mississippi Ave., #213

LOCAL SCHOOL: Mc Gogney ES

PRESENT PLACEMENT:

TELEPHONE:

RECOMMENDATIONS:

Documents submitted: 2/2003 Audiological Evaluation, 8/2003 correspondence from child psychiatrist, 8/2003 medical statement re bronchial asthma, 8/2003 Psychoeducational Report, 4/2003 Speech and Language Report

De██████ is a 7 year 10 month old male student with a diagnosis of ADHD, combined type, Oppositional Disorder, and bronchial asthma. Most of his 265 absences noted since 1999 were secondary to asthma. A 2003 Audiometric evaluation is exhibiting deficits in expressive and receptive language.

1. Appears appropriate for the OHI classification (bronchial asthma/ADHD).
2. Completion of the School Health Certificate is needed.


Crystal Taylor-Davis, MD
School Placement Physician

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## DIVISION OF SPECIAL EDUCATION
### PSYCHOEDUCATIONAL REPORT

**\*\*\*\*\*\*\*\*\*\*CONFIDENTIAL\*\*\*\*\*\*\*\*\*\***

| | |
|---|---|
| Name: | De█████ Wil███ |
| D.O.B.: | ██/█/95 |
| Chronological Age: | 7 years, 8 months |
| Grade: | 1st. |
| School: | McCogney ES |
| ID#: | 9065608 |
| Examiner: | Marcia Stuart, Ph.D. |
| | Psychologist |
| Testing Location: | McCogney ES |
| | |
| Date of Evaluation: | 08/07/03 |
| Date of Report: | 08/07/03 |

**Reason for Referral:**
This psychoeducational evaluation was requested in order to assess this student's current level of cognitive and academic functioning and to assist in appropriate educational planning and placement.

**Tests Administered and Data Sources:**
Woodcock-Johnson III (WJ III)
The Beery-Buktenica Developmental Test of Visual-Motor Integration (VMI)
Review of Records
Interview with Student

**BEHAVIORAL OBSERVATIONS/STUDENT INTERVIEW**
De████ arrived at the school in the company of his mother. He separated from her without difficulty and willingly accompanied the examiner to the testing site. He seemed at ease in the presence of the examiner, was cooperative, though appearing somewhat tired. His level of conversation was typical for his age, although it was difficult to understand him at times, as his speech was not very clear. He spoke with a nasal tone as if congested, yet did not seem to have a cold. Later in the session he indicated to the

Case 1:07-cv-00808-JDB    Document 13-2

W████Page/2

examiner that he suffers from asthma. He was also constantly scratching all over his body and told the examiner that he was itching all over because of mosquito bites. He was attentive to the tasks presented, and was willing to attempt tasks that were somewhat difficult for him and tried very hard. For the most part he was very slow and hesitant in responding to the items. Several times in the middle of responding to an item, he interjected that he was going to visit his cousin. He added (also several times) that he likes visiting with his grandmother. When questioned, however, he was unable to indicate where his cousin or grandmother lived. De█████ exhibited right-hand dominance, and no visual difficulties were noted by this examiner. When he was asked whether or not he was supposed to wear glasses, he at first indicated yes then changed his answer. This examiner had some concerns about his auditory functioning, particularly in light of his speech, however, in a later review of his records, there was information which indicated that he had had an audiological examination earlier this year, which found him to be functioning within normal limits.

During testing De████ had difficulty understanding some instructions, and often would produce responses which indicated that he was clearly off mark. At different times both receptive and expressive language appeared impaired. He confused some letters, reading "D" for "B", also "C" for "S" and "G" for "J". When he needed to repeat words following cues from the examiner, he often repeated the incorrect word, for example: "breen" for "green" and "bround" for "ground". He did not appear to understand opposites, responding "barge" as the opposite of "large", "wrong" as the opposite of "strong" and "you" as the opposite of "true". He consistently wrote "4" backwards. His difficulty with phonics/reading prevented him from successfully responding to items on the Reading Fluency and Writing Fluency subtests.

De████ disclosed to this examiner that he lives with his mother, father, 3 sisters and 3 brothers. He was able to name them and count on his fingers as he went along. He stated that he does not like McCogney because "the teachers holler, the food is cold, and there are roaches". When questioned, he did not admit to having any difficulties with his schoolwork or in terms of behavior. He did indicate that he was retained in the first grade.

## BACKGROUND INFORMATION

A review of his records reveals extensive background information. Most of that will not be repeated except as deemed necessary for this evaluation. De████ has attended McCogney Elementary School since pre-Kindergarten. A review of his records indicated a history of medical difficulties linked to asthma. He has had hospitalizations related to this condition, requires frequent breathing treatments, and in addition has a sleep disorder. It is reported that one of his lungs is smaller than the other, and that he is allergic to mold and dust and may also be affected by chemicals in the air. He has been prescribed several different medications to address the asthmatic condition, the sleep disorder as well as Attention Deficit Hyperactivity Disorder. He was diagnosed with ADHD and Oppositional Defiant Disorder early this year (2003). The medication makes him sleepy.

FROM :

███ Page/3

D███ records also indicate a long-standing problem with attendance. However, it appeared that most of his absences were linked to his asthmatic condition. However, for the record, the following is reported: 56 absences during his pre-K year (1999-2000); 78 absences during the Kindergarten year (2000-2001); 102 absences during his first year in the first grade (2001-2002) and approximately 85 absences for the school year 2002-2003.

There are many concerns surrounding D███ is academic performance. He was not able to acquire the necessary skills for the first grade as he missed a great deal of instruction during the pre-K and Kindergarten years and has been struggling. His areas of greatest difficulty are reported to be phonics and reading. He is reportedly unable to sound out words. He has had much more success with math where he can solve grade appropriate number problems, but is unable to handle simple word problems.

Later reports indicate some concerns with his behavior in the classroom, with some aggression noted toward his peers, as well as some defiance toward the adults in the school environment.

*This evaluation forms part of a multidisciplinary evaluation. Please refer to Parent Interview/ Social History, and Speech and Language reports for additional background information.*

## TEST RESULTS AND INTERPRETATION
### The Woodcock-Johnson III (WJ III)
The WJ III is made up of two distinct, co-normed batteries. These are the WJ III Tests of Cognitive Abilities (WJ III COG) and the WJ III Tests of Achievement (WJ III ACH). These two batteries together provide a wide age range and a very comprehensive system for use in measuring general cognitive abilities, oral language, as well as academic achievement. A single sample was used to obtain normative data for both the cognitive and the achievement tests. By so doing, the researchers ensured that the batteries can function together as an accurate and valid diagnostic system. An extensive computer scoring system provides standard scores, percentiles, age equivalents, grade equivalents as well as ability/achievement discrepancies.

The WJ III can be administered to individuals ranging in age from 2 to adult. The data for norms were obtained from a large nationally representative sample of 8818 subjects in over 100 geographically diverse communities in the United States. There is a Standard and an Extended Battery available in each of the Tests thus providing a total selection of twenty subtests available on the WJ III COG and twenty-two available on the WJ III ACH.

Selections from the Standard Battery of each of the Tests were administered to this student.

FROM :

 Page/4

## Cognitive Functioning
Woodcock-Johnson III Tests of Cognitive Abilities – (WJ III COG)

### WJ III COG RESULTS

| Subtests | Standard Scores | Grade Equiv. | Percentile. |
|---|---|---|---|
| Verbal Comprehension | 78 | K.2 | 7 |
| Visual-Auditory Learning | 71 | <K.0 | 3 |
| Spatial Relations | 97 | 1.4 | 43 |
| Sound Blending | No score available | | |
| Concept Formation | No score available | | |
| Visual Matching | 94 | 1.5 | 34 |
| Numbers Reversed | 91 | 1.0 | 28 |

| CLUSTERS: | |
|---|---|
| Verbal Ability | 78 |
| Thinking Ability | 45 |
| Cognitive Efficiency | 92 |

| General Intellectual Ability (GIA) | 60 |
|---|---|

Overall, De_____ scored in the Very Low range when compared to his grade peers. He obtained a General Intellectual Ability score of 60. However, as can be seen above, there were two subtests in which no scores were available as he did not appear to understand what was required despite repeated directions and assistance working through sample items. One is a test of auditory processing measuring skills in synthesizing sounds, while the other involves reasoning based on logic and also measures flexibility in thinking. These subtests contribute to the General Intellectual Ability score, and so his overall GIA score was affected. De____'s Verbal Ability was in the Low range (78), while his Thinking Ability was in the Very Low range (45). This cluster represents functioning in four areas – long-term retrieval, visual-spatial thinking, auditory processing and fluid reasoning. Two of these areas were those indicated above where he was unable to respond to the items, which again contributed to the lowered Thinking Ability cluster score. When his cognitive abilities are compared, De____d demonstrated a significant weakness in thinking ability. His Cognitive Efficiency, however, was in the Average range. This cluster score is an indication of the individual's ability to process information automatically. It consists of the scores on a test of processing speed (Visual Matching), and a test of short-term memory (Numbers Reversed).

FROM :

 W              Page/5

Academic Functioning
Woodcock-Johnson III Tests of Achievement (WJ III ACH)

### WJ III ACH RESULTS

| Subtests | Standard Scores | Grade Equiv. | Percentiles |
|---|---|---|---|
| Letter-Word Identification | 76 | 1.0 | 6 |
| Reading Fluency | No score available | | |
| Story Recall | 89 | K.6 | 23 |
| Calculation | 87 | 1.2 | 20 |
| Math Fluency | 79 | K.9 | 8 |
| Spelling | 76 | K.7 | 6 |
| Writing Fluency | No score available | | |
| Passage Comprehension | 77 | K.7 | 6 |
| Applied Problems | 90 | 1.2 | 25 |

| CLUSTERS: | |
|---|---|
| Broad Reading | 69 |
| Broad Math | 86 |
| Math Calculation Skills | 86 |
| Academic Skills | 71 |
| Academic Fluency | 71 |

Overall, D████████ Academic Skills were in the Low range with a score of 71. The Academic Skills Cluster score represents basic achievement skills as an aggregate of reading decoding, math calculation and spelling of single-word responses. As is suggested by the above data, D████ appears to be experiencing difficulties in the areas of Reading, Spelling, Comprehension and Writing. The above data also indicate that no score was available for the Reading Fluency and Writing Fluency subtests. His skills in reading are extremely weak and so he was unable to provide responses on the Reading Fluency subtest even with the assistance provided on the sample items. Similarly the Writing Fluency subtest provided even more of a challenge and again even with assistance on the sample items, he was unable to successfully respond, and testing was terminated on that subtest. His overall Reading score was in the Very Low range (69) and was below what was predicted. Overall, his Math skills including Math Calculation were in the Low Average range and higher than predicted. He demonstrated a good grasp of some basic (single digit) addition skills, was able to solve some (single digit) subtraction word problems with visual cues, but had difficulty adding money (with visual cues). In addition, he was not able to work well under time constraints (Math Fluency subtest) and this was one of the times when he stopped working to inform the examiner (yet again) that he was going to visit his cousin.

FROM :

 Page/6

## Perceptual-Motor Functioning
### Developmental Test of Visual-Motor Integration (VMI)
This instrument was designed to measure visual-motor integration, and an individual's level of coordination of visual and motor functioning. It requires copying geometric designs. The test was standardized on 2614 children and adolescents from ages 3 through 18. Samples were representative of the 1990 US Census.

D█████ achieved a standard score of 91, which falls within the Average range. When D█████ is compared to his age peers, his visual-motor integration skills and coordination of visual and motor functioning are developing adequately at this time.

## Socio-emotional Functioning
This area of functioning was not evaluated as this student carries a diagnosis of Oppositional Defiant Disorder as well as ADHD.

## SUMMARY/RECOMMENDATIONS
D█████ is a 7 year, 8 month old African American male who currently attends McCogney Elementary School having gone through the first grade for the second time. Data obtained from the WJ III COG indicated a General Intellectual Ability score of 60, which is in the Very Low range. However, there were two subtests on which no score was available as he appeared not to understand what was required of him. The absence of these scores contributed to his low score overall and so the GIA obtained is probably not a true indication of his cognitive potential but rather represents his current daily functioning. In addition, given the background information available, which indicate frequent absences, it is likely that D█████ has missed so many opportunities for learning and for stimulation from his environment that it has taken a toll on his cognitive development. Although the actual overall score suggests functioning in the mentally deficient range, this examiner is of the opinion that there are several factors that may be contributing to this lowered functioning. The reader is referred to the background information in this report and to information in his records for further clarification.

Academically, D█████ is not achieving at a grade appropriate level. Given the fact that he has repeated the first grade, his skills in certain areas should be stronger than they are currently. It is clear that once again his inability to consistently access daily instruction over the last four years has adversely affected his acquisition of basic skills, which in turn affects his ability to improve academically. His overall academic skills were found to be in the Low range. Areas of specific difficulty were Reading, Spelling, Comprehension and Writing. While overall his math skills were in the low average range, D█████ was not able to perform well under time constraints (Math Fluency), which for the most part is a skill acquired in school. No discrepancies were found between his cognitive abilities and his academic achievement. While his overall reading score was lower than predicted, the discrepancy was not significant. His achievement on Math and Math Calculation was higher than predicted.

Mar. 16. 2006 1:58PM    Dalton. Dalton & Houston    No.0232   P. 56/56

Case 1:07-cv-00808-JDB    Document 13-2    Filed 12/14/2007    Page 17 of 45

FROM :

Wilkins Page/7

D█████'s visual-motor integration skills appear to be developing adequately at this time. There are concerns about his social and emotional functioning and he currently carries a diagnosis of Oppositional Defiant Disorder and ADHD

The determination is that at this time, De█████ does not meet the eligibility criteria under IDEA as a student with a learning disability or mental retardation. However it is clear that he needs remediation in all the academic areas in which he is experiencing difficulty. All data must be considered by the multidisciplinary team in order to make a final determination as to his eligibility for Special Education services, specifically, data from the Speech and Language evaluation and medical and other information that is pertinent to his case.

Marcia C. Stuart, Ph.D.
Psychologist, DCPS

375

# THE DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## SPECIAL EDUCATION BRANCH
## SOCIAL WORK RE-EVALUATION REPORT

**Student's Name:** De██████ Wi████              **Provider:** Carrie Grose
**ID:** 9065608                                    **Discipline:** Social Worker
**DOB:** ████/95                                   **Date of Interview:** 6/21/04
**Chronological Age:** 8 yrs. 6 months             **Grade:** 2nd
**Parent/Guardian:** Carrie Wilkins
**Address:** 950 Mississippi Ave.,
Washington, D.C. 20032
**Home Phone:** (202) 561-7080
**Work Phone:**
**Emergency:**
**Person(s) Interviewed:** Carrie Wilkins

## REASON FOR REFERRAL:

Review of the psychoeducational report that was completed by Marcia Stuart, Ph.D., on 08/07/03, reveals that an evaluation was requested to determine student's cognitive and academic level of functioning.

## BACKGROUND INFORMATION:

D█████ was born in Washington, D.C., at Greater Southeast Community Hospital. He presently lives with both parents and 5 siblings in a 3- bedroom apartment in Southeast, Washington, D.C. Ms. Wilkins reports living in the area for approximately 17 years, and presently look forward to moving into a 5-bedroom house, located in Northeast, Washington, D.C. Ms. Wilkins reports that she is not on public assistant, but does receive food stamps, and have applied for SSI benefits for De█████. She reports that De█████ has a good relationship with family members and does not present with behavioral problems at home. Last year however, prior to being diagnosed and treated for ADHD, Ms. Wilkins reports he, had serious behavioral problems at school.

## TRAUMATIC EVENTS;

None reported

**DW-11**

Name: D█████d Wil█████
DOB: █████95
Social Worker: Carrie Grose

## DATA FAMILY

**Family members/significant other who live in the household:**

**Household Composition:**

| Name | Age | Relationship | Education | Occupation |
|------|-----|--------------|-----------|------------|
| Carrie Wilkins | 40 | Mother | 12th | Home maker |
| Sheldon Wilkins | 41 | Father | 12th | Maintenance |
| Sheldon Wilkins | 18 | Brother | 12th | Ballou |
| Sheldon Wilkins | 14 | Sister | 8th | Johnson |
| Joannetta Wilkins | 11 | Brother | 6th | McGogney |
| Willie Wilkins | 10 | Brother | 5th | McGogney |
| Everett Wilkins | 3 | Sister | | |

**Family members/significant others who do not live in the household:**

| Name | Age | Relationship | Education | Occupation |
|------|-----|--------------|-----------|------------|
| Joan Wilkins | 64 | Grandmother | 12th | Police Retiree |
| Annette Wilkins | 23 | Sister | 12th | Banker |

Name: D_____d W_____
DOB: __/2/95
ID: 9065608
Social Worker: Carrie Grose

## DEVELOPMENTAL AND MEDICAL HISTORY:

De_____ reportedly weighed 8lbs 11-½ oz., at birth. Mother reports he was a normal vaginal delivery and that she did not experience any complications. She also denied the use of drugs during her pregnancy.

During his developmental stages, there were no abnormalities reported. He started walking at 10 months, talking at 9 months (saying mommy and daddy), and potty trained at 14 –15 months. He have experience the normal childhood illnesses (chicken pox, measles). In addition he has also since birth, have had problems with his left lung. Mother reports the lungs are unequal in size, and he therefore has chronic asthmatic problems. Ms. Wilkins also reports that he was found to be dyslexia at Charter Health Clinic, but does not receive services to correct the problem at this time.

De_____'s physician reportedly sees him at least twice a week at Charter Health Center on Minnesota, Ave., Southeast, Washington, D.C., due to asthma problems. He was hospitalized (2000-20001), for three days at Greater Southeast, Community Hospital, due to his asthma. He is on albuterol, prednisolon, fovent and uses a nebulizer. He also take cencernta for Attention Deficit Hyperactive Disorder, that was reported in the psychoeducational report dated 08/07/03. Other health problems reported consist of bedwetting every night. Ms. Wilkinshr attributes this to the medicine he has to take. He has a sleeping and eating disorder, but is not in treatment. He also has a skin problem, which causes him to scratch a lot. Ms. Wilkins reports that she plan to get a referral to a dermatologist. De_____d reportedly is a very sick child, who because of his illnesses has a poor attendance record at school. Mother reports that he cries a lot when he can't have his way or not allowed to go outside to play, as he is allergic to the pollen in the air.

Name: ███████████

DOB: █████95

ID: 9065608

Social Worker: Carrie Grose

## SCHOOL HISTORY:

De████ is 8 years 6 months of age. He is presently in the 2nd grade at McGogney Elementary where he has been a student since the kindergarten. Reportedly he was retained in the first grade due to academic and behavioral problems. Mother reports he was rebellious, oppositional and sometime, got in fights. During this time, he was not on medication. He was found eligible for special education on 10/16/03, and given a diagnosis of Other Health Impaired.

Review of the psychoeducational reports reveals that he carried a diagnosis of Oppositional Defiant Disorder as well as ADHD. The report also reveals that academically, he is not achieving at a grade appropriate level. Data from the WJ III COG indicated a general intellectual ability score of 60. which is in the very low range. He presently receives specialized services in his academics, speech and counseling. However, since he has made a great improvement in his behaviors, he was recently discharged from psychological counseling on 6/21/04.

## SIGNIFICANT SOCIAL PERSONAL FUNCTIONING

De██████ a very likeable young man who has been cooperative and respectful with this worker. He is always eager to participate in group activities and has been helpful with his peers. In the time that this worker has worked with De███████ there has been no behavioral problems cited. Occasionally, however, there may be reports of conflicts in the classroom, which generally initiated by others.

De█████ reportedly has a best friend, and lots of friends at school. He likes football, playing the play station, computer, and would like to be a rapper. Mother reports that he doesn't like to go to school and will sometime stage an asthma attack. She reports that he said, " the teachers holler too much".

379

4

Name: D█████d W█████
DOB:█████/95
ID:9065608
Social Worker: Carrie Grose

# SUMMARY

D█████ is a 8 year 6 months old African-American male who presently lives with both parents and 5 siblings in a 3-bedroom apartment, in Southeast, Washington, D.C. Ms. Wilkins reports that the family is in the process of moving into a 5 bed-room house located in northeast, Washington, D.C.

D█████ at birth weighed 8 lbs. 11 ½ oz.,. Mother denied the use of drugs or experiencing any complications during her pregnancy. She reports that his developmental milestones where within normal range. As a young child he developed chicken pox and measles. He has been quite ill most of his young life. Mother reports that since birth, he has had problems with his lungs. Apparently the left lung is of unequal size to the right lung. He has chronic asthmatic attacks and has to be seen by his physician twice a week. She reports that he was hospitalized (2000-2001) due to a asthma attack. He is currently on medication (prednisolone , 15 mg, 1xday, Fovent (as needed), albuterol and uses anebulizer).He is also on cencernta for Attention Defiant Hyperactive Disorder. Mother reports he also has a eating and sleeping disorder that are not treated at this time. In addition he has a skin rash, bed-wetting problems, and was found to be dyslexia.

D█████ is in the 2nd grade at McGogney Elementary school. He was retained in the 1st grade due to academic and behavioral problems. He was found eligible for special educational services on 10/16/03, and given a diagnosis under Other Health Impaired. He was also classified as a student with Attention Deficit Hyperactive Disorder/ Oppositional Defiant Disorder, when he was in the 1st grade. He receives specialized services in academics, speech and psychological counseling. He is beginning to show progress in all areas, and this year on 6/21/04, he was discharged from psychological counseling. D█████ is a likeable young man, who is always cooperative and respectful. He seems eager to learn, and tries very hard. He generally has a good relationship with peers and when in conflict, it is often initiated by others.

380

Name: De███d W██████
DOB: ████/95
ID: 9065608
Social Worker: Carrue Grose

I understand that this information will be used to help determine if my child is
educationally disabled and will be used by DCPS professionals only. This material will
be kept in my child's confidential folder.

_Carrue Grose_ 4/21/04 _Date_    _Cecil Wilkins_ _Date_ 6-21-04
(Interviewer's Signature)         ( Parent/Guardian Signature)

State Education Agency for the District of Columbia
State Enforcement and Investigation Division (SEID)
Special Education Programs



# Due Process Complaint Notice

- This form is used to give notice of a complaint to the District of Columbia Public Schools, District of Columbia Public Charter School (DCPS or LEA) an/or parents with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a Free appropriate public education to that child. A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEIA).

- The complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office of the District of Columbia Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, D.C. 20002; fax number 202/442-5556.

- Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice. Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting (called a "Resolution Session") with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. The Student Hearing Office does NOT schedule resolution meetings.

- Mediation is also available to all parties as an alternative to a resolution meeting of a Due Process Hearing.

A.    INFORMATION ABOUT THE STUDENT:

DW-12

| Student Name: | DE███D W█████ | Birth Date: | ██/95 |
|---|---|---|---|

**Address:** 2909 S. Dakota Avenue, N.E. Washington, D.C. 20018

**Present School of Attendance:** Marshall Education Center

**Is this a charter school?** NO (If yes, you must provide a copy of this notice to the charter school principal or director)

**Parent/Guardian of the Student:** CARRIE WILKINS

**Address (If different from the student's above):** n/a

| Phone/Contact Number: | (703) 739-4300 | Fax Number (if applicable): | (703) 739-2323 |
|---|---|---|---|

**B.** <u>Individual Making the Complaint/Request for Due Process Hearing:</u>

**Name:** CARRIE WILKINS

**Complete Address:** 2909 S. Dakota Avenue, N.E. Washington, D.C. 20018

**Phone: (h)** **(w)** **(Fax)** **(e-mail)**

**Relationship to Student:**

☒X Parent ☐ Legal Guardian ☐ Parent Surrogate
☐ Self/Student ☐ Local Education Agency (LEA) ☐ Parent Advocate

**C.** <u>Local Representative:</u>

**Name:** Talib Abdus-Shahid, Esq., Dalton, Dalton & Houston, P.C.

**Address:** 1008 Pendleton Street
Alexandria, VA 22314-1837

383

Phone: (b)              (w)  (703) 739-4300        (Fax)                    (e-mail)

Will attorney / legal representative attend the resolution session?        X☐ Yes    ☐ No

**D.    Complaint Made Against (check all that apply):**

X☐  DCPS school (Complaint is against DCPS as the SEA).

☐   Charter school (name of school if different from page one)

☐   Non-public school or residential treatment facility (name)

☐   Parent

**E.    Resolution Session Meeting Between Parent and LEA:**
I understand that it is my right to have a resolution meeting to receive this complaint. I also understand that I may voluntarily waive this right if I choose. (Note: all Parties must agree to waive the resolution meeting to avoid having this meeting).

☐ X   I wish to waive the Resolution Session Meeting

**F.    Mediation Process:**

IDEIA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent. Both parties can request mediation as an alternative to the Resolution Session Meeting or as an alternative to a Due Process Hearing. Please check all that apply:

☐   I am requesting mediation as an alternative to the resolution session meeting.

☐ X   I am requesting mediation and a due process hearing.

☐   I am requesting mediation only at this time.

**G.    Facts and Reasons for the Complaint:**

In accordance with the Individuals with Disabilities Education Improvement Act (IDEIA), please complete the following questions (attach additional pages if needed):

1.     What is the nature of the problem, including the facts related to the problem, that will need to be addressed at a Resolution Session meeting, a Mediation Conference, and/or a Due Process Hearing?

D██████ W██████ currently attends Marshall Education Center in the District of Columbia. His current 2004 IEP identifies him as an Other Health Impaired (OHI) special education student. On July 22, 2005, a Hearing Officer's Determination (HOD) issued. The HOD ordered DCPS to convene a MDT/IEP meeting to review all evaluations, medical documents, revise the IEP if necessary, discuss and determine placement and compensatory education, if warranted. All meetings were to be scheduled through Parent's counsel.

To date, DCPS has not scheduled the MDT/IEP meeting. Therefore, the IEP is out of date and has never been revised and re-programmed in order to include the additional disabilities of SLI and Broncial Asthma. In addition, DCPS has failed to provide one-on-one tutoring services, as well as speech/language therapy services.

384

An award of compensatory education is warranted in this case, because DCPS has not provided a current IEP for the 2004-2005 and 2005-2006 school years, and has failed to provide speech therapy services for the 2005-2006 school year. Finally, five months have passed without DCPS convening the IEP meeting, and in all this time, De_____ new IEP could have been developed.

The Parent contends that:

1) DCPS denied D_____ FAPE by violating the terms of the July 22, 2005 HOD:

   a) DCPS denied De_____ FAPE by failing to properly notify and schedule with Parent's counsel, the date, time and place of the MDT/ IEP meeting.

   b) DCPS denied De_____ FAPE by failing to convene the MDT/IEP meeting.

2) DCPS denied De_____ FAPE by failing to develop an appropriate, annual IEP for the 2005-2006 school year.

3) DCPS denied D_____ FAPE by failing to develop current IEP's for the 2004-2005 and 2005-2006 school years.

4) DCPS denied Des_____ FAPE by failing to provide speech/language therapy services.

5) DCPS denied De_____ FAPE by failing to provide one-on-one tutoring services.

Based on the above, D_____ is not and has not been receiving a Free Appropriate Public Education.

2.    To the extent known to you at this time, how can this problem be resolved?
      Parent requests the following relief:    We are seeking,

   a.    Declaratory relief for denial of FAPE, denial of Due Process and for discrimination based solely upon our client's disability by DCPS.

   b.    A determination that DCPS denied De_____ FAPE by violating the terms of the July 22, 2005 HOD:

      i.  A determination that DCPS denied De_____ FAPE by failing to properly notify and schedule with Parent's counsel, the date, time and place of the MDT/ IEP meeting.

      ii) A determination that DCPS denied D_____ FAPE by failing to convene the MDT/IEP meeting.

   c.  A determination that DCPS denied De_____ FAPE by failing to develop an appropriate, annual IEP for the 2005-2006 school year.

   d.  A determination that DCPS denied De_____ FAPE by failing to develop current IEP's for the 2004-2005 and 2005-2006 school years.

   e.  A determination that DCPS denied De_____ FAPE by failing to provide speech/language therapy services.

   f.  A determination that DCPS denied De_____ FAPE by failing to provide one-on-one tutoring services.

j.  A determination that HRAPCS be required to reconvene the IEP meeting within five (5) business days of the issuance of this determination in order to develop an appropriate IEP to meet D██████'s individual needs, to re-program D██████ IEP to include the additional disability of SLI, and to include Brochial Asthma within D██████'s disability of OHI, to review and discuss any and all evaluations, and any to determine an appropriate placement, and to discuss and develop the implementation of the compensatory education awarded by the Hearing Officer.

k.  A determination that D██████ be awarded an amount of compensatory education for the period of time DCPS violated the terms of the HOD, including the time he was denied speech/language therapy services and denied the benefit of his revised IEP's.

l.  A determination that DCPS be required to afford the Parent an opportunity to participate in any meeting in which placement is discussed or determined. The DCPS placement representative shall advise the Parent of the advantages and disadvantages for D██████ with respect to each school that is discussed, including any schools proposed by the Parent. DCPS shall further provide the Parent an explanation for the placement DCPS proposes, and the reasons for the proposal shall be provided in the meeting notes. DCPS shall issue a Notice of Placement within 5 business days, if to a public placement, and thirty calendar days if to a non-public placement.

m.  A determination that all meetings be scheduled at a mutually convenient time through Parent's counsel.

n.  Lastly, we are seeking any other relief that the Hearing Officer deems appropriate.

H.  <u>Accommodations and Assistance Needed</u>:

Please list any special accommodations you may require for a Resolution Session Meeting / Mediation Conference / Due Process Hearing:   NONE

☐  Interpreter (please specify the type)
☐  Special Communication (please describe the type)
☐  Special Accommodation for Disability (please be specific)
☐  Other

I.  <u>Waiver of Procedural Safeguards</u>:

☐  I (parent/guardian) waive receiving a copy of the procedural safeguards at this time.

386

**J.** **Signature and Affirmation:**

I affirm that the information provided on this form is true and correct.

_____

Signature of Parent or Guardian

_____        1/26/06

Legal Representative Advocate (if applicable)        Date

Mail, fax or deliver this complaint notice to:
State Enforcement and Investigation Division
For Special Education Programs (SEID)
Student Hearing Office (SHO)
825 North Capitol Street, NE, 8th Floor
Washington, DC 20002
Fax number: 202/442-5556

387

# FAX TRANSMISSION COVER SHEET
## Dalton, Dalton & Houston P.C.
**Attorneys at Law**
1008 Pendleton Street
Alexandria, Virginia 22314-1837
(703) 739-4300
FAX (703) 739-2323

**DATE:**     January 26, 2006

**TO:**     Sharon Newsome
DCPS/Student Hearing Office

**TO FAX:**     (202) 442-5556

**FROM:**     Talib Abdus-Shahid, Esq.

**RE:**     **Due Process Hearing Complaint: De███████W████(DOB ███2/95)**

**NUMBER OF PAGES INCLUDING THIS PAGE  7**
*******************************************************************************

**PLEASE DELIVER ASAP.**
*******************************************************************************

THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.

IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECI-
PIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS
STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION
IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND
RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS.
*******************************************************************************

```
*  *  *   Transmission  Result  Report(MemoryTX)  ( Jan.26. 2006  4:07PM ) * * *
                                                        1) Dalton. Dalton & Houston
                                                        2)
```

Date/Time: Jan.26. 2006  4:06PM

| File No. Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|
| 8461 Memory TX | 2024425556 | P. 7 | OK | |

----------------------------------------

```
Reason for error
  E.1) Hang up or line fail              E.2) Busy
  E.3) No answer                         E.4) No facsimile connection
```

FAX TRANSMISSION COVER SHEET
Dalton, Dalton & Houston P.C.
Attorneys at Law
1008 Pendleton Street
Alexandria, Virginia 22314-1837
(703) 739-4300
FAX (703) 739-2323

DATE:      January 26, 2006

TO:        Sharon Newsome
           DCPS/Student Hearing Office

TO FAX:    (202) 442-5556

FROM:      Talib Abdus-Shahid, Esq.

RE:        Due Process Hearing Complaint: De____d W____ (DOB ___/95)

NUMBER OF PAGES INCLUDING THIS PAGE  7

PLEASE DELIVER ASAP.
**************************************************************
THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.

IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECI-
PIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS
STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION
IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONF AND
RETURN THE ORIGINAL MESSAGE TO US AT. THE ABOVE ADDRESS.
**************************************************************

389

Office of Mediation &
Early Dispute Resolution
Complaint Intake Unit
825 North Capitol Street, NE- 8th Fl.
Washington, DC 20002
(202) 442-5467



# Fax

## Time Sensitive Materials Attached

**Prompt Attention: Attorney:** Talib Abdus-Shahid, Esq.
**Parent:** Carrie Wilkins

Telephone Number: (703) 739-4300          Pages: **3**
Fax Number: (703) 739-2323                Date: **January 27, 2006**

**Please find attached a copy of a Scheduling Memorandum regarding:**

Student: D██████ Wi████

School : **Public/Marshall Education Center**

**Please contact the Complaint Intake Unit @ (202) 442-5253 regarding any
Questions related to this correspondence. Also this is a phone/fax line.**

Thank You,
Ms. Cassandra McDowell
Legal Assistant

The document(s) accompanying this telecopy transmission contains confidential information that is legally
privileged. The information is intended only for use of the individual or entity named Above, if you are not the
intended recipient you are hereby notified that any disclosure, copying, Distribution or the taking of any action in
reliance of the contents of this copied information is Strictly prohibited. If you receive this telecopy in error, please
immediately notify us by telephone For return of the original document to us.

DW-13

# STATE EDUCATION AGENCY
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS

| | | |
|---|---|---|
| In the Matter of: | ) | BEFORE A SPECIAL EDUCATION |
| W█████ D. | ) | |
| | ) | |
| | ) | HEARING OFFICER |
| Vs. | ) | |
| **Public** | ) | |
| **Marshall Education Ctr.** | ) | DISTRICT OF COLUMBIA |
| | ) | |
| Respondent | ) | PUBLIC SCHOOLS |

## SCHEDULING MEMORANDUM

1. A due process complaint notice and request for due process hearing has been received by the Student Hearing Office in the State Enforcement & Investigation Division. Pursuant to 20 U.S.C. § 1415(f)(1)(B), prior to the opportunity for an impartial due process hearing, the Local Educational Agency shall convene a resolution meeting with the parent(s) and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint within 15 calendar days of receiving notice of the parents' complaint. The meeting shall include a representative of the Local Educational Agency who has decision-making authority. The Local Education Agency is responsible for scheduling the resolution meeting in consultation with the parent. **The Student Hearing Office does not schedule or participate in resolution meetings.**

2. The complaint notice was filed on **January 27, 2006**

3. The deadline for the resolution meeting is **February 11, 2006** unless the parent and Local Educational Agency agree in writing to waive such meeting, or agree to refer the case to a mediator for mediation.

## RESPONSE TO THE COMPLAINT

A. *Prior Written Notice Not Issued by the Local Educational Agency*. If the Local Educational Agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, the Local Educational Agency shall, within 10 days of receiving the complaint, send to the parent a response that shall include:

   1. An explanation why the Local Educational Agency proposed or refused to take action raised in the complaint;

   2. A description of other options that the IEP Team considered and the reasons why those options were rejected;

Rev'd. 7/6/05

391

3.  A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and

4.  A description of the factors that is relevant to the agency's proposal or refusal.

B  Prior written notice, if not already provided to the parent, must be sent by the Local

Educational Agency to the complaining party no later than  **February 6, 2006**

C.  *Deficiency Notice*.  A complaint notice shall be deemed sufficient unless the party receiving the notice notifies the Student Hearing Office and the complaining party in writing, <u>within 15 days of receiving the notice of the complaint</u>, that the complaint does not satisfy the notice requirements specified in 20 U.S.C. 1415(b)(7)(A).

D.  The deadline for filing a deficiency notice  **February 11, 2006**

## DUE PROCESS HEARING

Pursuant to 20 U.S.C. § 1415(f)(1)(B)(ii) if the Local Educational Agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all applicable time lines for scheduling a due process hearing will commence. A final hearing officer's decision must be issued within 45 days from the expiration of the 30-day resolution period.

## QUESTIONS AND INFORMATION

The staff with the Student Hearing Office does not provide legal advice. The parties should consult with legal counsel or other representative to answer any legal questions about your rights, duties, and responsibilities under the law. The school or the Local Education Agency responsible for scheduling the meeting will provide information about the time, date, and location of the resolution meeting.

Rev'd 7/6/05

392

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
OFFICE OF ACADEMIC SERVICES

**RESOLUTION MEETING CONFIRMATION**
**(RMC)**



De Wi /1995
DOB

Thurgood Marshall
School

Dear Parent/Guardian:

Pursuant to the Individuals With Disabilities Education Improvement Act of 2004 § 615 (f)(1)(B), this is a confirmation of your meeting to discuss your pending due process complaint and the facts that support it. The goal of the resolution meeting is to discuss the complaint and provide an opportunity for DCPS to resolve it. The IDEA 2004 requires that prior to an impartial due process hearing a resolution meeting must be held within 15 (fifteen) days of your filing your complaint.

