**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **CARRIE WILKINS,** | : | |
| **as parent and next friend of D.W.** | : | |
| **a minor** | : | |
| **Plaintiffs** | : | |
|  | : | |
| **v.** | : | **Civil Action No. 07-0808(JDB)** |
|  | : | |
| **DISTRICT OF COLUMBIA** | : | |
|  | : | |
| **Defendants** | : | |
|  | : | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW, the Plaintiff, by and through undersigned counsel, and requests that this honorable Court grant a summary judgment pursuant to Federal Rule of Civil Procedure 56(c)   Plaintiffs are seeking a reversal of the January 22, 2007, Hearing Officer's Determination which determined D.W. had not been denied access to a free and appropriate education.  Plaintiffs allege that the Defendant failed to provide speech and language services, did not provide enough academic instruction to meet the hours required by the student's IEP, refused to conduct necessary evaluations and refused to implement the compensatory education plan.   In support of its Motion and pursuant to Local Rules 7(a),©, and (h), the Plaintiff submits its Memorandum of Points and Authorities in Support of its Motion for Summary Judgement, a Statement of Material Facts as to which there is no Genuine Issue, and a proposed Order.

Respectfully submitted,
/s/
_____
Paul S. Dalton, Esq
D.C. Bar No. 439118

Dalton & Dalton, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300 (ph)
(703) 739-2323 (fax)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CARRIE WILKINS, | : |
| as parent and next friend of D.W., | : |
| a minor | : |
|       Plaintiffs | : |
| | : |
|      v. | :     **Civil Action No. 07-0808(JDB)** |
| | : |
| DISTRICT OF COLUMBIA | : |
| | : |
|     Defendants | : |
| ———————————————— | : |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

COMES NOW, the Plaintiff, by and through undersigned counsel, and requests that this honorable Court grant a summary judgment pursuant to Federal Rule of Civil Procedure 56©, finding that Hearing Officer Butler-Truesdale erred in her determination that D.W. had not been denied access to a free and appropriate education. Plaintiffs allege that the Defendant failed to provide speech and language services, did not provide enough academic instruction to meet the hours required by the student's IEP, refused to conduct necessary evaluations and refused to implement the compensatory education plan and therefore seek reversal of the said determination.

**FACTUAL BACKGROUND**

D.W. is an 11 year old student at Thurgood Marshall Educational Center ("Marshall E.C."). D.W. has chronic bronchial asthma and Attention Deficit Hyperactivity Disorder ("ADHD"), for which he has an individualized education plan ("IEP"). D.W.'s current

3

IEP dated May 23, 2006 classifies his disabilities as Other Health Impairment ("OHI") for

ADHD and asthma and calls for 17.5 hours of specialized instruction and one hour of

speech and language services per week.  A.R. 143

D.W.'s chronic asthma causes him to be absent from school when the condition is

aggravated.  The Plaintiff had requested DCPS to provide home bound services during

the asthma related absences.

As the result of a due process hearing held on July 12, 2005, Hearing Officer Butler-

Truesdale issued a Hearing Officer's Decision ("HOD") on July 22, 2005 ordering DCPS

to, *inter alia,* convene a multi-disciplinary team ("MDT") meeting to review all

evaluations and medical documents, revise the IEP if necessary, determine placement

and determine compensatory education if warranted.  DCPS never convened the

meeting. Ar. 434.

Pursuant to the Blackman Jones Consent Decree, a rebuttable presumption of harm

exists where DCPS fails to comply with the terms of an HOD.  *See Blackman v. District*

*of Columbia,* 454 F. Supp. 2d 1 (D.D.C. 2006)(Consent Decree at ¶ 74).  The Plaintiff

filed a due process complaint notice on January 26, 2006 seeking, *inter alia,*

enforcement of the HOD.  On May 2, 2006, DCPS convened a resolution meeting in an

attempt to resolve the due process complaint notice.  A.R. 382.

At the resolution meeting, Ms. Tiffany Batson, the special education coordinator

("SEC") at Marshall E.C. stated that DCPS cannot in good faith agree to provide home

bound specialized instruction and speech and language services, but agreed to convene

an IEP meeting and have the parties present who have authority to make those

decisions.  A.R. 475.

A due process hearing convened in front of Hearing Officer Butler Truesdale on May 22, 2006.  At the hearing, Ms. Batson testified under oath that DCPS would be convening an MDT / IEP meeting the very next day, May 23, 2006, with the appropriate people in attendance, who have authority to permit home bound instruction for D.W.'s asthma-related absences. A.R. 475.

## The May 23, 2006 MDT Meeting

On May 23, 2006, DCPS convened the MDT meeting. This meeting was convened prior to Hearing Officer Butler-Truesdale issuing her HOD from the May 22, 2006 hearing.  At the May 23, 2006 MDT meeting, the IEP team agreed that D.W. needs home bound instruction for his asthma-related absences.  The team also agreed to the number of hours that should be implemented as D.W.'s  compensatory education plan. Additionally at the meeting, the Plaintiff requested that DCPS conduct an updated psycho-educational evaluation for D.W.  A.R. 221.

Contrary to Ms. Batson's testimony at the hearing and statements at the resolution meeting, DCPS did not have someone at the MDT meeting with authority to make decisions about home bound instruction for D.W.'s asthma related-absences.  The IEP team members, including D.W.'s special education teacher, regular education teacher, and speech and language pathologist, as well as the Plaintiff, all agreed that D.W.'s asthma-related absences have negatively impacted D.W.'s educational progress, and thus D.W. should be given home bound instruction when the asthma-related absences become excessive. A.R.221.

The Plaintiff expressed her concerns at the meeting that she feels D.W. is a throw-away child because DCPS is not giving him the services he needs, even though she has

5

been requesting such services since as far back as 2003.  At the meeting, the Plaintiff

suggested a plan where if D.W. has asthma-related absences for 3 consecutive days,

then the parent would notify the school and the school would send a tutor and related

service providers to D.W.'s home.  If the absences were less than 3 consecutive days,

the school would send home work packets.  A.R.224.

At the meeting, Ms. Batson stated that she could not authorize such services. The

Plaintiff then requested that the principal, or someone who could authorize the services,

participate in the meeting.  The principal, Ms. Powell, then entered the meeting, and also

stated that Marshall E.C. does not have the authority to make the decision regarding

home bound services. At the meeting, DCPS could only offer that the Parent apply for

Visiting Instruction Services ("VIS") through Sharpe Health School.  No one from VIS

was at the meeting to explain what services VIS provides.  A.R.221

While the Plaintiff was not entirely satisfied with the VIS offer, she accepted it and

submitted the paperwork for VIS to begin for D.W. for the end of the 2005-2006 school

year.  Additionally, at the meeting, the IEP team agreed to a compensatory education

plan for D.W. of 4 hours per day for 5 weeks (essentially 100 hours) to be implemented

over the summer and which would include specialized instruction and speech and

language services. A.R. 223.

There was disagreement about where DCPS would provide the compensatory

education.  Ms. Batson offered to provide the compensatory education through the

summer school program at the school site.  The parent objected to this because D.W.'s

asthma is significantly worse in the summer months, which limits his ability to go outside

and go to the school.  The parent requested that DCPS provide the compensatory

6

education at the home over the summer.  A.R. 223

Ms. Batson refused to consider this option and stated that D.W. would only receive the compensatory education if he came to the school.  Finally, at the meeting, the parent notified DCPS that the triennial evaluation was coming due for D.W.  The parent requested that DCPS conduct a psycho-educational evaluation to 1) determine D.W.'s present levels of performance, and 2) update his triennial evaluations.  A.R.223/242.

Ms. Batson refused to conduct the psycho-educational evaluation, stating that the evaluation was not warranted because the team was not considering a change in disability.  Ms. Batson stated that they only conduct reevaluations when there is a suspected change in disability.  Ms. Batson also stated that even though the triennial was due soon, they would still not be conducting the psycho-educational evaluation because there was not a suspected change in disability. A.R.225

Counsel for parent explained to Ms. Batson the requirements for conducting reevaluations, and that pursuant to 34 C.F.R. § 300.303(b)(2), a reevaluation must occur at least once every three years, unless the parent and school agree that a reevaluation is not warranted.  The parent did not agree that a reevaluation was not warranted and maintained her request for the psycho-educational evaluation.    A.R.225

After the meeting, DCPS did not issue a prior notice indicating their refusal to conduct the evaluation that the parent requested.  After the meeting, Hearing Officer Butler-Truesdale issued her HOD on June 2, 2006 ordering the team to convene a meeting to discuss the issues already discussed at the May 23, 2006 MDT meeting.  A.R.225.