Your participation is essential in an attempt to resolve your concerns. The District of Columbia Public Schools hopes that you will make every effort to attend this meeting. The resolution meeting is required prior to a due process hearing. Please be advised that failure to attend this meeting may result in a waiver of your right to due process hearing.

The date, time and place of the meeting are printed below.

2/14/2006
Date

10:30 Am
Time

3100 Ft Lincoln Drive, NE
Location
Washington, DC 20018

Tiffany Batson Sped Coordinator
Sent By

**DW-14**

393

RMC Letter of Confirmation to the Parent
7-14-05



**Marshall Educational Center**
3100 Fort Lincoln Drive, N.E.
Washington, D.C. 20018 – 4399
202 – 576 – 6900  fax: 202-576-7932

**DISTRICT OF COLUMBIA
PUBLIC SCHOOLS**
www.k12.dc.us

DATE: 2/4/06                    FAX TO: (703) 739-1323

TO: Jalib Abdus-Shahid Esq

FROM: Tiffany Batson

TOTAL NUMBER OF PAGES INCLUDING COVER SHEET: 13

COMMENTS: Re: ██████ ██████

If you do not receive the total transmission, please contact this office on
(202) 576-6900

**Confidentially Notice:** the information accompanying this facsimile is intended only
for the use of the individual or entity named above.  If you are not the intended
recipient, you are hereby notified that any disclosure, copying, distribution or the taking
of any action in reliance on the content of this telecopy is strictly prohibited.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
OFFICE OF ACADEMIC SERVICES

## RESOLUTION MEETING CONFIRMATION
(RMC)



Student

/1995
DOB

Thurgood Marshall
School

Dear Parent/Guardian:

Pursuant to the Individuals With Disabilities Education Improvement Act of 2004 § 615 (f)(1)(B), this is a confirmation of your meeting to discuss your pending due process complaint and the facts that support it. The goal of the resolution meeting is to discuss the complaint and provide an opportunity for DCPS to resolve it. The IDEA 2004 requires that prior to an impartial due process hearing a resolution meeting must be held within 15 (fifteen) days of your filing your complaint.

Your participation is essential in an attempt to resolve your concerns. The District of Columbia Public Schools hopes that you will make every effort to attend this meeting. The resolution meeting is required prior to a due process hearing. Please be advised that failure to attend this meeting may result in a waiver of your right to due process hearing.

The date, time and place of the meeting are printed below.

2/14/2006
Date

10:30 Am
Time

3100 Ft Lincoln Drive, NE
Location

Washington, DC 20018

Tiffany Batson  Sp Ed Coordinator
Sent By

**DW-15**



**Marshall Educational Center**
3100 Fort Lincoln Drive, N.E.
Washington, D.C. 20018 – 4399
202 – 576 – 6900  fax: 202-576-7932

**DISTRICT OF COLUMBIA
PUBLIC SCHOOLS**
www.k12.dc.us

DATE: 2/4/06          FAX TO: (703) 739-132B

TO: Jalib Abdus-Shahid Esq

FROM: Tiffany Batson

TOTAL NUMBER OF PAGES INCLUDING COVER SHEET: 13

COMMENTS: Re: ▓▓▓ W▓▓▓

re-sent
2/14/2006

**If you do not receive the total transmission, please contact this office on
(202) 576-6900**

**Confidentially Notice:** the information accompanying this facsimile is intended only
for the use of the individual or entity named above.  If you are not the intended
recipient, you are hereby notified that any disclosure, copying, distribution or the taking
of any action in reliance on the content of this telecopy is strictly prohibited.

396.

Law Offices
### DALTON, DALTON & HOUSTON, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703) 739-4300
Facsimile: (703) 739-2323
E-MAIL: DCSPEDLAW@AOL.COM

Washington DC. Office:
601 Pennsylvania Avenue, N.W.
South Building, Suite 900
Washington, DC 20004
Telephone: (202)-393-0060
Facsimile: (202)-393-1555

Paul S. Dalton*
Ellen Douglass Dalton *
William E. Houston*+
Talib S. Abdus-Shahid+
Laura E. Duos

ALSO ADMITTED IN D.C. & W.VA.
+ ADMITTED IN D.C. & PA.

February 8, 2006

Tiffany Batson
Special Education Coordinator
Marshall Education Center
3100 Ft. Lincoln Drive, N.E.
Washington, D.C. 20018
Fax: (202) 576-7932

RE: Des█████ W█████
DOB (██████95)

Dear Ms. Batson:

I am in receipt of your resolution confirmation. Unforetunately, Tuesday, February 14, 2006 at 10:30 AM is not a mutually convenient time for Ms. Wilkins or me.

The date of Wednesday, February 15, 2006, in the afternoon would be more convenient. Please contact me directly at fax (703) 739-2323 to confirm if this date is acceptable.

Thank you for your attention to this matter.

Sincerely,

Talib Abdus-Shahid, Esq.
Attorney for Parent/Student

cc: Carrie Wilkins

**DW-16**

397

# FAX TRANSMISSION COVER SHEET
## Dalton, Dalton & Houston P.C.
### Attorneys at Law
1008 Pendleton Street
Alexandria, Virginia 22314-1837
(703) 739-4300
FAX (703) 739-2323

DATE:        February 8, 2006

TO:          Tiffany Batson, SEC
             Marshall EC

TO FAX:      (202) 576-7932

FROM:        Talib Abdus-Shahid, Esq.

RE:          **Resolution meeting to De**  **Wi**

NUMBER OF PAGES INCLUDING THIS PAGE   2
*********************************************************************************
**PLEASE DELIVER ASAP.**
*************************************************************

THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.

IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECI-
PIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS
STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION
IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND
RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS.
*******************************************************************

Mar. 16. 2006 3:01PM   Case 1:07-cv-00808-JDB   Dalton, Dalton & Houston   Document 12-2   Filed 12/14/2007   No. 0233   Page 41 of 45   P. 25/43

P. 1

* * * Transmission Result Report(MemoryTX) ( Feb 8. 2006 3:30PM ) * * *

1) Dalton  Dalton & Houston
2)

Date/Time: Feb 8. 2006 3:29PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|---|
| 8949 | Memory TX | 2025767932 | P  2 | OK | |

----------------------------------------------------

Reason for error
E.1) Hang up or line fail          E.2) Busy
E.3) No answer                     E.4) No facsimile connection

---

**FAX TRANSMISSION COVER SHEET**
Dalton, Dalton & Houston P.C.
Attorneys at Law
1008 Pendleton Street
Alexandria, Virginia 22314-1837
(703) 739-4300
FAX (703) 739-2329

DATE:     February 8, 2006

TO:       Tiffany Batson, SEC
          Marshall EC

TO FAX:   (202) 576-7932

FROM:     Taib Abdus-Shahid, Esq.

RE:       Resolution meeting to D▮▮▮▮ W▮▮

NUMBER OF PAGES INCLUDING THIS PAGE: 2

PLEASE DELIVER ASAP.

THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.

IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECI-
PIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS
STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION
IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND
RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS.

Law Offices
## DALTON, DALTON & HOUSTON, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703) 739-4300
Facsimile: (703) 739-2323
E-MAIL: DCSPEDLAW@AOL.COM

Washington DC Office:
601 Pennsylvania Avenue, N.W.
South Building, Suite 900
Washington, DC 20004
Telephone: (202)-393-0060
Facsimile: (202)-393-1555

Paul S. Dalton*
Ellen Douglass Dalton *
William E. Houston*+
Talib S. Abdus-Shahid+
Laura E. Duos

ALSO ADMITTED IN D.C. & W.VA
+ ADMITTED IN D.C. & PA.

February 13, 2006

Tiffany Batson
Special Education Coordinator
Marshall Education Center
3100 Ft. Lincoln Drive, N.E.
Washington, D.C. 20018
Fax: (202) 576-7932

RE: 
DOB (         95)

Dear Ms. Batson:

I have not received a response from you regarding the Parent's proposed date and time for the Resolution Meeting, which I faxed to you last Wednesday, February 8, 2006.

Please be advised that when I did not hear from you, I had to schedule another resolution meeting in that time slot. Currently, the dates of Tuesday, February 21, 2006 and Wednesday, February 22, 2006, in the morning would be convenient. Please contact me directly at fax (703) 739-2323 to confirm if either of these dates are acceptable.

Thank you for your attention to this matter.

Sincerely,

Talib Abdus-Shahid, Esq.
Attorney for Parent/Student

cc: Carrie Wilkins

**DW-17**

400

# FAX TRANSMISSION COVER SHEET
Dalton, Dalton & Houston P.C.
Attorneys at Law
1008 Pendleton Street
Alexandria, Virginia 22314-1837
(703) 739-4300
FAX (703) 739-2323

**DATE:** February 13, 2006

**TO:** Tiffany Batson, SEC
Marshall EC

**TO FAX:** (202) 576-7932

**FROM:** Talib Abdus-Shahid, Esq.

**RE:** **Resolution Meeting for D███ ██d W██████**

************************************************************************

**PLEASE DELIVER ASAP.**
***************************************************************

THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.

IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECI-
PIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS
STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION
IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND
RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS.
******************************************************************

* * * Transmission Result Report (Memory TX) ( Feb 13. 2006 12:57PM ) * * *

1) Dalton  Dalton & Houston
2)

Date/Time: Feb 13  2006 12:47PM

| File No. | Mode | Destination | Pg(s) | | Result | Page Not Sent |
|---|---|---|---|---|---|---|
| 9077 | Memory TX | 2025767932 | P | 2 | OK | |

------------------------------------------------------------

Reason for error
  E.1) Hang up or line fail           E.2) Busy
  E 3) No answer                      E 4) No facsimile connection

---

**FAX TRANSMISSION COVER SHEET**
Dalton, Dalton & Houston P.C.
Attorneys at Law
1008 Pendleton Street
Alexandria, Virginia 22314-1837
(703) 739-4300
FAX (703) 739-2323

DATE:     February 13, 2006

TO:       Tiffany Betson, SEC
          Marshall EC

TO FAX:   (202) 576-7832

FROM:     Talib Abdus-Shahid, Esq.

RE:       Resolution Meeting for Dec███ W█████

PLEASE DELIVER ASAP.

THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.

IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECI-
PIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS
STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION
IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND
RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS.

402

P 1

\* \* \*  Transmission Result Report (Memory TX)  ( Feb 13  2006 12:57PM ) \* \* \*

1) Dalton  Dalton & Houston
2)

Date/Time: Feb 13  2006 12:52PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|----------|------|-------------|-------|--------|---------------|
| 9078 | Memory TX | 2025767932 | P.  2 | OK | |

---

Reason for error
  E.1) Hang up or line fail              E.2) Busy
  E.3) No answer                          E.4) No facsimile connection

---

Law Offices
DALTON, DALTON & HOUSTON, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703) 739-4300               Washington D.C. Office
Facsimile: (703) 739-2323               601 Pennsylvania Avenue, N.W.
E-Mail: DCSPEDLAW@AOL.COM               South Building, Suite 900
                                        Washington, DC 20004
                                        Telephone: (202) 271-4040
Paul S. Dalton*                         Facsimile: (202) 393-1225
Ellen Douglass Dalton *
William E. Houston†△
Talih S. Abdus-Shahid*
Laura S. Date

△ Also Admitted in Maryland
*Also Admitted in DC
†Also Admitted in Pennsylvania

February 13, 2006

Tiffany Batson
Special Education Coordinator
Marshall Education Center
3100 Ft. Lincoln Drive, N.E.
Washington, D.C. 20018
Fax: (202) 576-7932

RE: Dennis Wh
DOB: (5)

Dear Ms. Batson:

    I have not received a response from you regarding the Parent's proposed date and time for the Resolution Meeting, which I faxed to you last Wednesday, February 8, 2006.

    Please be advised that when I did not hear from you, I had to schedule another resolution meeting in that time slot. Currently, the dates of Tuesday, February 21, 2006 and Wednesday, February 22, 2006, in the morning would be convenient. Please contact me directly at fax (703) 739-2323 to confirm if either of these dates are acceptable.

    Thank you for your attention to this matter.

Sincerely,

Talih Abdus-Shahid, Esq.
Attorney for Parent/Student

cc: Carrie Wilkins

403

Law Offices
## DALTON, DALTON & HOUSTON, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703) 739-4300
Facsimile: (703) 739-2323
E-MAIL: DCSPEDLAW@AOL.COM

Washington DC. Office:
601 Pennsylvania Avenue, N.W.
South Building, Suite 900
Washington, DC 20004
Telephone: (202)-393-0060
Facsimile: (202)-393-1555

Paul S. Dalton*
Ellen Douglass Dalton *
William E. Houston*+
Talib S. Abdus-Shahid+
Laura E. Duos

ALSO ADMITTED IN D.C. & W.VA.
+ ADMITTED IN D.C. & PA.

March 3, 2006

Tiffany Batson
Special Education Coordinator
Marshall Education Center
3100 Ft. Lincoln Drive, N.E.
Washington, D.C. 20018
Fax: (202) 576-7932

RE: DW
    DOB ( /95)

Dear Ms. Batson:

Due to my illness last week, we are requesting a new date and time for the resolution meeting. I believe that since the meeting was scheduled for a Tuesday, that Tuesdays are good days for you. Accordingly, we can meet either next Tuesday or the following Tuesday, March 7th or March 14th, respectively. The meeting time of 10AM is also good.

Please contact me directly at fax (703) 739-2323 to confirm if either of these dates are acceptable. Thank you for your attention to this matter.

Sincerely,

Talib Abdus-Shahid, Esq.
Attorney for Parent/Student

cc: Carrie Wilkins

**DW-18**

404

# FAX TRANSMISSION COVER SHEET
Dalton, Dalton & Houston P.C.
Attorneys at Law
1008 Pendleton Street
Alexandria, Virginia 22314-1837
(703) 739-4300
FAX (703) 739-2323

DATE:     March 3, 2006

TO:     Tiffany Batson, SEC
Marshall EC

TO FAX:     (202) 576-7932

FROM:     Talib Abdus-Shahid, Esq.

RE:     **Resolution Meeting for D⬛⬛ W⬛⬛**

NUMBER OF PAGES INCLUDING THIS PAGE     2
**************************************************************************************

**PLEASE DELIVER ASAP.**
**************************************************************************************

THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.

IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECI-
PIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS
STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION
IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND
RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS.
**************************************************************************************

405

* * *  Transmission Result Report(MemoryTX) ( Mar. 3. 2006 12:15PM ) * * *

1) Dalton  Dalton & Houston
2)

Date/Time: Mar. 3. 2006 12:13PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|---|
| 9698 | Memory TX | 2025767932 | P. 2 | OK | |

-----------------------------------------------------------------------------

Reason for error
    E.1) Hang up or line fail              E.2) Busy
    E.3) No answer                         E.4) No facsimile connection

---

**FAX TRANSMISSION COVER SHEET**
Dalton, Dalton & Houston P.C.
Attorneys at Law
1008 Pendleton Street
Alexandria, Virginia 22314-1857
(703) 739-4300
FAX (703) 739-2323

DATE:      March 3, 2006

TO:        Tiffany Betson, SEC
           Marshall EC

TO FAX:    (202) 576-7932

FROM:      Talib Abdus-Shahid, Esq.

RE:        Resolution Meeting for D█████ W█████████

NUMBER OF PAGES INCLUDING THIS PAGE  2

PLEASE DELIVER ASAP.

THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.

IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECI-
PIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS
STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION
IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND
RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS.

406

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### WASHINGTON, D.C.
### INDIVIDUALIZED EDUCATIONAL PROGRAM

DCPS - IEP Page 1 of 4
Additional Comments: ☐

### I. IDENTIFICATION INFORMATION

Student Name: Last **W**  First **D**  MI

Student ID **90656608**  Soc. Sec. No. ___  Age: **8**  Grade **3**

Gender ☒ M ☐ F  Date of Birth **95**  Ethnic Group **Black**

Address **950 Mississippi Ave  SE # 213**
House No. Street Name  Quadrant Apartment #
**Washington**  **DC 20032**
City  State Zip Code

☐ Non-attending
Attending School **Marshall**  Home School **Marshall**
☐ Elem. ☐ Mid/HS ☐ SHS ☐ CWS I

Parent **Carrie Wilkens**

Address (if different from student): ☒ Parent ☐ Guardian ☐ Surrogate
Phone No. Street Name  Quad Apt. No. City  State Zip Code

Telephone: Home **(202) 269-3421**  Work

### II. CURRENT INFORMATION

Date of IEP Meeting: **05/25/05**
Date of Last IEP Meeting: **6/21/04**
Date of Most Recent Eligibility Decision: **10-16-03**

Purpose of IEP Conference:
☐ Initial IEP  ☒ Review of IEP
☒ Requested Eval.  ☐ 3yr ReEval.

Indicate Level of Standardized Assessment **III**

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| BEHAVIOR | TRANSPORTATION |
| ESY | TRANSITION |

### III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---|---|---|---|---|---|
| Student | English | English | English | Natu lang | Oral: |
| Parent | English | English | English | Natu lang | Rdg./Written: |
| Home | English | English | English | Natu lang | Instrument: |
| | | | | | Date: |

### IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd | SpEd | Total | FREQUENCY Hr./Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # | wks./mos |
|---|---|---|---|---|---|---|---|---|---|
| Specialized Instruction | 18 | 18 | | Hr | W | Sp Ed Teacher | 05/26/05 | 10 | mos |
| Speech Therapy | 1 | 1 | | Hr | W | Speech Pathologist | 05/26/05 | 10 | mos |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| TOTAL | 19 | 19 | Hours Per Week | | | | | | |

### V. Disability(ies)

**Other Health Impaired**

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☐ 0-20%  ☒ 21-50%  ☐ 51-100%

Percent of time NOT in a Regular Education Setting **58%**

### VI. IEP TEAM (Participants in the development of the IEP)    Print and sign your name below.

Parent **Carrie Wilkens via telephone**
Sp Ed Teacher **Donna Arenas**
Tiffany Scott SpEd Coordinator **Tiffany Scott**
Speech Pathologist **Morris Williams MS CCC SLP**
Gen Ed Teacher **Sandra Whitaker**

X **I AGREE** with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.
Parent/Guardian Signature **Carrie Wilkens via telephone**  Date **5/25/05**

| Student Name [redacted] | Managing School Marshall | DCPS - IEP Page 2 of 4 |
|---|---|---|
| Student ID Number 9016562 | DOB [redacted] 95 | Attending School Marshall | |

## VII. Present Educational Performance Levels in Areas Affected by the Disability

Additional Comments: ☐

**Academic Areas: (Evaluator)** Special Ed Teacher

**Math Strengths:**
Student can grasp basic mathematical operations off grade level

**Impact of disability on educational performance in general education curriculum:**
Students disability impacts his academic growth

**Reading Strengths:**
Student can sound out basic sight words

**Impact of disability on educational performance in general education curriculum:**
Students disability impacts his academic growth

**Score(s) When Available**
- Math Cal. 1.7
- Math Rea. _____
- See goal page:
- Date: 5/06/05
- Rdg. Com 1.6
- Rdg. Basic 1.5
- Written Ex. _____
- See goal page:
- Date: 5/06/05

**Communication (Speech & Language) (Evaluator)**
Strengths:

**Impact of disability on educational performance in general education curriculum:**

**Score(s) When Available**
- Exp.Lang. _____
- Rec-Lang. _____
- Artic _____
- Voice _____
- Fluency _____
- Exp. Voc. _____
- Rec. Voc. _____
- See goal page:
- Date: _____

**Motor/Health (Evaluator)**
Strengths:

**Impact of disability on educational performance in general education curriculum:**

**Score(s) /Results When Available**
- _____
- _____
- _____
- See goal page:
- Date: _____

**Social Emotional Behavioral Areas: (Evaluator)**
Strengths:

**Impact of disability on educational performance in general education curriculum:**

**Score(s) When Available**
- _____
- _____
- _____
- See goal page:
- Date: _____

**Cognitive/Adaptive Behavior: (Evaluator)**
Strengths:

**Impact of disability on educational performance in general education curriculum:**

**Score(s) When Available**
- _____
- _____
- _____
- See goal page:
- Date: _____

**Prevocational Skills: (Evaluator)**
Strengths:

**Impact of disability on educational performance in general education curriculum:**

**Score(s) When Available**
- _____
- _____
- See goal page:
- Date: _____

408

| | DCPS - IEP |
|---|---|
| | Page 3 of 4 |

Student Name: ████████ Wi████    Managing School: Marshall EC

Student ID Number: 9065608   DOB: ███ 95   Attending School: Marshall EC

Goal Number: [ ]

| VIII SPECIALIZED SERVICES | Additional Comments: ☐ |
|---|---|

Area addressed by goal: **Academics (Mathematics)**

**ANNUAL GOAL:** (including mastery criteria.)

████████ Wilkins will demonstrate growth in the area of mathematics by mastering the short-term objectives with 80% accuracy.

Provider(s): General and Special Education Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| A████████ will add three digits to one digit number with regrouping. | | Monthly |
| -Recite multiplication facts to 81. | | Monthly |
| -Solve word problems involving addition and subtraction | | Monthly |
| -Identify geometrical shapes | | Monthly |
| -Desmond will multiply two digits by one digit without regrouping. | | Monthly |
| -Student will tell time to the nearest minute. | | Monthly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio   ☐ Log   ☐ Chart   ☑ Test   ☑ Documented Observation   ☐ Report   ☐ Other _____

| | |
|---|---|
| Student Name: ████ Wi████ | Managing School: Marshall EC |
| | Attending School: Marshall EC |
| Student ID Number: 9065608   DOB: ████ 75 | DCPS - IEP  Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**   Additional Comments: ☐   Goal Number: ☐

Area addressed by goal: __Academics (Reading)__

**ANNUAL GOAL: (including mastery criteria.)**

████ will demonstrate growth in the academic area of reading as measured by formal and informal assessment.

Provider(s): Regular and Special Education Teacher.

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| - Desmond will read words from a basic word list at 70% accuracy. | | Monthly |
| - Given opportunities for practice and cues, desmond will label objects, people, events, things and actions at 80% accuracy | | Monthly |
| - Recall the main idea from a reading selection in 4 out of 5 attempts. | | Monthly |
| - Following reading selections orally presented to Desmond, he will recall details at 80% accuracy. | | Monthly |
| - Given opportunities for practice and cue card, he will sequence the events of a reading selection at 80% accuracy. | | Monthly |
| - Desmond will write sentences using correct capitalization and punctuation in 4 out of 5 attempts | | Monthly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☒ Documented Observation  ☐ Report  ☐ Other

| Student Name D___ W___ | Managing School Marshall EC | DCPS - IEP Page 3 of 4 |
|---|---|---|
| Student ID Number 9D656D58 DOB ___.95 | Attending School Marshall EC | |

**WILL SPECIALIZED SERVICES** Additional Comments: ☐

Goal Number: ☐

Area addressed by goal: **Communication**

**ANNUAL GOAL: (including mastery criteria.)**

D___ will demonstrate growth in the areas of receptive & expressive language skills by mastery of the short term objectives below.

Provider(s): Speech Pathologist

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| ① D___ will sequence 4 part stories when given visual cues with 80% accuracy. | | monthly |
| ② D___ will accurately answer 'wh' questions from verbally presented information w/ 80% accuracy. | | monthly |
| ③ D___ will recall relevant details (main idea) from short stories w/ 80% accuracy. | | monthly |
| ④ D___ will verbally define target vocabulary words with 80% accuracy | | monthly |
| | | |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

☐ Portfolio ☐ Log ☐ Chart ☐ Test ☐ Documented Observation ☐ Report ☐ Other _____

411

| Student Name | ~~[redacted]~~ | | Managing School | Marshall | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | 94056008 | DOB ~~[redacted]~~ 95 | Attending School | Marshall | Page 4 of 4 |

Additional Comments: ☐

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in general education? ☐ Yes ☑ No

Explanation for removal out of regular education classroom.

Structured environment

## X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | SETTING GenEd | SETTING SpEd | SETTING Total | FREQUENCY Hr./ Min | FREQUENCY D/W/M. | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing:   ☐ None needed

Timing/Scheduling: Extended
Setting: small group
Presentation:
Response:
Equipment:

## XI. STATE AND DISTRICT ASSESSMENTS:

☐ Level I  Tested with non-disabled peers under standard conditions without accommodations.

☑ Level III (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations

☐ Level V  Portfolio:

☐ Level II  (Describe accommodations for level II) Tested under standard conditions with special accommodations.

☐ Level IV  (Describe the alternative assessment)

## XII. Areas Requiring Specialized Instruction and Related Services:

☑ Reading          ☐ Physical/Sensory      ☐ Transition
☑ Mathematics      ☐ Social Emotional      ☐ Vocational
☐ Written Expression ☐ Physical Development  ☐ Independent Living
☐ Other:                                   ☑ Speech/Language
☐ None   Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

### Modifications:
☐ Language Arts/English
☐ Social Sciences
☐ Biological & Physical Sciences
☐ Fine Arts

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| Out of Gen Ed | Rejected | |
| General Ed | Rejected | |
| Combination Sped/Gen | Accepted | time away from non-disabled peers |

Modification(s)/Accommodation(s) to address the harmful effects:

Student will participate in school wide activities

District of Columbia Public Schools   07-02-2001   Division of Special Education   Appendix - A   IEP Page 4 of 4

412

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION

MULTIDISCIPLINARY TEAM (MDT)

**Prior to Action Notice**

Check Purpose:
- ☐ Initial Evaluation
- ☐ Initial Placement
- ☒ Reevaluation
  - ☐ Change in Category Exit
  - ☐ Related Service Add
  - ☐ Related Service
  - ☐ Change in Placement
  - ☒ Annual
  - ☐ Other _____

Date **5-25-2005**

Student **De___ W. ____**          DOB **__-95**

School **Marshall**

Current Disability Category **Other Health Impaired**

Setting **Combination SpEd / General Ed**

Dear **Ms. Wilkins**

State and federal laws regarding students with disabilities require school systems to notify and inform parents of certain changes being made to their children's education program.

Therefore, you are being notified of the following proposed changes:
- ☒ Proposes to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
- ☐ Refuses to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
- ☐ Other _____

A multidisciplinary team (MDT), of which you were an invited member, has made the following decisions about your child: (check all that apply)
- ☐ Your child is not eligible for special education service(s).
- ☒ Your child is eligible or continues to be eligible to receive special education services as a student with **OHI**
- ☐ Your child will begin receiving _____ as a related service(s).
- ☐ Your child will no longer receive _____ as a related service(s).
- ☐ Your child's category of disability is being changed from _____ to _____
- ☐ Your child's alternative placement on continuum (next setting) is being changed, from _____ to _____
- ☐ Your child is no longer eligible and will be exited from the special education program.
- ☐ Other: _____

Location of Services **Marshall EC**

**Description and Explanation of agency action proposed or refused.**

Out of general ed — rejected
general ed — rejected

**Description of Other Options Considered and reasons for rejection of each option**

Combination setting was accepted because
student can be successful in this setting

Other relevant factors to the decision-

MDT Members:
- ☒ Principal or Designee
- ☒ Parent *by phone*
- ☐ Student
- ☐ Social Worker
- ☒ General Education Teacher
- ☒ Special Education Teacher
- ☒ Speech and Language
- ☐ *LEA & Interpreter (*may be one)
- ☐ Psychologist
- ☐ Other: _____

Parents may bring individuals to participate in the MDT meeting. These participants should have knowledge or special expertise regarding the child. The following individuals invited by parent:

Any questions you may have concerning your child's program may be directed to the principal.

You are protected under the Procedural Safeguards for parents, which are enclosed for your information.

If I can be of assistance to you, or have questions regarding the Procedural Safeguards, please contact **Tiffany Baker** at **516-6900** (school telephone number)

See attachments for - EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

413

MDT Prior to Action Notice



DIS...CT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION
MULTIDISCIPLINARY TEAM
(MDT)

Student D_____ (W)_____ DOB ____ 95 Age 8 Grade 3 ID 9065608

You have the right to challenge the recommendations by requesting Mediation or a Due Process Hearing before an impartial hearing officer. To initiate a mediation or hearing, you will need to complete a REQUEST FOR MEDIATION or DUE PROCESS HEARING form and mail it to the address listed below:

Student Hearing Office
D.C. Public Schools
825 North Capitol Street. N.E. 8th floor
202-442-5432

You have the right to be represented at the hearing by legal counsel.
A copy of Parent's Procedural Safeguards handbook is provided.
A list of free or low cost legal service, for which you may qualify depending on your income, is included.
If you would like an additional copy, please contact the principal

EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

☐ Wechsler Intelligence Scale for Children-III (WISC III) - commonly employed individually administered test designed to measure the intelligence of individuals aged 6 1/2 to 16 1/2 years. Date of Report _____

☐ Wechsler Preschool and Primary Scale of Intelligence-Revised (WPPSI-R) - measures specific mental abilities and processes in ages 4 1/2 to 6 1/2 years. Date of Report _____

☐ Wechsler Adult Intelligence Scale-III (WIAS III) - an individually administered test designed to measure the intelligence of individuals ages 16 and over. Date of Report _____

☐ Bayley Scales of Infant Development-II - an individually administered instrument that measures motor, mental and social development in infants and children from 1 month to 42 months of age. Date of Report _____

☑ Wechsler Individual Achievement Test (WIAT) - a commonly used individually administered instrument designed to assess the educational achievement of children and adolescents in areas of basic reading, mathematics reasoning, spelling, reading comprehension, numerical operations, listening comprehension, oral expression, and written expression. Date of Report _____

☐ Peabody Individual Achievement Test-Revised (PIAT-R) - an individually administered test measuring achievement in areas of general information, reading recognition, reading comprehension, spelling, written expression, and mathematics. Date of Report _____

☐ Kaufman Test of Educational Achievement (KTEA) - an individually administered instrument measuring achievement skills in reading, decoding, mathematics applications, spelling, reading comprehension, and mathematics computation. Date of Report _____

☐ Woodcock-Johnson Psycho-Educational Battery - a diagnostic and evaluation instrument composed of twenty-seven tests divided into three major parts: tests of cognitive ability, tests of achievement, and tests of interests. Date of Report _____

☐ Bender Visual Motor Gestalt Test - measures perceptual motor skills to determine visual-motor gestalt functioning and neurological soft-signs in ages 4 to 12 years using the Koppitz Scoring System. Date of Report _____

☐ Developmental Test of Visual Motor Integration (VMI) - assesses visual perception and motor coordination in ages 3 years and up using a more structured booklet format. Date of Report _____

☐ Children's Apperception Test - a projective story-telling technique for personality evaluation in ages 5 to 10 years. Date of Report _____

☐ Thematic Apperception Test - a projective story-telling technique for personality evaluation in older children and adolescents. Date of Report _____

☐ House-Tree-Person - a projective drawing technique providing insight into personality structure, physical concerns, and social-emotional adjustment in children and adolescents. Date of Report _____

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## SPECIAL EDUCATION
## MULTIDISCIPLINARY TEAM
### (MDT)

Student D▒▒▒ W▒▒▒▒▒▒▒   DOB ▒▒▒▒ Age 8 Grade 3 ID 9065608

- ☐ **Kinetic Family Drawing** - a projective drawing technique measuring one's perception of her family and her role within the family
  Date of Report

- ☐ **Rorschach Psychodiagnostic Test** - a projective measure in which one's responses to inkblots reveal personality structure, ego strengths and reality testing in ages 3 and older. Date of Report

- ☐ **Goodenough-Harris Drawing Test** - a projective drawing procedure measuring intellectual perceptual-motor maturity and personality through the use of drawings of self and a member of the opposite sex in ages 3 to 15.11 years. Date of Report

- ☐ **Conner's Parent and Teacher Rating Scales** - a paper-and-pencil instrument measuring problem behaviors of children and adolescents as reported by the child's teacher, parents, or alternate care-giver. Date of Report

- ☐ **The Vineland Adaptive Behavior Scales** - assesses adaptive and social competency skills. Date of Report

- ☐ **Test of Language Development Primary - Revised (TOLD-P)** - measures primary language proficiency and specific strengths and weaknesses in language skills. Date of Report

- ☐ **Kaufman Assessment Battery for Children** - assesses the ability to solve problems using simultaneous and sequential metal processes in four global areas : Sequential Processing, Simultaneous Processing, Mental Processing, and Achievement. Date of Report

- ☐ **Preschool Language Scale** - measures auditory comprehension and verbal ability skills. Date of Report

- ☐ **Oral Peripheral Speech Examination** - a procedure to determine whether the examinee can appropriately use the lips, tongue, mouth, etc.
  Date of Report

- ☐ **Clinical Evaluation of Language Fundamentals - III** - assesses the child's language functioning including processing and production.
  Date of Report

- ☐ **Expressive One Word Picture Vocabulary Test** - assesses the child's single word expressive vocabulary. Date of Report

- ☐ **Receptive One Word Picture Vocabulary Test** - assesses the child's single word receptive vocabulary. Date of Report

- ☐ **Goldman-Fristoe Test of Articulation** - assesses the production of consonants in simple and complex contexts. Date of Report

- ☐ **Peabody Picture Vocabulary Test-Revised** - individually administered, multiple choice test measuring nonverbal, receptive vocabulary.
  Date of Report

- ☐ **Fisher-Logemann Test of Articulation Competence** - assesses articulation proficiency with single sounds, consonant blends, and vowel production.
  Date of Report

- ☑ **Classroom Observation** - assesses present functioning of the student within the classroom environment.

## Free or Low Cost Legal Services

Neighborhood Legal Services
701 4th Street, N.E.
Washington, D.C. 20001
202-682-2700 (NW)
202-682-2732 (NE)
Fax 202-682-0588

Neighborhood Legal Services
1213 Good Hope Road, S.E.
Washington, D.C. 20020
202-678-2000
Fax 202-889-3374

University Legal Services
300 I Street, N.E.
Washington, D.C. 20002
202-547-0198
Fax 202-547-2662

The Children's Law Center Inc.
1050 Connecticut Avenue, N.W.
Suite 1200 Washington Square
Washington, D.C. 20036-5317
202-467-4900
Fax 202-467-4949

National Coalition for Students with Disabilities
10560 Main Street, Suite 417
Fairfax, VA 22030
703-267-6588
(fax) 703-267-6992

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

INDIVIDUALIZED EDUCATION PROGRAM
(IEP)
MEETING NOTES

STUDENT �â–ˆ▮▮▮ ▮▮ SCHOOL Marshall DATE: 5/25/05

PARTICIPANTS:                PARTICIPANTS: (Sign Name)                DISCIPLINE

Carrie Wilkens              Via telephone              Parent
Tiffany Scott               Tiffany J Scott            Sp Ed Coordinator
Jennifer Williams           Jennifer Williams          Speech Pathologist
Dorcas Whitaker             Dorcas Whitaker            General Ed Teacher
Ola. Arenus                 Ola Arenus                 Special Ed. Teacher-

The meeting was convened to discuss the annual review of De▮▮▮ d W▮▮▮▮
The members of the MDT introduced themselves to the parent and the
Parent participated via telephone.

Parent - T▮▮▮▮▮ d has been doing good at home. He's reading
has been improving. He's always been good in Math. His
health hasn't been that great and hopefully he can return to
school on Monday. De▮▮▮▮ is real hyper and he's on medication
for ADHD. (Concerta). It seems like his health isn't getting better.

General Ed Teacher - D▮▮▮▮▮ is not comfortable in the classroom
because he's so far behind. It is difficult bringing him up to
standard. One-on-One he works well, but not independantly. He has
the potential to learn but he misses so many days from school. He
fights sometimes in class. He catches on quietly but he needs one-on-one
assistance. He was starting to improve at the beginning of the year, but since

District of Columbia Public Schools
Division of Special Education
Washington, D.C.

IEP Continuation Page

## IEP CONTINUATION PAGE

Student Name D_____ Wi_____     DOB __/__/05   DATE 5/25/05

Student ID Number 9065608    Managing School Marshall

Attending School Marshall

**INSTRUCTIONS:** Use this addendum when additional space is needed on an IEP section or part. Enter the *section/part, page number or addendum to identify each item being continued. Attach this addendum to the form.

Page 4 of 4 or Addendum _____

all the absences he's falling behind. He use to not have many behavior problems but now he does, maybe because he's frustrated from being so far behind.

Speech Pathologist — Its hard to say he's made progress because he's been absent so often. when he's here he works well with his peers and he asks questions It is unfortunate that he's been absent so much because he has so many gaps.

Conclusion — D_____ continues to be eligible for special education as a child with Other Health Impairments. He will continue to receive Specialized Instruction for 18 hours a week and Speech & Language Therapy for 1 hour a week.