The Plaintiff sent a letter to DCPS stating that if DCPS's position was the same as it was at the May 23, 2006 meeting, the Plaintiff saw no need to convene another meeting.

7

The letter also stated that if DCPS's position had changed, the meeting should be convened.  DCPS did not respond to the letter and no subsequent meeting was held.  A.R.225-226.

## The August 25, 2006 Due Process Hearing.

On June 22, 2006[1], the Plaintiff filed a Motion for Expedited Hearing requesting, *inter alia,* DCPS to fund an independent psycho-educational evaluation, DCPS to fund the 100 hours of compensatory education services agreed to by the IEP team, and DCPS to provide home-bound instruction for D.W.'s asthma-related absences.  The Plaintiff filed the Motion for Expedited Hearing with the Student Hearing Office and the Chief Hearing Officer.  The Plaintiff also sent a courtesy copy to Hearing Officer Butler-Truesdale in an effort to keep her apprised of the status of the case and also request that she retain jurisdiction since the facts are complicated and she was already familiar with the case.  A.R. .258

On August 9, 2006, Chief Hearing Officer Smith issued an order granting the Plaintiff's Motion and scheduling the hearing for August 25, 2006.  A.R. 119.  The hearing convened on August 25, 2006 in front of Hearing Officer Butler-Truesdale.  At the hearing the following issues were addressed: whether DCPS denied D.W. FAPE by

1) failing to conduct the psycho-education evaluation after the parent requested it and despite the fact that the triennial evaluation was coming due;

2) failing to implement the compensatory education plan agreed to by the IEP

---

[1]
       Since the request for due process hearing was submitted in June 2006, the law regarding which party bears the burden of proof had not yet changed.  Thus, when the hearing convened in August 2006, the burden of proof was still on DCPS.  *See* DCPS Student Hearing Office Standard Operating Procedures ("SOP") § 700.5.

team; and

   3) failing to provide appropriate home-bound instruction and related services due to D.W.'s asthma-related absences. T.504.

   The DCPS attorney, Ms. Tiffany Puckett argued at the Hearing that DCPS was going to conduct the psycho-educational soon (in September 2006), since it expired almost one month ago (in August 2006).  Ms. Batson, however, testified under oath that DCPS had no intention of conducting the psycho-educational once it expired because they did not suspect a change in disability.  During the hearing, on cross-examination Ms. Batson, the SEC at Marshall E.C., testified that DCPS was not going to conduct a psycho-educational even in light of the fact that the triennial was expiring soon. A.R.525.

   The parent testified that, at the time of the hearing, DCPS had not contacted her to schedule the evaluation.   DCPS offered no evidence to show that they were planning to schedule this evaluation.

   When the parties began addressing the issue of implementing the compensatory education plan at the Hearing, Ms. Puckett, the attorney for DCPS, argued that D.W. was not eligible for extended school year services ("ESY"), which allows a student to receive services over the summer, and thus there was no denial of FAPE.  Ms. Puckett further argued that not implementing a compensatory education plan is not a denial of FAPE because the school was planning on implementing the compensatory education plan once school started.

   Contrary to the arguments made by Ms. Puckett, the MDT team agreed to the compensatory education plan and that it was to be implemented over the summer months.  The only disagreement was where the compensatory education services would

9

take place, at the local school or at home.  A.R.553.

The parent testified that DCPS did not contact her to inform her that the compensatory education plan was going to be implemented during the school year, rather than during the summer as agreed to by the MDT team.  During the Hearing, the parent testified that at the end of the 2005-2006 school year, after the May 22, 2006 meeting, D.W. received some home-bound instruction through VIS.   The parent testified that the hours of academic instruction provided by VIS were not enough to meet his IEP. D.W.'s IEP calls for 17.5 hours per week of pull-out special education and one hour per week of speech and language services.  The parent testified that D.W. only received 4 hours of academic instruction per week from VIS and did not receive any speech and language services.

The testimony of Ms Elma Smith, VIS Coordinator, revealed that VIS can only provide a maximum 4 hours of home instruction per week and does not provide related services. Ms. Smith further testified that VIS is not intended to take the place of school; rather it is a temporary service for students who have a one time period of absence due to a one time medical problem, such as a broken leg or some type of surgery.  The testimony of Ms. Smith revealed that VIS is not provided on an "as needed" basis for students like D.W. with chronic reoccurring health problems.  Ms. Smith explained that in order for VIS to work, the parent will have to re-apply for the service every single time D.W.'s asthma flares up;

At the hearing, Hearing Officer Butler-Truesdale issued an interim order on the record requiring the parties to convene an MDT meeting on September 19, 2006.  The Hearing Officer ordered the team to reconvene to determine if more hours of home instruction are

needed to fill in the gap between the 4 hours that VIS can provide and the 17.5 hours on D.W.'s IEP.  The Hearing Officer ordered the parties to submit Status Reports no later than September 27, 2006 to update the Hearing Officer on the outcome of the MDT meeting.  Since DCPS's argument was that they, at the local school level, did not have the authority to provide more than what VIS offers, the Hearing Officer stated that she would incorporate into her HOD whatever number of hours of home bound instruction the IEP team agreed on that D.W. needs for asthma-related absences, and the Hearing Officer would order DCPS to provide it.

Hearing Officer Butler-Truesdale also ordered the parties to submit closing arguments in writing by September 1, 2006.  The Hearing Officer never issued the Interim Order on paper, but the MDT meeting was convened as ordered.  The Plaintiff submitted her closing argument in writing on September 1, 2006.  DCPS did not submit a closing argument.  A.R. 644.

## The September 19, 2006 MDT Meeting Convened
## Pursuant to the First Interim Order.

Pursuant to the interim order, the MDT meeting convened on September 19, 2006. The parent's counsel explained to the MDT team that, pursuant to the Hearing Officer's verbal interim order, the team was to discuss how many hours of home bound instruction D.W. needs per week for his asthma related absences.  The parent proposed a plan that when D.W. is absent for more than three days, she will fax a note, either signed by herself or the doctor[2], to the school indicating that he has been absent due to his medical

---

[2]    The team agreed that there may be instances where D.W.'s asthma is so severe that he cannot attend school, yet not severe enough to warrant a trip to the doctor because his mother has treatment equipment in her home.  In these cases, the team agreed that a doctor's note is not necessary, but that the parent should send a note

condition.  A.R. 27.

Ms. Batson, the SEC at Marshall E.C., stated the plan that DCPS was willing to implement for D.W.:  DCPS would provide a work packet to D.W., (by way of his siblings), if he is out of school, due to his asthma, for more than 3 days.  Upon his return to school, D.W. will receive one hour per week, based on the number of days absent, of one-on-one tutoring by the special education teacher's aide.  A.R.29.

The parent stated her concern that the team was supposed to come up with a number of hours for home bound instruction for D.W.'s asthma-related absences.  Ms. Batson stated that she did not feel comfortable discussing the number of hours for home bound instruction.  Counsel for the parent reminded Ms. Batson that this is what the Hearing Officer told the team to discuss.  Ms. Batson then left the meeting to call the Office of General Counsel ("OGC") for DCPS.  A.R.30.

While Ms. Batson was on the phone with the DCPS OGC, the rest of the team members, which included D.W.'s general education teacher, special education teacher, speech and language pathologist, school psychologist, and staff from the VIS program, discussed how many hours of home bound instruction D.W. would need.  The team reviewed D.W.'s educational progress which clearly demonstrated that he did not make educational progress for the 2005-2006 school year.  The team agreed that D.W. needs to receive the one hour of speech and language services per week, whether or not he is absent.  A.R. 31.