Recommendations
The General Ed teacher will develop a packet of work for Desmond to complete.

417

# FAX TRANSMISSION COVER SHEET
**Dalton, Dalton & Houston P.C.**
**Attorneys at Law**
**1008 Pendleton Street**
**Alexandria, Virginia 22314-1837**
**(703) 739-4300**
**FAX (703) 739-2323**

**DATE:**  March 16, 2006

**TO:**  Sharon Newsome
        DCPS/Student Hearing Office

**TO FAX:**  (202) 442-5556

**FROM:**  Talib Abdus-Shahid, Esq.

**RE:**  **5-Day Disclosure:**  De___d W___ OB ___95

*Part I DW01-10*

NUMBER OF PAGES INCLUDING THIS PAGE
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLEASE DELIVER ASAP.**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND ATTORNEY WORK PRODUCT DOCTRINE.

IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

418

**FAX TRANSMISSION COVER SHEET**
Dalton, Dalton & Houston P.C.
**Attorneys at Law**
1008 Pendleton Street
Alexandria, Virginia 22314-1837
(703) 739-4300
FAX (703) 739-2323

DATE:        March 16, 2006

TO:          Sharon Newsome
             DCPS/Student Hearing Office

TO FAX:      (202) 442-5556

FROM:        Talib Abdus-Shahid, Esq.

RE:          **5-Day Disclosure:**       De█████ Wi███ DOB █████ 95

*Part # DW11-19*

NUMBER OF PAGES INCLUDING THIS PAGE
**************************************************************************

**PLEASE DELIVER ASAP.**
**************************************************************************

THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.

IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECI-
PIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS
STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION
IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND
RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS.
**************************************************************************

Law Offices
## DALTON, DALTON & HOUSTON, P.C.

1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703)-739-4300
Facsimile: (703)-739-2323
E-MAIL: DCSPEDLAW@AOL.COM

Paul S. Dalton* +
Ellen Douglass Dalton*+
William E. Houston^+°
Talib Abdus Shahid^+
Laura E. Duos~+
Jessica M. Smith*

* ADMITTED IN VA & W.VA
+ADMITTED IN D.C.
^ADMITTED IN PA.
~ADMITTED IN MD.
* ADMITTED TO THE U.S. SUPREME COURT

Washington DC. Office:
601 Pennsylvania Avenue, N.W.
South Building, Suite 900
Washington, DC 20004
Telephone: (202)-393-0060
Facsimile: (202)-393-1555

## FIVE DAY DISCLOSURE
May 15, 2006

District of Columbia Public Schools
Office of General Counsel 9th Floor
Attn: Tiffany Puckett, Esq.
825 North Capitol Street, N.E.
Washington, DC 20002

**VIA FAX: 202-442-5098 / 5097**

RE: D███ W███, DOB: ███95

Dear Ms. Puckett:

A Due Process Hearing has been scheduled for D███ W███ on May 22, 2006 at 9:00 AM. Pursuant to 34 C.F.R. 300.509(b)(1), the purpose of this letter is to provide you with the following list of witnesses and documents we may rely on in the hearing.

### WITNESSES:

1. Ms. Carrie Wilkins, Mother

Some or all of the above witnesses may testify by phone or may use a designee.

### DOCUMENTS FOR 5 DAY

| | | |
|---|---|---|
| DW-01 | Complaint Disposition Notice | 5/02/06 |
| DW-02 | Letter from Doctor | 2/10/06 |
| DW-03 | Hearing Notice | 4/26/06 |
| DW-04 | Due Process Complaint Notice | 1/26/06 |
| DW-05 | Hearing Officer's Determination | 7/22/05 |
| DW-06 | IEP & Meeting Notes | 5/25/05 |

¥ Admitted only in Virginia. Practicing in D.C. pursuant to Rule 49(c)(8): Supervision by Ellen Douglass Dalton and Paul S. Dalton, Members of the D.C. Bar.

420

| | | |
|---|---|---|
| DW-07 | Prescriptions from DC Chartered Health | 8/17/04 |
| DW-08 | Social Work Re-evaluation | 6/21/04 |
| DW-09 | DCPS Medical Review of Records | 10/05/03 |
| DW-10 | Psycho-educational Report | 8/07/03 |
| DW-11 | Letter to DCPS from Doctor | 6/05/03 |
| DW-12 | DCPS's Physician's Certificate of pupil's inability to attend school | 4/25/03 |
| DW-13 | Speech and Language Evaluation | 4/14/03 |
| DW-14 | Letter to DCPS from Doctor | 8/19/02 |
| DW-15 | Resolution Mtg Conf | |
| DW-16 | Resolution Mtg | |

* We reserve the right to examine any witnesses disclosed by DCPS as if they were witness es for our client and rely on any documents disclosed by DCPS as if they were our documents.

* We object to any documents identified by DCPS in their 5 Day Disclosure if copies are not physically produced with the 5 Day Disclosure letter.

## STATUTORY & CASE LAW AUTHORITY

We are relying on all applicable Federal and Local Statutes and all applicable Federal and Local Case Law. Including but not limited to the following:

--the Civil Right Act of 1871, 42 U.S.C. Sections 1983 and 1985;

--the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. Sections 1400 et. seq;

--the Rehabilitation Act ("Section 504"), 29 U.S.C. Sections 701 et.seq;

--the Fifth Amendment to the Constitution of the United States; and

--5 D.C. Mun. Regs. Section 3000.1-3099 (1991).

Mills v. District of Columbia, 348 F. Supp. 866 (D.D.C. 1972).

Board of Education v. Rowley, 458 U.S. 176 (1982).

McKenzie v. District of Columbia, 602 F.Supp. 632 (1983)

Edwards-White v. District of Columbia, 785 F.Supp. 1022 (D.D.C. 1992).

Kroot v. District of Columbia, 800 F.Supp. 976 (D.D.C. 1992).

Florence County School District v. Carter,114 S. Ct. 361 (1993).

Fisher v. District of Columbia, 828 F.Supp. 87 (D.D.C. 1993).

Lyons by Alexander v. Smith, 829 F.Supp. 414 (D.D.C. 1993).

Jessica M. Smith, Esq.
Counsel for the Parent

cc: Student Hearing Office

2

421

*State Education Agency for the District of Columbia*
*State Enforcement and Investigation Division (SEID)*
*Special Education Programs*



# Due Process Complaint Disposition

- This form should be used by the parties to notify the Student Hearing Office about important information concerning the outcome of the resolution meeting.
- Please return to the Student Hearing Office of the District of Columbia Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, DC 20002, Fax number 202/442-5556.

## STUDENT AND CASE INFORMATION:

Student Name: De████ W████          Birth Date: ████-95
First          MI          Last

SHO Case Number: _____ (if applicable)

## PARENT / GUARDIAN:

Name: Carrie Wilkins
First          Last

Complete Address: 2909 South Dakota Ave, NE
Washington, DC   20018

Phone: 2/269-0228
Home          Work or alternative phone no.          Fax No. if applicable

## LOCAL EDUCATION AGENCY REPRESENTATIVE:

Tiffany Batson                    Sp Ed Coordinator
Full Name                          Title

Address  Marshall EC
3100 Ft. Lincoln Dr, NE
Washington DC, 20018

Phone: 576-6900        576-7932
Office          Fax

1

SEID DRN Rev'd. 6/14/05                    DW-01  422

_____ The complaint has been resolved and the parties have reached agreement to the satisfaction of the parent / guardian. The due process complaint notice and the request for a due process hearing should be dismissed and withdrawn. The parties are aware that the agreement may be voided by any party within 3 business days of the date the agreement is signed. The parties have agreed to wait at least 3 business days before filing this form with the Student Hearing Office.

✓ The resolution session was unsuccessful. The case should proceed to a due process hearing.

_____ The resolution session was unsuccessful. The parties have agreed to try mediation.

_____ The parties mutually agree to waive the resolution session and request mediation and the assignment of a mediator to this case.

_____ The parties mutually agree to waive the resolution session and request that this case proceed to a due process hearing on the merits.

_____ The parent has failed to participate in a resolution meeting as required under the law. A due process hearing should not be scheduled until further notice

## J.  Signature and Affirmation:

I affirm that the information provided on this form is true and correct. I also affirm my receipt of the Procedural Safeguards Manual or I have waived my right to receive the Procedural Safeguards Manual.

_Carrie W. Ik_                    5-2-06
Signature of Parent/Guardian              Date

_Tiffany Batson_  5-2-06
Local Educational Agency Representative      Date

Mail, fax or deliver this form to:
State Enforcement and Investigation Division
For Special Education Programs (SEID)
Student Hearing Office (SHO)
825 North Capitol Street, NE, 8th Floor
Washington, DC 20002
Fax number: 202/442-5556

2

423

NICOLAS SMILEVSKY MD

4605 - MARTIN LUTHER KING AVE. SW
WASHINGTON, DC 20032

562
202.652.6011

2-10-06

To whom it may concern

This is to inform you that Dr. ██████ ██████
has Chronic medical condition Reporting illness and
asthma and has impact on his school attendance
His Dermatoses by history keeps him away from
school. Please provide this patient with the
needed tutors

202 562-6011

04/25/2005   13:20    20244425    STUDENT HEARING. JFF    PAGE  01/01

# District of Columbia Public Schools
## *State Enforcement & Investigation Division*
### STUDENT HEARING OFFICE

825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX:  (202) 442-5556



X REVISED COPY

## HEARING NOTICE

MEMORANDUM VIA: [✔] FACSIMILE [ ] MAIL [ ] HAND DELIVERY

TO:    Parent (or Representative): _T. ABDUS-SHAHID_    Fax No.: _(703) 739-2323_

LEA Legal Counsel: _T. PUCKETT_

RE:    W_____S, DE_____    and (LEA) DOB: _____
             Student's Name

FROM:    SHARON NEWSOME
             Special Education Student Hearing Office Coordinator

.TE SENT: _4/26/06_

∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙∙

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on _____. Please be advised that the hearing has been scheduled for:

DATE:    _5/22/06_

TIME:    _9:00 AM_              Con't f
                                        4/24/06

AT:    825 North Capitol Street, NE, Washington, DC
         8th Floor

ASSIGNED HEARING OFFICER: _____

[✔] THIS IS A FINAL NOTICE OF HEARING: If you wish to request a continuance of this hearing, you must submit your request in writing on the attached form to the Special Education Student Hearing Office at the above address, or by fax at 202 442-5556. All decisions regarding continuances are made *exclusively* by the Hearing Officer, and cannot be made by SHO administrative staff. Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled above.

[ ]  THIS IS A PROVISIONAL NOTICE OF HEARING: The SHO was unable to accommodate any of your proposed dates. If you are unavailable for the above date, you must inform the SHO in writing (letter or fax) that the date is unavailable and specify times during the next four business days when you are either available or unavailable for a teleconference with the Hearing Officer. If the SHO does not receive a response from you within three business days of your receiving this provisional notice, the notice becomes a final notice of hearing that may be modified with only a request for a continuance.

Failure to appear for a properly scheduled hearing may result in dismissal of the case or a default judgment against you.  Disclosure of evidence and witnesses to the opposing party is required at least five business days prior to the hearing with copies to the Special Education Student Hearing Office.

425

DW_03

State Education Agency for the District of Columbia
State Enforcement and Investigation Division (SEID)
Special Education Programs



# Due Process Complaint Notice

- This form is used to give notice of a complaint to the District of Columbia Public Schools, District of Columbia Public Charter School (DCPS or LEA) an/or parents with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a Free appropriate public education to that child. <u>A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEIA).</u>

- The complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office of the District of Columbia Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, D.C. 20002; fax number 202/442-5556.

- <u>Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice.</u> Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting (called a "Resolution Session") with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. <u>The Student Hearing Office does NOT schedule resolution meetings.</u>

- Mediation is also available to all parties as an alternative to a resolution meeting of a Due Process Hearing.

A.    <u>INFORMATION ABOUT THE STUDENT:</u>

DW-04

426

Student Name: DE█████ WIL████    Birth Date: ██/95
_____

Address: 2909 S. Dakota Avenue, N.E.  Washington, D.C. 20018

Present School of Attendance:    Marshall Education Center

Is this a charter school?    NO    (If yes, you must provide a copy of this notice to the charter school principal or director)

Parent/Guardian of the Student:    CARRIE WILKINS

Address (If different from the student's above):    n/a

Phone/Contact Number:    (703) 739-4300    Fax Number (if applicable):    (703) 739-2323

**B.    Individual Making the Complaint/Request for Due Process Hearing:**

Name:    CARRIE WILKINS

Complete Address:    2909 S. Dakota Avenue, N.E.  Washington, D.C. 20018

Phone: (h)    (w)    (Fax)    (e-mail)

Relationship to Student:

[X] Parent    [ ] Legal Guardian    [ ] Parent Surrogate
[ ] Self/Student    [ ] Local Education Agency (LEA)    [ ] Parent Advocate

**C.    Local Representative:**

Name:  Talib Abdus-Shahid, Esq., Dalton, Dalton & Houston, P.C.

Address:  1008 Pendleton Street
Alexandria, VA 22314-1837

427

Phone: (h)        (w)   (703) 739-4300    (Fax)           (e-mail)

Will attorney / legal representative attend the resolution session?    X☐   Yes    ☐   No

D.     <u>Complaint Made Against (check all that apply):</u>

X☐   DCPS school (Complaint is against DCPS as the SEA).

☐    Charter school (name of school if different from page one)

☐    Non-public school or residential treatment facility (name)

☐    Parent

E.     <u>Resolution Session Meeting Between Parent and LEA:</u>
I understand that it is my right to have a resolution meeting to receive this complaint. I also understand that I may voluntarily waive this right if I choose. (Note: all Parties must agree to waive the resolution meeting to avoid having this meeting).

☐ X   I wish to waive the Resolution Session Meeting

F.     <u>Mediation Process:</u>

IDEIA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent. Both parties can request mediation as an alternative to the Resolution Session Meeting or as an alternative to a Due Process Hearing. Please check all that apply:

☐    I am requesting mediation as an alternative to the resolution session meeting.

☐ X   I am requesting mediation and a due process hearing.

☐    I am requesting mediation <u>only</u> at this time.

G.     <u>Facts and Reasons for the Complaint:</u>

In accordance with the Individuals with Disabilities Education Improvement Act (IDEIA), please complete the following questions (attach additional pages if needed):

1.     What is the nature of the problem, including the facts related to the problem, that will need to be addressed at a Resolution Session meeting, a Mediation Conference, and/or a Due Process Hearing?

    D█████d W█████ currently attends Marshall Education Center in the District of Columbia. His current 2004 IEP identifies him as an Other Health Impaired (OHI) special education student. On July 22, 2005, a Hearing Officer's Determination (HOD) issued. The HOD ordered DCPS to convene a MDT/IEP meeting to review all evaluations, medical documents, revise the IEP if necessary, discuss and determine placement and compensatory education, if warranted. All meetings were to be scheduled through Parent's counsel.

    To date, DCPS has not scheduled the MDT/IEP meeting. Therefore, the <u>IEP is out of date and has never been revised</u> and re-programmed in order to include the additional disabilities of SLI and Broncial Asthma. In addition, DCPS has failed to provide <u>one-on-one tutoring services</u>, as well as speech/language therapy services.

428

An award of compensatory education is warranted in this case, because DCPS has not provided a current IEP for the 2004-2005 and 2005-2006 school years, and has failed to provide speech therapy services for the 2005-2006 school year. Finally, five months have passed without DCPS convening the IEP meeting, and in all this time, D██████'s new IEP could have been developed.

The Parent contends that:

1) DCPS denied D██████ FAPE by violating the terms of the July 22, 2005 HOD:

   a) DCPS denied De████ FAPE by failing to properly notify and schedule with Parent's counsel, the date, time and place of the MDT/ IEP meeting.

   b) DCPS denied Da████ FAPE by failing to convene the MDT/IEP meeting.

2) DCPS denied De████ FAPE by failing to develop an appropriate, annual IEP for the 2005-2006 school year.

3) DCPS denied De████ FAPE by failing to develop current IEP's for the 2004-2005 and 2005-2006 school years.

4) DCPS denied De████ FAPE by failing to provide speech/language therapy services. *where these terms of HOD or IEP*

5) DCPS denied D██████ FAPE by failing to provide one-on-one tutoring services.

   Based on the above, D██████ is not and has not been receiving a Free Appropriate Public Education.

2.   To the extent known to you at this time, how can this problem be resolved?
     Parent requests the following relief:    We are seeking,

   a.  Declaratory relief for denial of FAPE, denial of Due Process and for discrimination based solely upon our client's disability by DCPS.

   b.  A determination that DCPS denied De████ FAPE by violating the terms of the July 22, 2005 HOD:

      i.  A determination that DCPS denied D██████ APE by failing to properly notify and schedule with Parent's counsel, the date, time and place of the MDT/ IEP meeting.

      ii) A determination that DCPS denied D██████ APE by failing to convene the MDT/IEP meeting.

   c.  A determination that DCPS denied De████ FAPE by failing to develop an appropriate, annual IEP for the 2005-2006 school year.

   d.  A determination that DCPS denied D██████ FAPE by failing to develop current IEP's for the 2004-2005 and 2005-2006 school years.

   e.  A determination that DCPS denied De████ FAPE by failing to provide speech/language therapy services.

   f.  A determination that DCPS denied De████ FAPE by failing to provide one-on-one tutoring services.

429

DCPS

j. A determination that HRAPCS be required to reconvene the IEP meeting within five (5) business days of the issuance of this determination in order to develop an appropriate IEP to meet De▮▮▮▮'s individual needs, to re-program De▮▮▮▮'s IEP to include the additional disability of SLI, and to include Brochial Asthma within De▮▮▮▮'s disability of OHI, to review and discuss any and all evaluations, and any to determine an appropriate placement, and to discuss and develop the implementation of the compensatory education awarded by the Hearing Officer.

k. A determination that Desmond be awarded an amount of compensatory education for the period of time DCPS violated the terms of the HOD, including the time he was denied speech/language therapy services and denied the benefit of his revised IEP's.

l. A determination that DCPS be required to afford the Parent an opportunity to participate in any meeting in which placement is discussed or determined. The DCPS placement representative shall advise the Parent of the advantages and disadvantages for D▮▮▮▮ with respect to each school that is discussed, including any schools proposed by the Parent. DCPS shall further provide the Parent an explanation for the placement DCPS proposes, and the reasons for the proposal shall be provided in the meeting notes. DCPS shall issue a Notice of Placement within 5 business days, if to a public placement, and thirty calendar days if to a non-public placement.

m. A determination that all meetings be scheduled at a mutually convenient time through Parent's counsel.

n. Lastly, we are seeking any other relief that the Hearing Officer deems appropriate.

H.    <u>Accommodations and Assistance Needed</u>:

Please list any special accommodations you may require for a Resolution Session Meeting / Mediation Conference / Due Process Hearing:   NONE

☐   Interpreter (please specify the type)
☐   Special Communication (please describe the type)
☐   Special Accommodation for Disability (please be specific)
☐   Other

I.    <u>Waiver of Procedural Safeguards</u>:

☐   I (parent/guardian) waive receiving a copy of the procedural safeguards at this time.

430

J.    <u>Signature and Affirmation</u>:

I affirm that the information provided on this form is true and correct.

_____

Signature of Parent or Guardian

_____  1/2/06

Legal Representative Advocate (if applicable)    Date

Mail, fax or deliver this complaint notice to:
State Enforcement and Investigation Division
For Special Education Programs (SEID)
Student Hearing Office (SHO)
825 North Capitol Street, NE, 8th Floor
Washington, DC 20002
Fax number: 202/442-5556

431

FAX TRANSMISSION COVER SHEET
Dalton, Dalton & Houston P.C.
Attorneys at Law
1008 Pendleton Street
Alexandria, Virginia 22314-1837
(703) 739-4300
FAX (703) 739-2323

DATE:       January 26, 2006

TO:         Sharon Newsome
            DCPS/Student Hearing Office

TO FAX:     (202) 442-5556

FROM:       Talib Abdus-Shahid, Esq.

RE:         Due Process Hearing Complaint: D█████ W█████ (DOB ████95)

NUMBER OF PAGES INCLUDING THIS PAGE   7
************************************************************************
**PLEASE DELIVER ASAP.**
************************************************************************
THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.

IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECI-
PIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS
STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION
IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND
RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS.
************************************************************************

P. 1

* * * Transmission Result Report(MemoryTX) ( Jan.28. 2006  4:07PM) * * *

1) Dalton, Dalton.& Houston
2)

Date/Time: Jan.28. 2006  4:08PM

| File No. Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|
| 8461 Memory TX | 2024425556 | P. 7 | OK | |

```
Reason for error
  E.1) Hang up or line fail            E.2) Busy
  E.3) No answer                       E.4) No facsimile connection
```

FAX TRANSMISSION COVER SHEET
Dalton, Dalton & Houston P.C.
Attorneys at Law
1008 Pendleton Street
Alexandria, Virginia 22314-1837
(703) 739-4300
FAX (703) 739-2323

DATE:    January 28, 2006

TO:    Sharon Newsome
DCPS/Student Hearing Office

TO FAX:    (202) 442-5556

FROM:    Talib Abdus-Shahid, Esq.

RE:    Due Process Hearing Complaint: De███ and V█████s (DOE██2/95)

NUMBER OF PAGES INCLUDING THIS PAGE  7

PLEASE DELIVER ASAP.

THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND ATTORNEY WORK PRODUCT DOCTRINE.

IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS.

433

# District of Columbia Public Schools

### Office of Management Services
Tonya M. Butler-Truesdale, Due Process Hearing Officer
825 North Capitol Street, N.E.; Room 8076
Washington, D.C. 20002
(202) 518-6867
Facsimile: (202) 442-5556

### Confidential

| | |
|---|---|
| D███████████, STUDENT ) | |
| ) | |
| Date of Birth: D█████, 1995 ) | |
| ) | |
| Petitioner, ) | Hearing Date: July 12, 2005 |
| ) | |
| v. ) | |
| ) | |
| THE DISTRICT OF COLUMBIA ) | |
| PUBLIC SCHOOLS ) | |
| ) | Held at: 825 North Capitol Street, N.E. |
| Respondent. ) | 8th Floor |
| ) | Washington, D.C. 20002 |

## HEARING OFFICER'S DECISION

| | |
|---|---|
| **Parent:** | Carrie Wilkins |
| | 2909 South Dakota Avenue, NE |
| | Washington, D.C. 20018 |
| | |
| **Counsel for Parents:** | Talib Abdus-Shahid, Esquire |
| | Dalton, Dalton & Houston |
| | 1008 Pendleton Street |
| | Alexandria, VA 22314-1837 |
| | |
| **Counsel for DCPS:** | Tiffany Puckett, Esquire |
| | Office of the General Counsel, DCPS |
| | 825 North Capitol Street, N.E. |
| | 9th Floor |
| | Washington, D.C. 20002 |

DW-05

07/22/2025  16:29    2824425        STUDENT HEARIN   OFF                    PAGE  23/25

*In the Matter of Desmond Wilkins*

## I.    JURISDICTION

The Due Process Hearing was convened and this Order is written pursuant to Public Law 105-17, the *Individuals with Disabilities Education Act of 1997 (I.D.E.A.)*, 20 U.S.C. Section 1400 et seq.; 34 C.F.R. Section et seq.; 5 D.C.M.R. Section 3000.; Section 143 of the D.C. Appropriations Act, effective October 21, 1998; and the Rules of the Board of Education of the District of Columbia.

## II.    DUE PROCESS RIGHTS

Parent's counsel waived a formal reading of the due process rights.

## III.    FIVE-DAY DISCLOSURE

Petitioner: No witnesses were present or called to testify because the parties settled and presented disclosures labeled DW 1-11 were presented.

Respondent: No witnesses were present or called to testify because the parties settled and a disclosure letter was presented.

## IV.    STATEMENT OF THE CASE

On June 8, 2005, a Due Process Hearing Request was received alleging that the District of Columbia Public Schools failed to:
1. develop an appropriate IEP in 2004;
2. properly classify Petitioner's additional disability of Speech and Language Impaired;
3. properly include bronchial asthma with Petitioner's disability classification of OHI;
4. provide one-on-one tutoring services.

## V.    FINDINGS OF FACT

In consideration of the hearing record, the Hearing Officer finds that the agreement reached on the record by the parties is in the best interest of the student and, therefore, a Hearing Determination is hereby issued incorporating the agreement as stated.    The hearing officer entered the parties Settlement on the Record as follows:

435

*In the Matter of Desmond Wilkins*

## VI.  ORDER

Upon consideration of Petitioner's request for a due process hearing, the parties' Five Day Disclosure Notices, and the representations of the parties' counsel, this 21st of June 2005, it is hereby

ORDERED, DCPS shall convene a MDT/IEP meeting to review all evaluations, medical documents, revise the IEP if necessary, discuss and determine placement and compensatory education, if warranted.

IT IS FURTHER ORDERED, that Parent's counsel shall provide relevant medical documentation at least 48 hours prior to the meeting.

IT IS FUTHER ORDERED, that all meetings will be scheduled through parent's counsel.

IT IS FUTHER ORDERED, that if Placement is to a DCPS public school, DCPS shall have five (5) calendar days to issue the prior notice of placement.  If placement is to a non-public or private school, DCPS shall have thirty (30) calendar days and if placement is to a residential facility DCPS shall have sixty (60) calendar days to issue the prior notice of placement.

IT IS FURTHER ORDERED, that any delay in meeting any of the deadlines in this Order because of Petitioner's absence or failure to respond promptly to scheduling requests, or that of Petitioner's representatives, will extend the deadlines by the number of days attributable to Petitioner or Petitioner's representatives. DCPS shall document with affidavits and proofs of service for any delays caused by Petitioner or Petitioner's representatives.

IT IS FURTHER ORDERED, that this Order is effective immediately.

### Notice of Right to Appeal Hearing Officer's Decision and Order

This is the final administrative decision in this matter. Any party aggrieved by the findings and/or decision may bring a civil action in any state court of competent

436

07/22/2025  16:29    202442        STUDENT HEARIN  OFF                    PAGE  25/25

*In the Matter of Desmond Wilkins*

jurisdiction or in a district court of the United States without regard to the amount in controversy, in accordance with 20 U.S.C. Section 1415(i)(2)(A) within thirty days of the entry of the Hearing Officer's Decision.

_____
Tonya M. Butler-Truesdale, Esquire
Hearing Officer

Date:   July 22, 2005

Issued:   _9-22-05_____

Copies to:

Talib Abdus-Shahid, Esquire
Dalton, Dalton & Houston
1008 Pendleton Street
Alexandria, VA 22314-1837


Tiffany Puckett, Esquire
Office of the General Counsel, DCPS
825 North Capitol Street, N.E.
9th Floor
Washington, D.C. 20002

437

07/22/2005  16:23    2024425    STUDENT HEARIN OFF    PAGE  01/25

District of Columbia Public Schools
*Office of Compliance*
STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
FAX: (202) 442-5556



*FACSIMILE SHEET*

Date: 7-22-05.

TO: T. Abdus-Shahid

FROM: STUDENT HEARING OFFICE

RE: NOD – D█████ W█████

TOTAL NUMBER OF PAGES, INCLUDING COVER: 5

COMMENTS:

*CONFIDENTIALITY NTOICE*: The information accompanying this facsimile is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the content of this telecopied information is strictly prohibited.

438

02/13/2005  22:41   5757932                    THURGOODMARSHAL                    PAGE 35

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.
INDIVIDUALIZED EDUCATIONAL PROGRAM

DCPS - IEP  Page 1 of 4
Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

**II. CURRENT INFORMATION**

Student Name: Last ▓▓▓  First D▓▓  MI

Date of IEP Meeting: 05/25/05
Date of Last IEP Meeting: 6/24/04

Student ID 90656608  Soc. Sec. No. ▓▓▓  Age: 8  Grade 3

Date of Most Recent Eligibility Decision: 10-16-03

Gender ☒ M ☐ F  Date of Birth ▓▓/95  Ethnic Group Black

Purpose of IEP Conference:
☐ Initial IEP    ☒ Review of IEP
☒ Requested Eval.  ☐ 3yr ReEval.

Address 950 Mississippi Ave SE # 213
House No.    Street Name    Quadran    Apartment #

Washington    DC  20032
City    State    Zip Code

☐ Non-attending

Indicate Level of Standardized Assessment  III

Attending School Marshall  Home School Marshall

☐ Elem. ☐ MidJHS ☐ SHS ☐ CWS /

Parent Carrie Wilkens

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

Address of (if different from student):  ☒ Parent ☐ Guardian ☐ Surrogate

| BEHAVIOR | TRANSPORTATION |
|---|---|
| ESY | TRANSITION |

House No.    Street Name    Quad    Apt. No.    City    State    Zip Code

Telephone: Home (622) 269-9421  Work

| III. LANGUAGE | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---|---|---|---|---|---|
| Student | English | English | English | Natv. lang | Oral |
| Parent | English | English | English | Natv. lang | Rdg./Written |
| Home | English | English | English | Natv. lang | Instrument: |
|  |  |  |  |  | Date: |

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION | |
|---|---|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hr./Min | D/W/M. | | | # | wks./mos |
| Specialized Instruction | | 18 | 18 | Hr | W | Sped Teacher | 05/24/05 | 10 | mos |
| Speech Therapy | | 1 | 1 | Hr | W | Speech Pathologist | 05/24/05 | 10 | mos |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| TOTAL | | 19 | 19 | Hours Per Week | | | | | |

| V. Disability(ies) | Other Health Impaired | Percent of time in Specialized Instruction and Related Services  ☐ 0-20% ☒ 21-60% ☐ 61-100% |
|---|---|---|
| | ☐ (Check if setting is general Ed.) | Percent of time NOT in a Regular Education Setting 58% |

## VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

Parent  Carrie Wilkens via telephone  _____

Sped Teacher  Donna Arenas  _____

Tiffany Scott  Tiffany Scott  _____
SpEd Coordinator

Speech Pathologist  Frances Williams MS CCC SLP  _____

Gen Ed Teacher  Louise Whitaker  _____

☒ I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature  Carrie Wilkens via telephone  Date 5/25/05

District of Columbia Public Schools  07-02-2001  Division of Special Education  Appendix - A  IEP Page 1 of 4

439
DW-06

| Student Name [redacted] | Managing School Marshall | DCPS - IEP |
| Student ID Number 9065608  [redacted] 95 | Attending School Marshall | Page 2 of 4 |

## VII. Present Educational Performance Levels in Areas Affected by the Disability

Additional Comments: ☐

**Academic Areas: (Evaluator)** Special Ed Teacher

Math Strengths:
Student can grasp basic mathematical operations off grade level

Impact of disability on educational performance in general education curriculum:
Students disability impairs his academic growth

Reading Strengths:
Student can sound out basic sight words

Impact of disability on educational performance in general education curriculum:
Students disability impacts his academic growth,

**Score(s) When Available**
Math Cal.  1.7
Math Rea.  _____
See goal page:
Date:  5/06/05
Rdg. Com  1.6
Rdg. Basic  1.5
Written Ex.  _____
See goal page:
Date:  5/06/05

**Communication (Speech & Language) (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**
Exp.Lang.  _____
Rec- Lang.  _____
Artic  _____
Voice  _____
Fluency  _____
Exp. Voc.  _____
Rec. Voc.  _____
See goal page:
Date:

**Motor/Health (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) /Results When Available**
_____
_____
_____
See goal page:
Date:

**Social Emotional Behavioral Areas: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**
_____
_____
_____
See goal page:
Date:

**Cognitive/Adaptive Behavior: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**
_____
_____
_____
See goal page:
Date:

**Prevocational Skills: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Score(s) When Available**
_____
_____
See goal page:
Date:

440

02/13/2005    22:41    5757932

| Student Name | D███████ W███████ | Managing School | Marshall EC | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number 9065608 | DOB ███ 95 | Attending School | Marshall EC | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**    Additional Comments: ☐    Goal Number: ☐

Area addressed by goal: Academics (Mathematics)

**ANNUAL GOAL:** (including mastery criteria.)

D██████ Wilkins will demonstrate growth in the area of mathematics by mastering the short-term objectives with 80% accuracy.

Provider(s): General and Special Education Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| D██████ will add three digits to one digit number with regrouping. | | Monthly |
| - Recite multiplication facts to 81. | | Monthly |
| - Solve word problems involving addition and Subtraction | | Monthly |
| - Identify geometrical shapes | | Monthly |
| D██████ will multiply two digits by one digit without regrouping. | | Monthly |
| - Student will tell time to the nearest minute. | | Monthly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☐ Log  ☐ Chart  ☑ Test  ☑ Documented Observation  ☐ Report  ☐ Other

441

| Student Name ▓▓▓▓▓ W ▓▓▓▓▓ | Managing School Marshall EC | DCPS - IEP |
|---|---|---|
| Student ID Number 9065608   DOB ▓▓▓▓ 75 | Attending School Marshall EC | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**   Additional Comments: ☐    Goal Number: ☐

Area addressed by goal: *Academics (Reading)*

**ANNUAL GOAL: (including mastery criteria.)**

▓▓▓▓▓ will demonstrate growth in the academic area of reading as measured by formal and informal assessment.

Provider(s): *Regular and Special Education Teacher.*

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| - ▓▓▓▓▓ will read words from a basic word list at 70% accuracy. | | Monthly |
| - Given opportunities for practice and cues, Desmond will label objects, people, events, things and actions at 80% accuracy | | Monthly |
| - Recall the main idea from a reading selection in 4 out of 5 attempts. | | Monthly |
| - Following reading selections orally presented to Desmond, he will recall details at 80% accuracy. | | Monthly |
| - Given opportunities for practice and cue card, he will sequence the events of a reading selection at 80% accuracy. | | Monthly |
| - ▓▓▓▓▓ will write sentences using correct capitalization and punctuation in 4 out of 5 attempts | | Monthly |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____

442

02/13/2006    22:41    5767932

THURGOODMARSHAL

| Student Name | ████████████ | Managing School | *Marshall EC* | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | 9DG5b08 | Attending School | *Marshall EC* | Page 3 of 4 |
| | DOB ████ | | | Goal Number: |

**VIII. SPECIALIZED SERVICES**    Additional Comments: ☐

Area addressed by goal: *Communication*

**ANNUAL GOAL:** (including mastery criteria.)

*D████ will demonstrate growth in the areas of receptive & expressive language skills by mastery of the short term objectives below.*

Provider(s): *Speech Pathologist*

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| ① D████ will sequence 4-part stories when given visual cues with 80% accuracy. | | monthly |
| ② D████ will accurately answer 'wh' questions from verbally presented information w/ 80% accuracy. | | monthly |
| ③ D████ will recall relevant details (main idea) from short stories w/ 80% accuracy. | | monthly |
| ④ D████ will verbally define target vocabulary words with 80% accuracy. | | monthly |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

☐ Portfolio  ☐ Log  ☐ Chart  ☐ Test  ☐ Documented Observation  ☐ Report  ☐ Other _____

Division of Special Education    Appendix - A    IEP Page 3 of 4

| Student Name | ████████ | Managing School | Marshall | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | 9085608 | DOB ██95 | Attending School | Marshall | Page 4 of 4 |

Additional Comments: ☐

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION
## SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in general education?  ☐ Yes  ☒ No

Explanation for removal out of regular education classroom.

Structured environment

## X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | SETTING GenEd | SETTING SpEd | SETTING Total | FREQUENCY Hr./ Min | FREQUENCY D/W/M. | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing:  ☐ None needed

Timing/Scheduling: Extended
Setting: small group
Presentation:
Response:
Equipment:

## XI. STATE AND DISTRICT ASSESSMENTS:

☐ Level I  Tested with non-disabled peers under standard conditions without accommodations.

☒ Level III  Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations.

☐ Level V  Portfolio:

☐ Level II  (Describe accommodations for level II) Tested under standard conditions with special accommodations.