The team also discussed the hours of instruction that D.W. would be missing on a weekly basis when he is absent.  The team agreed that not only would D.W. be missing

_____

to the school indicating that D.W. is absent due to his asthma.[2]

the 17.5 hours of specialized instruction on his IEP, but he will also be missing all of his general education instruction.  The parent then stated that D.W. could handle two hours of tutoring per day when he is absent.  Some of the team members had concerns that if D.W. was too sick to go to school, he may not be receptive to a tutor for two hours per day.  The parent, however, stated that while D.W. may be too sick to attend school, he can handle two hours per day of tutoring because he would be utilizing his medication and treatment equipment at home.   A.R. 27-31.

Ms. Batson came back to the meeting after speaking with the OGC.  Ms. Batson reiterated that DCPS would only be offering to provide work packets to D.W. for asthma related absences.  The general education teacher and other members of the MDT team did not agree with this proposal and were concerned as to who would teach D.W. the work packets when he was absent.  The general education teacher, Ms. Whitaker, informed the team that she herself had a child with asthma and thus could empathize with the parent's concerns.  A.R. 27-31.

When the parent asked how the teacher's child's needs were addressed, the teacher stated that she had to quit working and home school her child, because she could not get home bound instruction put into place by DCPS.  After listening to the MDT team's concerns, Ms. Batson informed the team that she spoke with OGC.  A.R. 27-31.

While Ms. Puckett, the DCPS attorney handling the case, was not available, Ms. Batson spoke with a different attorney from DCPS, Ms. Rashida Wilson.  Ms. Batson relayed to the team what Ms. Wilson had told her: that DCPS was not required to provide home bound instruction for D.W.  A.R. 27-31.

The parent expressed her disagreement with the DCPS position and reiterated that D.W. can and should receive 2 hours per day of home bound instruction for asthma related absences over 3 days, as well as the one hour per week of speech and language services that is on his IEP.  The MDT team agreed that two hours per day of tutoring should be adequate to make up for his lost specialized instruction, as well as the time lost in the general education class. A.R. 32.

Ms. Batson stated that she understood the parent's position, but that she did not have the authority to discuss home tutoring.  Ms. Batson reiterated DCPS's position that DCPS at the local school is unable to provide any other relief for the parent other than sending home work packets.  Additionally, it was determined that VIS services would no longer be provided to D.W. unless and until he was absent for three consecutive weeks. A.R. 30.

The VIS coordinator, Ms. Smith, stated that since D.W.'s asthma is intermittent, he does not qualify for VIS instruction, unless the parent can provide doctor's documentation that D.W. will be out of school for more than 3 weeks.  Ms. Smith explained that VIS is only offered for students who are absent from school due to a long term medical problem, such as a broken leg.  Ms. Smith further explained that VIS is not available on an "as needed" basis for student's like D.W. who have intermittent and recurring medical problems.  A.R.31.

The team then discussed the compensatory education plan that was agreed to by the MDT team at the meeting on May 23, 2006.  At the May 23, 2006 MDT meeting, the team agreed that DCPS would provide 100 hours of compensatory education (4 hours per day for 5 weeks) , including specialized instruction and speech and language

14

services, to be implemented over the summer 2006.  The parent had requested that

DCPS provide the compensatory education at home since D.W.'s asthma is much worse

in the summer.  DCPS's position was that D.W. must attend school to receive the

compensatory education.  DCPS stated that they could not send service providers and

tutors to D.W.;s house to implement the compensatory education plan.

D.W. was unable to attend school due to his medical condition during the summer

months, and thus did not receive the compensatory education during the summer of

2006. A.R. 27-31.

     During the September 19, 2006 meeting, Ms. Batson stated that the compensatory

education plan would begin the next day on September 20, 2006.  The parent asked

whether the compensatory education would be given after school.  Ms. Batson stated

that the DCPS policy is not to provide compensatory education services after school, but

rather to provide the compensatory education during the school day. A.R.29.

     The parent disagreed with this method of implementing the compensatory education

because compensatory education is supposed to supplement the student's current

services and compensate for prior services not given; compensatory education is not

supposed to take time away from the student's current programming.  A.R. 30.

     Ms. Batson's plan to implement the compensatory education by extending D.W.'s

time in speech and language and specialized instruction was contingent upon D.W.

being healthy and able to attend school.  Ms. Batson would not consider other options for

implementing the compensatory education plan, even in light of D.W.'s asthma related

absences.  A.R.30.

The final issue brought up at the September 19, 2006 MDT meeting was D.W.'s transportation.  D.W.'s IEP calls for transportation in the form of bus tokens.  At the start of the school year, however, Ms. Batson informed the parent that tokens were no longer being given out for special education students.  The parent's counsel sent a letter to Ms. Batson and the Office of Special Education inquiring about the tokens and asking DCPS to provide an alternate mode of transportation, such as a school bus, if tokens were no longer an option.  When this issue was addressed at the meeting, Ms. Batson questioned whether D.W. even qualified for transportation.  The parent showed Ms. Batson the IEP and transportation data form that Ms. Batson herself filled out for D.W. Ms. Batson's only response was that DCPS is not providing tokens for special education students.  Without the bus tokens, D.W. was forced to walk to school, which is up a large hill, and in turn aggravated his asthma condition.  A.R. 32.

On September 27, 2006, the Plaintiff submitted her status report outlining in detail everything that happened at the September 19, 2006 meeting and attaching the supporting documentation. DCPS did not submit a status report.  A.R. 56.

### The Second Interim Order.

On October 23, 2006, the Plaintiff, through counsel, sent a letter to Hearing Officer Butler-Truesdale inquiring about the status of a final HOD, as it had been over 60 days since the hearing convened and over 30 days since the Plaintiff submitted her status report.

Pursuant to the Blackman Jones Consent Decree, there is a rebuttable presumption of harm for HODs which are late or untimely issued.  *See Blackman v. District of Columbia,* 454 F. Supp. 2d 1 (D.D.C. 2006)(Consent Decree at ¶ 74).  On November 13,

2006, Hearing Officer Butler-Truesdale issued a second interim order.  The Order required DCPS to immediately start providing transportation for D.W.  The Order also requested that DCPS and the Plaintiff submit more documents for the Hearing Officer's review, including documentation of D.W.'s attendance for the 2006-2007 school year and encounter tracking forms regarding the compensatory education plan and his related services. A.R.53.

The Plaintiff requested the documents from DCPS, but did not receive a response or any documents from DCPS. Thus, on December 5, 2006, the Plaintiff submitted what she had in her possession as the supplemental documents that Hearing Officer Butler-Truesdale requested.  Included in the Plaintiff's submission was a signed affidavit from D.W.'s mother regarding his attendance.

Upon information and belief, DCPS submitted supplemental documentation to Hearing Officer Butler-Truesdale, but did not provide copies to the Plaintiff.    On December 20, 2006, the Plaintiff sent a letter to Hearing Officer Butler-Truesdale and Ms. Tiffany Puckett in the Office of General Counsel requesting that DCPS provide copies of its supplemental disclosure to the Plaintiff.  By January 9, 2007, the Plaintiff still had not received copies of DCPS's supplemental disclosure.  Additionally, it had been over 120 days since the hearing convened, and the Hearing Officer had still not issued a final HOD.

The Plaintiff attempted to resolve the matter of the overdue HOD by contacting Hearing Officer Butler-Truesdale via letter on January 9, 2007, with copies to Chief Hearing Officer David Smith and Ms. Puckett, inquiring about the status of the HOD and informing Hearing Officer Butler-Truesdale about Plaintiff's concerns regarding the HOD

17

being extremely overdue. A.R.11.

### The Tele-Conference Convened on the Record on January 10, 2007.

In response to the Plaintiff's letter, Hearing Officer Butler-Truesdale contacted counsel for Plaintiff and DCPS[3] via telephone on or around January 9, 2007 and informed counsel for Plaintiff that she had not received Plaintiff's supplemental disclosure on December 5, 2006. Hearing Officer Butler-Truesdale stated that she could not render a decision and issue a final HOD since the Plaintiff had not submitted her supplemental disclosures.

Counsel for the Plaintiff stated that she not only hand delivered the supplemental disclosure to the SHO, but also faxed a copy to Hearing Officer Butler-Truesdale. Plaintiff's counsel informed the Hearing Officer that the Plaintiff's supplemental disclosure was date stamped that it was received by the SHO on December 5, 2006. The Plaintiff's counsel informed the Hearing Officer that she also had fax confirmations that the supplemental disclosure was faxed to the SHO and Hearing Officer Butler-Truesdale's home office.