☐ Level IV  (Describe the alternative assessment)

## XII. Areas Requiring Specialized Instruction and Related Services:

☒ Reading
☒ Mathematics
☒ Written Expression
☐ Other:
☐ None

☐ Physical/Sensory
☐ Social Emotional
☐ Physical Development

☐ Transition
☐ Vocational
☐ Independent Living
☒ Speech/Language

Modifications:
☐ Language Arts/English
☐ Social Sciences
☐ Biological & Physical Sciences
☐ Fine Arts

Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| Out of Gen Ed | Rejected | |
| General Ed | Rejected | |
| Combination SpEd/Gen | Accepted | Time away from non-disabled peers |

Modification(s)/Accommodation(s) to address the harmful effects:

Student will participate in school wide activities

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION

MULTIDISCIPLINARY TEAM (MDT)

Prior to Action Notice

Check Purpose:
- [ ] Initial Evaluation
- [ ] Initial Placement
- [x] Reevaluation
  - [ ] Change in Category Exit
  - [ ] Related Service Add
  - [ ] Related Service
  - [ ] Change in Placement
  - [x] Annual
  - [ ] Other _____

Date  5-25-2005
Student  De____ Wi____    DOB ___95
School  Marshall
Current Disability Category  Other Health Impaired
Setting  Combination SpEd / General Ed

Dear  Ms. Wilkins

State and federal laws regarding students with disabilities require school systems to notify and inform parents of certain changes being made to their children's education program.
Therefore, you are being notified of the following proposed changes:
- [x] Proposes to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
- [ ] Refuses to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
- [ ] Other _____

**A multidisciplinary team (MDT), of which you were an invited member, has made the following decisions about your child: (check all that apply)**

- [ ] Your child is not eligible for special education service(s).
- [x] Your child is eligible or continues to be eligible to receive special education services as a student with  OHI
- [ ] Your child will begin receiving _____ as a related service(s).
- [ ] Your child will no longer receive _____ as a related service(s).
- [ ] Your child's category of disability is being changed from _____ to _____
- [ ] Your child's alternative placement on continuum (next setting) is being changed,
    from _____ to _____
- [ ] Your child is no longer eligible and will be exited from the special education program.
- [ ] Other: _____
  Location of Services  Marshall EC

**Description and Explanation of agency action proposed or refused.**

Out of general ed - rejected
general ed - rejected

**Description of Other Options Considered and reasons for rejection of each option**

Combination setting was accepted because
student can be successful in this setting

Other relevant factors to the decision-
MDT Members:
- [x] Principal or Designee
- [x] Parent via phone
- [ ] Student
- [ ] Social Worker

- [x] General Education Teacher
- [x] Special Education Teacher
- [x] Speech and Language
- [ ] *LEA & Interpreter (*may be one)

- [ ] Psychologist
- [ ] Other: _____

Parents may bring individuals to participate in the MDT meeting. These participants should have knowledge or special expertise regarding the child. The following individuals invited by parent:

Any questions you may have concerning your child's program may be directed to the principal.
You are protected under the Procedural Safeguards for parents, which are enclosed for your information.
If I can be of assistance to you, or have questions regarding the Procedural Safeguards,
please contact  T. Mary Patton  at  576-6900  (school telephone number).

See attachments for - EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

445

MDT Prior to Action Notice



DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION
MULTIDISCIPLINARY TEAM
(MDT)

Student D█████ (W█████)     DOB ██ Age 8   Grade 3   ID 9065608

* You have the right to challenge the recommendations by requesting Mediation or a Due Process Hearing before an
impartial hearing officer. To initiate a mediation or hearing, you will need to complete a REQUEST FOR MEDIATION
or DUE PROCESS HEARING form and mail it to the address listed below:

Student Hearing Office
D.C. Public Schools
825 North Capitol Street, N.E. 8th floor
202-442-5432

You have the right to be represented at the hearing by legal counsel.
A copy of Parent's Procedural Safeguards handbook is provided.
A list of free or low cost legal service, for which you may qualify depending on your income, is included.
If you would like an additional copy, please contact the principal.

EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

☐ **Wechsler Intelligence Scale for Children-III (WISC III)** - commonly employed individually administered test designed to measure the intelligence
of individuals aged 6 1/2 to 16 1/2 years. Date of Report _____

☐ **Wechsler Preschool and Primary Scale of Intelligence-Revised (WPPSI-R)** - measures specific mental abilities and processes in ages 4 1/2 to 6 1/2
years. Date of Report _____

☐ **Wechsler Adult Intelligence Scale-III (WIAS III)** - an individually administered test designed to measure the intelligence of individuals ages 16 and
over. Date of Report _____

☐ **Bayley Scales of Infant Development-II** - an individually administered instrument that measures motor, mental and social development in infants and
children from 1 month to 42 months of age. Date of Report _____

☐ **Wechsler Individual Achievement Test (WIAT)** - a commonly used individually administered instrument designed to assess the educational
achievement of children and adolescents in areas of basic reading, mathematics reasoning, spelling, reading comprehension, numerical operations,
listening comprehension, oral expression, and written expression. Date of Report _____

☐ **Peabody Individual Achievement Test-Revised (PIAT-R)** - an individually administered test measuring achievement in areas of general
information, reading recognition, reading comprehension, spelling, written expression, and mathematics. Date of Report _____

☐ **Kaufman Test of Educational Achievement (KTEA)** - an individually administered instrument measuring achievement skills in reading, decoding,
mathematics applications, spelling, reading comprehension, and mathematics computation. Date of Report _____

☐ **Woodcock-Johnson Psycho-Educational Battery** - a diagnostic and evaluation instrument composed of twenty-seven tests divided into three major
parts: tests of cognitive ability, tests of achievement, and tests of interests. Date of Report _____

☐ **Bender Visual Motor Gestalt Test** - measures perceptual motor skills to determine visual-motor gestalt functioning and neurological soft-signs in
ages 4 to 12 years using the Koppitz Scoring System. Date of Report _____

☐ **Developmental Test of Visual Motor Integration (VMI)** - assesses visual perception and motor coordination in ages 3 years and up using a more
structured booklet format. Date of Report _____

☐ **Children's Apperception Test** - a projective story-telling technique for personality evaluation in ages 5 to 10 years. Date of Report _____

☐ **Thematic Apperception Test** - a projective story-telling technique for personality evaluation in older children and adolescents.
Date of Report _____

☐ **House-Tree-Person** - a projective drawing technique providing insight into personality structure, physical concerns, and social-emotional adjustment
in children and adolescents. Date of Report _____

446

02/13/2005  22:41    5757332                         THURGOODMARSHAL                           PAGE   14

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION
MULTIDISCIPLINARY TEAM
(MDT)

Student D___ Wi_____  DOB __75 Age 8 Grade 3 ID 9065608

☐ Kinetic Family Drawing - a projective drawing technique measuring one's perception of her family and her role within the family.
   Date of Report _____

☐ Rorschach Psychodiagnostic Test - a projective measure in which one's responses to inkblots reveal personality structure, ego strengths and reality
   testing in ages 3 and older. Date of Report _____

☐ Goodenough-Harris Drawing Test - a projective drawing procedure measuring intellectual perceptual-motor maturity and personality through the
   use of drawings of self and a member of the opposite sex in ages 3 to 15,11 years. Date of Report _____

☐ Conner's Parent and Teacher Rating Scales - a paper-and-pencil instrument measuring problem behaviors of children and adolescents as reported
   by the child's teacher, parents, or alternate care-giver. Date of Report _____

☐ The Vineland Adaptive Behavior Scales - assesses adaptive and social competency skills. Date of Report _____

☐ Test of Language Development Primary - Revised (TOLD-P) - measures primary language proficiency and specific strengths and weaknesses in
   language skills. Date of Report _____

☐ Kaufman Assessment Battery for Children - assesses the ability to solve problems using simultaneous and sequential metal processes in four global
   areas : Sequential Processing, Simultaneous Processing, Mental Processing, and Achievement. Date of Report _____

☐ Preschool Language Scale - measures auditory comprehension and verbal ability skills. Date of Report _____

☐ Oral Peripheral Speech Examination - a procedure to determine whether the examinee can appropriately use the lips, tongue, mouth, etc.
   Date of Report _____

☐ Clinical Evaluation of Language Fundamentals - III - assesses the child's language functioning including processing and production.
   Date of Report _____

☐ Expressive One Word Picture Vocabulary Test - assesses the child's single word expressive vocabulary. Date of Report _____

☐ Receptive One Word Picture Vocabulary Test - assesses the child's single word receptive vocabulary. Date of Report _____

☐ Goldman-Fristoe Test of Articulation - assesses the production of consonants in simple and complex contexts. Date of Report _____

☐ Peabody Picture Vocabulary Test-Revised - individually administered, multiple choice test measuring nonverbal, receptive vocabulary.
   Date of Report _____

☐ Fisher-Logemann Test of Articulation Competence - assesses articulation proficiency with single sounds, consonant blends, and vowel production.
   Date of Report _____

☑ Classroom Observation - assesses present functioning of the student within the classroom environment.

### Free or Low Cost Legal Services

Neighborhood Legal Services
701 4th Street, N.E.
Washington, D.C. 20001
202-682-2700 (NW)
202-682-2732 (NE)
Fax 202-682-0588

Neighborhood Legal Services
1213 Good Hope Road, S.E.
Washington, D.C. 20020
202-678-2000
Fax 202-889-3374

University Legal Services
300 I Street, N.E.
Washington, D.C. 20002
202-547-0198
Fax 202-547-2662

The Children's Law Center Inc.
1050 Connecticut Avenue, N.W.
Suite 1200 Washington Square
Washington, D.C. 20036-5317
202-467-4900
Fax 202-467-4949

National Coalition for Students with Disabilities
10560 Main Street, Suite 417
Fairfax, VA 22030
703-267-6588
(fax) 703-267-6992

447

02/13/2006  22:41    5757932                    THURGOODMARSHAL                    PAGE  04

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

INDIVIDUALIZED EDUCATION PROGRAM
(IEP)
MEETING NOTES

STUDENT De███d W███        SCHOOL  Marshall        DATE: 5/25/05

PARTICIPANTS:                                                     DISCIPLINE

PARTICIPANTS: (Sign Name)

| PARTICIPANTS: | PARTICIPANTS: (Sign Name) | |
|---|---|---|
| Carrie Wilkens | Via telephone | Parent |
| Tiffany Scott | Tiffany Scott | Sp Ed Coordinator |
| Jennifer Williams | Jennifer Williams | Speech Pathologist |
| Dorcas Whitaker | Dorcas Whitaker | General Ed Teacher |
| Ola. Avenue | Ola Avenue | Special Ed. Teacher |

The meeting was convened to discuss the annual review of D████d Wil██
The members of the MDT introduced themselves to the parent and the
Parent participated via telephone

Parent - D██████ has been doing good at home. His reading
has been improving. He's always been good in Math. His
health hasn't been that great and hopefully he can return to
school on Monday. D██████ is real hyper and he's on medication
for ADHD. (Concerta). It seems like his health isn't getting better.

General Ed Teacher - D██████ is not comfortable in the classroom
because he's so far behind. It is difficult bringing him up to
standard. One-on-one he works well, but not independently. He has
the potential to learn but he misses so many days from school. He
fights sometimes in class. He catches on quietly but he needs one-on-one
assistance. He was starting to improve at the beginning of the year, but since

02/13/2006  22:41    5757932                    THURGOODMARSHAL                          PAGE  05

District of Columbia Public Schools
Division of Special Education
Washington, D.C.

IEP Continuation
Page

## IEP CONTINUATION PAGE

Student Name D̶e̶____ W̶i̶l̶_____        DOB ██/██/95 DATE 5/25/05

Student ID Number 9065608    Managing School  Marshall

Attending School  Marshall

INSTRUCTIONS: Use this addendum when additional space is needed on an IEP section or part. Enter the
*section/part, page number or addendum to identify each item being continued. Attach this addendum to the form.

Page 4 of 4 or Addendum _____

all the absences he's falling behind. He use to not have many behavior
problems but now he does, maybe because he's frustracked from being so far
behind.

Speech Pathologist – its hard to say he's made progress because
he's been absent so often. When he's here he works well with his
peers and he asks questions. It is unfortunite that he's been absent
so much because he has so many gaps.

Conclusion – D̶_____ continues to be eligible for special
education as a child with Other Health Impairments. He
will continue to receive Specialized Instruction for 18 hours a
week and Speech & Language Therapy for 1 hour a week.

Recommendations
The General Ed teacher will develop a packet of work
for Desmond to complete.

**D.C. CHARTERED HEALTH · CENTER**
3924 Minnesota Ave., N.E.
Washington, D.C. 20019
(202) 398-8683

Patient _____████████_____(___)___████████_____ Date 8/17/4

Address _____ Age ____ Phone # _____

Rx ⱱ ___████████___ has had
numerous Recurrent Respiratory
illnesses including Asthma
which have interrupted his
attendance at School

Refill: _____ times.                    ☐ Dispense as Written

Physician's
Signature _____ M.D. / D.O.    DEA # _____

DW-07



Acct. # 63065    576 27-6053    12/13/02
902 MISSISS.PPI AVE SE Soxid    RE: 6
WASHINGTON DC 20020    (202) 561-7083    (202) 398-8683
SMP APPC PRD MEMBERS (433372w0)
920 FIRST ST., NE
WASHINGTON DC 20002    Date _____
Insured Party: DESMOND J WILKINS

℞

D████████  has Asthma
If during exercise or at
any time he experiences
breathing difficulties refer for medical
or call 911

Refill: _____ times.    ☐ Dispense as Written

451

Physician's

THE DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION BRANCH
SOCIAL WORK RE-EVALUATION REPORT

Student's Name: D████ Wil████          Provider: Carrie Grose
ID: 9065608                            Discipline: Social Worker
DOB: ████95                            Date of Interview: 6/21/04
Chronological Age: 8 yrs. 6 months     Grade: 2nd
Parent/Guardian: Carrie Wilkins
Address: 950 Mississippi Ave.,
Washington, D.C. 20032
Home Phone: (202) 561-7080
Work Phone:
Emergency:
Person(s) Interviewed: Carrie Wilkins

**REASON FOR REFERRAL:**

Review of the psychoeducational report that was completed by Marcia Stuart, Ph.D., on 08/07/03, reveals that an evaluation was requested to determine student's cognitive and academic level of functioning.

**BACKGROUND INFORMATION:**

D████ was born in Washington, D.C., at Greater Southeast Community Hospital. He presently lives with both parents and 5 siblings in a 3- bedroom apartment in Southeast, Washington, D.C.  Ms. Wilkins reports living in the area for approximately 17 years, and presently look forward to moving into a 5-bedroom house, located in Northeast, Washington, D.C. Ms. Wilkins reports that she is not on public assistant, but does receive food stamps, and have applied for SSI benefits for D████. She reports that De████ has a good relationship with family members and does not present with behavioral problems at home.  Last year however, prior to being diagnosed and treated for ADHD, Ms. Wilkins reports he, had serious behavioral problems at school.

**TRAUMATIC EVENTS:**

None reported

Name: 
DOB: ████95
Social Worker: Carrie Grose

## DATA FAMILY

Family members/significant other who live in the household:

Household Composition:

| Name | Age | Relationship | Education | Occupation |
|------|-----|--------------|-----------|------------|
| Carrie Wilkins | 40 | Mother | 12th | Home maker |
| Sheldon Wilkins | 41 | Father | 12th | Maintenance |
| Sheldon Wilkins | 18 | Brother | 12th | Ballou |
| Sheldon Wilkins | 14 | Sister | 8th | Johnson |
| Joannetta Wilkins | 11 | Brother | 6th | McGogney |
| Willie Wilkins | 10 | Brother | 5th | McGogney |
| Everett Wilkins | 3 | Sister | | |

Family members/significant others who do not live in the household:

| Name | Age | Relationship | Education | Occupation |
|------|-----|--------------|-----------|------------|
| Joan    Wilkins | 64 | Grandmother | 12th | Police Retiree |
| Annette Wilkins | 23 | Sister | 12th | Banker |

453

Name: D█████ Wi█████
DOB: ███/95
ID: 9065608
Social Worker: Carrie Grose

## DEVELOPMENTAL AND MEDICAL HISTORY:

De█████ reportedly weighed 8lbs 11-½ oz., at birth. Mother reports he was a normal vaginal delivery and that she did not experience any complications. She also denied the use of drugs during her pregnancy.

During his developmental stages, there were no abnormalities reported. He started walking at 10 months, talking at 9 months (saying mommy and daddy), and potty trained at 14 –15 months. He have experience the normal childhood illnesses (chicken pox, measles). In addition he has also since birth, have had problems with his left lung. Mother reports the lungs are unequal in size, and he therefore has chronic asthmatic problems. Ms. Wilkins also reports that he was found to be dyslexia at Charter Health Clinic, but does not receive services to correct the problem at this time.

D█████s physician reportedly sees him at least twice a week at Charter Health Center on Minnesota, Ave., Southeast, Washington, D.C., due to asthma problems.. He was hospitalized (2000-20001), for three days at Greater Southeast, Community Hospital, due to his asthma. He is on albuterol, prednisolon, fovent and uses a nebulizer. He also take cencernta for Attention Deficit Hyperactive Disorder, that was reported in the psychoeducational report dated 08/07/03. Other health problems reported consist of bedwetting every night. Ms. Wilkinshr attributes this to the medicine he has to take. He has a sleeping and eating disorder, but is not in treatment. He also has a skin problem, which causes him to scratch a lot. Ms. Wilkins reports that she plan to get a referral to a dermatologist. D█████ reportedly is a very sick child, who because of his illnesses has a poor attendance record at school. Mother reports that he cries a lot when he can't have his way or not allowed to go outside to play, as he is allergic to the pollen in the air.

Name: D████d Wi████
DOB: ████95
ID: 9065608
Social Worker: Carrie Grose

## SCHOOL HISTORY:

D████ is 8 years 6 months of age. He is presently in the 2nd grade at McGogney Elementary where he has been a student since the kindergarten. Reportedly he was retained in the first grade due to academic and behavioral problems. Mother reports he was rebellious, oppositional and sometime, got in fights. During this time, he was not on medication. He was found eligible for special education on 10/16/03, and given a diagnosis of Other Health Impaired.

Review of the psychoeducational reports reveals that he carried a diagnosis of Oppositional Defiant Disorder as well as ADHD. The report also reveals that academically, he is not achieving at a grade appropriate level. Data from the WJ III COG indicated a general intellectual ability score of 60. which is in the very low range. He presently receives specialized services in his academics, speech and counseling. However, since he has made a great improvement in his behaviors, he was recently discharged from psychological counseling on 6/21/04.

## SIGNIFICANT SOCIAL PERSONAL FUNCTIONING

D████ is a very likeable young man who has been cooperative and respectful with this worker. He is always eager to participate in group activities and has been helpful with his peers. In the time that this worker has worked with D████ there has been no behavioral problems cited. Occasionally, however, there may be reports of conflicts in the classroom, which generally initiated by others.

D████ reportedly has a best friend, and lots of friends at school. He likes football, playing the play station, computer, and would like to be a rapper. Mother reports that he doesn't like to go to school and will sometime stage an asthma attack. She reports that he said, " the teachers holler too much".

455

Name: De█████d Wi███
DOB:1██████95
ID:9065608
Social Worker: Carrie Grose

## SUMMARY

De█████ is a 8 year 6 months old African-American male who presently lives with both parents and 5 siblings in a 3-bedroom apartment, in Southeast, Washington, D.C. Ms. Wilkins reports that the family is in the process of moving into a 5 bed-room house located in northeast, Washington, D.C.

De█████ at birth weighed 8 lbs. 11 ½ oz.,. Mother denied the use of drugs or experiencing any complications during her pregnancy. She reports that his developmental milestones where within normal range. As a young child he developed chicken pox and measles. He has been quite ill most of his young life. Mother reports that since birth, he has had problems with his lungs. Apparently the left lung is of unequal size to the right lung. He has chronic asthmatic attacks and has to be seen by his physician twice a week. She reports that he was hospitalized (2000-2001) due to a asthma attack. He is currently on medication (prednisolone , 15 mg, 1xday, Fovent (as needed), albuterol and uses anebulizer).He is also on cencernta for Attention Defiant Hyperactive Disorder. Mother reports he also has a eating and sleeping disorder that are not treated at this time. In addition he has a skin rash, bed-wetting problems, and was found to be dyslexia.

D█████ is in the 2nd grade at McGogney Elementary school. He was retained in the 1st grade due to academic and behavioral problems. He was found eligible for special educational services on 10/16/03, and given a diagnosis under Other Health Impaired. He was also classified as a student with Attention Deficit Hyperactive Disorder/ Oppositional Defiant Disorder, when he was in the 1st grade. He receives specialized services in academics, speech and psychological counseling. He is beginning to show progress in all areas, and this year on 6/21/04, he was discharged from psychological counseling. D█████ is a likeable young man, who is always cooperative and respectful. He seems eager to learn, and tries very hard. He generally has a good relationship with peers and when in conflict, it is often initiated by others.

Name: D█████ Wi██████
DOB: 9█████/95
ID:   9035508
Social Worker: Carrua Grose

I understand that this information will be used to help determine if my child is
educationally disabled and will be used by DCPS professionals only. This material will
be kept in my child's confidential folder.

_Carrua Grose_ 4/21/04 Date     _Chris Wilks_ Date 6-21-04
(Interviewer's Signature)        ( Parent/Guardian Signature)

457

SCHOOL HEALTH PROGRAM/GOVERNMENT OF THE DISTRICT OF COLUMBIA MEDICAL REVIEW OF RECORDS

DATE: 10/05/03

NAME: D██████ W████

BIRTHDATE: ███/95

PARENT/GUARDIAN: Carrie Wilkins

ADDRESS: 950 Mississippi Ave., #213

LOCAL SCHOOL: Mc Gogney ES

PRESENT PLACEMENT:

TELEPHONE:

RECOMMENDATIONS:

Documents submitted: 2/2003 Audiological Evaluation, 8/2003 correspondence from child psychiatrist, 8/2003 medical statement re bronchial asthma, 8/2003 Psychoeducational Report, 4/2003 Speech and Language Report

D██████ a 7 year 10 month old male student with a diagnosis of ADHD, combined type, Oppositional Disorder, and bronchial asthma. Most of his 265 absences noted since 1999 were secondary to asthma. A 2003 Audiometric evaluation is exhibiting deficits in expressive and receptive language.

1. Appears appropriate for the OHI classification (bronchial asthma/ADHD).
2. Completion of the School Health Certificate is needed.

Crystal Taylor-Davis, MD
School Placement Physician

**458**

DW-09

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
DIVISION OF SPECIAL EDUCATION
PSYCHOEDUCATIONAL REPORT


**********CONFIDENTIAL**********


Name:                          De███ Wi███
D.O.B.:                        ██95
Chronological Age:             7 years, 8 months
Grade:                         1st.
School:                        McCogney ES
ID#:                           9065608
Examiner:                      Marcia Stuart, Ph.D.
                               Psychologist
Testing Location:              McCogney ES


Date of Evaluation:            08/07/03
Date of Report:                08/07/03


**Reason for Referral:**
This psychoeducational evaluation was requested in order to assess this student's current
level of cognitive and academic functioning and to assist in appropriate educational
planning and placement.


**Tests Administered and Data Sources:**
Woodcock-Johnson III (WJ III)
The Beery-Buktenica Developmental Test of Visual-Motor Integration (VMI)
Review of Records
Interview with Student


**BEHAVIORAL OBSERVATIONS/STUDENT INTERVIEW**
D███ █████ arrived at the school in the company of his mother. He separated from her
without difficulty and willingly accompanied the examiner to the testing site. He seemed
at ease in the presence of the examiner, was cooperative, though appearing somewhat
tired. His level of conversation was typical for his age, although it was difficult to
understand him at times, as his speech was not very clear. He spoke with a nasal tone as
if congested, yet did not seem to have a cold. Later in the session he indicated to the

459

DW-10

FROM

 Page/2

examiner that he suffers from asthma. He was also constantly scratching all over his body and told the examiner that he was itching all over because of mosquito bites. He was attentive to the tasks presented, and was willing to attempt tasks that were somewhat difficult for him and tried very hard. For the most part he was very slow and hesitant in responding to the items. Several times in the middle of responding to an item, he interjected that he was going to visit his cousin. He added (also several times) that he likes visiting with his grandmother. When questioned, however, he was unable to indicate where his cousin or grandmother lived. D_____ exhibited right-hand dominance, and no visual difficulties were noted by this examiner. When he was asked whether or not he was supposed to wear glasses, he at first indicated yes then changed his answer. This examiner had some concerns about his auditory functioning, particularly in light of his speech, however, in a later review of his records, there was information which indicated that he had had an audiological examination earlier this year, which found him to be functioning within normal limits.

During testing D_____ had difficulty understanding some instructions, and often would produce responses which indicated that he was clearly off mark. At different times both receptive and expressive language appeared impaired. He confused some letters, reading "D" for "B", also "C" for "S" and "G" for "J". When he needed to repeat words following cues from the examiner, he often repeated the incorrect word, for example: "breen" for "green" and "bround" for "ground". He did not appear to understand opposites, responding "barge" as the opposite of "large", "wrong" as the opposite of "strong" and "you" as the opposite of "true". He consistently wrote "4" backwards. His difficulty with phonics/reading prevented him from successfully responding to items on the Reading Fluency and Writing Fluency subtests.

D_____ disclosed to this examiner that he lives with his mother, father, 3 sisters and 3 brothers. He was able to name them and count on his fingers as he went along. He stated that he does not like McCogney because " the teachers holler, the food is cold, and there are roaches". When questioned, he did not admit to having any difficulties with his schoolwork or in terms of behavior. He did indicate that he was retained in the first grade.

## BACKGROUND INFORMATION
A review of his records reveals extensive background information. Most of that will not be repeated except as deemed necessary for this evaluation. D_____ has attended McCogney Elementary School since pre-Kindergarten. A review of his records indicated a history of medical difficulties linked to asthma. He has had hospitalizations related to this condition, requires frequent breathing treatments, and in addition has a sleep disorder. It is reported that one of his lungs is smaller than the other, and that he is allergic to mold and dust and may also be affected by chemicals in the air. He has been prescribed several different medications to address the asthmatic condition, the sleep disorder as well as Attention Deficit Hyperactivity Disorder. He was diagnosed with ADHD and Oppositional Defiant Disorder early this year (2003). The medication makes him sleepy.

460

FROM :

W Page 3

D███s records also indicate a long-standing problem with attendance. However, it appeared that most of his absences were linked to his asthmatic condition. However, for the record, the following is reported: 56 absences during his pre-K year (1999-2000); 78 absences during the Kindergarten year (2000-2001); 102 absences during his first year in the first grade (2001-2002) and approximately 85 absences for the school year 2002-2003.

There are many concerns surrounding D███ academic performance. He was not able to acquire the necessary skills for the first grade as he missed a great deal of instruction during the pre-K and Kindergarten years and has been struggling. His areas of greatest difficulty are reported to be phonics and reading. He is reportedly unable to sound out words. He has had much more success with math where he can solve grade appropriate number problems, but is unable to handle simple word problems.

Later reports indicate some concerns with his behavior in the classroom, with some aggression noted toward his peers, as well as some defiance toward the adults in the school environment.

*This evaluation forms part of a multidisciplinary evaluation. Please refer to Parent Interview/Social History, and Speech and Language reports for additional background information.*

## TEST RESULTS AND INTERPRETATION

### The Woodcock-Johnson III (WJ III)

The WJ III is made up of two distinct, co-normed batteries. These are the WJ III Tests of Cognitive Abilities (WJ III COG) and the WJ III Tests of Achievement (WJ III ACH). These two batteries together provide a wide age range and a very comprehensive system for use in measuring general cognitive abilities, oral language, as well as academic achievement. A single sample was used to obtain normative data for both the cognitive and the achievement tests. By so doing, the researchers ensured that the batteries can function together as an accurate and valid diagnostic system. An extensive computer scoring system provides standard scores, percentiles, age equivalents, grade equivalents as well as ability/achievement discrepancies.

The WJ III can be administered to individuals ranging in age from 2 to adult. The data for norms were obtained from a large nationally representative sample of 8818 subjects in over 100 geographically diverse communities in the United States. There is a Standard and an Extended Battery available in each of the Tests thus providing a total selection of twenty subtests available on the WJ III COG and twenty-two available on the WJ III ACH.

Selections from the Standard Battery of each of the Tests were administered to this student.

FROM :

WI█████ Page/4

Cognitive Functioning
Woodcock-Johnson III Tests of Cognitive Abilities – (WJ III COG)

## WJ III COG RESULTS

| Subtests | Standard Scores | Grade Equiv. | Percentile. |
|---|---|---|---|
| Verbal Comprehension | 78 | K.2 | 7 |
| Visual-Auditory Learning | 71 | <K.0 | 3 |
| Spatial Relations | 97 | 1.4 | 43 |
| Sound Blending | No score available | | |
| Concept Formation | No score available | | |
| Visual Matching | 94 | 1.5 | 34 |
| Numbers Reversed | 91 | 1.0 | 28 |

CLUSTERS:

| | |
|---|---|
| Verbal Ability | 78 |
| Thinking Ability | 45 |
| Cognitive Efficiency | 92 |
| | |
| General Intellectual Ability (GIA) | 60 |

Overall, De████ scored in the Very Low range when compared to his grade peers. He obtained a General Intellectual Ability score of 60. However, as can be seen above, there were two subtests in which no scores were available as he did not appear to understand what was required despite repeated directions and assistance working through sample items. One is a test of auditory processing measuring skills in synthesizing sounds, while the other involves reasoning based on logic and also measures flexibility in thinking. These subtests contribute to the General Intellectual Ability score, and so his overall GIA score was affected. D█████ Verbal Ability was in the Low range (78), while his Thinking Ability was in the Very Low range (45). This cluster represents functioning in four areas – long-term retrieval, visual-spatial thinking, auditory processing and fluid reasoning. Two of these areas were those indicated above where he was unable to respond to the items, which again contributed to the lowered Thinking Ability cluster score. When his cognitive abilities are compared, D█████ demonstrated a significant weakness in thinking ability. His Cognitive Efficiency, however, was in the Average range. This cluster score is an indication of the individual's ability to process information automatically. It consists of the scores on a test of processing speed (Visual Matching), and a test of short-term memory (Numbers Reversed).

FROM :

 Page/5

Academic Functioning
Woodcock-Johnson III Tests of Achievement (WJ III ACH)

## WJ III ACH RESULTS

| Subtests | Standard Scores | Grade Equiv. | Percentiles |
|---|---|---|---|
| Letter-Word Identification | 76 | 1.0 | 6 |
| Reading Fluency | No score available | | |
| Story Recall | 89 | K.6 | 23 |
| Calculation | 87 | 1.2 | 20 |
| Math Fluency | 79 | K.9 | 8 |
| Spelling | 76 | K.7 | 6 |
| Writing Fluency | No score available | | |
| Passage Comprehension | 77 | K.7 | 6 |
| Applied Problems | 90 | 1.2 | 25 |

CLUSTERS:

| | |
|---|---|
| Broad Reading | 69 |
| Broad Math | 86 |
| Math Calculation Skills | 86 |
| | |
| Academic Skills | 71 |
| Academic Fluency | 71 |

Overall, D█████ Academic Skills were in the Low range with a score of 71. The Academic Skills Cluster score represents basic achievement skills as an aggregate of reading decoding, math calculation, and spelling of single-word responses. As is suggested by the above data, D█████ appears to be experiencing difficulties in the areas of Reading, Spelling, Comprehension and Writing. The above data also indicate that no score was available for the Reading Fluency and Writing Fluency subtests. His skills in reading are extremely weak and so he was unable to provide responses on the Reading Fluency subtest even with the assistance provided on the sample items. Similarly the Writing Fluency subtest provided even more of a challenge and again even with assistance on the sample items, he was unable to successfully respond, and testing was terminated on that subtest. His overall Reading score was in the Very Low range (69) and was below what was predicted. Overall, his Math skills including Math Calculation were in the Low Average range and higher than predicted. He demonstrated a good grasp of some basic (single digit) addition skills, was able to solve some (single digit) subtraction word problems with visual cues, but had difficulty adding money (with visual cues). In addition, he was not able to work well under time constraints (Math Fluency subtest) and this was one of the times when he stopped working to inform the examiner (yet again) that he was going to visit his cousin.

FROM :

W age/6

## Perceptual-Motor Functioning
### Developmental Test of Visual-Motor Integration (VMI)
This instrument was designed to measure visual-motor integration, and an individual's level of coordination of visual and motor functioning. It requires copying geometric designs. The test was standardized on 2614 children and adolescents from ages 3 through 18. Samples were representative of the 1990 US Census.

De____ achieved a standard score of 91, which falls within the Average range. When D____ is compared to his age peers, his visual-motor integration skills and coordination of visual and motor functioning are developing adequately at this time.

## Socio-emotional Functioning
This area of functioning was not evaluated as this student carries a diagnosis of Oppositional Defiant Disorder as well as ADHD.

## SUMMARY/RECOMMENDATIONS
D____ is a 7 year, 8 month old African American male who currently attends McCogney Elementary School having gone through the first grade for the second time. Data obtained from the WJ III COG indicated a General Intellectual Ability score of 60, which is in the Very Low range. However, there were two subtests on which no score was available as he appeared not to understand what was required of him. The absence of these scores contributed to his low score overall and so the GIA obtained is probably not a true indication of his cognitive potential but rather represents his current daily functioning. In addition, given the background information available, which indicate frequent absences, it is likely that D____ has missed so many opportunities for learning and for stimulation from his environment that it has taken a toll on his cognitive development. Although the actual overall score suggests functioning in the mentally deficient range, this examiner is of the opinion that there are several factors that may be contributing to this lowered functioning. The reader is referred to the background information in this report and to information in his records for further clarification.

Academically, D____ is not achieving at a grade appropriate level. Given the fact that he has repeated the first grade, his skills in certain areas should be stronger than they are currently. It is clear that once again his inability to consistently access daily instruction over the last four years has adversely affected his acquisition of basic skills, which in turn affects his ability to improve academically. His overall academic skills were found to be in the Low range. Areas of specific difficulty were Reading, Spelling, Comprehension and Writing. While overall his math skills were in the low average range, D____ was not able to perform well under time constraints (Math Fluency), which for the most part is a skill acquired in school. No discrepancies were found between his cognitive abilities and his academic achievement. While his overall reading score was lower than predicted, the discrepancy was not significant. His achievement on Math and Math Calculation was higher than predicted.

464

Wilkins Page 7

D██████'s visual-motor integration skills appear to be developing adequately at this time. There are concerns about his social and emotional functioning and he currently carries a diagnosis of Oppositional Defiant Disorder and ADHD.

The determination is that at this time, D██████ does not meet the eligibility criteria under IDEA as a student with a learning disability or mental retardation. However it is clear that he needs remediation in all the academic areas in which he is experiencing difficulty. All data must be considered by the multidisciplinary team in order to make a final determination as to his eligibility for Special Education services, specifically, data from the Speech and Language evaluation and medical and other information that is pertinent to his case.

_Marcia C. Stuart, Ph.D._

Marcia C. Stuart, Ph.D.
Psychologist, DCPS

465

June 5, 2003

First Home Care Corporation
DC Chartered Health Center
3924 Minnesota Avenue
Washington, D.C. 20019

McGogney Elementary School
RE:  W██████ De████

To Whom It May Concern:

This is to inform you that De████ W██████ had an initial psychiatric evaluation at this facility on 2/11/03 and had been seen in an ongoing basis.  He was given a diagnosis of Attention Deficit Hyperactivity Disorder , Oppositional Defiant Disorder and is receiving somatic treatment to address the ADHD symptomatology.  He needs to be monitored in biweekly basis for medication monitoring and implementation of behavior modification strategies.

It is recommended for D████ █ W██████ to receive special education services in a small classroom setting that can provide structure and supervision.

Thank you for your cooperation on this matter.

Caroline Tan, M.D.
Child & Adolescent Psychiatrist

DW-11    466

Apr 14 03 12:31p      Sharpe Health School      202 576 5166      p.3

82 305

PUBLIC SCHOOLS OF THE DISTRICT OF COLUMBIA

PHYSICIAN'S CERTIFICATE OF PUPIL'S INABILITY TO ATTEND SCHOOL

To the Board of Education:                          Date  4-25-03
    This is to certify that ███████ ██████ ███████-95

M        950 Miss. Ave. SE, #45    McGogney Elem    1
Sex          Address                    School         Grade

has been under my care since _____ and is physically unable to attend school
at this time. This pupil will probably be able to return to school within _____ weeks
or _____ months or _____ years.