Hearing Officer Butler-Truesdale maintained that she did not receive the Plaintiff's supplemental disclosures.  The Plaintiff, thus, submitted her supplemental disclosure for a second time via fax to both the SHO and Hearing Officer Butler-Truesdale's home office on January 10, 2007.

---

[3]
       Counsel for DCPS, Ms. Puckett, was not available for the phone conference, however the conversation between Hearing Officer Butler-Truesdale and Plaintiff's counsel took place on Ms. Puckett's voicemail, so as to prevent any *ex parte* communications.

During the phone conversation on January 9, 2007, Hearing Officer Butler-Truesdale informed counsel for the Plaintiff that she would be putting D.W.'s case back on the calendar for hearing.  Counsel for Plaintiff objected to another hearing as the evidence was already submitted and there was no need for another hearing.  After the phone conversation ended, Hearing Officer Butler-Truesdale scheduled another hearing for January 19, 2007.

On January 10, 2007, the Plaintiff filed a Motion to Remove the Hearing from the Calendar with Chief Hearing Officer David Smith. Chief Hearing Officer David Smith denied the Plaintiff's Motion to Remove the Hearing from the Calendar reasoning that Hearing Officer Butler-Truesdale would have to decide the Motion since she had previously presided over the matter.  Also on January 10, 2007, Hearing Officer Butler-Truesdale contacted counsel for Plaintiff and counsel for DCPS again for another teleconference. The teleconference on January 10, 2007 took place on the record with Hearing Officer Butler-Truesdale, Ms. Puckett from the OGC, and counsel for Plaintiff.

Hearing Officer Butler-Truesdale stated that she did not think she had enough evidence to make a decision and that she needed more information regarding D.W. currently for the 2006-2007 school year.  Counsel for the Plaintiff reminded Hearing Officer Butler-Truesdale that DCPS still had the burden of proof in this case, and that issues regarding the 2006-2007 school year are outside the narrow scope of the due process complaint filed.  During the teleconference, Ms. Puckett verbally joined in counsel for the Plaintiff's Motion to Remove the Hearing from the Calendar.

Both Ms. Puckett and counsel for the Plaintiff were in agreement that the evidence had been entered, there was no need to reconvene the hearing, and Hearing Officer

19

Butler-Truesdale needed to make a decision and issue a final HOD.  During the teleconference Hearing Officer Butler-Truesdale stated that she would not stand for evidence being entered on the record by the Plaintiff indicating that she had not timely reviewed the record to make a decision.

Hearing Officer Butler-Truesdale admonished counsel for the Plaintiff for suggesting on the record that the Hearing Officer had delayed in making a ruling and issuing a final HOD.  Hearing Officer Butler-Truesdale then began stating that she was going to rule against D.W. because there was not enough evidence to support the claim.  The Plaintiff, through counsel, respectfully reminded Hearing Officer Butler-Truesdale to carefully review all evidence going back to June and August, when the hearing convened, because the Hearing Officer had already indicated on the record that there was a denial of FAPE to D.W.

Before ending the teleconference, counsel for Plaintiff reiterated the three issues in the complaint:  the home bound services for asthma-related absences, the psycho-educational evaluation, and the implementation of the 100 hours of compensatory education.  After the teleconference, DCPS sent a copy of its supplemental disclosure to counsel for the Plaintiff.  Included in the supplemental disclosure were attendance records for D.W. for the 2006-2006 school year and some encounter tracking forms.

Ms. Puckett, counsel for DCPS, did not submit any evidence to show that  DCPS was implementing the compensatory education plan agreed to by the MDT team on May 23, 2006.  Ms. Puckett also did not submit any evidence to show that DCPS had conducted or scheduled the psycho-educational evaluation.  Ms. Puckett presented no evidence that the parent and DCPS agreed that the psycho-educational evaluation was not warranted.

20

The only evidence in the record regarding the psycho-educational evaluation was that the parent had requested DCPS conduct it, and that the evaluation expired in August 2006. The due process hearing scheduled for January 19, 2007 did not go forward. On January 22, 2007, Hearing Officer Butler-Truesdale issued the final HOD (see attached) denying the Plaintiff all requested relief and finding that DCPS did not deny D.W. FAPE. The January 22, 2007 HOD is replete with factual errors, as it lists incorrect dates and timelines of events that occurred. A.R. 2.

## ARGUMENT

### The Court should Grant Summary Judgment and Reverse the HOD, because the Hearing Officer Erred in Not Timely issuing her HOD.

The party seeking summary judgment has the initial responsibility of demonstrating the absence of a genuine dispute of material facts through the pleadings, depositions, answers to interrogatories, admissions on file, and in this case the administrative record. *Celortex Corp v.Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56. The nonmoving party must then "go beyond the pleadings and by [its] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See Celortex* at 324. In the instant case, the facts are clear when reviewing the administrative record.

The issues in this case are legal in nature because the underlying factual issues are undisputed. The Hearing Officer erred by not timely issuing her HOD. At no time did the Plaintiff waive her rights pursuant to 34 C.F.R. ' 300.515 and D.C.M.R. tit. 5 '3021.10. *See also* SOP ' 400.1(B). The Hearing Officer did not issue her final HOD until over six months after the request for due process hearing was filed and over fours months from

when the hearing convened.  Pursuant to the Blackman Jones Consent Decree, there is a

rebuttable presumption of harm for overdue HODs.  *See Blackman v. District of*

*Columbia,* 454 F. Supp. 2d 1 (D.D.C. 2006)(Consent Decree at ¶ 74).

**The Hearing Officer erred in scheduling another hearing to convene**.

Hearing Officer Butler-Truesdale had no authority or jurisdiction in scheduling a

hearing to convene, as neither party has requested a hearing date, and the prior hearing

was not continued.  *See* Student Operating Procedures ("SOP") ' 402.  At no time did

either DCPS or the Plaintiff request a continuance and the Hearing Officer did not declare

a recess at the end of the August 25, 2006 hearing.  *See* SOP ' 402 (B)(11).  Additionally,

the original request for due process was for an expedited hearing.  Pursuant to ' 402

(B)(13), no continuances shall be granted for expedited hearings.  Neither party

requested a continuance and the hearing convened and concluded on August 25, 2006.

**The Hearing Officer erred in requesting documentation from the 2006-2007 school**

**year and considering evidence outside the scope of the complaint**

The Motion for Expedited Due Process Hearing was filed June 27, 2006.  Anything

occurring after the filing of the complaint is outside the scope of issues to be litigated.

**The Hearing Officer erred by placing the burden of proof on the Plaintiff.**

The United Stated Supreme Court held that, absent a state law indicating otherwise,

the burden of persuasion in IDEIA cases falls on the party bringing the complaint.  *See*

*Schaffer v. Weast,* 546 U.S. 49 (2005).  The District of Columbia Municipal Regulations

placed the burden of proof on DCPS in IDEIA cases.  It was not until July 1, 2006 that the

District of Columbia amended the regulation and placed the burden on the party bringing

the IDEIA claim.  However, the Plaintiff's Motion for Expedited Hearing was filed on June

22

27, 2006, prior to the change in District of Columbia law.  Thus, the burden was still on

DCPS in the underlying case.  The HOD, however, states that the Plaintiff has failed to

present substantial evidence that DCPS has failed to provide services.

### The Hearing Officer Erred in Finding Denial of FAPE Was Minimal

The Hearing Officer erred when she stated on the record at the August 25, 2006 due

process hearing that there was a denial of FAPE for lack of services provided at the end

of the 2005-2006 school year, but then stated at the January 10, 2007 teleconference that

any harm for a denial of services to D.W. was minimal.  The Hearing Officer erred in not

incorporating into her final HOD the denial of FAPE for the failure of DCPS to provide

services at the end of the 2005-2006 school year.