This patient is Asthmatic    (Signed) _____ M.D.
and has other allergic       Address  3924 Minnesota Ave
Dermatoses. By being         Telephone # 202 398 808 7
this illness keeps her        CONFIDENTIAL STATEMENT
away from school frequently

Physician will check appropriate items in the following four columns and fill in *diagnosis* and
remarks below.
Please provide this student with the needed tutors

| Anatomical Location Skin | Types of Lesions Physical | Degree of Disability Complete | Prognosis Permanent |
|---|---|---|---|
| Head | Mental | Partial | Partial Improvement |
| Eyes | Nervous | | Complete Recovery |
| Ears | Organic | | |
| Throat | Functional | | D.C. Chartered Health Center |
| Joints | Communicable | | 3924 Minnesota Ave., NE |
| Upper Limbs  R  L | Noncommunicable | | Washington, D.C. 20019 |
| Lower Limbs  R  L | Infectious | | Fax # (202) 827-7616 |
| Spine | Noninfectious | | |
| Thorax | Spastic Paralysis | | |
| Lungs | Flaccid Paralysis | | |
| Heart | | | |
| Abdomen | | | |
| Gastro Intestinal Tract | | | |
| Genito Urinary Tract | | | |
| Nervous System | | | |
| General | | | |

Diagnosis and Remarks: _____ Severe Recurrent Allergies _____

Would the child be able to receive instruction at home by a visiting teacher? ___Yes___
Please return to: Sharpe Health School; Route #2 or 4300 13th Street, NW,
Washington, DC 20011; Telephone: (202) 576-6161; Fax: (202) 576-5166

Appendix E                                                    DW-12
                                                              467

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
DIVISION OF SPECIAL EDUCATION
825 N. CAPITOL ST., N.E.
WASHINGTON, D.C. 20002

CONFIDENTIAL

### SPEECH AND LANGUAGE EVALUATION REPORT

**NAME:** De█████ W█████
**DOB/AGE:** 12/12/1995 – 7 years, 3 months
**ADDRESS:** 950 Mississippi Avenue, Apt. 2B
Washington, DC 20032
**SCHOOL:** McGogney Elementary
**GRADE:** 1
**EXAMINER:** Richard Kalunga, MS, CCC-SLP
**TITLE:** Speech-Language Pathologist

#### I. Reason for Referral and Background Information

De████ is a 7 year-old male who was referred for a speech and language evaluation by the school MDT. Desmond underwent speech and language assessment on 4/14/03. Please refer to the social history report for comprehensive background information.

D█████ was seen by Caroline Tan, M.D. on 3/11/03 and 3/20/03 and diagnosed with ADHD combined, severe type and oppositional defiant disorder. Audiological testing on 2/27/03 revealed normal hearing thresholds and middle ear function. Loud congested breathing was noted and an ENT consult was recommended. D█████ is asthmatic.

#### II. Tests Administered
Clinical Evaluation of Language Fundamentals (CELF-3)
Peabody Picture Vocabulary Test-Third Edition (PPVT-III)
Expressive One-Word Picture Vocabulary Test (EOWPVT)
Informal Language Sample

#### III. Evaluation Results

##### A. Language
D█████ receptive and expressive language skills were formally evaluated using the CELF-3. The CELF-3 provides a measure of receptive and expressive language skills across form and content. The receptive language tasks evaluate the ability to translate spoken word combinations into their intended meanings. The expressive language tasks evaluate the ability to communicate ideas, feelings, or intentions using the spoken word.

CELF-3 provides three norm-referenced composite scores. The CELF-3 Total Language score quantifies D█████ overall language performance. Receptive and Expressive Language scores provide a comparison of performance in these broad areas of language. Each composite score is on a scale that has a mean of 100 and a standard deviation of 15.

Subtest standard scores provide measures of specific aspects of language form and content, and can be used to compare D█████ performance to performances of others of his age (the norm

**468**

DW-13

group). Subtest standard scores are on a scale with a mean of 10 and a standard deviation of 3. The results are tabulated below:

| | Raw Score | Standard Score (SS) | Confidence Interval (SS) (68% Level) | PR* | Confidence Interval (PR) (68% Level) | S* | NCE* |
|---|---|---|---|---|---|---|---|
| Sentence Structure | 11 | 4 | 2 to 6 | 2 | 1 to 9 | 1 | 7 |
| Concepts and Directions | 6 | 5 | 4 to 6 | 5 | 2 to 9 | 2 | 15 |
| Word Classes | 0 | 3 | 2 to 4 | 1 | 1 to 2 | 1 | 1 |
| RECEPTIVE LANGUAGE SCORE | — | 53 | 48 to 58 | 1 | 1 to 1 | 1 | 1 |
| Word Structure | 19 | 8 | 7 to 9 | 25 | 16 to 37 | 4 | 36 |
| Formulated Sentences | 4 | 5 | 4 to 6 | 5 | 2 to 9 | 2 | 15 |
| Recalling Sentences | 15 | 5 | 4 to 6 | 5 | 2 to 9 | 2 | 15 |
| EXPRESSIVE LANGUAGE SCORE | — | 75 | 71 to 79 | 5 | 3 to 8 | 2 | 15 |
| TOTAL LANGUAGE SCORE | — | 62 | 59 to 65 | 1 | 1 to 1 | 1 | 1 |
| AGE EQUIVALENT 4 - 11 | | | | | | | |
| *SUPPLEMENTARY SUBTESTS* | | | | | | | |
| Listening To Paragraphs | 7 | 8 | 6 to 10 | 25 | 9 to 50 | 4 | 36 |

Difference between Expressive Language and Receptive Language Scores = 22 (prevalence is less than or equal to 10%)

* PR = Percentile Rank
* S = Stanine
* NCE = Normal Curve Equivalent

## CELF-3 TOTAL LANGUAGE SCORE
D▓▓▓'s CELF-3 Total Language score is 62. This score is within the very low range of functioning.

## CELF-3 RECEPTIVE LANGUAGE SCORE
The Receptive Language score reflects D▓▓▓ ability to process and understand verbal communication. This score is obtained by adding standard scores for three receptive subtests and converting that sum to a standard score. D▓▓▓'s Receptive Language score is 53, which is in the very low range of functioning.

## CELF-3 EXPRESSIVE LANGUAGE SCORE
The Expressive Language score reflects D▓▓▓ ability to express himself verbally. This score is obtained by adding standard scores for three expressive subtests and converting that sum to a standard score. D▓▓▓ Expressive Language score is 75, which is in the low range of functioning.

*CELF-3 SUBTEST SCORES*

*Sentence Structure*

D████ received a standard score of 4 on the Sentence Structure subtest. This is a receptive language subtest used to measure D████'s understanding of simple, compound, and complex sentences. D████'s score is 1.5 or 2 standard deviations below the mean, which is in the low range of functioning.

*Concepts and Directions*

D████ received a standard score of 5 on the Concepts and Directions subtest. This is a receptive subtest used to evaluate D████ ability to interpret, recall, and execute oral commands of increasing length and complexity. The commands or directions contain concepts of logical operations. D████ score is 1.5 to 2 standard deviations below the mean, which is in the low range of functioning.

*Word Classes*

D████ standard score on the Word Classes subtest is 3. This is a receptive subtest that is used to evaluate D████'s ability to understand word relationships. He was presented with four words per item and had to identify the two words that are related. Desmond's score is 2 or more standard deviations below the mean, which is in the very low range of functioning.

*Word Structure*

D████ received a standard score of 8 on the Word Structure subtest. This is an expressive subtest designed to assess Desmond's ability to use primary morphological rules of English in structured elicitation. The use of plurals, pronouns, and regular and irregular verb tenses are targeted in the subtest. D████ score indicates average morphological skills.

*Formulated Sentences*

D████'s performance on the Formulated Sentences subtest yielded a standard score of 5. This subtest is used to assess D████ ability to formulate compound and complex sentences. This expressive language subtest required D████ to produce sentences containing specific nouns, verbs, adjectives, adverbs, and conjunctions. D████ score is 1.5 to 2 standard deviations below the mean, which is in the low range of functioning.

*Recalling Sentences*

D████ standard score on the Recalling Sentences subtest is 5. This subtest is used to evaluate D████ ability to recall and repeat compound and complex sentence structures. D████ score is 1.5 to 2 standard deviations below the mean, which is in the low range of functioning.

*Listening To Paragraphs*

D████ received a standard score of 8 on this subtest. This is a receptive language task that evaluates D████ ability to interpret information presented in spoken paragraphs. Questions associated with the paragraphs increase in complexity, requiring responses based on factual to inferential information. D████ score is within the average range.

Vocabulary

D████ receptive vocabulary was assessed using the PPVT-III. A standard score ranging from 85 to 115 is considered to be average performance on the test. D████ obtained a standard score of 80. D████ expressive vocabulary was assessed using the EOWPVT by asking him to name objects, actions, and concepts pictured in illustrations. A standard score ranging from 85 to

470

115 is considered to be average performance on the test. D█████ obtained a standard score of 71.

### B. Phonology and Oral Mechanism

Assessment indicates age appropriate articulatory performance. Furthermore, oral speech mechanism strength, range of motion and motor planning for speech and non-speech acts are age appropriate.

### C. Fluency

Assessment of D█████'s speech fluency indicates no abnormalities in rate, rhythm, or the forward flow of speech.

### D. Voice

Assessment of █████'s vocal functioning revealed normal loudness, rate, range, and pitch relative to age and gender.

### IV. Summary and Recommendations

D█████ is a 7-year-old male who was seen for a speech and language assessment on 4/14/03 at McGogney Elementary School. D█████'s speech and language where evaluated using both formal and informal assessment techniques. The formal testing instruments used include the CELF-3, PPVT-III, and EOWPVT. █████'s Total Language score was 62. D█████'s score places his overall language abilities in the below average range. D█████ received a Receptive Language score of 53 and an Expressive Language score of 75. Word structure knowledge and comprehension of short stories are areas of relative strength for █████. D█████ obtained standard scores of 80 and 71 on the PPVT-III and EOWPVT respectively.

Eligibility for special education services should be determined by an interdisciplinary team following review of all pertinent information including that outlined in this report.

The following are recommended:
1. Obtain D█████'s full attention before presenting instruction or key concepts in classroom activities.
2. Use simple, direct language when giving instructions.
3. Provide visual aids to supplement verbal classroom activities.
4. Restate, rephrase, and monitor new vocabulary concepts.
5. Frequently ask D█████ to repeat or rephrase directions or key concepts after they are presented to ensure full comprehension.
6. Expand on D█████ sentences and provide models for more complex utterances.
7. Utilize preferential seating to reduce distractions that may affect D█████'s ability to focus and remain on task.

It has been a pleasure working with D█████. If I can be of further resource, please feel free to contact me through McGogney Elementary School.

Richard Kalunga, MS, CCC-SLP
Speech-Language Pathologist

04/17/03

471

First Home Care Corporation

August 19, 2002

Gladys McGogney Elementary School
3400 Wheeler Road, S.E.
Washington, D.C. 20032

RE: W████, Des███

To Whom It May Concern:

This is to inform you that D████ meets the criteria for a diagnosis of Attention Deficit Hyperactivity Disorder, combined type. He is receiving somatic treatment with psychostimulants to address his motoric hyperkinesis, easy distractibility, impulsivity, lack of organizational ability seen in school, home and social settings.

ADHD is a chronic neurobiological disorder that needs a high level of structure, behavioral management techniques and classroom interventions with the help of teachers and parents to use techniques such as positive reinforcement, stimulating instructional aides., and a lower class ratio for a more individualized Attention.

Although De████ chronic medical condition (asthma) has an impact on his school attendance, it is a separate entity from his psychiatric diagnosis as this is not contributing to any existing ADHD symptomatology and must be addressed separately from his medical illness. Therefore, I strongly feel that D████ will benefit to be in a structured, smaller classroom setting with special education services to address his special needs.

Thank you for your continued support on this matter. It is highly appreciated as we are all working for the best interest of the child.

Yours truly,

Caroline Tan, M.D.
Child and Adolescent Psychiatrist

472

DW-14

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
OFFICE OF ACADEMIC SERVICES

**RESOLUTION MEETING CONFIRMATION**
**(RMC)**



De█████ W██████
*Student*

12/12/1995
*DOB*

Thurgood Marshall
*School*

Dear Parent/Guardian:

Pursuant to the Individuals With Disabilities Education Improvement Act of 2004 § 615 (f)(1)(B), this is a confirmation of your meeting to discuss your pending due process complaint and the facts that support it. The goal of the resolution meeting is to discuss the complaint and provide an opportunity for DCPS to resolve it. The IDEA 2004 requires that prior to an impartial due process hearing a resolution meeting must be held within 15 (fifteen) days of your filing your complaint.

Your participation is essential in an attempt to resolve your concerns. The District of Columbia Public Schools hopes that you will make every effort to attend this meeting. The resolution meeting is required prior to a due process hearing. Please be advised that failure to attend this meeting may result in a waiver of your right to due process hearing.

The date, time and place of the meeting are printed below.

2/14/2006
*Date*

10:30 Am
*Time*

3100 Ft Lincoln Drive, NE
*Location*

Washington, DC 20018

Tiffany Batson  SpEd Coordinator
*Sent By*

2006 MAY 22 AM 11:18
DC PUBLIC SCHOOL SYSTEM

RMC Letter of Confirmation to the Parent
7-14-05

DW-11
DW 15
473

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
OFFICE OF ACADEMIC SERVICES

**RESOLUTION MEETING CONFIRMATION**
**(RMC)**



Student

1995
DOB

Marshall
School

Dear Parent/Guardian:

Pursuant to the Individuals With Disabilities Education Improvement Act of 2004 § 615 (f)(1)(B), this is a confirmation of your meeting to discuss your pending due process complaint and the facts that support it. The goal of the resolution meeting is to discuss the complaint and provide an opportunity for DCPS to resolve it. The IDEA 2004 requires that prior to an impartial due process hearing a resolution meeting must be held within 15 (fifteen) days of your filing your complaint.

Your participation is essential in an attempt to resolve your concerns. The District of Columbia Public Schools hopes that you will make every effort to attend this meeting. The resolution meeting is required prior to a due process hearing. Please be advised that failure to attend this meeting may result in a waiver of your right to due process hearing.

The date, time and place of the meeting are printed below.

02/23/2006
Date

10:30 Am
Time

3100 Ft Lincoln Dr. NE
Location

Washington, D C 20018

Tiffany Batson
Sent By

RMC Letter of Confirmation to the Parent
7-14-05

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

__ PUBLIC     __ DPCS CHARTER     __ LEA CHARTER     __ NONPUBLIC     __ PRIVATE/RELIGIOUS

## RESOLUTION MEETING NOTES

Meeting Confirmation Date: **5-1-06**          Meeting Held: **5-2-06**

Student: De▮▮▮W▮▮▮          DOB ▮▮-95    School: **Marshall**

| PARTICIPANTS: (Print Name) | PARTICIPANTS (Sign Name) | POSITION |
|---|---|---|
| CARRIE WiLkins | Carrie Wilkins | Mother |
| Talib Adams Shabid | J. ___ | Acting for Student |
| Dorcas Whitaker | D. Whitaker | Teacher |
| Ola Aremo | O. Aremo | Special Ed. Teacher |
| | | |
| Jennifer Williams MS,CCC-SLP | Jennifer Williams | Speech Pathologist |
| Tiffany Batson | Tiffany Batson | SPED Coordinator |
| | | |
| | | |

_____ Resolved          ✓ Unresolved

The meeting was convened to discuss the resolution
of student De▮▮▮ W▮▮▮

1. DCPS violated the terms of the July 22nd HOD

2. failed to develop an appropriate IEP. Parent states
that student should have been home-schooled based on
his medical health.

3. same as above

4. same as above

5. same as above

2006 MAY 22 AM 11:18
DC PUBLIC
SCHOOL SYSTEM

DW-16

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

__ PUBLIC      ___DPCS CHARTER      __ LEA CHARTER      ___ NONPUBLIC      ___ PRIVATE/RELIGIOUS

### RESOLUTION MEETING NOTES Cont'd.

Meeting Confirmation Date: _____          Meeting Held: _____

Student: ███████████          School: Marshall

It has been determined that since the local school can not in good faith agree to provide home-school specialized instruction and speech & language services. DCPS agrees to convene an IEP meeting where the parties who are capable of making these decisions will be in attendance. In addition, prior to the meeting, the parent will be given a blank copy of the DCPS Physician's Certificate of Pupil's Inability to Attend School form so she can get the form completed by her child's physician if available or appropriate form.

In conclusion, the resolution is unresolved.

**FAX TRANSMISSION COVER SHEET**
**Dalton, Dalton & Houston P.C.**
**Attorneys at Law**
**1008 Pendleton Street**
**Alexandria, Virginia 22314-1837**
**(703) 739-4300**
**FAX (703)739-2323**

**DATE:**       May 15, 2006

**TO:**         Tiffany Pucket, Esq., Office of the General Counsel

**AT FAX:**     202-442-5098 / 5097

**FROM:**       Jessica M. Smith, Esq.

**RE:**         D████d W█████ DOB:█████/95

**NUMBER OF PAGES INCLUDING THIS PAGE: 54**

---

**COMMENTS:**

      **Five Day Disclosure**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE PRIVILEGED PURSUANT TO THE
ATTORNEY CLIENT PRIVILEGE AND ATTORNEY WORK PRODUCT DOCTRINE. IF THE READER OF THIS
MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE
RECEIVED THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS
COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE
ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

477

* * * Transmission Result Report(MemoryTX) ( May.15. 2006  5:28PM ) * * *

1) Dalton. Dalton.& Houston
2)

Date/Time: May.15. 2006  5:20PM

| File No. Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|
| 2202 Memory TX | OGC 202-442-5098 | P. 54 | OK | |

----------------------------------------------------------------

Reason for error
  E.1) Hang up or line fail           E.2) Busy
  E.3) No answer                    E.4) No facsimile connection

---

**FAX TRANSMISSION COVER SHEET**
Dalton, Dalton & Houston P.C.
Attorneys at Law
1008 Pendleton Street
Alexandria, Virginia 22314-1837
(703) 739-4300
FAX (703)739-2323

DATE:    May 15, 2006

TO:      Tiffany Pucket, Esq., Office of the General Counsel

AT FAX:  202-442-5098 / 5097

FROM:   Jessica M. Smith, Esq.

RE:      D███ W███, DOB █████95

NUMBER OF PAGES INCLUDING THIS PAGE: 54

COMMENTS:

      Five Day Disclosure

*********************************************************************
THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE PRIVILEGED PURSUANT TO THE
ATTORNEY CLIENT PRIVILEGE AND ATTORNEY WORK PRODUCT DOCTRINE. IF THE READER OF THIS
MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE
RECEIVED THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS
COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE
ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS.
*********************************************************************

State Education Agency for the District of Columbia
State Enforcement and Investigation Division (SEID)
Special Education Programs 2006 FEB 22 PM 1: 42

D████d W█████
      Petitioner,



DC PUBLIC
SCHOOL SYSTEM

v.

**District of Columbia Public Schools**
    **Respondent**

**District of Columbia Public School's**
**Response to Due Process Complaint Notice**

The District of Columbia Public School (hereinafter "DCPS"), by and through the undersigned Attorney Advisor, hereby provides its Response to the Due Process Complaint Notice ("Complaint") filed on or January 26, 2006 on behalf of Desmond Wilkins, DOB: 12-12-95, pursuant to the Individual's with Disabilities Education Improvement Act (hereinafter "IDEIA"), Sec. 615(c)(2)(B). Specifically, DCPS asserts the following:

1. DCPS is attempting to hold a MDT meeting.


DCPS reserves the right to supplement this response as additional information becomes available.


Date: February 22, 2006

Submitted by:

_____
Tiffany Puckett, Esq.,
Attorney Advisor
for DCPS as the Local Educational Agency

479

```
                    MESSAGE  CONFIRMATION
◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇

                                    02/22/2006  14:12
                                    ID=OFFICE OF THE GENERAL COUNSEL


  DATE      S.R-TIME  DISTANT STATION ID     MODE      PAGES  RESULT      S.C.
  02/22     00'21"    7036423101             TX        002    OK          0000


◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇◇

  02/22/2006   14:08    OFFICE OF THE GENERAL COUNSEL → 917037392323      NO.736   D001
```

Office of the General Counsel
9th Floor
825 North Capitol St, NE
Washington, DC 20002
(202) 442-5000
Fax (202) 442-5098



# FACSIMILE

**Date:** 2-22-06

**TO:** Talib Abus-Shahid, Esq.

**Fax No.:** 703/739-2323

**RE:** De████d Wi██████
Response to Complaint

**Tele. No.:** 703/941-4455

**FROM:** Tiffany Puckett, Esq.
Attorney Advisor

**Tele. No.:** 202/442-5000

**No. Pages, Including Cover Sheet:**

**COMMENTS:**

### CONFIDENTIALITY NOTICE

The information contained in this telefacsimile has been transmitted by an attorney. It is privileged and confidential, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If this communication has been received in error, please notify us immediately by telephone, and return the original message to us at the above address via first class prepaid US postage. Thank you.

480



Office of the General Counsel
9th Floor
825 North Capitol St, NE
Washington, DC 20002
(202) 442-5000
Fax (202) 442-5098

# <u>FACSIMILE</u>

|  |  |
|---|---|
| **Date:** | 2-22-06 |

**TO:**  Talib Abus-Shahid, Esq.

**Fax No.:**  703/739-2323

**RE:**  D▮▮▮d W▮▮▮▮
Response to Complaint

**Tele. No.:**  703/941-4455

**FROM:**    Tiffany Puckett, Esq.
Attorney Advisor

**Tele. No.:**  202/442-5000

### No. Pages, Including Cover Sheet:

**COMMENTS:**

<u>*CONFIDENTIALITY NOTICE*</u>

*The information contained in this telefacsimile has been transmitted by an attorney. It is privileged and confidential, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If this communication has been received in error, please notify us immediately by telephone, and return the original message to us at the above address via first class prepaid US postage. Thank you.*

481

# STATE EDUCATION AGENCY
# DISTRICT OF COLUMBIA PUBLIC SCHOOLS

| | | |
|---|---|---|
| In the Matter of: | ) | BEFORE A SPECIAL EDUCATION |
| | ) | |
| **W███s, D.** | ) | |
| | ) | |
| | ) | HEARING OFFICER |
| Vs. | ) | |
| | ) | |
| **Public** | ) | |
| **Marshall Education Ctr.** | ) | DISTRICT OF COLUMBIA |
| | | |
| Respondent | ) | PUBLIC SCHOOLS |

## SCHEDULING MEMORANDUM

1.  A due process complaint notice and request for due process hearing has been received by the Student Hearing Office in the State Enforcement & Investigation Division. Pursuant to 20 U.S.C. § 1415(f)(1)(B), prior to the opportunity for an impartial due process hearing, the Local Educational Agency shall convene a resolution meeting with the parent(s) and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint within 15 calendar days of receiving notice of the parents' complaint. The meeting shall include a representative of the Local Educational Agency who has decision-making authority. The Local Education Agency is responsible for scheduling the resolution meeting in consultation with the parent. **The Student Hearing Office does not schedule or participate in resolution meetings**.

2.  The complaint notice was filed on   **January 27, 2006**

3.  The deadline for the resolution meeting is   **February 11, 2006**   unless the parent and

    Local Educational Agency agree in writing to waive such meeting, or agree to refer the case to a mediator for mediation.

## RESPONSE TO THE COMPLAINT

A.  ***Prior Written Notice Not Issued by the Local Educational Agency***. If the Local Educational Agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, the Local Educational Agency shall, within 10 days of receiving the complaint, send to the parent a response that shall include:

   1.  An explanation why the Local Educational Agency proposed or refused to take action raised in the complaint;
   2.  A description of other options that the IEP Team considered and the reasons why those options were rejected;

Rev'd. 7/6/05

482

3.    A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and

4.    A description of the factors that is relevant to the agency's proposal or refusal.

B.    Prior written notice, if not already provided to the parent, must be sent by the Local

Educational Agency to the complaining party no later than **February 6, 2006**

C.    *Deficiency Notice*.  A complaint notice shall be deemed sufficient unless the party receiving the notice notifies the Student Hearing Office and the complaining party in writing, <u>within 15 days of receiving the notice of the complaint</u>, that the complaint does not satisfy the notice requirements specified in 20 U.S.C. 1415(b)(7)(A).

D.    The deadline for filing a deficiency notice  **February 11, 2006**

## DUE PROCESS HEARING

Pursuant to 20 U.S.C. § 1415(f)(1)(B)(ii) if the Local Educational Agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all applicable time lines for scheduling a due process hearing will commence.  A final hearing officer's decision must be issued within 45 days from the expiration of the 30-day resolution period.

## QUESTIONS AND INFORMATION

The staff with the Student Hearing Office does not provide legal advice.  The parties should consult with legal counsel or other representative to answer any legal questions about your rights, duties, and responsibilities under the law.  The school or the Local Education Agency responsible for scheduling the meeting will provide information about the time, date, and location of the resolution meeting.

TRANSMISSION VERIFICATION REPORT

TIME : 01/30/2006 12:09

| | |
|---|---|
| DATE,TIME | 01/30 12:04 |
| FAX NO./NAME | 95767932 |
| DURATION | 00:05:29 |
| PAGE(S) | 09 |
| RESULT | OK |
| MODE | STANDARD |
| | ECM |

**Office of Mediation &**
**Early Dispute Resolution**
**Complaint Intake Unit**
**825 North Capitol Street, NE- 8th Fl.**
**Washington, DC 20002**
**(202) 442-5467**



# Fax

# Time Sensitive Materials Attached

**Prompt Attention: Principal/Administrator**
                  **Special Education Coordinator**

Telephone Number: **(202) 576-6900**          Pages:**9**
Fax Number: **(202) 576-7932**              Date: **January 27, 2006**

---

**Please find attached a copy of a Scheduling Memorandum and a copy of the Due Process Complaint Notice regarding:**

Student:   D Wi

School: **Public – Marshall Education Ctr.**

**Please contact the Complaint Intake Unit @ (202) 442-5253 regarding any Questions related to this correspondence.  Also this is a phone/fax line.**

                              **Thank You,**
                               **Cassandra McDowell**
                              **Legal Assistant**

The document(s) accompanying this telecopy transmission contains confidential information that Is legally privileged.  The information is intended only for use of the individual or entity named Above, if you are not the intended recipient you are hereby notified that any disclosure, copying, Distribution or the taking of any action in reliance of the contents of this copied information is Strictly prohibited.  If you receive this telecopy in error, please immediately notify us by telephone For return of the original document to us.

485

Office of Mediation &
Early Dispute Resolution
Complaint Intake Unit
825 North Capitol Street, NE- 8th Fl.
Washington, DC 20002
(202) 442-5467



# Fax

## Time Sensitive Materials Attached

**Prompt Attention: Attorney: Talib Abdus-Shahid, Esq.**
**Parent: Carrie Wilkins**

Telephone Number: **(703) 739-4300**
Fax Number: **(703) 739-2323**

Pages: **3**
Date: **January 27, 2006**

**Please find attached a copy of a Scheduling Memorandum regarding:**

Student:  D████████W██████

School : **Public/Marshall Education Center**

**Please contact the Complaint Intake Unit @ (202) 442-5253 regarding any**
**Questions related to this correspondence.  Also this is a phone/fax line.**

Thank You,
**Ms. Cassandra McDowell**
**Legal Assistant**

The document(s) accompanying this telecopy transmission contains confidential information that Is legally privileged.  The information is intended only for use of the individual or entity named Above, if you are not the intended recipient you are hereby notified that any disclosure, copying, Distribution or the taking of any action in reliance of the contents of this copied information is Strictly prohibited.  If you receive this telecopy in error, please immediately notify us by telephone For return of the original document to us.

486

# FAX TRANSMISSION COVER SHEET
## Dalton, Dalton & Houston P.C.
### Attorneys at Law
1008 Pendleton Street
Alexandria, Virginia 22314-1837
(703) 739-4300
FAX (703) 739-2323

DATE:       January 26, 2006

TO:         Sharon Newsome
            DCPS/Student Hearing Office

TO FAX:     (202) 442-5556

FROM:       Talib Abdus-Shahid, Esq.

RE:         **Due Process Hearing Complaint: DW(DOB ____95)**

NUMBER OF PAGES INCLUDING THIS PAGE  7
*************************************************************************

**PLEASE DELIVER ASAP.**
*************************************************************************

THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.

IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECI-
PIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS
STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION
IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND
RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS.
*************************************************************************

2006 JAN 26 PM 4: 42
DC PUBLIC
SCHOOL SYSTEM

State Education Agency for the District of Columbia
State Enforcement and Investigation Division (SEID)
Special Education Programs



# Due Process Complaint Notice

- This form is used to give notice of a complaint to the District of Columbia Public Schools, District of Columbia Public Charter School (DCPS or LEA) an/or parents with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a Free appropriate public education to that child. <u>A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEIA)</u>.

- The complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office of the District of Columbia Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, D.C. 20002; fax number 202/442-5556.

- <u>Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice</u>. Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting (called a "Resolution Session") with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. <u>The Student Hearing Office does NOT schedule resolution meetings</u>.

- Mediation is also available to all parties as an alternative to a resolution meeting of a Due Process Hearing.

A.    <u>INFORMATION ABOUT THE STUDENT:</u>

488

| | | | |
|---|---|---|---|
| **Student Name:** | D███████ W███████ | **Birth Date:** | ████95 |

**Address:** 2909 S. Dakota Avenue, N.E.  Washington, D.C. 20018

**Present School of Attendance:** **Marshall Education Center**

**Is this a charter school?**    **NO**    (If yes, you must provide a copy of this notice to the charter school principal or director)

**Parent/Guardian of the Student:**    **CARRIE WILKINS**

**Address (If different from the student's above):**    n/a

| | | | |
|---|---|---|---|
| **Phone/Contact Number:** | (703) 739-4300 | **Fax Number (if applicable):** | (703) 739-2323 |

**B.**    **Individual Making the Complaint/Request for Due Process Hearing:**

**Name:**    **CARRIE WILKINS**

**Complete Address:**    2909 S. Dakota Avenue, N.E.  Washington, D.C. 20018

**Phone: (h)**        **(w)**        **(Fax)**        **(e-mail)**

**Relationship to Student:**

☐**X** Parent        ☐ Legal Guardian        ☐ Parent Surrogate
☐ Self/Student        ☐ Local Education Agency (LEA)        ☐ Parent Advocate

**C.**    **Local Representative:**

**Name:**    **Talib Abdus-Shahid, Esq., Dalton, Dalton & Houston, P.C.**

**Address:**    **1008 Pendleton Street**
            **Alexandria, VA 22314-1837**

489

Phone: (h)                     (w)   (703) 739-4300         (Fax)                    (e-mail)

Will attorney / legal representative attend the resolution session?   **X**☐ Yes    ☐ No

**D.** **Complaint Made Against (check all that apply):**

**X**☐ DCPS school (Complaint is against DCPS as the SEA).

☐ Charter school (name of school if different from page one)

☐ Non-public school or residential treatment facility (name)

☐ Parent

**E.** **Resolution Session Meeting Between Parent and LEA:**
I understand that it is my right to have a resolution meeting to receive this complaint. I also understand that I may voluntarily waive this right if I choose. (Note: all Parties must agree to waive the resolution meeting to avoid having this meeting).

☐ X   I wish to waive the Resolution Session Meeting

**F.** **Mediation Process:**

IDEIA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent. Both parties can request mediation as an alternative to the Resolution Session Meeting or as an alternative to a Due Process Hearing. Please check all that apply:

☐ I am requesting mediation as an alternative to the resolution session meeting.

☐X   I am requesting mediation and a due process hearing.

☐ I am requesting mediation **only** at this time.

**G.** **Facts and Reasons for the Complaint:**

In accordance with the Individuals with Disabilities Education Improvement Act (IDEIA), please complete the following questions (attach additional pages if needed):

1.    What is the nature of the problem, including the facts related to the problem, that will need to be addressed at a Resolution Session meeting, a Mediation Conference, and/or a Due Process Hearing?

D███████ ███████ currently attends Marshall Education Center in the District of Columbia. His current 2004 IEP identifies him as an Other Health Impaired (OHI) special education student. On July 22, 2005, a Hearing Officer's Determination (HOD) issued. The HOD ordered DCPS to convene a MDT/IEP meeting to review all evaluations, medical documents, revise the IEP if necessary, discuss and determine placement and compensatory education, if warranted. All meetings were to be scheduled through Parent's counsel.

To date, DCPS has not scheduled the MDT/IEP meeting. Therefore, the IEP is out of date and has never been revised and re-programmed in order to include the additional disabilities of SLI and Broncial Asthma. In addition, DCPS has failed to provide one-on-one tutoring services, as well as speech/language therapy services.

490

An award of compensatory education is warranted in this case, because DCPS has not provided a current IEP for the 2004-2005 and 2005-2006 school years, and has failed to provide speech therapy services for the 2005-2006 school year. Finally, five months have passed without DCPS convening the IEP meeting, and in all this time, Desmond's new IEP could have been developed.

The Parent contends that:

1) DCPS denied D██████ FAPE by violating the terms of the July 22, 2005 HOD:

   a) DCPS denied D██████ FAPE by failing to properly notify and schedule with Parent's counsel, the date, time and place of the MDT/ IEP meeting.

   b) DCPS denied D█████ FAPE by failing to convene the MDT/IEP meeting.

2) DCPS denied D██████ FAPE by failing to develop an appropriate, annual IEP for the 2005-2006 school year.

3) DCPS denied D█████ FAPE by failing to develop current IEP's for the 2004-2005 and 2005-2006 school years.

4) DCPS denied D█████ FAPE by failing to provide speech/language therapy services.

5) DCPS denied D█████ FAPE by failing to provide one-on-one tutoring services.

Based on the above, De█████ is not and has not been receiving a Free Appropriate Public Education.

2.    To the extent known to you at this time, how can this problem be resolved?
      Parent requests the following relief:    We are seeking,

   a.   Declaratory relief for denial of FAPE, denial of Due Process and for discrimination based solely upon our client's disability by DCPS.

   b.   A determination that DCPS denied De█████ FAPE by violating the terms of the July 22, 2005 HOD:

      i.   A determination that DCPS denied D█████ FAPE by failing to properly notify and schedule with Parent's counsel,  the date, time and place of the MDT/ IEP meeting.

      ii)  A determination that DCPS denied D█████ FAPE by failing to convene the MDT/IEP meeting.

   c.   A determination that DCPS denied De█████ FAPE by failing to develop an appropriate, annual IEP for the 2005-2006 school year.

   d.   A determination that DCPS denied De█████ FAPE by failing to develop current IEP's for the 2004-2005 and 2005-2006 school years.

   e.   A determination that DCPS denied D█████ FAPE by failing to provide speech/language therapy services.

   f.   A determination that DCPS denied D█████ FAPE by failing to provide one-on-one tutoring services.

j.  A determination that HRAPCS be required to reconvene the IEP meeting within five (5) business days of the issuance of this determination in order to develop an appropriate IEP to meet D█████individual needs, to re-program D█████IEP to include the additional disability of SLI, and to include Brochial Asthma within De█████disability of OHI, to review and discuss any and all evaluations, and any to determine an appropriate placement, and to discuss and develop the implementation of the compensatory education awarded by the Hearing Officer.

k.  A determination that D█████be awarded an amount of compensatory education for the period of time DCPS violated the terms of the HOD, including the time he was denied speech/language therapy services and denied the benefit of his revised IEP's.

l.  A determination that DCPS be required to afford the Parent an opportunity to participate in any meeting in which placement is discussed or determined. The DCPS placement representative shall advise the Parent of the advantages and disadvantages for D█████with respect to each school that is discussed, including any schools proposed by the Parent. DCPS shall further provide the Parent an explanation for the placement DCPS proposes, and the reasons for the proposal shall be provided in the meeting notes. DCPS shall issue a Notice of Placement within 5 business days, if to a public placement, and thirty calendar days if to a non-public placement.

m.  A determination that all meetings be scheduled at a mutually convenient time through Parent's counsel.

n.  Lastly, we are seeking any other relief that the Hearing Officer deems appropriate.

H.  <u>Accommodations and Assistance Needed:</u>

Please list any special accommodations you may require for a Resolution Session Meeting / Mediation Conference / Due Process Hearing:  NONE

☐  Interpreter (please specify the type)
☐  Special Communication (please describe the type)
☐  Special Accommodation for Disability (please be specific)
☐  Other

I.  <u>Waiver of Procedural Safeguards:</u>

☐  I (parent/guardian) waive receiving a copy of the procedural safeguards at this time.

**J.**    <u>Signature and Affirmation:</u>

I affirm that the information provided on this form is true and correct.

_____

Signature of Parent or Guardian

_____    1/26/06

Legal Representative Advocate (if applicable)    Date

Mail, fax or deliver this complaint notice to:
State Enforcement and Investigation Division
For Special Education Programs (SEID)
Student Hearing Office (SHO)
825 North Capitol Street, NE, 8th Floor
Washington, DC 20002
Fax number: 202/442-5556

493

GOVERNMENT OF THE DISTRICT OF COLUMBIA

DEPARTMENT OF PUBLIC SCHOOLS

OFFICE OF STUDENT HEARINGS

```
--------------------------x
IN THE MATTER OF:          :
                          :
D████████W████████         :
--------------------------x
```

Washington, D.C.

Friday, August 25, 2006

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C. 20005-3701
(202) 234-4433                    (202) 234-4433

494

The above-entitled matter came on
for hearing, pursuant to notice.


BEFORE:

TONYA BUTLER-TRUESDALE,
Hearing Officer

APPEARANCES:

On Behalf of the Student/Parent:

JESSICA SMITH, ESQ.

On Behalf of the D.C. Public Schools:

TIFFANY PUCKETT, ESQ.

This transcript was produced from
an audio CD provided by D.C. Public Schools.