**The Hearing Officer erred by including inaccurate and incorrect factual dates and**

**timelines in the HOD, which resulted in an inaccurate record and an incorrect**

**finding of no denial of FAPE, to wit:**

> 1.1 The hearing date on page one of May 22, 2006 is incorrect. The
> Hearing convened on one day, August 25, 2006.
>
> 1.2 Section III, page two references documents submitted into
> evidence at the May 2006 hearing.  The May 2006 hearing was a
> prior hearing and the Hearing Officer had previously issued a final
> HOD.
>
> 1.3 Section III, page two refers to documents that the Plaintiff
> submitted on July 31, 2006 labeled DW-1 through DW-5.  The
> Plaintiff did not submit documents on July 31, 2006.
>
> 1.4 Section III, page two states that the Plaintiff's disclosures were

23

both mislabeled and unidentified.  This is incorrect.  On August 18, 2006, Plaintiff submitted a labeled and tabbed disclosure of documents DW-01 through DW-21.  Plaintiff submitted a supplemental disclosure of labeled and tabbed documents DW-22 through DW-29 on December 5, 2006.

1.5 Page four indicates that the Plaintiff did not follow correct procedures with regard to filing her Motion for Expedited Hearing.  The Motion was filed with the Student Hearing Officer, Chief Hearing Officer David Smith, and a courtesy copy to Hearing Officer Butler-Truesdale.

1.6 Section V, page five, paragraph one states that DCPS convened a meeting on September 19, 2006 pursuant to the written HOD issued on June 2, 2006.  The September 19, 2006 meeting was convened pursuant to the interim order issued on the record on August 25, 2006.  DCPS had already convened a meeting pursuant to the June 2, 2006 HOD on May 23, 2006.  This was possible because the order for DCPS to convene the meeting was put on the record verbally on May 22, 2006, even though the written order did not come out until afterwards on June 2, 2006.

1.7 Section V, page five, paragraph one states that the Plaintiff fails to allege who was absent at the September 19, 2006 meeting.  However, the subject of the complaint was which DCPS personnel were not at the May 23, 2006 meeting.  At the May 23,

24

2006 meeting, DCPS did not have the proper individuals at the meeting and thus the Plaintiff filed her due process complaint

1.8 Section V, page five, paragraph one states that DCPS did not indicate at the September 19, 2006 meeting that they did not have authority to provide home instruction.  This is incorrect.  The meeting notes state that DCPS cannot provide any other relief for the parent other than sending work packets home.

1.9 Section V, page six, paragraph three refers to a letter from Dr. Nguyen on November 8, 2006.  There is no letter dated November 8, 2006 from Dr. Nguyen in the record.

1.10  Section V, page seven, paragraph one states that the June 2, 2006 HOD instructed the Plaintiff to provide medical records to DCPS 48 hours prior to the HOD ordered MDT meeting, which convened on September 19, 2006.  No such order is in the June 2, 2006 HOD.  Additionally, as stated above, the meeting convened on September 19, 2006 was pursuant to a verbal interim order on August 25, 2006.

1.11  Section V, page seven, paragraph three, the Hearing Officer again states that the September 19, 2006 meeting was convened pursuant to the June 2, 2006 HOD.  The meeting convened on September 19, 2006 was pursuant to a verbal interim order on August 25, 2006.

1.12  Section V, page seven, paragraph four references Plaintiff's

exhibit number five dated June 5, 2006.  The Plaintiff did not

submit a document number five dated June 5, 2006.

1.13    Section V, page eight, paragraph one states that the Plaintiff

filed her Motion for Expedited Hearing on August 1, 2006.  This is

incorrect.  The Plaintiff filed her Motion for Expedited Hearing on

June 27, 2006.

## CONCLUSION

Based on the arguments above the Plaintiff requests that this Court issue a

Summary Judgment for the Plaintiff and against the Defendant and reverse the January

22, 2007, Hearing Officer's Decision.


Respectfully submitted,
<u>            /s/            </u>
Paul S. Dalton, Esq
D.C. Bar No. 439118
Dalton & Dalton, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300 (ph)
(703) 739-2323 (fax)


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document with its attachments was filed
electronically on this 4th day of January 2008.


<u>            /s/            </u>
Paul S. Dalton, Esq.
Counsel for Plaintiffs

26

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **CARRIE WILKINS,** | : | |
| **as parent and next friend of D.W.** | : | |
| **a minor** | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **Civil Action No. 07-0808(JDB)** |
| | : | |
| **DISTRICT OF COLUMBIA** | : | |
| | : | |
| **Defendants** | : | |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Fed .R. Civ. P. Rule 56 and LCvR 7 (h), the Plaintiffs hereby submit the following Statement of Material Facts to which there is no genuine issue:

1.      D.W. is an 11 year old student at Thurgood Marshall Educational Center ("Marshall E.C."). A.R. 143

2.      D.W. has chronic bronchial asthma and Attention Deficit Hyperactivity Disorder ("ADHD"), for which he has an individualized education plan ("IEP"). A.R. 143

3.      D.W.'s current IEP dated May 23, 2006 classifies his disabilities as Other Health Impairment ("OHI") for ADHD and asthma and calls for 17.5 hours of specialized instruction and one hour of speech and language services per week.  A.R. 143

4.      D.W.'s chronic asthma causes him to be absent from school when the condition is aggravated.  The Plaintiff had requested DCPS to provide home bound services during the asthma related absences.   A.R. 224.

5.      As the result of a due process hearing held on July 12, 2005, Hearing Officer
        Butler-Truesdale issued a Hearing Officer's Decision ("HOD") on July 22,
        2005    ordering DCPS to, *inter alia,* convene a multi-disciplinary team
        ("MDT") meeting to    review all evaluations and medical documents, revise
        the IEP if necessary,    determine placement and determine compensatory
        education if warranted.  DCPS    never convened the meeting. Ar. 434.

6.        Pursuant to the Blackman Jones Consent Decree, a rebuttable presumption
        of    harm exists where DCPS fails to comply with the terms of an HOD.  *See*
        *Blackman    v. District of Columbia,* 454 F. Supp. 2d 1 (D.D.C.
        2006)(Consent Decree at ¶ 74).    The Plaintiff filed a due process complaint
        notice on January 26, 2006 seeking,    *inter alia,* enforcement of the HOD.
        On May 2, 2006, DCPS convened a resolution    meeting in an attempt to
        resolve the due process complaint notice.  A.R. 382.

7.      At the resolution meeting, Ms. Tiffany Batson, the special education
        coordinator    ("SEC") at Marshall E.C. stated that DCPS cannot in good faith
        agree to provide    home bound specialized instruction and speech and
        language services, but    agreed to convene an IEP meeting and have the
        parties present who have    authority to make those decisions.  A.R. 475.

8.      A due process hearing convened in front of Hearing Officer Butler Truesdale
        on    May 22, 2006.  At the hearing, Ms. Batson testified under oath that
        DCPS would    be convening an MDT / IEP meeting the very next day, May
        23, 2006, with the    appropriate people in attendance, who have authority to
        permit home bound    instruction for D.W.'s asthma-related absences. A.R.

2

475.

9.     On May 23, 2006, DCPS convened the MDT meeting. This meeting was convened prior to Hearing Officer Butler-Truesdale issuing her HOD from the May 22, 2006 hearing.  At the May 23, 2006 MDT meeting, the IEP team agreed that D.W. needs home bound instruction for his asthma-related absences.  The team also agreed to the number of hours that should be implemented as D.W.'s  compensatory education plan.  Additionally at the meeting, the Plaintiff requested that DCPS conduct an updated psycho-educational evaluation for D.W.  A.R. 221.

10.    Contrary to Ms. Batson's testimony at the hearing and statements at the resolution meeting, DCPS did not have someone at the MDT meeting with authority to make decisions about home bound instruction for D.W.'s asthma related-absences.  The IEP team members, including D.W.'s special education teacher, regular education teacher, and speech and language pathologist, as well as the Plaintiff, all agreed that D.W.'s asthma-related absences have negatively impacted D.W.'s educational progress, and thus D.W. should be given home bound instruction when the asthma-related absences become excessive. A.R.221.

11.    The Plaintiff expressed her concerns at the meeting that she feels D.W. is a throw-away child because DCPS is not giving him the services he needs, even though she has been requesting such services since as far back as 2003.  At the meeting, the Plaintiff suggested a plan where if D.W. has asthma-related absences for 3 consecutive days, then the parent would notify the school and

3

the school would send a tutor and related service providers to D.W.'s home.  If the absences were less than 3 consecutive days, the school would send home work packets.  A.R.224.