**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433       WASHINGTON, D.C.  20005-3701       (202) 234-4433

495

I-N-D-E-X

|                                    | Page |
|------------------------------------|------|
| Opening Statement by Petitioner    | 10   |
| Opening Statement by DCPS          | 23   |

| Witnesses   | Direct | Cross | Redirect |
|-------------|--------|-------|----------|
| T. Batson   | 26     | 38    | 46       |
| Ms. Smith   | 118    |       |          |

E-X-H-I-B-I-T-S

| DW<br>Exhibit Nos. |   |   | Marked | Received |
|--------------------|---|---|--------|----------|
| 1-22               | 8 | 8 |        |          |

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C. 20005-3701
(202) 234-4433                                    (202) 234-4433

496

P-R-O-C-E-E-D-I-N-G-S

HEARING OFFICER BUTLER-TRUESDALE:

On the record.  Today is August 25, 2006 and

this is an administrative hearing for

D▮▮▮▮ W▮▮▮▮ whose birth date is listed

as ▮▮▮▮▮▮ 1995.  This is an

administrative hearing which is being

conducted in accordance with the guidelines

and rights established by Public Law 108-

446, The Individuals With Disabilities

Education Improvement Act, reauthorized as

the IDEIA of 2004, the Rules of the Board of

Education for the District of Columbia and

Section 145 of the D.C. Appropriations Act.

I'm Tonya Butler-Truesdale, an

independent hearing officer, and as a

hearing officer, I'm not an employee of the

District of Columbia Public Schools and I

have no relationship or close acquaintance

with any of the parties involved in this

hearing.  I will hear the evidence presented

during this hearing and make a ruling in

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

497

accordance with the applicable laws, rules and regulations.

Do you know what?  She should be on the phone.  I'm so sorry.

(Off the record comments during connection to applicable party.)

HEARING OFFICER BUTLER-TRUESDALE: Okay.  Hi, Ms. Wilkins.

MS. WILKINS:  Hi.

HEARING OFFICER BUTLER-TRUESDALE: Is it Wilkins?  Yes, it's Wilkins.  I was getting ready to call you Wilkinson.  Okay.

MS. WILKINS:  Yes.

HEARING OFFICER BUTLER-TRUESDALE: Ms. Wilkins, I had actually error already begun the hearing by reading the opening statement that I make.  So I'm going to start over for you.  Okay?

MS. WILKINS:  Okay.

HEARING OFFICER BUTLER-TRUESDALE: All right.

Today is August 25, 2006 and this

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

498

is an administrative due process hearing for

D█████ W███████ whose birth day is listed as

██████████, 1995.  This is an

administrative hearing which is being

conducted in accordance with the guidelines

and rights established by Public Law 108-

446, The Individuals With Disabilities

Education Improvement Act, reauthorized as

the IDEIA of 2004, the Rules of the Board of

Education for the District of Columbia and

Section 145 of the D.C. Appropriations Act.

I'm Tonya Butler-Truesdale, an

independent hearing officer, and as a

hearing officer, I'm not an employee of the

District of Columbia Public Schools and I

have no relationship or close acquaintance

with any of the parties involved in this

hearing.  I will hear the evidence presented

during this hearing and make a ruling in

accordance with the applicable laws, rules

and regulations.

This hearing is closed to the

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

499

public unless you, the parent, state that it should be open to the public.  The matters discussed here today are confidential and must be treated as confidential event after the hearing is completed.  This hearing is being tape-recorded and either party may request a copy of the tape or written transcript by writing to the Student Hearing Office at 825 North Capital Street, N.E., 8th Floor, Washington, D.C. 20002.

I'd now like to request that each person present introduce themselves for the record starting with Ms. Puckett on my left?

MS. COUSIN:  Yes.  Good morning. Tiffany Cousin, attorney with (Inaudible.)

MS. GREEN:  Yes.  My name is Willie Green.  I'm the VIS teacher.

MS. SMITH:  Good morning.  My name is Elma Smith and I'm the Special Education VIS Coordinator.

MS. JESSICA SMITH:  Jessica Smith, attorney for the parent.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

500

HEARING OFFICER BUTLER-TRUESDALE:

And, Ms. Wilkins, can you introduce

yourself?

MS. WILKINS:  I'm Carrie Wilkins,

D███████i███████ mother.

HEARING OFFICER BUTLER-TRUESDALE:

Has the parent been advised of her due

process rights?

MS. JESSICA SMITH:  Yes.

HEARING OFFICER BUTLER-TRUESDALE:

Are you waiving formal reading of those

rights?

MS. JESSICA SMITH:  Yes.

HEARING OFFICER BUTLER-TRUESDALE:

Let's see. I have a disclosure letter from

DCPS.  Is that correct?

MS. PUCKETT:  Yes.

HEARING OFFICER BUTLER-TRUESDALE:

And for Petitioner, I have DW1 through DW20.

Is that correct?

MS. JESSICA SMITH:  Yes, and I

did file a supplemental -- Well, actually it

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

501

should be 21.

HEARING OFFICER BUTLER-TRUESDALE:

Yes, I do see 21 and 22.

MS. JESSICA SMITH:  And then I

filed a Supplemental 22.

HEARING OFFICER BUTLER-TRUESDALE:

So DW1 through DW22.

(Whereupon, the above-

referred to documents

were marked as DW

Exhibit Nos. 1 through

22 for identification.)

MS. JESSICA SMITH:  Yes.

HEARING OFFICER BUTLER-TRUESDALE:

Any objections to the --

MS. PUCKETT:  What's 22?

MS. JESSICA SMITH:  It was a

signed -- Hearing Officer Smith signed the

Notice to Compel.

MS. PUCKETT:  Okay.  I have no

objections.

HEARING OFFICER BUTLER-TRUESDALE:

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

502

Okay.  No objections.

> (The documents referred
>
> to having been
>
> previously marked for
>
> identification as DW
>
> Exhibit Nos. 1 through
>
> 22, were received in
>
> evidence.)

HEARING OFFICER BUTLER-TRUESDALE:
Are there any other preliminary issues?

MS. JESSICA SMITH:  I would like
to invoke the rule on witnesses.

HEARING OFFICER BUTLER-TRUESDALE:
Any objections?

MS. PUCKETT:  No.

(Off the record comments.)

HEARING OFFICER BUTLER-TRUESDALE:
I thought that when the rule on witnesses
was invoked that there would be one person
that would remain from the school.

MS. PUCKETT:  My apologies.  Yes.
Let me get one.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

503

(Pause.)

MS. JESSICA SMITH:  Ms. Wilkins, are you still with us?

MS. WILKINS:  Yes.

MS. JESSICA SMITH:  Okay.  Just making sure.

(Witness enters room.)

HEARING OFFICER BUTLER-TRUESDALE: I'm ready for your opening statement.  No other preliminary issues, right?

MS. JESSICA SMITH:  There are three -- Generally, there are three issues in this case.  The first is home tutoring for De███████ asthma-related absences.  The second is implementation of a compensatory education plan that was agreed upon by the MDT Team and the third is that DCPS conduct a -- that a psycho-educational evaluation is warranted.

This case is about D███████ Wilkins and as you may recall since we've been here before, he's a ten-year-old boy

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

504

with chronic bronchial asthma and ADHD.  The
facts are quite simple.  On May 23rd, Ms.
Wilkins and the MDT Team agreed that ██████
needs homebound instruction for his asthma-
related absences.

However, DCPS has stated that
they do not have the authority to implement
such services.  The Team at that time also
agreed upon a compact plan which was to be
implemented over the summer.  However, that
was not implemented and additionally, the
triennial (phonetic) psycho-ed is due.  The
parent requested it but DCPS said they could
not conduct it.

As I stated, the hearing was
previously held for the student on May 22nd
and at that time, the parent was seeking an
MDT meeting to address the asthma-related
concerns on his IEP.  Prior to that hearing,
a resolution meeting was held and that's
that document DW12 in which the special ed
coordinator at Marshall, Ms. Badson

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

505

(phonetic), stated that they could not in good fate at the time provide home schooling specialized instruction, but they would agree to convene an IEP meeting with the authorized individuals at the meeting.

A hearing was convened and again, Ms. Badson stated under oath that she would convene such a meeting and the people who had the authority to implement homebound services would be in attendance. However, this did not occur and that's why we're here today.

HEARING OFFICER BUTLER-TRUESDALE: And that was when again?

MS. JESSICA SMITH:  The meeting was on 5/22. No, excuse me, 5/23. The hearing was 5/22 and the meeting was the next day on the 23rd.

The evidence will show that homebound instruction is necessary. The parent's disclosure is complete with evidence noting D█████'s asthma and its

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

506

effect on his school attendance.   There are

doctors' notes at Document 14 which state

that his recurrent respiratory illness and

asthma interrupts his attendance at school.

There is a social work evaluation at

Document 15 and on page three, it indicates

his asthma and other allergy problems that

he has with mold and dust and things in the

air that prevent him from leaving home.

DCPS filled out a medical review

of records which is DW16 and that also

indicates that most of his absences are

secondary to his asthma condition.

Additionally, the psycho-ed which is

Document 17 notes his asthma and that he's

been hospitalized and he's had frequent

breathing treatments.

Document 19 is a Physician's

Certificate of People's Inability to Attend

School which states that D████████has asthma

and other allergies which cause him to be

away from school frequently and has

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C. 20005-3701        (202) 234-4433

507

requested that he be provided with the needed tutors.

So as I said, the meeting was convened on the 23rd and at the meeting the documents will show that the IEP was updated to include asthma on the front cover. That's the Document No. 9 and the parent also indicated on the front cover that she was requesting home tutoring services for D████████

The MDT Team also discussed D██████s progress and lack thereof due to his absences at the meeting. Document No. 10 is the notes from that meeting where the parent notes her concern that D██████ is being treated as a throw-away child because he's not getting proper education where she has tried to provide services for him at home and actually teach him herself, but she is not qualified to do so.

Additionally, the teacher, D██████s regular ed teacher, stated that

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

508

she's been concerned about him for two years. He's obviously sick and when he's in class, he's out so much that when he returns he's behind and it works on his self esteem, that there's a huge gap in his education because he has not had the opportunity to learn.

The special ed teacher, Ms. Aremo (phonetic), has also stated that he's reading on a second grade level and he should be entering the fifth grade. His absences have hindered him, although he does have the potential to learn and additionally the speech language pathologist noted that his progress has been stunted due to his inability to be in school.

Thus, it was clear and the Team agreed, that he does need some sort of homebound instruction services for his asthma related absences, however, contrary to Ms. Badson's testimony at the hearing and her statements of resolution meaning DCPS

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C. 20005-3701
(202) 234-4433                                    (202) 234-4433

509

did not have anyone at the MDT meeting who could authorize these services.

Once the Team agreed that the services were needed, the parent suggested a plan wherein if D▮▮▮▮ was absent for three consecutive days, she would notify the school and they could send the tutor and related services home to him. And if he was absent for less than three days, they could send work packets home for him. However, Ms. Badson stated she did not have the authority to implement that plan.

The parent then requested the principal come into the meeting assuming she would have authority. However, the principal, Ms. Powell, also stated she did not have the authority to implement a plan like that.

DCPS offered that the parent could obtain services through what's called VIS, Visiting Instruction Services, through Sharpe's Health (phonetic) School. So since

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

510

that's pretty much the parent's only option,

she did go and submitted what was previously

referred to as Document 19, the Certificate

of Student's Inability to Attend School, and

the Visiting Instruction Services started on

May 30th and ended on June 14th and

Desmond's report card from those services is

at Document 6.

      HEARING OFFICER BUTLER-TRUESDALE:

Wait.  It started when now?

      MS. JESSICA SMITH:  5/30, May

30th and ended on June 14th.  And the

testimony today will show that D███████ was

provided with those services twice a week

for two weeks approximately two hours a day,

so basically a total of eight hours and the

testimony will also show that while this VIS

did help D███████ and he benefitted from the

home instruction, it's not necessarily an

appropriate long-term solution from the

understanding the parent was given at the

MDT meeting and from other people at Sharpe

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

511

Health was that the VIS instruction is only given on an interim basis for students, for example, who break their leg and are out for a couple of weeks.

It was explained to the parent that this program is interim and once Desmond would come back to school, it would, the home services would, stop for him if he was absent again. Additionally, the VIS Services were not available over the summer. So he only received the services for like I said eight hours up until when the school year ended.

HEARING OFFICER BUTLER-TRUESDALE: Were any of the visiting instruction appointments missed due to the instructor not being available or the student not being available?

MS. JESSICA SMITH: I don't believe --

HEARING OFFICER BUTLER-TRUESDALE: I'm sorry. The instructor or the student

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

512

not being available?  Were any of them
missed?

MS. JESSICA SMITH:  I don't
believe so, but she's here to testify.

HEARING OFFICER BUTLER-TRUESDALE:
All right.

MS. JESSICA SMITH:  Thus, the
parent is asking that the hearing officer
order DCPS to provide the home instruction
for his asthma-related absences and to add
that as a service on his IEP.  To be noted,
the parent was happy with Ms. Green, the
teacher, who provided the services.  She
just wants to make sure that some sort of
plan is in place where she doesn't have to
go through the whole bureaucratic system of
reapplying for VIS every time D███████ gets
ill due to his asthma since it is a very
reoccurring problem and a chronic problem.

Evidence will further show that
the team agreed on a Comp Ed plan.  The MDT
meeting notes at Document 10 refer to the

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

513

plan and based on the HOD this hearing

officer issued at Document 8 the team was

discuss Comp Ed.  We came up with a plan in

which D██████ would receive Comp Ed four

hours a day for five weeks over the summer

which would include specialized instruction

and speech and language services.  Again,

the parent requested that this be provided

at home.  Her testimony will show, reveal,

that D█████chronic asthma is much worse

during the summer months.  He is unable to

attend school.  As evidenced today, she was

unable to bring him along to come down here.

Again --

            HEARING OFFICER BUTLER-TRUESDALE:

How much longer will you need on your

opening statement?

            MS. JESSICA SMITH:  Maybe two

minutes.  I just want to be thorough.

            HEARING OFFICER BUTLER-TRUESDALE:

I understand.

            MS. JESSICA SMITH:  Again, Ms.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

514

Badson, the Special Ed Coordinator, stated
that she could not authorize the home
instruction over the summer.  If D█████
wanted the Comp Ed, he would have to come to
the summer school site to receive it.
Testimony will show that D███████s been
chronically sick with his asthma all summer.
He was not able to attend the school and so
Comp Ed was not received.

Thus, we're asking that the
hearing officer order DCPS to find an
independent tutor to provide those Comp Ed
services and at four hours a day for five
weeks that came out to be a 100 hours and it
includes specialized instruction and speech
and language services.

HEARING OFFICER BUTLER-TRUESDALE:
I'm sorry. Say that again.  Speech and
language and what was the other one?

MS. JESSICA SMITH:  Specialized
instruction.  And finally, the evidence will
show that a psycho-educational evaluation is

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

515

warranted.  At the meeting, the team

discussed as a triennial evaluations.  Those

meeting notes are DW11.  DCPS agreed to

conduct the speech and language and to do

educational testing.  However, when the

parent requested a psycho-ed, DCPS stated

that they did not feel it was warranted

because the school does not suspect a change

in disability.

     However, under Section

1414(a)(2), the LEA must ensure that a

reevaluation is done if the parent requests

it and at least every three years unless the

parent and LEA agree that it's unnecessary.

So procedurally, they're required to do it

because the parent did not agree that the

evaluation was unnecessary.

     Additionally, if you look at the

psycho-ed evaluation which is at Document

17, it needs to be updated.  The IQ score is

indicated as an IQ of 60.  However, it also

indicates that two subtests were not done

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433            WASHINGTON, D.C. 20005-3701            (202) 234-4433

516

because he did not understand, D▮▮▮▮ did

not understand, what was required of him.

This contributed to his low IQ score and the

evaluation notes that the IQ is not a true

indication of his cognitive potential.

Therefore, the parent is requesting the

hearing officer grant an independent

evaluation at DPCS's funding, independent

psycho-evaluation.

     And finally, we also ask that you

would have DCPS convene a meeting after the

Comp Ed is given to reassess his present

levels and determine if he needs more

compensatory education as well as convening

the meeting within ten calendar days of

receiving the independent evaluation to

review it and update his IEP, discuss

placement.

     HEARING OFFICER BUTLER-TRUESDALE:

So you're asking for to MDT meetings.  Is

that correct?

     MS. JESSICA SMITH:  Yes.  If they

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

517

coincide, that's fine.

HEARING OFFICER BUTLER-TRUESDALE:
Okay.  At a later time, you may have to
explain to me why.

MS. JESSICA SMITH:  Okay.

HEARING OFFICER BUTLER-TRUESDALE:
Why there are two because I think I missed a
step there, but I want her to get to her
opening statement.

MS. JESSICA SMITH:  Okay.  No
problem.

HEARING OFFICER BUTLER-TRUESDALE:
Ms. Puckett.

MS. PUCKETT:  (Off the
microphone.) Yes.  I'm going to really
brief.  I know --

HEARING OFFICER BUTLER-TRUESDALE:
Okay.

MS. PUCKETT:  -- information.
DPCS has provided services for the student
and as long as the documentation from the
doctor is provided to substantiate that he

NEAL R. GROSS
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

518

cannot attend school once fall begins, this tutoring service will continue.  I will call Ms. Batson first.  I don't want to go into detail in regards to everything else because I do know that we're finished with this point.

          HEARING OFFICER BUTLER-TRUESDALE: Okay.

          (Off the record conversation.)

          MS. PUCKETT:  Mom, are you there? Hello?  Oh, wait.  Hello?

          MS. BATSON:  Yes.

          MS. PUCKETT:  Okay.

          MS. PUCKETT:  Ms. Batson?

          MS. BATSON:  Yes.

          MS. PUCKETT:  Okay.  Everybody is there.

          HEARING OFFICER BUTLER-TRUESDALE: Okay.  Good.  Good morning, Ms. Batson.

          MS. BATSON:  Good morning.

Whereupon,

          TIFFANY BATSON

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

519

was called for examination by Counsel for the D.C. Public Schools, having been first duly sworn, was examined and testified as follows:

HEARING OFFICER BUTLER-TRUESDALE: Okay, and can you give me your first name please?

THE WITNESS:  Tiffany.

HEARING OFFICER BUTLER-TRUESDALE: Okay, and it's Batson, B-A-T-S-O-N, right?

THE WITNESS:  Yes, ma'am.

HEARING OFFICER BUTLER-TRUESDALE: Okay, and tell me your title again please.

THE WITNESS:  I'm the Special Education Coordinator at Thurgood Marshall Educational Center.

HEARING OFFICER BUTLER-TRUESDALE: Your witness, Ms. Puckett.

DIRECT EXAMINATION

BY MS. PUCKETT:

Q    Yes.  Please state your name for the record.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

520

A    You said restate it?

Q    Yes.

A    Tiffany Batson, Special Education Coordinator Thurgood Marshall Educational Center.

Q    And how long have you been a special ed coordinator?

A    Three years.

Q    And are you familiar with D█████ █████?

A    Yes, ma'am.

Q    And is D█████ currently a student at Thurgood Marshall?

A    Yes, he is.

Q    And can you tell us --

(Telephone ringing.)

HEARING OFFICER BUTLER-TRUESDALE: We hear a phone in the background.  Is that yours, Ms. Batson?

THE WITNESS:  Yes, it just rang.

HEARING OFFICER BUTLER-TRUESDALE: Okay.  No problem.  We were just trying to

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

521

make sure we hadn't lost anyone.

DIRECT EXAMINATION (Cont'd.)

BY MS. PUCKETT:

Q       And who -- What kind of student

is De████ Wi██████ the school?

A       He's a special education student.

Well, he just moved from the fourth grade to

the fifth.

Q       Okay, and do you recall

participating in a meeting on March 22, 23,

2006?

A       Yes, ma'am.

Q       And what was the purpose of that

meeting?

A       It was a resolution meeting to

discuss the violation of the January HOD as

well as to discuss home schooling for

Desmond due to medical conditions.

Q       And what was the discussion in

regards to home schooling in reference to?

A       Well, we informed the parent that

the current medical form that she had from

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

522

her doctor was outdated and that we needed a
new form, more current, more recent, because
the VIS services is based on an element that
is now, not three years ago.  I think it was
three years, the last page that she had.  So
the parent said that she would get that to
us right away and we talked to the VIS
supervisor and she informed us that we could
start services the next day for D█████████

Q     Okay, and did those services
start for the student?

A     Yes, they did.

Q     And what is your understanding of
the procedure in regards to providing home
instruction?

A     Well, I was informed that home
instruction is for students who are going to
be out of school for a long period of time
based on a medical condition, but once they
are free of that medical condition, they
must return back to school and then if they
need to go back to VIS services at a later

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

523

time, they must produce yet another medical document from the doctor saying that the child's condition has recurred and they must stay at home.  They can't come to school.

Q    And is the VIS program the only home instruction program that DCPS has?

A    That I'm aware of, yes.

Q    And this student was to receive home instruction through the VIS program. Correct?

A    Yes.

Q    Now at that meeting, was there a discussion of the psychological evaluation?

A    Yes, we discussed the current psycho-ed.

Q    And was there any discussion in regards to conducting a new psycho-ed?

A    No, we did not feel that there would be a change in disability.

Q    And why did the team feel that there would not be a change in disability?

A    Well, because he hadn't shown any

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

524

new symptoms or any signs of there possibly

being a new disability.

Q    Now -- And I'm referring to the

record where there is a psycho-ed report

which is dated 08/02/03.  Is the school

going to conduct a triennial in regards to

that evaluation?

A    Yes.

Q    And when is the school planning

to conduct that triennial evaluation?

A    Well, we informed the parent that

if Desmond would come to summer school here

at -- because we were holding it here at

Thurgood Marshall that he could be tested

over the summer.  But Mom informed us that

he would not be available to come to school

due to a medical condition and that testing

could begin at the start at the new school

year.

HEARING OFFICER BUTLER-TRUESDALE:

I'm so sorry.  I got a little lost.  The

triennial that exists now was written when?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

525

I'm sorry.  The psycho-ed that exists now?

        MS. PUCKETT:  8-2-03.

        HEARING OFFICER BUTLER-TRUESDALE:

8-2-03.

        MS. PUCKETT:  And she was

referring to the May meeting when she

indicated that they didn't need to do

another at that time.

        HEARING OFFICER BUTLER-TRUESDALE:

Okay.

        DIRECT EXAMINATION (Cont'd.)

        BY MS. PUCKETT:

    Q    And you indicated that -- Who

indicated that the evaluation would be done

when school starts?

    A    We had our psychologist there at

the meeting and she said that she could test

him when he returns back to school.

    Q    Okay, and if a student does not

return back to school come Monday, what is

the school going to do in regards to that

psycho-ed evaluation?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

526

A    It depends on why he's not coming back to school.  If it's due to a medical condition because VIS services are not offered in the summer, the parent would have to reapply with a medical document from her doctor saying that he still cannot return to school so that services can begin and then we will make arrangements.  If VIS services are granted, we will make arrangements for testing to be done in the home.

Q    And do you have a current psychologist at the school who would be able to do the testing in the home?

A    Yes, ma'am.  Jennifer --

Q    Who is that?

(Telephone ringing.)

BY MS. PUCKETT:

Q    I'm sorry.  Who is that psychologist?

A    Jennifer Penn, P-E-N-N.

Q    Now was there a discussion of comp ed at that meeting?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

527

A      Yes, we did discuss comp ed.

Q      And was the student granted comp ed?

A      No, because we never received the document from the doctor stating that he's been sick all school year long because he's missed several days of school and we never received any doctor's notice stating why he didn't come to school and once we receive that notice, then we can grant comp ed.

Q      Okay, and did you ever indicated that the student would receive four hours a day for five weeks of comp ed services?

A      That he would or that he did?

Q      That he would receive it.

A      Over the summer, we said that if she brought him to school over the summer that we would give him those hours based on, excuse me, based on the HOD, the day we missed the HOD starting from January.  I'm sorry.  I forgot about that.

Q      And did the student attend over

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

528

the summer?

A    No, he did not.

Q    And so when will those comp ed hours be implemented?

A    Yes, we would have to implement those in the start of the school year.

Q    Now was the student eligible for ESY services?

A    No, he wasn't.

Q    Now also when was the last time you spoke with the parent regarding student services?

A    Now since that meeting.

Q    And is there another meeting scheduled for this student?

A    We will schedule a meeting at the start of the school year.  I will contact parent attorney or advocate to schedule a meeting.

Q    And what is the purpose of that meeting?

A    Well, to discuss implementation

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

529

of the comp ed and to discuss testing for
the triennial.

Q    Okay, and at the March 23rd
meeting, did you indicate that you would
have a meeting over the summer regarding
this student?

A    I recall us saying that we would
wait until the beginning of the school year.
I'm not sure.

Q    Now is the school able to
implement the student's IEP if he does
return to Marshall?

A    Yes, we are.

Q    And who specifically will be
implementing that IEP?

A    The special education and the
general education teacher as well as service
provider.

Q    And who is the service provider
that will be providing services to this
student?

A    The speech and language teacher

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

530

is Jennifer Williams.

Q    And does this student currently
have a classroom assigned to him for special
ed?

A    Yes, Ms. Aremo is the special
education teacher.  It's "Pull-out."  It's
not all day.  He doesn't need services all
day.

Q    Okay, and the hours that are on
his IEP, how will she provide those hours
and what type of setting?

A    In a self-contained classroom.
She'll pull him from his classroom as well
as we do the inclusion model here now.  So
the teacher not only will pull but she would
also team-teach in the classroom with his
teacher.

Q    And is that the special ed
teacher for this student last year?

A    Yes, Ms. Aremo.

Q    And is she familiar with the
student's needs as well as health concerns?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

531

A    Excuse me?

Q    Is she familiar with the student's needs as well as his health concerns?

A    Oh, yes.  She's very familiar with Desmond.  She's taught him for several years now.

Q    Now specifically at that May 23rd meeting when the team determined that there was no need for a new evaluation at that time, was the psychologist there?

A    Yes.

Q    And did the psychologist discuss why there was no need for a psycho-ed?

A    Yes, because based on the teacher reports and observations that were conducted when he was in school, there didn't seem to be a change in disability.  There didn't appear to be a change.

Q    And does the team -- Did the team know that the evaluation would need to be due in August, I mean, August of this year?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

532

A    Yes.

MS. PUCKETT:  I have no additional questions for Ms. Batson.

HEARING OFFICER BUTLER-TRUESDALE: Cross.

MS. JESSICA SMITH:  Hi, Ms. Batson.  This is Jessica Smith, the attorney for the parent.

THE WITNESS:  Good morning.

MS. JESSICA SMITH:  Good morning.

CROSS EXAMINATION

BY MS. JESSICA SMITH:

Q    I want to ask if you can clarify for me about the VIS services.  You stated that each time it's reapplied for with a doctor's certificate and then once the student returns to school, if he's healthy enough, those services will stop and need to be reapplied for.  Is that correct?

A    Yes.  Once the services end.

Q    Okay.

A    So that means if the doctor has

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433         WASHINGTON, D.C.  20005-3701         (202) 234-4433

533

specifically said how long the child would
need to be away from school.  So if the
doctor writes five weeks, you get VIS
services for those five weeks and then they
end and the child returns to school.  Well,
if there would be a relapse in the
condition, then the parent would have to
reapply with another doctor's note stating
how long the child will be out of school and
then service will restart.  But each time
services end, in order for them to begin
again, you would need a doctor's note.  And
they have a form, a specific form, for you
to fill out from your doctor.

Q    Okay.  So, for example, in this
case with D█████with his chronic asthma,
say for example, he's out for five days,
comes back for five days and then again the
asthma occurs and he then can't again attend
school, it seems that this was a recurring
pattern over the school year.  So are you
saying that each time, possibly every week,

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

534

the parent would have to reapply?

A    If he has VIS services for a week and then that Monday he returns to school, if that following Monday he needs VIS services again, he would need another doctor's note.

Q    Okay, and are VIS services always implemented for a specific period of time, for example, like you said five weeks, if you know the student is going to be out for five weeks?

A    Oh no.  I just used that as an example.  If the doctor says this child will be out the entire school year, then they will receive VIS services for the entire school year.

Q    Well, do you know what happens if a student has a chronic, reoccurring problem and they don't know how long they'll be out for?  How does that work?

A    That I do not know.

Q    You stated that in order for

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C. 20005-3701        (202) 234-4433

535

Desmond to receive the comp ed that the team

had agreed on over the summer that he was

going to have to attend the summer school

site.  Correct?

     A    Say that again.  I'm sorry.

     Q    Sorry.  You stated that D█████████

to receive the comp ed plan that the team

agreed on over the summer he would have to

attend the summer school site.  Is that

correct?

     A    Right.

     Q    Okay.  You also stated that you

did not receive the documentation stating he

could not come to school for the summer.  Is

that correct?

     A    Correct, because we talked about

two separate needs for comp ed.  It was

based on the HOD that was in violation, also

the days missed because VIS services were

implemented.

     Q    Isn't it correct that the medical

documentation was submitted to the school

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

536

since the VIS services were being provided
in May and June already?

A    I never received a copy.

Q    You're stating that you never
received a copy of what?  The certificate of
--

A    The new -- I saw the old doctor's
note, but I never received the new doctor's
note.  The doctor's note I have is dated
2003.

Q    Okay, but Ms. Wilkins submitted
an updated form to VIS and those services
began in June.  Correct?

A    Correct, but I never received a
copy.  She may have given them to VIS, but I
don't have that.

Q    So in order for the comp ed plan
to have been implemented, is it correct in
saying that you would have needed to have a
copy of the medical form?

A    Yes.

Q    And then you would have sent a

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

537

tutor home for him?

A    No.

Q    Well, what would have been different if she submitted the medical form to you?

A    Well, then we could discuss comp ed due to the absences.

Q    Well, Ms. Batson, we had already discussed it at the meeting and determined that the four hours a day for five or six, five weeks would be appropriate.

A    Yes, would make up for the violation of the HOD, the January HOD, but not the absences after January.

Q    Okay.  I guess I'm a little confused.  The comp ed plan was -- The comp ed plan the team agreed on was going to be implemented over the summer.  That was the agreement of the team.  Correct?

A    Yes.

Q    Okay.  And Ms. Wilkins had stated at the meeting that she was hoping it could

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

538

be implemented at home since D██████ would

not be able to attend school due to illness.

Is that right?

A    Yes.

Q    And it was your position that he

would have to attend the summer school site

to receive those services.  Is that right?

A    Yes.

Q    Okay.  So if he -- If Ms. Wilkins

had submitted another medical form as you're

stating you didn't receive a medical form,

what would have changed I guess?

A    He would have received more

hours, but it still would have happened at

the school.

Q    So you're saying the comp ed plan

would have still had to be implemented at

the school.

A    Yes.

Q    And he would not have been able

to have homebound tutoring over the summer.

A    Not -- VIS services are not

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

539

available over the summer.

Q    Right.  That's my understanding
of VIS as well. But the school would not
have been able to implement some sort of
individualized plan to address D█████
needs.  Is that correct?

A    Not in the home.

Q    Okay, and you stated that the
team discussed the psycho-ed evaluation at
the meeting.

A    Yes.

Q    And isn't it true that the team
was discussing triennial evaluations that
were coming up, coming due?

A    Yes.

Q    And isn't it true that that
discussion included the psycho-ed which was
coming due?

A    Yes.

Q    And isn't it true that the school
stated they did not need to conduct the
psycho-ed since there was no change in

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

540

disability?

A    Yes.

Q    And isn't it true that the team
or DCPS never indicated that a
psychological, psycho-educational evaluation
would be conducted once the school year
started?

A    Yes.

MS. JESSICA SMITH:  I have no
further questions.

HEARING OFFICER BUTLER-TRUESDALE:
Redirect?

MS. PUCKETT:  Yes.

REDIRECT EXAMINATION

BY MS. PUCKETT:

Q    Ms. Batson, have you received any
doctor's letters or anything stating that
the student will not be able to attend
school in the fall?

A    No.  As a matter of fact, I've
seen Desmond outside around the school.  So
I figured that he has gotten better.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

541

Q    And how many times have you seen him outside around the school?

A    Since the summer began, I've seen him at least on two occasions, once outside front of the school and once at a store around the corner.

Q    But has anybody contacted you to tell you that he's going to continue to need the VIS services in the fall?

A    No, I have not received any calls concerning VIS services.

Q    Now you just indicated that there was no discussion that the evaluation be done since when school started at that last meeting. During the time that discussion occurred, was the student's psycho-ed evaluation still current?

A    Yes, it was still current during that meeting.

Q    And was that the reason it was not going to be conducted at that time?

A    Yes.  We were just preparing for

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

542

it because we knew that it was going to

happen over the summer.

MS. PUCKETT:  And -- I have no

additional questions.

HEARING OFFICER BUTLER-TRUESDALE:

Just a second.  Ms. Batson, if you'll just

give me a few seconds, I want to read over

my notes to make sure that I don't have any

questions about any of your testimony.

Okay?

THE WITNESS:  Okay.

(Pause.)

HEARING OFFICER BUTLER-TRUESDALE:

Okay.  I want to make sure I understand.

You're not aware of any process that would

accommodate a petitioner who needed VIS on

an as-needed basis with respect to chronic

reoccurring problems.  Right?

THE WITNESS:  Yes.  That's not

how VIS operates.  They don't do that.  They

specifically told me that they do not do

that.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

543

HEARING OFFICER BUTLER-TRUESDALE:

Okay.  So it requires constant

reapplication.

THE WITNESS:  Correct.

HEARING OFFICER BUTLER-TRUESDALE:

All right.  Now I'm just a little bit

confused about the comp ed.  You said that

we were -- DCPS was prepared to offer the

compensatory education but he had to come to

school.  Right?

THE WITNESS:  Yes.

HEARING OFFICER BUTLER-TRUESDALE:

Okay, and you, in fact, have never received

any medical documentation from the

Petitioner regarding the disability.  Right?

THE WITNESS:  Never received

that.

HEARING OFFICER BUTLER-TRUESDALE:

Okay.  Because I think my old notes are in

the file and I know I spoke with you at the

last hearing and I remember that there was a

truancy issue involved here.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

544

THE WITNESS:  Yes.

HEARING OFFICER BUTLER-TRUESDALE:
And that the mother, there were new
documents that were requested of the mother.

THE WITNESS:  Yes.

HEARING OFFICER BUTLER-TRUESDALE:
Okay.  So something must have been on file
that they were -- if you all were telling
her
that the older documents would not satisfy
the truancy officer.

THE WITNESS:  Yes, that -- the
only documents we have were dated 2003.

HEARING OFFICER BUTLER-TRUESDALE:
Okay.  So we had -- I'm sorry.  I keep
saying "we."  But DCPS initiated VIS on 2003
documents.

THE WITNESS:  No.  They said to
the parent that they will start the services
on tomorrow but she had to fax to them
immediately a new document from the doctor.

HEARING OFFICER BUTLER-TRUESDALE:

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

545

And you would assume that that was received

because services were started. But they were

not --

THE WITNESS: Yes. I -- his

tutor. She came up to the school and she got

work from the teacher and talked to me about

him. So I assumed that the parent did get

that together.

HEARING OFFICER BUTLER-TRUESDALE:

And shouldn't those documents have been

forwarded to you since you were the

requesting  SEC coordinator for those

services?

THE WITNESS: No.

HEARING OFFICER BUTLER-TRUESDALE:

Why not?

THE WITNESS:  I don't know.

HEARING OFFICER BUTLER-TRUESDALE:

You don't know why they should have been

forwarded to you?

THE WITNESS:  I don't know why

they weren't forwarded to me.  They should

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

546

have been forwarded to me.  I don't know why
they haven't.

HEARING OFFICER BUTLER-TRUESDALE:
Okay. My question was -- My question was
shouldn't they have been forwarded to you
since you were the requesting SEC?

THE WITNESS:  Well, VIS doesn't
have any obligation to show that to me.  No.
But the parent should have given it to me
for the student file.

HEARING OFFICER BUTLER-TRUESDALE:
Okay.  And if she had given it to you for
the student's file, that would have yielded
what?  It wasn't going to yield comp ed over
the summer.  What was it going to yield?

THE WITNESS:  Well, we were able
to discuss -- he had several absences and we
would be able to discuss whether or not we
should add additional comp ed.

HEARING OFFICER BUTLER-TRUESDALE:
Well, if the child can't come to school for
comp ed, what difference does it make if you

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

547

add additional comp ed?

THE WITNESS:  Well, because he could have it -- He can't have it over the summer, but the comp ed could be implemented as soon as the school year began and VIS services can reoccur.

HEARING OFFICER BUTLER-TRUESDALE: I see.  So comp ed could have been given at home --

THE WITNESS:  Yes.

HEARING OFFICER BUTLER-TRUESDALE: -- through VIS after school started.

THE WITNESS:  Yes.  We were just telling her that over the summer they don't offer it.  But he is welcome to come to school.