12.    At the meeting, Ms. Batson stated that she could not authorize such services. The Plaintiff then requested that the principal, or someone who could authorize the services, participate in the meeting.  The principal, Ms. Powell, then entered the meeting, and also stated that Marshall E.C. does not have the authority to make the decision regarding home bound services. At the meeting, DCPS could only offer that the Parent apply for Visiting Instruction Services ("VIS") through Sharpe Health School.  No one from VIS was at the meeting to explain what services VIS provides.  A.R.221

13.    While the Plaintiff was not entirely satisfied with the VIS offer, she accepted it and submitted the paperwork for VIS to begin for D.W. for the end of the 2005-2006 school year.  Additionally, at the meeting, the IEP team agreed to a compensatory education plan for D.W. of 4 hours per day for 5 weeks (essentially 100 hours) to be implemented over the summer and which would include specialized instruction and speech and language services. A.R. 223.

14.    There was disagreement about where DCPS would provide the compensatory education.  Ms. Batson offered to provide the compensatory education through the summer school program at the school site.  The parent objected to this because D.W.'s asthma is significantly worse in the summer months, which limits his ability to go outside and go to the school.  The parent requested that DCPS provide the compensatory education at the home over the summer.

4

A.R. 223

15.    Ms. Batson refused to consider this option and stated that D.W. would only

       receive the compensatory education if he came to the school.  Finally, at the

       meeting, the parent notified DCPS that the triennial evaluation was coming

       due for D.W.  The parent requested that DCPS conduct a psycho-educational

       evaluation to 1) determine D.W.'s present levels of performance, and 2)

       update his triennial evaluations.  A.R.223/242.

16.    Ms. Batson refused to conduct the psycho-educational evaluation, stating that

       the evaluation was not warranted because the team was not considering a

       change in disability.  Ms. Batson stated that they only conduct reevaluations

       when there is a suspected change in disability.  Ms. Batson also stated that

       even though the triennial was due soon, they would still not be conducting the

       psycho-educational evaluation because there was not a suspected change in

       disability. A.R.225

17.    Counsel for parent explained to Ms. Batson the requirements for conducting

       reevaluations, and that pursuant to 34 C.F.R. § 300.303(b)(2), a reevaluation

       must occur at least once every three years, unless the parent and school

       agree that a reevaluation is not warranted.  The parent did not agree that a

       reevaluation was not warranted and maintained her request for the psycho-

       educational evaluation.    A.R.225

18.    After the meeting, DCPS did not issue a prior notice indicating their refusal to

       conduct the evaluation that the parent requested.  After the meeting, Hearing

       Officer Butler-Truesdale issued her HOD on June 2, 2006 ordering the team to

5

convene a meeting to discuss the issues already discussed at the May 23, 2006 MDT meeting.  A.R.225.

19.     The Plaintiff sent a letter to DCPS stating that if DCPS's position was the same as it was at the May 23, 2006 meeting, the Plaintiff saw no need to convene another meeting. The letter also stated that if DCPS's position had changed, the meeting should be convened.  DCPS did not respond to the letter and no subsequent meeting was held.  A.R.225-226.

20.     On June 22, 2006[1], the Plaintiff filed a Motion for Expedited Hearing requesting, *inter alia,* DCPS to fund an independent psycho-educational evaluation, DCPS to fund the 100 hours of compensatory education services agreed to by the IEP team, and DCPS to provide home-bound instruction for D.W.'s asthma-related absences.  The Plaintiff filed the Motion for Expedited Hearing with the Student Hearing Office and the Chief Hearing Officer.  The Plaintiff also sent a courtesy copy to Hearing Officer Butler-Truesdale in an effort to keep her apprised of the status of the case and also request that she retain jurisdiction since the facts are complicated and she was already familiar with the case.  A.R. .258

---

[1]

Since the request for due process hearing was submitted in June 2006, the law regarding which party bears the burden of proof had not yet changed.  Thus, when the hearing convened in August 2006, the burden of proof was still on DCPS.  *See* DCPS Student Hearing Office Standard Operating Procedures ("SOP") § 700.5.

21.    On August 9, 2006, Chief Hearing Officer Smith issued an order granting the
       Plaintiff's Motion and scheduling the hearing for August 25, 2006.  A.R. 119.
       The hearing convened on August 25, 2006 in front of Hearing Officer Butler-
       Truesdale.  At the hearing the following issues were addressed: whether
       DCPS denied D.W. FAPE by:

       1) failing to conduct the psycho-education evaluation after the parent
       requested it and despite the fact that the triennial evaluation was coming
       due;

       2) failing to implement the compensatory education plan agreed to by the
       IEP team; and

       3) failing to provide appropriate home-bound instruction and related
   services due to D.W.'s asthma-related absences. T.504.

22.    The DCPS attorney, Ms. Tiffany Puckett argued at the Hearing that DCPS was
       going to conduct the psycho-educational soon (in September 2006), since it
       expired almost one month ago (in August 2006).  Ms. Batson, however, testified
       under oath that DCPS had no intention of conducting the psycho-educational
       once it expired because they did not suspect a change in disability.  During the
       hearing, on cross-examination Ms. Batson, the SEC at Marshall E.C., testified that
       DCPS was not going to conduct a psycho-educational even in light of the fact that
       the triennial was expiring soon. A.R.525.

23.    The parent testified that, at the time of the hearing, DCPS had not contacted her
       to schedule the evaluation.   DCPS offered no evidence to show that they were
       planning to schedule this evaluation.

7

24.     When the parties began addressing the issue of implementing the
        compensatory education plan at the Hearing, Ms. Puckett, the attorney for
        DCPS, argued that D.W. was not eligible for extended school year services
        ("ESY"), which allows a student to receive services over the summer, and thus
        there was no denial of FAPE.  Ms. Puckett further argued that not
        implementing a compensatory education plan is not a denial of FAPE because
        the school was planning on implementing the compensatory education plan
        once school started.

25.     Contrary to the arguments made by Ms. Puckett, the MDT team agreed to the
        compensatory education plan and that it was to be implemented over the
        summer months.  The only disagreement was where the compensatory
        education services would take place, at the local school or at home.  A.R.553.

26.     The parent testified that DCPS did not contact her to inform her that the
        compensatory education plan was going to be implemented during the school
        year, rather than during the summer as agreed to by the MDT team.  During
        the Hearing, the parent testified that at the end of the 2005-2006 school year,
        after the May 22, 2006 meeting, D.W. received some home-bound instruction
        through VIS.

27.      The parent testified that the hours of academic instruction provided by VIS
        were not enough to meet his IEP.  D.W.'s IEP calls for 17.5 hours per week of
        pull-out special education and one hour per week of speech and language
        services.  The parent testified that D.W. only received 4 hours of academic
        instruction per week from VIS and did not receive any speech and language

8

services.

28.     The testimony of Ms Elma Smith, VIS Coordinator, revealed that VIS can only provide a maximum 4 hours of home instruction per week and does not provide related services.

29.     Ms. Smith further testified that VIS is not intended to take the place of school; rather it is a temporary service for students who have a one time period of absence due to a one time medical problem, such as a broken leg or some type of surgery.  The testimony of Ms. Smith revealed that VIS is not provided on an "as needed" basis for students like D.W. with chronic reoccurring health problems.  Ms. Smith explained that in order for VIS to work, the parent will have to re-apply for the service every single time D.W.'s asthma flares up;

30.     At the hearing, Hearing Officer Butler-Truesdale issued an interim order on the record requiring the parties to convene an MDT meeting on September 19, 2006.  The Hearing Officer ordered the team to reconvene to determine if more hours of home instruction are needed to fill in the gap between the 4 hours that VIS can provide and the 17.5 hours on D.W.'s IEP.  The Hearing Officer ordered the parties to submit Status Reports no later than September 27, 2006 to update the Hearing Officer on the outcome of the MDT meeting. Since DCPS's argument was that they, at the local school level, did not have the authority to provide more than what VIS offers, the Hearing Officer stated that she would incorporate into her HOD whatever number of hours of home bound instruction the IEP team agreed on that D.W. needs for asthma-related absences, and the Hearing Officer would order DCPS to provide it.