HEARING OFFICER BUTLER-TRUESDALE: At the meeting when you all reviewed or came up with a comp ed plan, was that discussed?

THE WITNESS:  Yes.

HEARING OFFICER BUTLER-TRUESDALE: And the need for the doctor's form in order

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

548

to implement a comp ed plan after the school
was discussed?

THE WITNESS:  Yes.

HEARING OFFICER BUTLER-TRUESDALE:
And so the parent was on notice that she
needed to submit that doctor's report for
compensatory education that would be
rendered during the school year.

THE WITNESS:  Yes.  And also we
told her that she needed to give a copy to
the truancy officer to straighten his
record.

HEARING OFFICER BUTLER-TRUESDALE:
And where is that in the meeting notes?

THE WITNESS:  It should be there
because we did discuss it.

HEARING OFFICER BUTLER-TRUESDALE:
Do you have the meeting notes with --

THE WITNESS:  Also the truancy
officer came and spoke to the parent at the
meeting.

HEARING OFFICER BUTLER-TRUESDALE:

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

549

Do you have your meeting notes with you?

THE WITNESS:  No, I don't.

HEARING OFFICER BUTLER-TRUESDALE:
Do you know where that is in the meeting
notes?

MS. PUCKETT:  I don't know that
we specifically talked about the truancy
officer --

MS. PUCKETT:  I don't think it
does.

HEARING OFFICER BUTLER-TRUESDALE:
Does it discuss compensatory education being
rendered in school year 2006-2007?

MS. JESSICA SMITH:  No.  If I may
respond.  What -- This goes back to the two
team meetings that I was talking about.  We
had discussed meeting after the comp ed was
implemented over the summer to assess his
present levels to see if more would be
warranted and that's where the discussion
took place.

HEARING OFFICER BUTLER-TRUESDALE:

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

550

Okay.

MS. PUCKETT:  And I think Ms.
Batson was saying that if they would provide
additional documentation she could have used
that to determine if he needs more comp ed
than what they gave him already and at that
meeting what they granted at that meeting
because based on the documentation --

HEARING OFFICER BUTLER-TRUESDALE:
So the miscommunication, because I'm
assuming that this is some miscommunication,
was about when the compensatory education
services could be rendered.  Is that
correct?

MS. PUCKETT:  Yes.  Our school --

HEARING OFFICER BUTLER-TRUESDALE:
The mother and Petitioner left thinking that
there was some possibility that these comp
ed hours would be rendered during the summer
and I gather the SEC coordinator is trying
to testify to me that no it was clear during
this meeting that this discussion was about

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

551

comp ed that would be rendered during the

2006-2007 school year.

     MS. PUCKETT:  She said that if he

comes to school for the summer than he could

get the comp ed at the school for the

summer.

     HEARING OFFICER BUTLER-TRUESDALE:

I see.

     MS. PUCKETT:  But if he wasn't

going to come to school, then the comp ed

would need to be started in the fall because

VIS can't do the tutoring as well as the

comp ed at the same time.

     HEARING OFFICER BUTLER-TRUESDALE:

Is there any indication of that, of it being

as clearly explained as you just did to me

in the meeting notes?

     MS. PUCKETT:  I don't think it's

explained like that in the meeting notes.

     THE WITNESS:  I do remember

writing the VIS isn't available in the

summer.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

552

(Off the record discussion.)

THE WITNESS:  And I do remember talking to the parent about that.

HEARING OFFICER BUTLER-TRUESDALE: You said you do remember writing that VIS is not available in the summer.

THE WITNESS:  Yes.

(Off the record discussion.)

THE WITNESS:  I know we discussed it.

MS. JESSICA SMITH:  On page three of five, it states here "The VIS..."  Well, this isn't exactly accurate.  "Parent and advocate are willing to skip comp ed if DCPS offered visiting instruction during the summer."  It was supposed to be "as comp ed," not "skip comp ed."  But "DCPS in good fate cannot make that agreement at the local school. They'll offer comp ed during the summer four hours a day, five days a week at the summer school site."

MS. PUCKETT:  Which includes --

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

553

And I think it's pretty clear.  I mean that's basically essentially what she's saying that they will offer it at the school site.  But the student can't receive VIS as well as comp ed at the same time.

MS. JESSICA SMITH:  And that's the problem I think because the student obviously has a medical condition.  It's on his IEP now.  There is plenty of documentation indicating that when he has these chronic problems, this asthma-related absences affect his education.

HEARING OFFICER BUTLER-TRUESDALE: See.  I thought though when I left here on the 24th that the mother was going to be taking documents to the SEC coordinator at the meeting which was being held the next day.

MS. JESSICA SMITH:  She took the 2000 -- And I think rebuttal documents were entered into evidence at that time in which Ms. Batson had left I think it was a voice

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

554

mail or something stating that the documents from 2003 were sufficient and then when we got --

HEARING OFFICER BUTLER-TRUESDALE: I remember that testimony.

MS. JESSICA SMITH:  And then when we got to the meeting, she said, "No, they're not sufficient.  We need updated ones."  She gave a form to the mom.  The mom filled it out and then --

MS. PUCKETT:  That's not --

HEARING OFFICER BUTLER-TRUESDALE: Wait.  All that happened.  That happened prior to the May 24th hearing.

(Off the record discussion occurring at the same time.)

MS. JESSICA SMITH:  Oh.  I'm talking --

HEARING OFFICER BUTLER-TRUESDALE: So I'm trying to figure out --

MS. JESSICA SMITH:  No, I'm talking about --

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

555

HEARING OFFICER BUTLER-TRUESDALE:

No.  Well, I know that that happened prior

to the May 24th meeting because I have notes

regarding that discussion.

MS. JESSICA SMITH:  Okay.

HEARING OFFICER BUTLER-TRUESDALE:

That was proffered to me by Mr. Houston.

MS. JESSICA SMITH:  Right.  I'm

talking about --

HEARING OFFICER BUTLER-TRUESDALE:

So I know that fact pattern.  I agree with

that fact pattern.

MS. JESSICA SMITH:  Okay.  I'm

talking about the meeting that took place

the day after the hearing.

HEARING OFFICER BUTLER-TRUESDALE:

Okay.

MS. JESSICA SMITH:  I apologize.

I don't know.  I wasn't at the resolution

meeting.

HEARING OFFICER BUTLER-TRUESDALE:

What I'm saying is I thought that hearing

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

556

was on the 23rd.

MS. PUCKETT:  Twenty-second.

HEARING OFFICER BUTLER-TRUESDALE:
Twenty-second.  I'm sorry.  So I thought
that on the 23rd mom was going to proffer
these medical documents to the SEC
coordinator at the hearing.  That didn't
happen?

MS. JESSICA SMITH:  Proffer which
medical documents?

HEARING OFFICER BUTLER-TRUESDALE:
I mean not the hearing.  At the meeting.

MS. PUCKETT:  And I was there,
too and my understanding and Ms. Batson's
understanding was after that hearing that we
would receive some type of medical
documents.  Sharpe Health received some
documents, but I don't believe Ms. Batson
ever received any of the documents.  I know
she needed those documents to update the
student's truancy records as well.

MS. JESSICA SMITH:  Well, at the

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

557

IEP meeting, she stated that we had to

submit, the parent had submit, the updated

documents.  She gave her the blank forms to

fill out and gave a fax number to send it to

and that's where the parent sent it which is

what in turn triggered the VIS services

starting.

HEARING OFFICER BUTLER-TRUESDALE:

All right.

MS. JESSICA SMITH:  That's the

last page of the notes that she should send

it to Lagrand (phonetic) Lewis.

HEARING OFFICER BUTLER-TRUESDALE:

Okay.

MS. PUCKETT:  I mean DCPS

(Inaudible) I understand that the comp ed,

we granted comp ed.  The comp ed could not

be implemented this summer because the

student cannot receive both services at the

same time.  The student does not have the SY

services, so he's not supposed to receive

any services this summer.  So I'm trying to

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

558

figure out where --

HEARING OFFICER BUTLER-TRUESDALE:

He couldn't receive both services at the

same time.  You said during the summer?

MS. PUCKETT:  During the summer,

they said they couldn't provide him with the

comp ed and the VIS at the same time.

HEARING OFFICER BUTLER-TRUESDALE:

No, they said they couldn't provide him with

VIS during the summer and they weren't going

to provide him with comp ed at home.

MS. PUCKETT:  But they provide

him with VIS services.

HEARING OFFICER BUTLER-TRUESDALE:

Not during the summer.

MS. JESSICA SMITH:  Before the

summer started.

MS. PUCKETT:  They provided him

with VIS services from, I believe, May until

--

HEARING OFFICER BUTLER-TRUESDALE:

Until the close of school.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

559

MS. PUCKETT:   Yes.   The student

was not eligible for any ESY services.

HEARING OFFICER BUTLER-TRUESDALE:

Right.

MS. PUCKETT:   The comp ed could

not be implemented over the summer because

it needs to be implemented at the school at

that time, but we have implemented a comp ed

plan at this point and I'm trying to just

find out --

HEARING OFFICER BUTLER-TRUESDALE:

When?   If it couldn't be implemented during

the summer.

MS. PUCKETT:   No, but I'm saying

that if they have a comp ed plan that we

have to implement it.

HEARING OFFICER BUTLER-TRUESDALE:

Okay.

MS. PUCKETT:   So I'm trying to

figure out where is the fate denial with

this student.   I understand we're hearing

that the parent has concerns but where is

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

560

the denial for a student that you just

ordered us to do some stuff.  Summer started

right after your order.  So I'm trying to

figure out what new has happened with this

student that will warrant a denial of faith

ruling in this case especially for a student

who has not been found eligible for ESY

services.  We have a comp ed plan for the

child --

HEARING OFFICER BUTLER-TRUESDALE:

Okay.  Triennial wasn't due.

MS. PUCKETT:  It wasn't due until

after this hearing and a complaint was

filed.

HEARING OFFICER BUTLER-TRUESDALE:

Okay.

MS. PUCKETT:  At the time this

was filed it was not due.

HEARING OFFICER BUTLER-TRUESDALE:

And comp ed plan couldn't be implemented.

Right?

MS. PUCKETT:  No.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

561

HEARING OFFICER BUTLER-TRUESDALE:
Home school was -- Home school instruction
was rendered.

MS. PUCKETT:  Yes.

HEARING OFFICER BUTLER-TRUESDALE:
All right.

MS. PUCKETT:  What's new?

HEARING OFFICER BUTLER-TRUESDALE:
What's new is somehow the parent is, I
think, indicating that they were under the
assumption that some compensatory education
would be rendered during the summer.

MS. PUCKETT:  But how is that a
denial of faith?  You have a comp ed plan
that needs to be implemented in the fall.
We said we couldn't do it in the summer.  We
granted the hours.  So this --

HEARING OFFICER BUTLER-TRUESDALE:
I'm just trying to figure out why they -- It
appears to me, and maybe I'm lost, but it
appears to me that the parent left that
meeting thinking that there was going to be

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

562

some compensatory education over the summer
and that that's one of the allegations on
the current complaint.

MS. PUCKETT:  But we put in the
meeting notes that we can provide this comp
ed at the school site over the summer.  We
never said in there --

HEARING OFFICER BUTLER-TRUESDALE:
But they're saying that the HOD has been
violated because a compensatory education
plan has not been implemented that they were
expecting to be initiated during the summer.
Do I have that right or am I lost?  Because
if I'm lost, I want to get back on the same
side of town that you all are on.

(Off the record discussion taking
place at same time.)

MS. JESSICA SMITH:  It's correct,
but I'm just going to modify it because I
think --

MS. PUCKETT:  I don't think you
can modify the point in the --

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

563

MS. JESSICA SMITH:  Not modify
the complaint.  Modify her understanding of
what our allegation is.

MS. PUCKETT:  Okay.

MS. JESSICA SMITH:  That's why
I'm going to read what I actually put.  "To
fund the compensatory education agreed to by
the team."  Compensatory education is
supposed to make up for all the services
that he had missed during the '05-'06 school
year and the team agreed upon that.  The
parent requested that it be implemented at
home because of his chronic asthma related
absences.  He cannot go to school.

We had this entire long
discussion about his asthma problems that he
can't go to school especially in the summer
and in the spring when the pollen, the heat,
really affect him.  In the winter, fall,
he's much better but especially in the
summer.  So we asked for DCPS to send a
tutor home during the summer so that the

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C. 20005-3701        (202) 234-4433

564

comp ed plan could be implemented over the summer and that was not done. They stated, "No again. He has to come to the school site." It was just constant.

HEARING OFFICER BUTLER-TRUESDALE: So where in IDEIA will I find guidance about a school district not being able to implement compensatory education over the summer and that equate into a denial of faith?

MS. JESSICA SMITH: Well we --

MS. PUCKETT: You're not going to find it in --

HEARING OFFICER BUTLER-TRUESDALE: Let her answer the question please.

MS. JESSICA SMITH: I mean in the law I don't think it's stated in the statute anywhere. If you refer to the meeting notes where it's stated that "four hours a day, five weeks over the summer." I mean that was the plan the team came up with that the comp ed would be implemented during the

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

565

summer because as you stated, he's not
eligible for ESY.  So he wouldn't be getting
any --

HEARING OFFICER BUTLER-TRUESDALE:
Okay.  So there is something stated in the
MDT meeting notes where DCPS is stating that
they will provide compensatory education to
him over the summer?

MS. PUCKETT:  On the school site.

MS. JESSICA SMITH:  Conditioned
on --

MS. PUCKETT:  It doesn't say over
the summer.

MS. JESSICA SMITH:  Conditioned
on --

HEARING OFFICER BUTLER-TRUESDALE:
Okay. Now if they said at the summer site
then they at the meeting -- Does that mean
that they at the meeting denied the parent's
request to complete the services at home
during the summer?

MS. JESSICA SMITH:  Yes.

NEAL R. GROSS
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

566

HEARING OFFICER BUTLER-TRUESDALE:

Okay.  And if they denied to complete

services at home during the summer, where am

I going to get the guidance that that is a

denial of faith that they could not

implement the compensatory education hours

over the summer?

MS. JESSICA SMITH:  Well, it was

never explained to the parent as Ms. Puckett

explained before that the plan would start

in the fall.  It's not in the notes

anywhere.  It was never conveyed to the

parent that "We're sorry we can't provide

VIS or home tutoring in the summer, but you

know what?  We'll give you the comp ed once

school starts."  That was never stated.  It

was only stated --

HEARING OFFICER BUTLER-TRUESDALE:

That's nowhere in the notes?

MS. PUCKETT:  No, but that's not

a denial of faith.  But it clearly says in

there that we will provide four hours of

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

567

comp -- It says specifically "the parent and

advocate are willing to skip comp ed if DCPS

offers visitation services during the

summer."

    MS. JESSICA SMITH:  That's home

services.

    MS. PUCKETT:  Okay.  "Or any type

of tutorial services.  DCPS in good fate

cannot make that agreement at the local

school.  DCPS will offer comp ed during the

summer for four hours a day for five weeks

at the summer school site."

    There is no -- DCPS is not

required by law or case law to do what the

parent requests us to do, Ms. Truesdale.

We're required to provide (Inaudible) and

the reality is case law indicates that comp

ed is not an issue.  It's a remedy.  The

student received a remedy of comp ed in your

last HOD.  We have put down that this

student is warrant to comp ed which we have

to implement.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

568

My special ed coordinator said that we did not implement it this summer because it was supposed to be done at the school site.  The student couldn't come to the school site.  That the comp ed plan would have to be implemented in the fall.  So the remedy that they received in your last HOD will be implemented in the fall.  The law is clear that comp ed is not an issue in a hearing request.

HEARING OFFICER BUTLER-TRUESDALE: No, but --

MS. PUCKETT:  Comp ed is not an issue and that's my thing.  Where is the new denial of faith?

MS. JESSICA SMITH:  The new denial of faith --

MS. PUCKETT:  -- on a student --

HEARING OFFICER BUTLER-TRUESDALE: Let her answer your question.

MS. PUCKETT:  -- on a student who is not ESY eligible.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

569

HEARING OFFICER BUTLER-TRUESDALE:

Let her answer the question.

MS. PUCKETT:  He's not ESY --

HEARING OFFICER BUTLER-TRUESDALE:

Let her answer the question.

MS. PUCKETT:  Sorry.

MS. JESSICA SMITH:  The denial of

faith, and I can refer you to the law, is

not on the comp ed issue itself.  I don't

disagree about that he's owed comp ed.  The

team agreed.  We agreed on a plan.

The issue is his placement.  The

issue is that he needs homebound instruction

and under the law, the new regulations CFR

Section 339 indicate that special ed

includes "instruction conducted in the

classroom, in the home, in hospitals, in

institutions and other settings."

Additionally, 300.115 states that the LEA

must provide the continuum of alternative

placements which includes home instruction

and the student is in need of home

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

570

instruction.  How can he be availing himself

of a comp ed plan when he cannot get to

school because he's having asthma attacks?

This is the whole problem.

MS. PUCKETT:  We're not -- I

don't understand that, too, Ms. Truesdale.

But we're not saying the child does not need

home instruction.  Once we had the meeting,

we provided the home instruction.  The

student does not have ESY on his IEP.  He

was not eligible for home instruction over

the summer.

If the student does not come to

school on Monday, then the student will be

eligible once again for VIS services.  So

we're all on the same page here.  But how

can you allege that something that happened

over the summer in regards to home

instruction is a violation when there is no

ESY on this child's IEP?

He has a comp ed plan that will

be implemented in the fall.  He received

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

571

home instruction right after that meeting

occurred.  VIS is here today to testify that

he received those services and as long as

the parent provides a new document saying,

"My child cannot come to school in the fall

or for an extended period of time" that this

teacher right here will continue to provide

this student with services.  They already

said they were very satisfied with the

services that this child was receiving.

What else are we supposed to do?  Where is

the new denial of faith?  Where is the new

denial of faith if this is the summertime on

a child that does not have EYS services?

Where is it?

          We all know he needs home

instruction.  That was why we were here the

last time.  My school is saying that once

they get the documentation from the parent

that was provided, I guess, to VIS that they

will come back to the table and discuss if

he's warranted to any additional comp ed

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433                    WASHINGTON, D.C.  20005-3701                    (202) 234-4433

572

based on some of the truancies, some of the
absences, that we have that we don't have
doctor's notices and things of that nature
for.  But where is his -- What additional
remedy can you provide him today?

MS. JESSICA SMITH:  The
additional remedy that she can provide is to
add to his IEP something other than VIS.
VIS is not an appropriate long-term
solution.  Ms. Batson testified that she is
going to have to reapply every single time
that he is sick.  It's not an as-needed --
on an as-needed basis and the IDA provides
and calls for an individualized education
plan.  His individualized needs call for --

HEARING OFFICER BUTLER-TRUESDALE:
Let's go back to your hearing request.
Which?

MS. JESSICA SMITH:  Number five.

HEARING OFFICER BUTLER-TRUESDALE:
Number five.  Okay.  Now if this is a
placement issue, where is that in the

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

573

allegations?

MS. JESSICA SMITH:  The homebound
instruction portions.

HEARING OFFICER BUTLER-TRUESDALE:
Which allegation?  I'm on section three.

MS. JESSICA SMITH:  Oh, you're on
the allegations.

HEARING OFFICER BUTLER-TRUESDALE:
I see "failing to convene an appropriate
IEP," "failing to implement IEP," "failing
to draft appropriate IEP," "failing to" --

MS. JESSICA SMITH:  That's what
we're talking about.  When I say number
three, drafting an appropriate IEP and if
you look at my release under three Lease,
paragraph 10 indicates a plan that the
Petitioner had suggested an alternative to
the VIS since it can't be implemented.

HEARING OFFICER BUTLER-TRUESDALE:
No.  I'm going to let you make your record,
but the allegations are in section three of
your complaint.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433            WASHINGTON, D.C. 20005-3701            (202) 234-4433

574

MS. JESSICA SMITH:  Yes.

HEARING OFFICER BUTLER-TRUESDALE:

They read "(1) failing to convene an

appropriate IEP" and it goes on; "(2)

failing to implement Petitioner's IEP" and

it goes on; "(3) failing to draft an

appropriate IEP" and of course there's an

explanation; "(4) failing to come up with an

appropriate compensatory education plan."

Well, wait a minute.  Let me read this one,

"given his medical condition and inability

to physically at school."  I'm sure you mean

"attend school."

MS. JESSICA SMITH:  Yes.

HEARING OFFICER BUTLER-TRUESDALE:

That's arguable.  We can discuss some part

of placement under there.  But then five is

"failing to agree to conduct a psycho

educational."

MS. JESSICA SMITH:  And on number

--

HEARING OFFICER BUTLER-TRUESDALE:

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

575

Let me finish.  Now if this hearing is
actually about placement, then where is DCPS
put on notice that what we're talking about
is placement in that the condition of the
Petitioner requiring something other than
visiting home instruction and that visiting
home instruction is inappropriate for this
Petitioner?  Where is that allegation?

        MS. JESSICA SMITH:  I believe
that is covered under No. 3, "denial of
faith by failing to draft an appropriate IEP
that will meet his needs when he is unable
to attend school due to his medical
condition."

        HEARING OFFICER BUTLER-TRUESDALE:
I disagree with you.  I think that is
incredibly expansive and if I accept that as
notice that there is -- that the complaint
is about placement, I would have to accept
that it could be about special services,
related services.

        MS. JESSICA SMITH:  Well, let me

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

576

clarify it.  Placement, it's not that we're

seeking a different placement other than

Marshall for the times when he is healthy

and able to attend school.  We're not

disputing that.  We're not challenging that

placement at this point.

What we're challenging is on his

IEP creating a plan, a plan of action, that

when he is unable to attend school, his

placement, that he be provided the homebound

instruction and since it was explained to us

at the IEP meeting that the VIS services are

on, as you had stated, not on an as-needed

basis we had said that's not appropriate for

him because how the mom --

HEARING OFFICER BUTLER-TRUESDALE:

Now where in the notes is there a discussion

of VIS being inappropriate?

MS. PUCKETT:  Nowhere, but you

will see that it says Desmond is in need of

VIS.  He has already been signed up, but the

student will only be given VIS during the

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

577

school year.

MS. JESSICA SMITH:  Right, and if you look on page four it states "Ms. Batson's scope of VIS, Visiting Instruction Services, are Sharpe Health.  VIS indicated the homebound tutoring is only available during the school year, not during the summer and the homebound tutoring will stop and have to be reapplied for each time if he attends the school once he's better."  And that's where our disagreement lies.

HEARING OFFICER BUTLER-TRUESDALE: Okay, and where in the notes does it indicate that the parent communicated to DCPS that they considered that to equate to an inappropriate  placement?

MS. JESSICA SMITH:  I don't know if it's stated exactly in the notes that way.  But I know it was indicated by the parent at the meeting to the team.  The parent did agree to avail herself of the VIS services because it was pretty much the only

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433       WASHINGTON, D.C.  20005-3701       (202) 234-4433

578

thing available at that time.

HEARING OFFICER BUTLER-TRUESDALE:
I understand that.

MS. JESSICA SMITH:  We basically
are looking for, as I said, a plan that can
be implemented on an as-needed basis.

HEARING OFFICER BUTLER-TRUESDALE:
And I understand that there's a gap between
-- There appears to be a gap between what
DCPS is offering and what you're saying your
Petitioner needs.  What I'm trying to
determine is where in that, what time was
DCPS put on notice that the parent
considered this gap to be a denial of faith
because I'm not quite --

MS. JESSICA SMITH:  The VIS
services a denial of faith?  I mean I
believe it's stated in my --

HEARING OFFICER BUTLER-TRUESDALE:
The gap.  That the gap between what VIS
could render and what Petitioner needs.

MS. JESSICA SMITH:  If I may have

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

579

a minute to look for --

HEARING OFFICER BUTLER-TRUESDALE:
Yes.

(Pause.)

MS. JESSICA SMITH:  Okay.  On
page three at the bottom.

HEARING OFFICER BUTLER-TRUESDALE:
And that's five.  Right?

MS. JESSICA SMITH:  Yes.

HEARING OFFICER BUTLER-TRUESDALE:
Okay.  Five, page three.  Yes.

MS. JESSICA SMITH:  In the last
paragraph, it talks about the VIS services
and how they're only appropriate on an
interim basis for students, for example, who
are going to be out for five weeks because
they broke their leg or something like that,
whereas Desmond needs it on a continuous
basis.

MS. PUCKETT:  Where are you at?

MS. JESSICA SMITH:  The last
paragraph, page three.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

580

MS. PUCKETT:   In your complaint, you're talking about?

MS. JESSICA SMITH:  Yes.

MS. PUCKETT:  You're talking --
Okay.

MS. JESSICA SMITH:  The very last sentence states, "Petitioner agreed she would submit the paperwork for VIS since it was the only option presented by DCPS but insisted that this was not enough for Desmond."  I believe that addresses the gap that you're talking about.

HEARING OFFICER BUTLER-TRUESDALE: And you place that in the second part, "events occurring after the hearing"?

MS. JESSICA SMITH:  Yes, because if you'll recall all the time line were a little --

HEARING OFFICER BUTLER-TRUESDALE: This was a part of your status report and motion for expedited hearing.

MS. JESSICA SMITH:  Correct.  My

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

581

motion for expedited hearing is with the
allegations arising --

MS. PUCKETT:  -- specific
complaint notice that was filed.

HEARING OFFICER BUTLER-TRUESDALE:
Now this is -- Here's where I'm getting
hooked up and this is a procedural hook-up.
We may be able to get around it.  But my
order was a final order and I typically ask
for status reports on interim orders.
Occasionally I'll ask for one on a final
order, but I did not ask for interim report
on this final order and it was a final
order.  So the fact that this is clearly
stated in the motion for expedited hearing
and status report, I'm not -- I don't know
that that is notice that this is an issue to
DCPS because first of all, this is a post
hearing motion on a matter that is closed.

MS. JESSICA SMITH:  Correct, but
can I explain?

HEARING OFFICER BUTLER-TRUESDALE:

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

582

Yes.

MS. JESSICA SMITH:  Okay.  What happened was after we had the meeting which was the day after the hearing we realized that the issues were not resolved and we waited for your HOD to come out which was maybe a week later to see what it would say to then go from there.  We were hoping by filing it, the motion of expedited hearing, we could get this resolved prior to the school year starting.

Additionally, I sent it not only to attention to you and I apologize that the status report portion of it probably should not have been titled that since you issued a final order.  It probably should have been titled "Motion for Expedited Hearing" but it was also sent to Chief Hearing Officer Smith as well as Ms. Puckett and as well as yourself as Ms. Puckett and I had discussions hoping you would retain jurisdiction since you had had heard this

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

583

matter twice before or heard --

HEARING OFFICER BUTLER-TRUESDALE:

Okay.  So I needed a motion for

reconsideration because this was dated June

2nd.  My order was dated June 2nd.  I don't

have an issuance date on this because this

was the copy that went in the file.  I would

assume this is --

MS. JESSICA SMITH:  June 2nd.

HEARING OFFICER BUTLER-TRUESDALE:

It was date-stamped at 3:05 p.m. that it

probably was issued by the Student Hearing

Office on June 2nd or June 3rd if that was a

business day.

MS. JESSICA SMITH:  It's June

2nd.

HEARING OFFICER BUTLER-TRUESDALE:

Okay.  But this, your status report and

motion for expedited hearing, is dated June

27, 2006.

MS. JESSICA SMITH:  Correct.

HEARING OFFICER BUTLER-TRUESDALE:

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

584

Okay.  Which is some time after I issued the order.

MS. JESSICA SMITH:  Right.  We had waited the 14 days that was in your order to see if DCPS could reconvene.  Since we already had the meeting and your HOD came out after the meeting --

HEARING OFFICER BUTLER-TRUESDALE: Well, you knew it was going -- We knew that it was going to happen.

MS. JESSICA SMITH:  Right.

HEARING OFFICER BUTLER-TRUESDALE: We were sitting in the room.

MS. JESSICA SMITH:  Right. Ordering them to convene the meeting.  I sent a letter to Ms. Batson explaining things.  The HOD came out.  As you know, we already had the meeting.  This is the parent's position.  This is DCPS's position. If DCPS's position has changed, let's convene another meeting.  Another meeting wasn't convened.  After the 14  days passed

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

585

is when I filed the motion for expedited

hearing.

        HEARING OFFICER BUTLER-TRUESDALE:

This should have been a new hearing request.

        MS. JESSICA SMITH:  I apologize

for that.

        HEARING OFFICER BUTLER-TRUESDALE:

Okay.  Here's where I am now so that I'm

adhering to due process rights on both sides

of the table.

        MS. JESSICA SMITH:  Well, can I

also note for the record that the motion for

expedited hearing was granted by Chief

Hearing Officer Smith and was scheduled.

        PARTICIPANT:  I thought there was

a new hearing -- Didn't you do a response?

        MS. JESSICA SMITH:  No.

        MS. PUCKETT:  They created a new

file.

        HEARING OFFICER BUTLER-TRUESDALE:

I did not get a new file.  I'm working with

the same old file which is why my notes are

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433      WASHINGTON, D.C.  20005-3701      (202) 234-4433

586

in here from May.  But okay.  So you got an

expedited hearing with no hearing request.

        MS. JESSICA SMITH:  Well, if I

may, all the information that is to be on

the hearing request is in my motion for

expedited hearing.  The form that the

Student Hearing Office provides is a form.

The parents don't have to fill that out each

time.

        HEARING OFFICER BUTLER-TRUESDALE:

Okay.  I need to go through this process

and, yes, actually IDI does require them to

complete a hearing request.  But let's

charge on because I do understand that I do

have some authority to overlook procedural -

-

        MS. JESSICA SMITH:  Well, if I

may defend, the --

        HEARING OFFICER BUTLER-TRUESDALE:

Why are you defending when I'm saying --

when I'm trying to tell you that I do

understand that I have some authority to

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

587

overlook procedural complications that come

up?  Now if we get past all of that and we

have some form of notice that the VIS, the

difference between, the gap between the VIS

services and what they're saying the

Petitioner needs is a placement issue, what

then, Ms. Puckett?

     MS. PUCKETT:  That's not -- VIS

cannot be looked at as a placement issue.

If you're bringing up placement right now,

here's the thing, Ms. Truesdale.  DCPS

cannot just -- We are not required to do

what the parent asks us to do.  We're

required to provide the student with fate.

The student is not in school.  So once

again, you are here to deal with something

that possibly, deal with an issue that might

happen in the fall.  Do you understand what

I'm saying?

     HEARING OFFICER BUTLER-TRUESDALE:

Yes.

     MS. PUCKETT:  Where is the denial

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433                    WASHINGTON, D.C.  20005-3701                    (202) 234-4433

588

of faith?  We provided the VIS instruction.
Parent's counsel said they were happy with
the services.  The child does not have ESY.

So how is DCPS required to
provide this student with ESY or home
instruction or whatever you want to call it,
any type of services, over the summer?  I am
sure that you are very familiar with
extended school year.  Why are we
responsible for this child over the summer?

MS. JESSICA SMITH:  And I think
Ms. Puckett is trying to confuse the issue
quite frankly because --

MS. PUCKETT:  I'm not trying to
confuse anything.

MS. JESSICA SMITH:  -- because
I'm not bringing ESY at all.  I'm not
bringing up ESY. I'm not saying he's
entitled --

MS. PUCKETT:  You said home
instruction program.

MS. JESSICA SMITH:  -- to summer

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C. 20005-3701        (202) 234-4433

589

services.

MS. PUCKETT:  That's our home
instruction program.  They're interpreting a
home instruction program in a different way
that we interpret it.  My witness will
testify that if --

HEARING OFFICER BUTLER-TRUESDALE:
You're still talking about what happened
over the summer and I think she's moved past
that.  Maybe --

MS. PUCKETT:  So what if that
happened in the future?

MS. JESSICA SMITH:  Correct.
Your offer is the VIS which cannot be
granted on an as-needed basis.  Our
allegations are that that is not
appropriate.  He needs something on a
continuous basis.

MS. PUCKETT:  So what can that
hearing officer do when she issued an final
order saying that DCPS needed to meet,
needed to come up with a comp ed plan.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

590

We've done that.  What jurisdiction does she have right here today and what can she use as a denial of faith to order DCPS to do something here today because the reality is IDEA gives a hearing officer discretion to order things when there is a denial of faith.  What denial?  Tell the hearing officer what denial of faith has occurred that she should order DCPS to provide something different from what we've been proposing to provide?

HEARING OFFICER BUTLER-TRUESDALE: Now let me answer it and you tell me whether or not this is your answer.  Okay?  Are you saying to me that the fact that the parent has to consistently reapply is a denial of faith?

MS. JESSICA SMITH:  Yes.  One part of it.  That's not the whole thing.

HEARING OFFICER BUTLER-TRUESDALE: Okay.  What is the other part of it?

MS. JESSICA SMITH:  If the VIS

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

591

teacher is going to -- I don't know how far
we're getting with this if she's going to
testify.  The VIS was only given two hours a
day twice a week.  His IEP calls for 17.5
hours of special ed instruction.  If he's
going to be out and this is going to be a
continuing type of service that's provided,
yet he's only going to be getting four hours
a week, that's completely inappropriate for
him.

HEARING OFFICER BUTLER-TRUESDALE:
The VIS is four hours a week?

MS. JESSICA SMITH:  Well, I don't
know.  What he got was four hours a week.  I
don't know how much more can be added.

HEARING OFFICER BUTLER-TRUESDALE:
So we don't know yet how much VIS he's going
to be getting in the fall.

MS. JESSICA SMITH:  And that's
why I --

MS. PUCKETT:  Once again, it says
"as suspect."  A suspected amount.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

592

MS. JESSICA SMITH:  No because he was only --

MS. PUCKETT:  Where is the denial of faith --

MS. JESSICA SMITH:  He was only given four hours the last two months of school.

MS. PUCKETT:  -- They were happy with the VIS.  Which one is it?

MS. JESSICA SMITH:  No.  You're twisting my words.

MS. PUCKETT:  You said in your opening that you were happy.  The parent was happy --

MS. JESSICA SMITH:  With the teacher.

MS. PUCKETT:  -- with the VIS services.

MS. JESSICA SMITH:  With the teacher.

MS. PUCKETT:  You said the teacher and the VIS services that were

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

593

provided.

        MS. BATSON:  The teacher.

        HEARING OFFICER BUTLER-TRUESDALE:
Okay.  Let's maintain some decorum please.

        MS. PUCKETT:  I'm just trying to
figure out where the denial of faith is.

        MS. JESSICA SMITH:  I really feel
like Ms. Puckett is trying to twist my
words.  I stated that --

        MS. PUCKETT:  I'm not trying to
twist anything.

        MS. JESSICA SMITH:  If I may
continue.

        HEARING OFFICER BUTLER-TRUESDALE:
It is -- Pardon me.  It is 10:50 a.m. and we
got started late.  So I'm going to do my
very best to maintain decorum between two
excellent litigators.  Please stop
litigating.  This is an adjudication and see
how much we can accomplish before 11:00 a.m.

        Now the VIS, we don't know
exactly what form or quantity Petitioner is

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

594

getting for fall.

MS. PUCKETT:  No.

MS. JESSICA SMITH:  What we know
is --

HEARING OFFICER BUTLER-TRUESDALE:
Are we in agreement with that?

MS. PUCKETT:  He hasn't submitted
any document to say that he would not be in
school in the fall.

HEARING OFFICER BUTLER-TRUESDALE:
All right.

MS. JESSICA SMITH:  We only know
that he received eight hours at the end of
the school year.

HEARING OFFICER BUTLER-TRUESDALE:
Now are you able to proffer --

MS. JESSICA SMITH:  And she was
happy with teacher, yes.

HEARING OFFICER BUTLER-TRUESDALE:
-- when, if at all, mom will be getting the
appropriate paperwork into the SEC
coordinator for initiation of services in

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

595

the fall if Desmond is not going to start?

MS. JESSICA SMITH:  We can get

that.

HEARING OFFICER BUTLER-TRUESDALE:

On the what?  The 28th?

MS. PUCKETT:  School starts

Monday, the 28th.

HEARING OFFICER BUTLER-TRUESDALE:

Monday.  Okay.  Ms. Wilkins?

MS. WILKINS:  Yes.

Whereupon,

MS. WILKINS

was called for examination by Counsel for

the Petitioner, having been first duly

sworn, was examined and testified as

follows:

HEARING OFFICER BUTLER-TRUESDALE:

Okay.  Your witness, Ms. Smith.

MS. JESSICA SMITH:  Hi, Ms.

Wilkins.  This is Jessica Smith.

THE WITNESS:  Hi.

DIRECT EXAMINATION

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

596

BY MS. JESSICA SMITH:

Q       Will you be submitting paperwork
to Ms. Batson or to the VIS for VIS services
for the fall?

A       Yes.  I have to get a copy of the
shell (phonetic) paper and also I have
doctors' forms already filled out for
Desmond because he has been back and forth
to the doctor all summer long.