9

Hearing Officer Butler-Truesdale also ordered the parties to submit closing arguments in writing by September 1, 2006.  The Hearing Officer never issued the Interim Order on paper, but the MDT meeting was convened as ordered. The Plaintiff submitted her closing argument in writing on September 1, 2006. DCPS did not submit a closing argument.  A.R. 644.

31.        Pursuant to the interim order, the MDT meeting convened on September 19, 2006.  The parent's counsel explained to the MDT team that, pursuant to the Hearing Officer's verbal interim order, the team was to discuss how many hours of home bound instruction D.W. needs per week for his asthma related absences.  The parent proposed a plan that when D.W. is absent for more than three days, she will fax a note, either signed by herself or the doctor[2], to the school indicating that he has been absent due to his medical condition.  A.R. 27.

32.        Ms. Batson, the SEC at Marshall E.C., stated the plan that DCPS was willing to implement for D.W.:  DCPS would provide a work packet to D.W., (by way of his siblings), if he is out of school, due to his asthma, for more than 3 days. Upon his return to school, D.W. will receive one hour per week, based on the number of days absent, of one-on-one tutoring by the special education teacher's aide.  A.R.29.

---

[2]

       The team agreed that there may be instances where D.W.'s asthma is so severe that he cannot attend school, yet not severe enough to warrant a trip to the doctor because his mother has treatment equipment in her home.  In these cases, the team agreed that a doctor's note is not necessary, but that the parent should send a note to the school indicating that D.W. is absent due to his asthma.

33.    The parent stated her concern that the team was supposed to come up with a number of hours for home bound instruction for D.W.'s asthma-related absences. Ms. Batson stated that she did not feel comfortable discussing the number of hours for home bound instruction. Counsel for the parent reminded Ms. Batson that this is what the Hearing Officer told the team to discuss. Ms. Batson then left the meeting to call the Office of General Counsel ("OGC") for DCPS. A.R.30.

34.    While Ms. Batson was on the phone with the DCPS OGC, the rest of the team members, which included D.W.'s general education teacher, special education teacher, speech and language pathologist, school psychologist, and staff from the VIS program, discussed how many hours of home bound instruction D.W. would need. The team reviewed D.W.'s educational progress which clearly demonstrated that he did not make educational progress for the 2005-2006 school year. The team agreed that D.W. needs to receive the one hour of speech and language services per week, whether or not he is absent. A.R. 31.

35.    The team also discussed the hours of instruction that D.W. would be missing on a weekly basis when he is absent. The team agreed that not only would D.W. be missing the 17.5 hours of specialized instruction on his IEP, but he will also be missing all of his general education instruction. The parent then stated that D.W. could handle two hours of tutoring per day when he is absent. Some of the team members had concerns that if D.W. was too sick to go to school, he may not be receptive to a tutor for two hours per day. The parent,

11

however, stated that while D.W. may be too sick to attend school, he can handle two hours per day of tutoring because he would be utilizing his medication and treatment equipment at home.   A.R. 27-31.

36.    Ms. Batson came back to the meeting after speaking with the OGC.  Ms. Batson reiterated that DCPS would only be offering to provide work packets to D.W. for asthma related absences.  The general education teacher and other members of the MDT team did not agree with this proposal and were concerned as to who would teach D.W. the work packets when he was absent. The general education teacher, Ms. Whitaker, informed the team that she herself had a child with asthma and thus could empathize with the parent's concerns.  A.R. 27-31.

37.    When the parent asked how the teacher's child's needs were addressed, the teacher stated that she had to quit working and home school her child, because she could not get home bound instruction put into place by DCPS. After listening to the MDT team's concerns, Ms. Batson informed the team that she spoke with OGC.  A.R. 27-31.

38.    While Ms. Puckett, the DCPS attorney handling the case, was not available, Ms. Batson spoke with a different attorney from DCPS, Ms. Rashida Wilson. Ms. Batson relayed to the team what Ms. Wilson had told her: that DCPS was not required to provide home bound instruction for D.W.  A.R. 27-31.

39.    The parent expressed her disagreement with the DCPS position and reiterated that D.W. can and should receive 2 hours per day of home bound instruction for asthma related absences over 3 days, as well as the one hour per week of

speech and language services that is on his IEP.  The MDT team agreed that

two hours per day of tutoring should be adequate to make up for his lost

specialized instruction, as well as the time lost in the general education class.

A.R. 32.

40.     Ms. Batson stated that she understood the parent's position, but that she did

not have the authority to discuss home tutoring.  Ms. Batson reiterated DCPS's

position that DCPS at the local school is unable to provide any other relief for

the parent other than sending home work packets.  Additionally, it was

determined that VIS services would no longer be provided to D.W. unless and

until he was absent for three consecutive weeks.  A.R. 30.

41.     The VIS coordinator, Ms. Smith, stated that since D.W.'s asthma is

intermittent, he does not qualify for VIS instruction, unless the parent can

provide doctor's documentation that D.W. will be out of school for more than 3

weeks.  Ms. Smith explained that VIS is only offered for students who are

absent from school due to a long term medical problem, such as a broken leg.

Ms. Smith further explained that VIS is not available on an "as needed" basis

for student's like D.W. who have intermittent and recurring medical problems.

A.R.31.

42.     The team then discussed the compensatory education plan that was agreed to

by the MDT team at the meeting on May 23, 2006.  At the May 23, 2006 MDT

meeting, the team agreed that DCPS would provide 100 hours of

compensatory education (4 hours per day for 5 weeks) , including specialized

instruction and speech and language services, to be implemented over the

13

summer 2006.  The parent had requested that DCPS provide the

compensatory education at home since D.W.'s asthma is much worse in the

summer.  DCPS's position was that D.W. must attend school to receive the

compensatory education.  DCPS stated that they could not send service

providers and tutors to D.W.;s house to implement the compensatory

education plan.   D.W. was unable to attend school due to his medical

condition during the summer months, and thus did not receive the

compensatory education during the summer of 2006. A.R. 27-31.

43.    During the September 19, 2006 meeting, Ms. Batson stated that the

compensatory education plan would begin the next day on September 20,

2006.  The parent asked whether the compensatory education would be given

after school.  Ms. Batson stated that the DCPS policy is not to provide

compensatory education services after school, but rather to provide the

compensatory education during the school day. A.R.29.

44.    The parent disagreed with this method of implementing the compensatory

education because compensatory education is supposed to supplement the

student's current services and compensate for prior services not given;

compensatory education is not supposed to take time away from the student's

current programming.  A.R. 30.

45.    Ms. Batson's plan to implement the compensatory education by extending

D.W.'s time in speech and language and specialized instruction was

contingent upon D.W. being healthy and able to attend school.  Ms. Batson

would not consider other options for implementing the compensatory

14

education plan, even in light of D.W.'s asthma related absences.  A.R.30.

46.    The final issue brought up at the September 19, 2006 MDT meeting was D.W.'s transportation.  D.W.'s IEP calls for transportation in the form of bus tokens.  At the start of the school year, however, Ms. Batson informed the parent that tokens were no longer being given out for special education students.  The parent's counsel sent a letter to Ms. Batson and the Office of Special Education inquiring about the tokens and asking DCPS to provide an alternate mode of transportation, such as a school bus, if tokens were no longer an option.  When this issue was addressed at the meeting, Ms. Batson questioned whether D.W. even qualified for transportation.  The parent showed Ms. Batson the IEP and transportation data form that Ms. Batson herself filled out for D.W.  Ms. Batson's only response was that DCPS is not providing tokens for special education students.  Without the bus tokens, D.W. was forced to walk to school, which is up a large hill, and in turn aggravated his asthma condition.  A.R. 32.

47.    On September 27, 2006, the Plaintiff submitted her status report outlining in detail everything that happened at the September 19, 2006 meeting and attaching the supporting documentation. DCPS did not submit a status report. A.R. 56.

48.    On October 23, 2006, the Plaintiff, through counsel, sent a letter to Hearing Officer Butler-Truesdale inquiring about the status of a final HOD, as it had been over 60 days since the hearing convened and over 30 days since the Plaintiff submitted her status report.