Q       Okay.  So when will you be
submitting those forms?

A       Monday morning.

Q       And who will you be submitting
them to?

A       Ms. Batson.

Q       Ms. Batson, and do you have to
submit them to the Sharpe Health Center as
well?

A       Well, I talked to Sharpe Health
before Ms. Green left on the last day and
they told me no matter what when he do get
home care, home tutoring, it would just be

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

597

two hours for some two days, just they will

come out every two days -- twice a week.

HEARING OFFICER BUTLER-TRUESDALE:

And who was that, Ms. Wilkins?  Who told you

that?

THE WITNESS:  I forgot her name

at Sharpe Health.  I forgot her name.  I

have it written down somewhere but I could

call her back and ask her again because they

don't have that many teachers to go out to

too many students.  So they rotate the

hours.

DIRECT EXAMINATION (Cont'd.)

BY MS. JESSICA SMITH:

Q     And did she say if they would be

able to provide speech and language services

to him?

A     No.  It's just home tutoring

because he's not in school.

Q     And did he receive any home

speech/language services?

A     No, just home tutoring because

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

598

he's not in school.  There is no

specification of services at all.  It's just

home tutoring.

    Q    And you said that it would be for

two hours a day, twice a week.

    A    Yes, because they have so many

students that they have that they have to

rotate teachers.  Because I asked 50 million

questions before Ms. Green came out because

I wanted to know how -- would he be able to

handle week or two weeks and what do I have

to do and what I need to do during the

school year.  See.  His paperwork is up to

date because it's not over six months yet.

    Q    Okay.

    A    But it's on file longer than six

months, I would have to be current and up to

date for the paperwork.  But I still would

have to update it.

    HEARING OFFICER BUTLER-TRUESDALE:

Do you remember who told you that?

    THE WITNESS:  What is the lady's

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

599

name?  I'll get her name in a minute.  Let
me get my paperwork because it's the same
lady I faxed the papers to.

          HEARING OFFICER BUTLER-TRUESDALE:
Yes.

          MS. JESSICA SMITH:  Is it Lagrand
Lewis?  I thought that was her name.

          (Off the record discussion.)

          THE WITNESS:  I'll call her back
because I don't know.  I have so many papers
to look through.

          HEARING OFFICER BUTLER-TRUESDALE:
Your counsel asked if you were speaking to
Lagrand Lewis.

          THE WITNESS:  I got her name but
I --

          MS. JESSICA SMITH:  Ms. Wilkins?

          THE WITNESS:  I have her name and
number somewhere and I should have gotten
all these papers --

          HEARING OFFICER BUTLER-TRUESDALE:
Your counsel asked if you were speaking to

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

600

Lagrand Lewis.

THE WITNESS:  It wasn't Ms.
Lewis.  It was another lady.

HEARING OFFICER BUTLER-TRUESDALE:
Okay.

THE WITNESS:  It wasn't Ms.
Lewis.  I know that much.  It wasn't Ms.
Lewis but --

MS. JESSICA SMITH:  Was it Alma
something?

THE WITNESS:  It was the one -- I
forgot her name.  The one I faxed the papers
to.  I'm trying to think.  I'm dealing with
-- I'll call her.  I forgot her name.  It
wasn't Ms. Lewis.  It was -- I can't think
of her name.  I'll get her name because --

MS. JESSICA SMITH:  Well, one
thing is --

THE WITNESS:  -- I have to call
her back anyway because she said that if Ms.
Green --

HEARING OFFICER BUTLER-TRUESDALE:

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

601

Okay.  Hold on a second, Ms. Wilkins.

THE WITNESS:  Yes.

HEARING OFFICER BUTLER-TRUESDALE:
One thing is clear to me is that if it is
indeed true that VIS is only available for
the four hours a week and his IEP is calling
for more instruction than that, that there
does need to be a meeting to determine how
that IEP can be implemented.  So --

MS. JESSICA SMITH:  Well, this is
my concern.

HEARING OFFICER BUTLER-TRUESDALE:
Ms. Batson?

MS. BATSON:  Yes ma'am.

HEARING OFFICER BUTLER-TRUESDALE:
I'm not certain that the IEP can be
implemented if VIS can only render four
hours a week to D███████  I mean how is that
an implementation of the IEP?

MS. BATSON:  Well, I gave Sharpe
Health a copy of the IEP.  I was under the
assumption that he would be receiving his

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

602

proper hours.  I'm just now hearing that he only received four hours.

HEARING OFFICER BUTLER-TRUESDALE: Okay.  So you'll be able to --

MS. JESSICA SMITH:  She was given his report card.

HEARING OFFICER BUTLER-TRUESDALE: So you --

MS. BATSON:  Yes, I was given the report card, but it doesn't say the hours. I didn't see that.

HEARING OFFICER BUTLER-TRUESDALE: So you'll be able to do what once --

MS. BATSON:  Well, I can inquire about why the -- I mean what happened, why he only received four hours if that's indeed true that he only received four hours.

HEARING OFFICER BUTLER-TRUESDALE: Do you have witness available who can explain to me how many hours he was actually receiving in home schooling services?

MS. PUCKETT:  The teacher can

NEAL R. GROSS
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

603

testify to that, but -- You know and I think

Ms. Batson said that she was going to

convene a meeting as soon as school starts.

But I'm still confused as to why we're still

here.

HEARING OFFICER BUTLER-TRUESDALE:

Well, now if his IEP called for more than

four hours of instruction and he only got

four hours of home instruction through VIS,

then that is a denial of faith.

MS. PUCKETT:  Not necessarily

because you have to take into consideration

that this child --

HEARING OFFICER BUTLER-TRUESDALE:

So they could implement --

MS. PUCKETT:  -- one-on-one

tutoring which is completely different from

being in a classroom with --

HEARING OFFICER BUTLER-TRUESDALE:

So you can implement an IEP that doesn't

state that the hours will be rendered and a

specific  amount and then provide home

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

604

instruction which I understand is a
different modality and would mean that the
hours should be changed on the IEP.  If the
IEP now states a certain amount of hourly
instruction, it's not the parent's problem
that she's expecting that that will come
from the VIS.

If the IEP needs to be changed,
then you need to have a meeting and change
the IEP.  Otherwise, the parent is sitting
at home waiting for hour-for-hour VIS
instruction for her child and why shouldn't
she be if that's what the IEP says.

MS. PUCKETT:  The IEP was drafted
for the student to be in the school.  This
student has --

HEARING OFFICER BUTLER-TRUESDALE:
Maybe that's a denial of faith since you
know you're going to be predominantly
providing services to the child at home.

MS. PUCKETT:  Not if the student
is attending school sporadically.  This is

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

605

not a student who is normally out of the

school --

HEARING OFFICER BUTLER-TRUESDALE:

So sporadically that truancy was call in.

MS. PUCKETT:  Okay.

HEARING OFFICER BUTLER-TRUESDALE:

But I'm not here to argue with you.

MS. PUCKETT:  I'm not going to

argue about it.

HEARING OFFICER BUTLER-TRUESDALE:

I'm trying to --

MS. PUCKETT:  And I'll present my

--

HEARING OFFICER BUTLER-TRUESDALE:

Hold on, Ms. Puckett.  Hold on.  Yield to

me, Ms. Puckett. Give me that respect in

this position.  You don't have to respect me

but for the position as hearing officer, as

the one who has to maintain some decorum in

the room, please don't set me up for

failure.

MS. PUCKETT:  Well, you asked me

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

606

a question and --

       HEARING OFFICER BUTLER-TRUESDALE:
But I'm trying to answer to you and I'm
trying to make a statement and you're not
yielding.

       MS. PUCKETT:  Ms. Truesdale --
counsel has --

       HEARING OFFICER BUTLER-TRUESDALE:
Do we need a break?

       MS. PUCKETT:  -- made many
different statements --

       HEARING OFFICER BUTLER-TRUESDALE:
Break.

       MS. PUCKETT:  -- and you are not
allowing me to --

       HEARING OFFICER BUTLER-TRUESDALE:
Break.  We're off the record.

       (Off the record.)

       HEARING OFFICER BUTLER-TRUESDALE:
On the record.  Did you have any additional
comments you wanted to make on the record,
Ms. Puckett?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

607

MS. PUCKETT:  Yes, I do.  DCPS just for the record, we would like to indicate that just initially when I came down here I believe -- I thought that there was a new complaint that actually was claimed.

HEARING OFFICER BUTLER-TRUESDALE: No, I'm talking about what happened just prior to us adjourning.

MS. PUCKETT:  No.

HEARING OFFICER BUTLER-TRUESDALE: So what I would like to do first is apologize to the witnesses that are participating by phone, that being the mother and the SEC coordinator, and to -- I'm sorry.  Tell your name.  Are you Ms. Green?

MS. GREEN:  Yes, I am.

HEARING OFFICER BUTLER-TRUESDALE: Ms. Green.

MS. GREEN:  Yes.

HEARING OFFICER BUTLER-TRUESDALE:

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

608

All right and Ms. Smith and to -- I will also even extent it to Ms. Puckett. I don't convene hearings that those type of exchanges are tolerated in. I do not take lightly that that episode creates a perception of me not being in control of the decorum that I'm supposed to maintain in this hearing. I'm not Ms. Puckett's mother. I cannot tell her how to conduct herself professionally.

What I can do is take a break and give people the opportunity to regain their composure which is what I attempted to do. That inconveniences all of us because this hearing was supposed to be over at 11:00 a.m. and I do appreciate that everybody has something else to do with their time.

What I'm trying to do is to make sure that this Petitioner gets their services regardless of all the challenges that we will have to face in a hearing regarding personalities, operating styles

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

609

and professionalism and maturity.  This is
the best that I can do.  Okay.

I'm not Ms. Puckett's supervisor
and it's not my responsibility to try to
convince her that her actions were
inappropriate. Everybody understand that?

(Chorus of yes.)

HEARING OFFICER BUTLER-TRUESDALE:
From here, I'm not sure how much more
constructive we can be today besides setting
up an appointment for the MVT meeting for us
to make sure that the IEP is appropriate for
Desmond.  That I'm very convinced may need
to be reviewed by the team prior to any
determination of whether or not there's
actually been a denial of faith for the
summer months and I certainly am in not in a
position to anticipate a denial of faith for
September.

As I stated --

MS. JESSICA SMITH:  My concern --

HEARING OFFICER BUTLER-TRUESDALE:

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

610

I'm sorry.  Go ahead.

MS. JESSICA SMITH:  -- is that with just convening the meeting is that twice before Ms. Batson had said people authorized home tutoring would be at these meetings.  No one was there at the last meeting and her words stating that someone is going to -- Who is the person that has the authority to say "Yes, this is appropriate.  D█████ can have a tutor on an as-needed basis."  If it's Ms. Green or whoever.

HEARING OFFICER BUTLER-TRUESDALE: Now is that a part --

MS. GREEN:  It's Ms. Smith.

HEARING OFFICER BUTLER-TRUESDALE: Ms. Smith is actually that person?

MS. GREEN:  Yes, she is.

HEARING OFFICER BUTLER-TRUESDALE: Is that the case, Ms. Puckett?

MS. PUCKETT:  Ms. Smith is the VIS coordinator.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

611

HEARING OFFICER BUTLER-TRUESDALE:

Is it appropriate for us to bring her into

the room now?

MS. PUCKETT:  We can bring her

into the room if you want to her mention in

regards to if she can participate in the

meeting to discuss services in regards to

this student.

HEARING OFFICER BUTLER-TRUESDALE:

You're representing your client?

MS. PUCKETT:  No, I'm just saying

you're at this point saying that we need to

set up a meeting to possibly revise --

HEARING OFFICER BUTLER-TRUESDALE:

You represent your client.  You know who can

provide us with what information.

MS. PUCKETT:  My question is you

need information regarding what VIS can

provide to this child.

HEARING OFFICER BUTLER-TRUESDALE:

If she is the person who would need to be

available at a meeting to determine whether

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

612

or not VIS can meet the needs that the

current IEP says the Petitioner needs, then

she needs to be in this room.  But it's your

client.

          MS. PUCKETT:  Can you get Ms. --

          MS. JESSICA SMITH:  And if she --

Well, rather than convene the meeting and

ask her then, could we ask her now and go

from there because if that's something that

cannot be done then we're still going to be

back to square one in terms of him not

having an appropriate IEP and appropriate to

meet his hours at home.

          MS. PUCKETT:  DCPS's position is

that it's more appropriate to do this in a

meeting because the service providers are

not here and those are the individuals

needed to determine what this child's IEP

is.  All she can do is provide you with

information regarding VIS.  If there is

somebody else --

          MS. JESSICA SMITH:  But if

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433       WASHINGTON, D.C.  20005-3701       (202) 234-4433

613

something's not possible, if there is no

option, then that is not even an option the

team consider.  That's something that we

should know ahead of time.

MS. PUCKETT:  So you would like

to the hearing officer acting a MDT team

member basically.

MS. JESSICA SMITH:  No.

HEARING OFFICER BUTLER-TRUESDALE:

I would like for both of you to give me a

moment to swear in Ms. Green.  Would you

raise your right hand please?

MS. GREEN:  Ms. Smith.

HEARING OFFICER BUTLER-TRUESDALE:

I'm sorry.  Ms. Smith.  I'm sorry.

(Laughter.)

HEARING OFFICER BUTLER-TRUESDALE:

Just consider yourself lucky that you only

got called out of your name this morning.

Whereupon,

MS. SMITH

was called for examination by Counsel,

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

614

having been first duly sworn, was examined
and testified as follows:

       HEARING OFFICER BUTLER-TRUESDALE:
Prior to you entering the room, immediately
prior to you entering the room, what we were
discussing was who might need to be
available at a meeting to discuss how to
implement the Petitioner's IEP.  Information
has been given to me indicating that there
are only four hours a day of available
instruction for the Petitioner and his IEP
is calling for something different.  So the
Counsel for Petitioner was asking who has
the authority to make sure that the
instructional hours actually match the
service hours that are on the IEP.

       I'm trying to also make sure that
we actually have a meeting to make sure that
the IEP is written to reflect the fact that
services are at I don't know what percentage
will be offered through the home instruction
services.  So I do understand that there may

NEAL R. GROSS
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

615

be a change in the number of hours of
instruction on the IEP also.  But we're
trying to determine who, if anyone, has the
authority to make sure that VIS services
that are rendered match the IEP.

DIRECT TESTIMONY

MS. SMITH:  Okay.  First of all,
a clarification.  I think it was stated four
hours per day.

MS. JESSICA SMITH:  Per week.

HEARING OFFICER BUTLER-TRUESDALE:
I'm sorry.  That was my error.  I did say a
day.  I'm sorry.

MS. SMITH:  Per week.  It would
not be.  First of all, let me just give you
a little bit of background information for
VIS.  VIS does not take the place of the
school week, day, year, month.  VIS is --

HEARING OFFICER BUTLER-TRUESDALE:
Could we get the mike closer to her?

MS. SMITH:  It's supposed to be a
temporary service that is provided to

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

616

students when they are not able to attend

school.  It was designed such that children

who are sick and cannot come for a specific

amount of time would receive the services

in-home.  However, the minimum hours are two

per week and if it's available, we can add

additional hours.  Generally, it's no more

than four.

        We try to accommodate students as

best we can.  There is no speech therapy.

No physical therapy.  No occupational

therapy.  It's strictly academic

instruction.  It's based on the goals and

objectives of the IEP as written at that

local school level as well as -- There's

collaboration between the IS instructor and

the home school and the parent.

        HEARING OFFICER BUTLER-TRUESDALE:

Okay.  So now assuming a petitioner had a

greater need and the team will determine

that.  That is not an assessment that I can

make today.  But assuming -- how much is

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

617

needed is what I'm trying to say.  Assuming

that a petitioner needs more, is there any

other DCPS program that would fill in those

gaps or would you expect that a hearing

officer would grant independent tutoring if

there were surplus hours of instruction that

the petitioner needed?

MS. SMITH:  In the past and I'll

speak to just what I know of that has

happened.

HEARING OFFICER BUTLER-TRUESDALE:

I understand.

MS. SMITH:  We have had it both

ways.  We have had it where a student will

receive VIS instruction and a tutor was

provided at some point on some level for

some amount of time.

HEARING OFFICER BUTLER-TRUESDALE:

Okay.

MS. SMITH:  How much --

HEARING OFFICER BUTLER-TRUESDALE:

And how well do your instructors work in

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

618

coordination with independent tutors if

there's a need for an independent tutor?

      MS. SMITH:  We do not really.

      HEARING OFFICER BUTLER-TRUESDALE:

No?

      MS. SMITH:  We do not.

      HEARING OFFICER BUTLER-TRUESDALE:

Wow.  So I don't even understand how that's

of any benefit if there's no coordination,

if there's no possibility of coordination

between independent service providers and

VIS instructors.

      MS. SMITH:  Often we get to a

point where you're talking about specific

hours and what we try to tell, you know,

what we try to put on the table is that this

is all that we can in all honesty provide.

It's not that it's something that we would

like to say, "Okay.  We can take the place

of his school day, a child's school day, but

-- and honestly we cannot."  It was not

designed to do that.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433      WASHINGTON, D.C.  20005-3701      (202) 234-4433

619

rewritten to accommodate the hours that VIS
can truly provide.  But there is never a
situation or a case that all of the hours on
the IEP as they were originally written are
accommodated through VIS or any other
tutors.

HEARING OFFICER BUTLER-TRUESDALE:
And I understand that and that makes perfect
sense to me.  What I'm not able to assess
here is what, if any, additional independent
tutoring hours the petitioner would need and
whether or not VIS alone was able to
implement the IEP in its entirety given that
the IEP calls for a certain amount of
instruction each week, special education
instruction each week.

Okay.  I think I guess the next
thing I can do to get you all out of here in
an appropriate time is to try to get an idea
when the parties could come together to meet
to discuss the Petitioner's IEP and then
determine how quickly a status report can be

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

620

given to me so I can determine what, if any,

independent tutoring hours would need to be

granted.

MS. JESSICA SMITH:  To make up

for the gap that we talked about before.

HEARING OFFICER BUTLER-TRUESDALE:

Yes.  Right.  Now I'm specifically working

from the time frame from services that were

rendered in May to June because I'm not able

to grant any prospective relief.  But what I

do expect to happen is that whatever

adjustments you all make would also serve

him for the '06-'07 school year.

MS. JESSICA SMITH:  That's what

we're looking for.

HEARING OFFICER BUTLER-TRUESDALE:

Right.  So you understand that I've had to

narrow this complaint down to what, if any,

services should have, additional services

should have, been rendered from May to June

due to the fact that VIS has a limited

capacity to serve and we're not sure how

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

621

closely those services matched the IEP as it exists.  Okay?

MS. JESSICA SMITH:  Yes, and I think the parent's broader concern and more pressing concern is for the upcoming school year as we move forward.

HEARING OFFICER BUTLER-TRUESDALE: Okay.

MS. JESSICA SMITH:  In terms of getting that gap closed since we didn't think the VIS was going to be appropriate and changing his IEP appropriately to match up what he needs.  So IDEA allows for the IEP to be individualized for the student. So I don't think that we need to bound by any structures in terms of VIS can only provide four hours.  But if there are other methods through DCPS, if DCPS has a tutor, you know.

HEARING OFFICER BUTLER-TRUESDALE: I'm confident that Ms. Batson is going to do for me what she needs to do.  I'm confident

NEAL R. GROSS
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

622

of that.

MS. BATSON:  Well, can I say that
--

HEARING OFFICER BUTLER-TRUESDALE:
Or what she's able to do.  I'm confident of
that.

MS. JESSICA SMITH:  Yes.  I don't
want to go to another meeting where we're
sitting around saying, "You're right.
D▇▇▇▇▇ needs this but I don't have the
authority to" --

HEARING OFFICER BUTLER-TRUESDALE:
I think now that we have the parties in the
room we'll be able to come up with a date
where we'll have everyone there that has the
authority to make a decision.

MS. BATSON:  Excuse me, ma'am.
In order for us to make any adjustments to
the IEP concerning home school or VIS, I
need documentation from her.

HEARING OFFICER BUTLER-TRUESDALE:
I've already instructed the parent and asked

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C. 20005-3701        (202) 234-4433

623

her how quickly she can get that to you.

Before we took the break, she stated what

documents she had and when she intended to

get those to the appropriate parties.  Were

you still on the line then or had we lost

you?

      MS. BATSON:  Yes.  And can we

agreed that it must state how long the child

is intended to be out of school?  This is

the problem.  When he's sick, the doctor

can't say how long he's going to be out

until he comes back and gets checked and

makes sure his breathing condition is well.

See.  That's the problem we are stuck on.

      MS. WILKINS:  I don't have a time

limit about -- The doctor doesn't have a

time limit about when Desmond will be

feeling better because, see, he has

respiratory distress and, Ms. Batson, you do

have a copy of that from one of his doctors,

Dr. Smyliski (phonetic).  I gave you a copy

at the meeting that he has respiratory

NEAL R. GROSS
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

624

distress.

         (Several speaking at once.)

         HEARING OFFICER BUTLER-TRUESDALE:

Now -- Excuse me.  Pardon me.  So that we

aren't rehashing issues that will not help

us what I would like to have done is, Ms.

Wilkins, if you could please bring every bit

of documentation.

         MS. WILKINS:  Every documentation

I have from -- See if I have to get the

whole --

         HEARING OFFICER BUTLER-TRUESDALE:

I'm sorry.  When you -- Because we have you

on conference capacity, you can't hear when

I'm still speaking and the other party can't

probably hear me either.  Okay?  So I'm

going to try to slow down so that you can

tell when I've stopped and I will try to

yield when you have begun speaking.  Okay?

         (No response.)

         HEARING OFFICER BUTLER-TRUESDALE:

Do I have both of you there?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

625

HEARING OFFICER BUTLER-TRUESDALE:

Yes.

HEARING OFFICER BUTLER-TRUESDALE:

I heard one yes.

MS. BATSON:  Yes.

HEARING OFFICER BUTLER-TRUESDALE:

Was that Ms. Batson?

MS. BATSON:  Yes.

HEARING OFFICER BUTLER-TRUESDALE:

And do I have Ms. Wilkins?

MS. WILKINS:  Yes.

HEARING OFFICER BUTLER-TRUESDALE:

Okay.  Great.  Now listen.  What I'm simply

asking you to do because we have a limited

amount of time.  I have no more than 15

minutes more to give to you all.  Okay?

PARTICIPANT:  Yes.

HEARING OFFICER BUTLER-TRUESDALE:

Ms. Wilkins, if you can bring everything you

have.  Okay?

MS. WILKINS:  Okay.

HEARING OFFICER BUTLER-TRUESDALE:

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C.  20005-3701
(202) 234-4433                                    (202) 234-4433

626

And copy it so that everything you have they
are witnesses to you giving that to Ms.
Batson.  Okay?

     MS. WILKINS:  Yes.

     HEARING OFFICER BUTLER-TRUESDALE:
And the other thing that I was going to ask
is that do you know when D████████s next
appointment is.

     MS. WILKINS:  Well, see.  He goes
to the doctor every other day half of the
time because when he goes outside, he breaks
out in big sores from the pollen.  So he has
to be treated daily.  He's on a daily base
going back and forth to the doctor.

     HEARING OFFICER BUTLER-TRUESDALE:
Okay.  That's no problem.  I thought perhaps
that he had like a regularly scheduled
periodic --

     MS. WILKINS:  He goes to his
breathing classes pretty often.  But he goes
to -- There's no sense making an appointment
for him because he walks in on a walk-in

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

627

basis at all times.

> HEARING OFFICER BUTLER-TRUESDALE:

Okay.  Now I'm going to start with Ms. Smith

because I'm assuming that Ms. Smith's

schedule may be the most difficult to

accommodate.  But, Ms. Batson and Ms. Smith,

are you able to tell me what may be common

dates that would be good for an IEP meeting

and, Ms. Batson, I know that you need to

take into consideration when the appropriate

service providers would  be, related

services providers would be, available.

> MS. BATSON:  Yes, and that's

Tuesdays.

> HEARING OFFICER BUTLER-TRUESDALE:

Tuesdays?

> MS. BATSON:  Yes.

> MS. SMITH:  I can make myself

available whenever.

> HEARING OFFICER BUTLER-TRUESDALE:

Okay.  Ms. Smith has stated she can make

herself available whenever.  So what would

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

628

be the most convenient Tuesday for you at

this time, Ms. Batson?

        MS. BATSON:  Well, since the

students return on Monday, this upcoming

Tuesday probably would not be a good day.

        HEARING OFFICER BUTLER-TRUESDALE:

Right.  I thought that.

        MS. BATSON:  So the following

Tuesday would probably be a good time for us

in the morning.

        HEARING OFFICER BUTLER-TRUESDALE:

Okay.  I want to make sure that there are no

emergencies and I try not to have HODs that

go out with IEP meetings being scheduled

within the first two weeks of school because

I don't want you all to violate my HODs.

        MS. BATSON:  Okay.

        HEARING OFFICER BUTLER-TRUESDALE:

I have an ego.

        MS. BATSON:  That's fine.

        (Laughter.)

        HEARING OFFICER BUTLER-TRUESDALE:

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

629

So I'm actually looking for that following

week.  I don't put out orders that are

requiring IEP meetings within that first two

weeks of school.

      MS. JESSICA SMITH:  That would be

September 12th.

      MS. BATSON:  So the second

Tuesday in September?

      HEARING OFFICER BUTLER-TRUESDALE:

What is the following Tuesday?  September

the 12th, is that what it is?

      MS. BATSON:  Yes.

      MS. JESSICA SMITH:  The third

week, I guess.  You're looking at the third

week of school.

      HEARING OFFICER BUTLER-TRUESDALE:

Okay.  Can you hold on just one second

please?

      MS. BATSON:  Yes.

      HEARING OFFICER BUTLER-TRUESDALE:

I have to take an emergency call.  Okay?

      MS. BATSON:  Okay.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

630

HEARING OFFICER BUTLER-TRUESDALE:

Off the record.

(Off the record.)

HEARING OFFICER BUTLER-TRUESDALE:

On the record.  Thank you for your patience.

Okay.  So now we're down to the 19th.

Right?

MS. SMITH:  Yes.

HEARING OFFICER BUTLER-TRUESDALE:

So it's 9/19?

MS. SMITH:  9/19.

HEARING OFFICER BUTLER-TRUESDALE:

Okay.  And at the 9/19 meeting, we are

discussing the IEP, any changes that need to

be made to the IEP.  We are making sure that

we know when the psycho-educational can be

done, performed for the student, and I'm

assuming that due to Petitioner's chronic

illness we may -- Is it appropriate to have

two dates that the IEP could be performed

because if he's sick on and off and cannot -

-

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

631

MS. JESSICA SMITH:  Do you mean
if the mom can't come?

HEARING OFFICER BUTLER-TRUESDALE:
Right.

MS. BATSON:  We determined that
that wasn't required at this time.

HEARING OFFICER BUTLER-TRUESDALE:
But it's now expired.

MS. BATSON:  Yes, but we usually
don't test every three years unless we think
there's going to be a change in disability
which we agreed at the last meeting that
there wouldn't be.

HEARING OFFICER BUTLER-TRUESDALE:
See, I thought it was proffered to me that
that evaluation was not done because it had
not expired and that you do -- It wasn't
warranted because you did not expect there
to be a change of disability and it had not
expired.  But once it has expired, it's my
understanding that if the parent requests
it, it's supposed to be done.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

632

MS. BATSON:  It's still upon the team to determine whether or not it's necessary.

MS. JESSICA SMITH:  And that was my argument that it was already discussed that we had noted that it was going to be expired in August and the parent put a request in that it be, the triennial be done.

HEARING OFFICER BUTLER-TRUESDALE: Okay.  Now we have a limited amount of time but I do know that it was proffered to me that the previous psycho-educational was not complete because there were two subtests that could not be completed for the child. So I am going to -- If you all -- If you're saying that you don't think that the team will agree to perform the psycho-educational, I will order the psycho-educational.

So you may want to be prepared to discuss two dates that that psycho-

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

633

educational can be performed for the

Petitioner because there were subtests that

were not completed on the early one, then

it's probably warranted that a three-year

old psycho-educational should be re-

performed. Do you understand my rationale,

Ms. Batson?

MS. BATSON: Yes. I was never

informed that some subtests weren't

completed. The parent never stated that

those subtests weren't completed and she

wanted them done.

MS. JESSICA SMITH: It's in his

psycho-educational evaluation.

HEARING OFFICER BUTLER-TRUESDALE:

Okay. So we're discussing what, if any,

changes need to be made to the IEP and if

both parties could please let me know what,

if any, additional hours of independent

tutoring the team agrees the Petitioner

needed. My final order will grant any

additional hours of independent tutoring.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433              WASHINGTON, D.C. 20005-3701          (202) 234-4433

634

MS. PUCKETT:  By that you mean independent one-on-one tutoring --

HEARING OFFICER BUTLER-TRUESDALE: Yes.

MS. PUCKETT:  -- from someone the --

HEARING OFFICER BUTLER-TRUESDALE: Right within the superintendent's cost guidelines and, Ms. Smith, if there's anything that needs to go into the order with respect to coordination between VIS and the independent tutoring if you will please make sure that that gets in Respondent's status report to me.  I will incorporate all of that into the final order.  Okay?

MS. SMITH:  Okay.

HEARING OFFICER BUTLER-TRUESDALE: Yes, ma'am?

MS. SMITH:  I wanted to make a comment.  In looking at the last physician statement that we received which is dated 5/26/06.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C.  20005-3701
(202) 234-4433                          (202) 234-4433

635

HEARING OFFICER BUTLER-TRUESDALE:

Yes ma'am.

MS. SMITH:  There is no beginning
and ending date and we've already stated
that.  However, the doctor's comments were
that the patient has a history of severe
asthma and allergies.  Because of their
severity, he avoids outdoors.  We need a
little more information in reference to
that.

HEARING OFFICER BUTLER-TRUESDALE:

Okay.

MS. SMITH:  Is that does he avoid
outdoors because he doesn't feel comfortable
or does he avoid outdoors because of other
issues?  So we need more specific
information with this.

HEARING OFFICER BUTLER-TRUESDALE:

Okay.  And when is that one dated?

MS. SMITH:  That was dated
5/26/06.

HEARING OFFICER BUTLER-TRUESDALE:

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

636

Okay.

MS. SMITH:  Which, of course, we know we have to have a new one for this school year.  It does not go.

MS. JESSICA SMITH:  How long are they good for?

MS. SMITH:  They are generally -- They are supposed to be updated every six weeks.

HEARING OFFICER BUTLER-TRUESDALE: Oh.

MS. SMITH:  Yes.

HEARING OFFICER BUTLER-TRUESDALE: Okay.  Mom, did you hear that?

MS. WILKINS:  Yes, every six weeks.

HEARING OFFICER BUTLER-TRUESDALE: Every six weeks.

MS. WILKINS:  So what -- Do you have to have a proper form for that?

HEARING OFFICER BUTLER-TRUESDALE: She said is there a particular form for

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

637

that?

MS. SMITH:  It's the same form I'm assuming that she had completed with the doctor.

MS. WILKINS:  But I had received it from the school.  So where do I get the form from?

(Several speaking at once.)

MS. WILKINS:  That's no problem.

MS. SMITH:  The same form.

MS. JESSICA SMITH:  I don't think she has a blank one.

MS. WILKINS:  Then I can have that done.

HEARING OFFICER BUTLER-TRUESDALE: Okay.  Ms. Batson, do you have any blank ones that the Petitioner could fill out?

MS. BATSON:  I would have to call VIS to get that, get them to fax me one again.

HEARING OFFICER BUTLER-TRUESDALE: Okay.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

638

MS. WILKINS:  Do you want me to pick it up Monday so I could carry it straight to the doctor and bring it back to the school?

MS. BATSON:  Yes, that's fine.

HEARING OFFICER BUTLER-TRUESDALE: Okay.  All right.  Now let's see.  You're meeting on the 19th of September.  Is that right?

MS. JESSICA SMITH:  Are we agreeing on a time right now?

HEARING OFFICER BUTLER-TRUESDALE: Did you all have the time?

MS. BATSON:  No, we didn't agree on the time.

HEARING OFFICER BUTLER-TRUESDALE: What time is the meeting?

MS. BATSON:  I would prefer 10:00 a.m.

HEARING OFFICER BUTLER-TRUESDALE: 10:00 a.m.?

MS. JESSICA SMITH:  Ten is fine.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C.  20005-3701
(202) 234-4433                              (202) 234-4433

639

MS. SMITH:  Ten is fine.

HEARING OFFICER BUTLER-TRUESDALE:

So 9/19 --

MS. JESSICA SMITH:  At Marshall

Elementary?

HEARING OFFICER BUTLER-TRUESDALE:

Yes.  9/19 at Marshall at 10:00 a.m.

MS. JESSICA SMITH:  Ms. Wilkins,

are you available that date?

MS. WILKINS:  Yes, I am.

HEARING OFFICER BUTLER-TRUESDALE:

Okay.  Now when is it comfortable for the

status reports to come back to me for the

issuance of the final order?

MS. JESSICA SMITH:  I mean I'm

fine with -- Do you want a week?  The next

Tuesday?

HEARING OFFICER BUTLER-TRUESDALE:

Do you want 9 -- Do you know what?  Do you

mind if it's 9/25 or 27 because I'm not in

on Tuesday and special things happen with my

box when I'm not here.  So the 25th or --

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

640

I'll give you until Wednesday.  That would
be the 20 what?

        MS. JESSICA SMITH:  Seven.

        HEARING OFFICER BUTLER-TRUESDALE:
Twenty-seventh.

        MS. SMITH:  Okay.  And I need to
be clear.  What is it that you need from the
--

        MS. PUCKETT:  (Inaudible.) -- the
status report.

        HEARING OFFICER BUTLER-TRUESDALE:
The status report, but I asked that you make
sure that there's a statement in the status
report if there's anything you need for me
to order with respect to coordination
between VIS and the independent tutoring
provider if there's going to be an
independent tutoring provider.

        MS. SMITH:  Okay.

        HEARING OFFICER BUTLER-TRUESDALE:
Because I don't know what creative
educational tools you all will come up with.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

641

MS. JESSICA SMITH:  Would that
also include any related services?

MS. SMITH:  I don't know how the
system will handle that because VIS does not
include any related services.

MS. PUCKETT:  That can be
discussed at the meeting.

HEARING OFFICER BUTLER-TRUESDALE:
Okay.

MS. JESSICA SMITH:  If we're
going to wrap up, I do want to make a
closing remark because I still believe
there's been a denial of faith.

HEARING OFFICER BUTLER-TRUESDALE:
But I explained to you that I have agreed
that there was a denial of faith between May
and June of 2006.

MS. JESSICA SMITH:  Correct.

HEARING OFFICER BUTLER-TRUESDALE:
If the VIS was operating on four hours a
week and Petitioner's IEP called for a
certain amount of instructions, just by way

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

642

of the fact that the IEP was not rewritten

to generate VIS --

        MS. JESSICA SMITH:  Right.  I'm

talking actually more about the psycho-ed

because at the meeting that we had and the

notes are at Document 11, it's stated that

we are discussing the triennial evaluations.

His speech I think was up in -- They were

all coming due, if they were not already

past due.

        HEARING OFFICER BUTLER-TRUESDALE:

Now if it had not expired at that time, how

is it a denial of faith, the psycho-ed?

        MS. JESSICA SMITH:  Well, because

they had said that even though the triennial

was coming up we're still not going to do

it.

        HEARING OFFICER BUTLER-TRUESDALE:

Yes.  They said that they were not going to

do it.

        MS. JESSICA SMITH:  Right.  But

now she said --

**NEAL R. GROSS**
**COURT REPORTERS AND TRANSCRIBERS**
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

643

HEARING OFFICER BUTLER-TRUESDALE:

But it had not expired.  So they had not

actually committed a violation until August

3, 2006.

MS. JESSICA SMITH:  That's

correct, but I'm going on their words.

HEARING OFFICER BUTLER-TRUESDALE:

Okay.  So where is the educational harm that

occurred post August 6, August 3, 2006?

Between August 3, 2006 and now, is there

educational harm that the student --

MS. JESSICA SMITH:  Well, the

parent hasn't been contacted to say that

they're trying to conduct the psycho-ed.

HEARING OFFICER BUTLER-TRUESDALE:

I don't know that I can find an educational

harm.  I don't know that I can make a

finding of fact about educational harm for

that, but I will consider it.

MS. JESSICA SMITH:  Procedural.

HEARING OFFICER BUTLER-TRUESDALE:

And if you would like to make a closing, I

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

644

have no problems with receiving it in

writing.  But I am going to adjourn this

hearing because it's 11:45 a.m. and I have

endured enough.  Off the record.

      (Whereupon, at 11:45 a.m., the

above-entitled matter was concluded.)

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

645