15

49.     Pursuant to the Blackman Jones Consent Decree, there is a rebuttable

        presumption of harm for HODs which are late or untimely issued.  *See*

        *Blackman v. District of Columbia,* 454 F. Supp. 2d 1 (D.D.C. 2006)(Consent

        Decree at ¶ 74).

50.      On November 13, 2006, Hearing Officer Butler-Truesdale issued a second

        interim order.  The Order required DCPS to immediately start providing

        transportation for D.W.  The Order also requested that DCPS and the Plaintiff

        submit more documents for the Hearing Officer's review, including

        documentation of D.W.'s attendance for the 2006-2007 school year and

        encounter tracking forms regarding the compensatory education plan and his

        related services. A.R.53.

51.     The Plaintiff requested the documents from DCPS, but did not receive a

        response or any documents from DCPS. Thus, on December 5, 2006, the

        Plaintiff submitted what she had in her possession as the supplemental

        documents that Hearing Officer Butler-Truesdale requested.  Included in the

        Plaintiff's submission was a signed affidavit from D.W.'s mother regarding his

        attendance.

52.     Upon information and belief, DCPS submitted supplemental documentation to

        Hearing Officer Butler-Truesdale, but did not provide copies to the Plaintiff.  On

        December 20, 2006, the Plaintiff sent a letter to Hearing Officer Butler-

        Truesdale and Ms. Tiffany Puckett in the Office of General Counsel requesting

        that DCPS provide copies of its supplemental disclosure to the Plaintiff.  By

        January 9, 2007, the Plaintiff still had not received copies of DCPS's

16

supplemental disclosure.  Additionally, it had been over 120 days since the hearing convened, and the Hearing Officer had still not issued a final HOD.

53.     The Plaintiff attempted to resolve the matter of the overdue HOD by contacting Hearing Officer Butler-Truesdale via letter on January 9, 2007, with copies to Chief Hearing Officer David Smith and Ms. Puckett, inquiring about the status of  the HOD and informing Hearing Officer Butler-Truesdale about Plaintiff's concerns regarding the HOD being extremely overdue. A.R.11.

54.     In response to the Plaintiff's letter, Hearing Officer Butler-Truesdale contacted counsel for Plaintiff and DCPS[3] via telephone on or around January 9, 2007 and informed counsel for Plaintiff that she had not received Plaintiff's supplemental disclosure on December 5, 2006. Hearing Officer Butler-Truesdale stated that she could not render a decision and issue a final HOD since the Plaintiff had not submitted her supplemental disclosures. Counsel for the Plaintiff stated that she not only hand delivered the supplemental disclosure to the SHO, but also faxed a copy to Hearing Officer Butler-Truesdale.  Plaintiff's counsel informed the Hearing Officer that the Plaintiff's supplemental disclosure was date stamped that it was received by the SHO on December 5, 2006.

---

[3]    Counsel for DCPS, Ms. Puckett, was not available for the phone conference, however the conversation between Hearing Officer Butler-Truesdale and Plaintiff's counsel took place on Ms. Puckett's voicemail, so as to prevent any *ex parte* communications.

17

55.    The Plaintiff's counsel informed the Hearing Officer that she also had fax confirmations that the supplemental disclosure was faxed to the SHO and Hearing Officer Butler-Truesdale's home office.  Hearing Officer Butler-Truesdale maintained that she did not receive the Plaintiff's supplemental disclosures.  The Plaintiff, thus, submitted her supplemental disclosure for a second time via fax to both the SHO and Hearing Officer Butler-Truesdale's home office on January 10, 2007.

56.    During the phone conversation on January 9, 2007, Hearing Officer Butler-Truesdale informed counsel for the Plaintiff that she would be putting D.W.'s case back on the calendar for hearing.  Counsel for Plaintiff objected to another hearing as the evidence was already submitted and there was no need for another hearing.  After the phone conversation ended, Hearing Officer Butler-Truesdale scheduled another hearing for January 19, 2007.

57.    On January 10, 2007, the Plaintiff filed a Motion to Remove the Hearing from the Calendar with Chief Hearing Officer David Smith. Chief Hearing Officer David Smith denied the Plaintiff's Motion to Remove the Hearing from the Calendar reasoning that Hearing Officer Butler-Truesdale would have to decide the Motion since she had previously presided over the matter.  Also on January 10, 2007, Hearing Officer Butler-Truesdale contacted counsel for Plaintiff and counsel for DCPS again for another teleconference. The teleconference on January 10, 2007 took place on the record with Hearing Officer Butler-Truesdale, Ms. Puckett from the OGC, and counsel for Plaintiff. Hearing Officer Butler-Truesdale stated that she did not think she had enough

evidence to make a decision and that she needed more information regarding D.W. currently for the 2006-2007 school year. Counsel for the Plaintiff reminded Hearing Officer Butler-Truesdale that DCPS still had the burden of proof in this case, and that issues regarding the 2006-2007 school year are outside the narrow scope of the due process complaint filed. During the teleconference, Ms. Puckett verbally joined in counsel for the Plaintiff's Motion to Remove the Hearing from the Calendar.

58.    Both Ms. Puckett and counsel for the Plaintiff were in agreement that the evidence had been entered, there was no need to reconvene the hearing, and Hearing Officer Butler-Truesdale needed to make a decision and issue a final HOD. During the teleconference Hearing Officer Butler-Truesdale stated that she would not stand for evidence being entered on the record by the Plaintiff indicating that she had not timely reviewed the record to make a decision.

59.    Hearing Officer Butler-Truesdale admonished counsel for the Plaintiff for suggesting on the record that the Hearing Officer had delayed in making a ruling and issuing a final HOD. Hearing Officer Butler-Truesdale then began stating that she was going to rule against D.W. because there was not enough evidence to support the claim. The Plaintiff, through counsel, respectfully reminded Hearing Officer Butler-Truesdale to carefully review all evidence going back to June and August, when the hearing convened, because the Hearing Officer had already indicated on the record that there was a denial of FAPE to D.W.

19

60.      Before ending the teleconference, counsel for Plaintiff reiterated the three issues in the complaint:  the home bound services for asthma-related absences, the psycho-educational evaluation, and the implementation of the 100 hours of compensatory education.  After the teleconference, DCPS sent a copy of its supplemental disclosure to counsel for the Plaintiff.  Included in the supplemental disclosure were attendance records for D.W. for the 2006-2006 school year and some encounter tracking forms.

61.      Ms. Puckett, counsel for DCPS, did not submit any evidence to show that DCPS was implementing the compensatory education plan agreed to by the MDT team on May 23, 2006.  Ms. Puckett also did not submit any evidence to show that DCPS had conducted or scheduled the psycho-educational evaluation.  Ms. Puckett presented no evidence that the parent and DCPS agreed that the psycho-educational evaluation was not warranted.

62.      The only evidence in the record regarding the psycho-educational evaluation was that the parent had requested DCPS conduct it, and that the evaluation expired in August 2006.

63.      The due process hearing scheduled for January 19, 2007 did not go forward. On January 22, 2007, Hearing Officer Butler-Truesdale issued the final HOD (see attached) denying the Plaintiff all requested relief and finding that DCPS did not deny D.W. FAPE.  The January 22, 2007 HOD is replete with factual errors, as it lists incorrect dates and timelines of events that occurred. A.R. 2. The Plaintiff filed her Motion for Expedited Hearing on June 27, 2006.

20

Respectfully submitted,

_____/s/_____

Paul S. Dalton, Esq
D.C. Bar No. 439118
Dalton & Dalton, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300 (ph)
(703) 739-2323 (fax)

.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|                                                      |   |                               |
|------------------------------------------------------|---|-------------------------------|
| **CARRIE WILKINS,**<br>**as parent and next friend of D.W.**<br>**a minor**<br>      **Plaintiffs** | : | |
| **v.**                                               | : | **Civil Action No. 07-0808(JDB)** |
| **DISTRICT OF COLUMBIA**                             | : | |
|       **Defendants**                                 | : | |

**ORDER**

Upon consideration of the Plaintiff's Motion for Summary Judgment, and any opposition thereto, it is hereby

ORDERED: that Plaintiff's Motion for Summary Judgment is GRANTED;

FURTHER ORDERED:  The January 22, 2007, Hearing Officer's Determination is reversed.

_____
Date

_____
John D. Bates
United States District Judge