**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **CARRIE WILKINS,** | ) | |
| **As next friend of the minor child,** | ) | |
| **D.W.,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 07-0808 (JDB)** |
| | ) | |
| **DISTRICT OF COLUMBIA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

The Plaintiff here appeals a January 22, 2007 administrative decision ('HOD"),

issued by a Hearing Officer pursuant to the Individuals with Disabilities Education

Improvement Act of 2004, 20 U.S.C. §§ 1400 et seq. ("IDEIA"). The issues presented

and resolved were whether the District of Columbia Public Schools ("DCPS") had failed

to (1) convene an appropriate multidisciplinary team/individual education program

("MDT/IEP") meeting, (2) provide appropriate academic instruction and related services

(3) implement compensatory education services, and (4) provide the appropriate

evaluations. A.R. 504. The Plaintiff bore the burden of proof on the issues. Schaffer v.

Weast, 546 U.S. 49 (2005); 5 DCMR 30 § 3030.3 (July 1, 2006).

Based on the evidence submitted and oral presentations at the hearing, the

Hearing Officer denied Plaintiff's request for relief.

1

As to whether the MDT/IEP meeting was appropriate, the fundamental factual question in the administrative proceeding was whether DCPS was required to have anyone else present at the MDT/IEP meeting to authorize the Plaintiff's proposed relief. A.R. 216, 505, and 506. The Hearing Officer found DCPS convened an appropriate MDT/IEP meeting with all necessary individuals present to authorize home-bound instruction and related services. A.R. 6.

As to whether DCPS provided the appropriate academic and related services, the fundamental factual question in the administrative proceeding was whether DCPS met the IEP requirements for academic instruction and speech and language therapy. A.R. 216. The Hearing Officer found that the Plaintiff failed to show that the academic plan requested by the Parent was warranted, and the requested related services were already in place for this student. A.R. 7.

As to Plaintiff's claim for a compensatory education to be implemented by way of home services, the fundamental factual question in the administrative proceeding was whether DCPS failed to implement the plan proposed at the MDT/IEP meeting. The Hearing Officer found that a home-bound compensatory education plan was not warranted because Plaintiff's records failed to show the need for such a plan. A.R. 8.

As to Plaintiff's claim for a psycho-educational evaluation, the fundamental factual question in the administrative proceeding was whether the Plaintiff had a right to such evaluation at the time it was requested. A.R. 216. The Hearing Officer found that the request for the exam was not ripe at the time it was plead, and that the Plaintiff did not present the team with evidence that a change in disability warranted a new evaluation at that time. A.R. 9.

## BACKGROUND

The background to this case involves three administrative due process hearings and their respective HODs.  The first HOD ordered an MDT/IEP meeting which was not convened by DCPS.  The second HOD was a result of an administrative due process complaint filed to enforce the first HOD.  That HOD also ordered an MDT/IEP meeting.  DCPS did in fact convene that meeting, but the parties could not reach an agreement as to the matters raised in the administrative due process complaint.  That disagreement gave rise to the third HOD, which is the subject of this action, dismissing Plaintiff's claims because there was no record evidence to support them. A.R. 9.

## STATEMENT OF THE RELEVANT FACTS

On July 22, 2005, an HOD ordered DCPS to convene an MDT/IEP meeting to review all evaluations, medical documents, revise the IEP, if necessary, and discuss compensatory education, if warranted. A.R. 213.  DCPS never convened the meeting.  Id. A subsequent hearing request was filed to enforce the July 22, 2005, HOD.  On June 2, 2006, the new HOD ordered DCPS to convene a meeting to comply with the July 22, 2005, HOD. Id.  That meeting had already taken place on May 23, 2006, the day after the hearing (but before that HOD was issued.) Id.

Plaintiff alleges (A.R. 214 and 510) that at the May 23, 2006 meeting, she requested home-bound instruction to be provided as part of the student's IEP when he is absent more than 3 consecutive days due to his asthma condition.  However, this information is not in the MDT/IEP meeting notes.[1] A.R. 150-154.

---

[1] Plaintiff refers to asthma as chronic.  Motion p. 3.  A doctor's note indicates "moderate/persistent asthma."  A.R. 21.

DCPS nonetheless agreed that some type of home-bound instruction was necessary (because his absences were making him fall behind) since he had not been to school since March. A.R. 222.  Thus, DCPS offered Visiting Instruction Services ("VIS").  A.R. 152, 523 and 524.  The student did in fact receive VIS services immediately following that meeting, from May 23, 2006, through the end of the school year on June 14, 2006.  A.R. 511.

The parent also requested that the 100 hours of compensatory education awarded should be given during the summer as home-bound instruction.  A.R.152. DCPS offered 100 hours of specialized instruction and related services to take place during the 2006-2007 school year.  A.R. 152.  The parent argued that she wanted compensatory education to be delivered at home over the summer. A.R. 152.  DCPS argued that if the student wanted the compensatory education over the summer, he would have to come to a school location.  A.R. 150 and 552.  Since the parent wanted home instruction over the summer, the student failed to seek the services offered at the school during the summer.  A.R. 514.

Finally, the parent requested a new triennial evaluation: a speech and language evaluation, educational testing, and a Psycho-educational evaluation.  DCPS immediately offered that it would conduct the first two evaluations.  A.R. p 524-525.  However, DCPS refused to agree to a psycho-educational evaluation because such an evaluation was only necessary if there was a suspected change in disability, and no evidence or discussion intended that to be so. Id.  And a new evaluation was not yet due because the old one had not yet expired. A.R. 9.

Because an agreement could not be reached at the May 23, 2006 MDT/IEP meeting, Plaintiff filed a motion for an expedited hearing on/around August 1, 2006

(A.R. 9 and 206), essentially alleging that DCPS should draft an appropriate IEP that would meet the student's needs when he was unable to attend school, should agree to an appropriate compensatory education plan, and should agree to conduct a psycho-educational examination. A.R. 216-217. An "expedited hearing" took place on August 25, 2006. Plaintiff requested the following relief at hearing: home tutoring for asthma related services, implementation of a compensatory education plan that was agreed upon by the MDT team, and for DCPS conduct a psycho-educational evaluation. A.R. 504.

In sum, DCPS testified that no denial of a Free Appropriate Public Education ("FAPE") could be shown because DCPS had a compensatory education plan in place (A.R. 561), the triennial evaluation was not due at the time it was pled (Id.), and VIS services (home instruction) were properly provided. A.R. 563 and 571. DCPS witnesses also testified that Thurgood Marshall would be able to implement the IEP in September.[2] A.R. 530.

After the hearing, the Hearing Officer was able to gather the additional evidence she needed through the September 19, 2006, meeting and an interim order issued on November 13, 2006. Except for one doctor's note (A.R. 21) provided, the record lacked any current medical documentation of the student's asthma condition and how it related to his absence from school during the relevant times. A.R. 528 and 554-555. That note also dispelled any notions that long-term absences such as the student's March –June, 2006, absences were due to the student's asthma-related condition. A.R. 21. Further, pursuant to the November 13, 2006 request, a declaration (A.R. 43) by the parent was submitted on December 5, 2006 regarding 35 alleged absences (only 9.5 excused). A.R. 5 and 8. This information conflicted with the DCPS attendance records showing only

---

[2] Details of the student's per diem school schedule can be found at A.R. 531-532.

21.5 absences (seven which were marked as excused that parent had not acknowledged). A.R. 8. Additionally, *only one doctor's note existed for any of those alleged absences, and only one instance occurred where the absence was more than three days*. A.R. 8.

The hearing officer attempted to schedule another hearing, but that hearing did not take place. Thus an HOD was issued on January 22, 2007.

## ARGUMENT

1.    **The standard for summary judgment.**

Under Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Tao v. Freeh, 27 F.3d 635, 638 (D.C. Cir. 1994). Although a court should draw all reasonable inferences from the records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To be genuine, the issue must be supported by evidence sufficiently admissible that a reasonable trier of fact could find for the nonmoving party; to be material, the factual assertion must be capable of affecting the substantive outcome of the litigation. Id.; Laningham v. U.S. Navy, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

In cases such as this, the IDEIA dictates that "the court [ ] shall receive the records of the administrative proceedings; [ ] shall hear additional evidence at the request of a party; and [ ] basing its decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate." 20 U.S.C. §1415(i)(2)(B). When neither party has requested the court to hear additional evidence, the "motion for summary

judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." Heather S. v. Wisconsin, 125 F.3d 1045, 1052 (7th Cir. 1997).  Factual determinations of the Hearing Officer are to be accorded due weight. Id.

2.      **The HOD on the issues specified was based on, and supported by, the record.**

If a Plaintiff is aggrieved by a Hearing Officer's decision, an appeal of the decision under the IDEIA will lie.  20 USC §1415(i)(2)(B)(iii).  In any action brought under that paragraph, the court (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.  20 USC §1415(i)(2)(C)(i)(ii)(iii); Green v. District of Columbia, 2006 U.S. Dist. Lexis 25288, at 21.  "The review is independent but deference is still due to a state's administrative proceedings. . ."  Board of Educ.of Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982).  The party challenging the Hearing Officer's determination bears the burden of persuading the court that the Hearing Officer's determination was incorrect.  Reid v. District of Columbia, 401 F. 3d 516, 521 (D.C. Cir 2005) (citing Kerkam v. McKenzie, 862 F. 2d 884, 887 (D.C. Cir. 1989)).  Then the court may, "basing its decision on the preponderance of the evidence, [ ] grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B)(iii).

Plaintiff here has failed to show by a preponderance of the evidence that the Hearing Officer's decision is wrong.  Thus, the Hearing Officer's Determination should be affirmed because as shown below it is supported by the record evidence.

3.    __Plaintiff failed to show that her requested home-bound plan is appropriate.__

At hearing, Plaintiff requested home-bound services from DCPS, alleging the student's asthma-related illness prevented him from attending school enough to receive an educational benefit.  A.R. 506 and 507.  The parent proposed a plan where the school would send home work packets for the student for days absent up to 3 days, and DCPS would provide at-home services for any absences amounting to more than three days. A.R. 510.  During the hearing, the Hearing Officer noted that the appropriateness of the Plaintiff's proposed plan was not supported by record evidence.  She also found that she could not assess whether the DCPS home tutoring plan that was implemented (VIS) could meet the student's IEP, even though Plaintiff's counsel noted that the *student did receive an educational benefit from that program* (A.R. 511).  A.R. 599-605 and 616.

Because this issue could not be resolved based on the evidence presented, the Hearing Officer asked that another meeting occur with the parties to discuss the home-bound tutoring and IEP that would be appropriate for the student. A.R. 623-624.  Further, the Hearing Officer asked the parent to bring the student's medical records to the upcoming meeting.  A.R. 624 and 625.  The parties agreed to a meeting on September 19, 2006.  A.R. 631 and 640-641.

At the meeting, the newly submitted medical documentation showed that the Plaintiff's suggested plan would possibly allow for the student to miss more school than necessary.  Thus, the note submitted by the student's doctor was clear that the student should not have an open ended at-home plan.  "Although his asthma can flair at any point, he should attend school whenever possible."  A.R. 21 and 579.  "He may miss intermittent episodes of school because of his asthma but usually not longer than 3-4

days." Id. The doctor recommended that the student use his inhaler at school if he is out

of breadth.  Id.  "Again [the student] should and must attend school whenever possible."

Id.  The parent disputed her own doctor's findings at the September meeting (that he

"must" attend school), by arguing that this doctor had only seen her son once, and that

her son does not have any medication at school.[3]  A.R. 28.

Also at the meeting, because VIS was not going to continue, DCPS proposed a

new plan: DCPS would send packets home irrespective of the number of days student

was absent.  If he were absent more than three days, the student would receive one hour a

week of one-on-one tutoring by the special education teacher for each day missed.  A.R.

29.  The school also stated that since the student's doctor recommended that the student

attend school as much as possible, there was no need for at home services on an on-going

basis.[4] A.R. 30 and 642.

The Hearing Officer's consideration of the current attendance records also show

that Plaintiff's claims should fail.  The parent's declaration (A.R. 43) regarding  35

alleged absence (only 9.5 excused) conflicted with DCPS attendance records showing

only 21.5 absences (seven which were marked as excused that parent had not

---

[3] In Plaintiff's Motion, Plaintiff argues that the Hearing Officer's request for this doctor's note was erroneous because it was outside the scope of the alleged time period that FAPE was denied.  Motion p. 22. However, the July 2005 HOD (A.R. 329) also called for this documentation.  At the August 25, 2007 hearing, it was concluded that Plaintiff did not provide this information to DCPS but only to VIS.  Thus, the information was necessary to come to a proper conclusion in this case.

[4] In Plaintiff's Motion (p. 23), she argues that the Hearing Officer erred when stating at hearing that the student was denied FAPE from May 2006 through June 2006, and then not incorporating this as a finding into her final HOD.  However, Plaintiff was unable to provide doctor's notes as to his long term extended absence from March-June 2006, (or any other time).  A.R. 528, 554 and 555.  Thus, the long term absence discussed at hearing in which VIS was provided, was never shown to be a result of asthma-related problems.  And, the doctor's note that was provided after the hearing indicated that the student's condition would not warrant such an extended absence.  A.R. 28.

Since the Hearing Officer based her statement at the hearing on information from the Plaintiff that the student required long-term at-home services for asthma related absences (A.R. 602), was not necessarily accurate, the elimination of this finding in the final HOD is correct, and that the Hearing Officer's final decision is supported by the record evidence and should be affirmed.  A.R. 29-30.

acknowledged) (A.R. 8).  Additionally, *only one doctor's note existed for any alleged absences, and only one instance occurred where the absence was more than three days*. Thus, the Hearing Officer concluded that the Parent's declaration was not reliable and the proposed plan of parent was not warranted.[5]

In this case, Plaintiff is simply arguing for the plan that they proposed because it is what they wanted.  Board. of Educ. v. Rowley, 458 U.S. 176, 201 (1982), holds that IDEIA was intended to provide a "basic floor of opportunity" and an individualized plan "designed to provide educational benefit to the handicapped child."   Schoenbach v. District of Columbia, 309 F.Supp.2d 71, 77 (D.D.C. 2004).  IDEIA, according to Rowley, imposes "no additional requirement that the services so provided be sufficient to maximize each child's potential commensurate with the opportunity provided other children." Rowley at 198. See also Kerkam v. McKenzie, 862 F.2d at 886 (D.C. Cir. 1988) (emphasizing that Rowley rejected "[i]n at least four places" the notion that a public school placement must "maximize the potential of handicapped children"). Id.

Therefore, Plaintiff's claims should be denied because she has failed to show why DCPS' newly proposed plan was not appropriate, or that the Hearing Officer was wrong.

---

[5] In Plaintiff's Motion (p. 22), she argues that the Hearing Officer erred when requesting documentation (attendance records) from the 2006-2007 school year (A.R. 54) because this evidence is outside the scope of the issues to be litigated.  While it is true that the attendance records sought by the Hearing Officer were not within the timeframe of the alleged FAPE violations, the Hearing Officer does have discretion to seek this information for good cause.  DCPS SOP § 402 and § 700.4.

Further, the veracity of asthma related long-term absence is doubtful.  For example, the absence of hospital or medical notes in the record for long-term absences such as the one at the time of the May 23, 2006, MDT/IEP meeting: Plaintiff was absent from March 2006 through June, 2006, and the discussion at the administrative hearing about a truancy complaint filed against this student in 2005 are relevant.  A.R. 549-550.  Without the proper medical documentation, the record is unclear as to this extended absence periods of this student.  Understandably, the hearing officer made an inquiry into attendance records.

Plaintiff also claims that related services such as speech and language therapy (prescribed in the student's IEP for one time per week for one hour) were not being provided by the school. The Hearing Officer dismissed those claims finding that the Plaintiff failed to show that those services were not made available: the school was closed on three of the alleged 16 days of service missed, and that student was absent on 9 of the days.  A.R. p. 8.

4.    <u>**Compensatory education was offered and rejected by the Plaintiff.**</u>

Plaintiff alleges that 100 hours of at-home compensatory education was owed during the summer of 2006, and that those services were not provided.  A.R. 514. However, the record is to the contrary as to this claim.  Plaintiff's Statement of Material Facts Not in Dispute #13.

At the May 23, 2006, hearing, Plaintiff requested that the 100 hours of compensatory education be given during the summer as home-bound instruction.  A.R. 152.  DCPS agreed to provide 100 hours of specialized instruction (four hours per day for five weeks) to take place during the 2006-2007 school year. <u>Id.</u>  DCPS explained that there was not medical evidence that an at-home award was warranted, and that the student would have to come to school to receive the services.  A.R. 552.

Thus, the Hearing Officer dismissed the Plaintiff's claims that a compensatory education plan was not in place because the only reason Plaintiff disputed the plan was that it was not offered at-home.  A.R. 8.   At the September 19, 2006 MDT/IEP meeting, the team agreed that compensatory education would begin the very next day, on September 20, 2006, at the school.  A.R. p 31.

5.    <u>**A psycho-educational evaluation is not warranted under the IDEIA.**</u>

Plaintiff alleges that her request for a psycho-educational evaluation at the time of the May 23, 2006 MDT meeting was warranted because the parent requested it to be completed. Motion p. 7 and A.R. 92.  At that meeting, Parent requested a new triennial evaluation: a speech and language evaluation, educational testing, and a Psycho-educational evaluation.  *DCPS offered to conduct the first two evaluations*.  A.R. p 524-525.  However, DCPS refused to agree to a psycho-educational evaluation because such

an evaluation was only necessary if there was a suspected change in disability, and no evidence or discussion of that was reached. Id. Thus, a new one was not yet due because the old one had not yet expired. A.R. 528.[6]

The Hearing Officer found that the existing psycho-educational evaluation did not expire until August 7, 2007 thus, a claim for such an exam was not ripe at the time of that meeting, or in the August 1, 2006 motion for an expedited hearing. Therefore, a psycho-educational evaluation was not due prior to the expiration of the existing one. Further, the Hearing Officer found no evidence of a suspected change in disability. Id.

Under the 20 U.S.C. 1414(2)(B)(ii), and its implementing regulation 34 C.F.R. 300.303 (b)(3), a reevaluation of a student must take place at least every three years, unless the parent and local education agency agree that a re-evaluation is unnecessary. The statue also allows for a parent to request a re-evaluation. However, the statute has a limitation "not more than once a year." Id. at (i).

Since a psycho-educational evaluation was coming due under the statute, there was no reason to also grant the parent's request at that time, *especially since no evidence was presented that a change in the student's disability had occurred.* A.R. 155.

**6.    Plaintiff has failed to show that the Hearing Officer does not have jurisdiction to extend deadlines or continue a hearing for good cause.**

Plaintiff argues that the Hearing Officer unlawfully extended the deadline for the issuance of an HOD under the IDEIA, and unlawfully scheduled a new hearing when neither party requested one. Motion p. 21-22.

While it is true that under DCPS SOP §1008 (HOD to issue 10 days after the hearing in an expedited hearing), an HOD would have been issued on/around October 5,

---

[6] DCPS witness also stated that one could have been completed over the summer had the student attended school during the summer to receive his compensatory education award. A.R. p. 528.

2007, a Hearing Officer may "for good cause shown" may extend the deadline to issue her decision. [7]   DCPS SOP §§ 402, 700.4, and 1003.  Here, the Hearing Officer was reviewing additional evidence and records that were not clear from evidence at hearing. At the conclusion of the hearing, the Hearing Officer scheduled an MDT/IEP meeting (to which Plaintiff did not object) to address whether there was a gap in services in the DCPS home-bound program and the student's IEP.  A.R. 620-622.   This meeting addressed the core issue in this case, which at hearing neither Plaintiff nor Defendant could answer. After the hearing, the Hearing Officer simply sought medical records and attendance records from both parties to ensure that the services were being delivered, which was also not clear from the record.  In consideration of the facts which shed the light necessary to issue an informed decision, the Hearing Officer was able to issue her decision on January 22, 2007. [8]

**7.**     **Plaintiff had burden of proof at the hearing.**

On July 1, 2006, the District of Columbia Municipal regulations effectuated a change in special education administrative hearing procedures in the District of Columbia.  The change removed the burden of proof at administrative hearing from the Defendant and allocated it to the Plaintiff.  5 D.C.M.R. 3030.3 states:

> The burden of proof shall be the responsibility of the party seeking relief; either the parent /or guardian of a child or the LEA. **Based solely upon the evidence presented at the hearing**, an impartial Hearing Officer shall determine whether the party seeking relief presented sufficient evidence to meet the burden of proof that the action and /or

---

[7] The requirement that HODs are issued within a specified amount of time (75 days of a hearing complaint, or in the case of an expedited hearing, 10 days) (DCPS SOP 1003 and 1008) was created to address past years of Hearing Officer's decisions that were not being issued within a reasonable time period after the hearing.  As the facts below will show, this Hearing Officer was extending the deadlines for good cause in order to piece together a shoddy record.

[8] Plaintiff alleges that the Hearing Officer did not have the authority to schedule an additional hearing. Motion p. 22.  This argument requires no extended response because the meeting was never held and an HOD was issued three days later.

inaction or proposed placement is inadequate or adequate to provide the student with a Free Appropriate Public Education (FAPE).

In their Motion, Plaintiff argue that since they filed the motion for an expedited hearing on June 27, 2006, three days before that law went into effect and that the Hearing Officer erroneously placed the burden of proof on the Plaintiff at the August 25, 2006 hearing.  Motion p. 22-23.

Plaintiff's argument must fail in two regards. First, the administrative record shows that the motion for an expedited hearing was not filed properly on June 27, 2006, and ultimately was not filed before July 1, 2006.[9]  Second, the plain language of the statute "**Based solely upon the evidence presented at the hearing. . .**" puts the burden on the Plaintiff because the burden is met at hearing.[10]

**8.    Alleged errors in the Hearing Officer's recitation of facts are immaterial.**

The administrative record in this case is six hundred and forty five pages long. Plaintiff alleges that the Hearing Officer erred in her recitation of 13 facts in the HOD. Motion pp. 23-26.  In these sections of the Motion, the allegations range from whether exhibits contained the proper numbers and labels (but does not include disputes to the

---

[9] It was filed on/around August 1, 2006.  A.R.  5

[10] At hearing (A.R. 584-588), there was also discussion as to whether Plaintiff correctly filed the motion for expedited hearing, and whether a motion for an expedited hearing was the correct vehicle for Plaintiff's claims.  As to the motion being the proper way to allege Plaintiff's claims, the Hearing Officer stated it probably was not since the Plaintiff now alleged new claims in her motion.  Therefore, procedurally, a new hearing complaint should have been filed, and not a motion for an expedited hearing (which typically does not deal with new issues raised).  The hearing officer does indicate that she has the right to overlook this point.  DCPS SOP §§ 700, 1004, and 1008. A.R. 582-588.

As to whether the Plaintiff properly filed the Motion, the Hearing Officer states that the motion was not correctly filed until on/around August 1, 2006 because it was not filed with the student hearing office, but the Hearing Officer herself, who already concluded the previous events with a June 2, 2006 final HOD.  A.R. 5.

The date of filing is material since it affects the Plaintiff argument that her motion was filed before the burden of proof was removed from the Defendant and an erroneous filing of the motion would automatically dispel the correctness of this argument.

actual exhibits), to several paragraphs noting that the hearing only took place on August 25, and not on May 22 and August 25. While the hearing did only take place on August 25, all of the information and facts from the May 22, 2006 administrative hearing are undisputedly part of this record, much of which was presented by the Plaintiff at the August 25, 2006 administrative due process hearing. A.R. 495-645. Thus, the Plaintiff is merely disputing an error in the stated dates, and not the information contained therein. In paragraph 1.9, Plaintiff recites nothing more than a typo. As to paragraph 1.5, Plaintiff fails to cite support or argue the date her motion was filed. Some of these facts could have been simply noted in a footnote for purposes of clarifying the record.

While the Court is authorized to make an independent determination, "it must also give 'due weight' to the administrative proceeding and afford some deference to the expertise of the Hearing Officer and school officials responsible for the child's education." Lyons, 829 F. Supp. at 418. This deference results from Congress' recognition of the "specialized knowledge and experience" required to make complicated educational choices. Rowley, 458 U.S. at 207-08.

Thus, these thirteen misstatements, contained in this lengthy record, being totally immaterial to the case, should not give rise to abandoning the deference owed to an administrative Hearing Officer's expertise in education law.[11]

---

[11] Throughout Plaintiff's Motion for Summary Judgment (p. 4, 16 and 22), and in her Complaint, there are a number of references to the consent decree issued in Blackman v. District of Columbia, 454 F. Supp. 2d 1 (D.D.C. 2006) for its legal standard, and as the basis for asserting injuries to the student in this appeal. However, this case was brought under the IDEIA, and the standards and presumptions specific to the Blackman litigation are irrelevant here.

## CONCLUSION

For the foregoing reasons, this Court should grant the Defendant's Motion for

Summary Judgment, and deny the Plaintiff's Motion for Summary Judgment.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Edward P. Taptich*
EDWARD P. TAPTICH [#012914]
Chief, Equity Section II

*/s/ Amy Caspari*
AMY CASPARI [#488968]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
January 11, 2008                       Washington, D.C. 20001

16

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
**CARRIE WILKINS,**                                 )
**As next friend of the minor child,**              )
**D.W.,**                                           )
                                                    )
                                                    )
                                                    )
            **Plaintiff,**                          )
                                                    )
            **v.**                                  )    **Civil Action No. 07-0808 (JDB)**
                                                    )
**DISTRICT OF COLUMBIA,**                           )
                                                    )
            **Defendant.**                          )
_____)

<u>**DEFENDANT'S RESPONSE TO**</u>
<u>**PLAINTIFF'S STATEMENT OF MATERIAL FACTS**</u>

1.      Undisputed.

2.      That Plaintiff's condition is medically classified as chronic.  This medical

term is not used anywhere in the medical records of this case.  Motion p. 3.

The doctor's note indicates "moderate/persistent asthma."  A.R. 21.

3.      That Plaintiff's May 23, 2006 IEP is current at this time.  A.R. 143.

4.      That all of his record absences are due to asthma condition. A.R. 150 and 549-

550.

5.      Undisputed.

6.      That <u>Blackman</u> <u>Jones</u> is relevant here.

7.      Undisputed.

8.      Undisputed.

9.      That the psycho-educational evaluation in place was outdated. A.R. 184.

10.    That DCPS did not have the proper people present at the MDT meeting to authorize a tutoring plan. A.R. 6 and 150.

11.    That the parent proposed the said plan for at-home tutoring at that meeting. A.R. 221-225.

12.    That the principal stated that she does not have the authority to order the alleged plan proposed by the parent. <u>Id.</u>

13.    Undisputed.

14.    That student could not attend summer school due to an increase in asthma related illness.  Record throughout.

15.    Undisputed.

16.    Undisputed.

17.    Undisputed.

18.    Undisputed.

19.    Undisputed.

20.    That a motion for an expedited hearing was filed on June 22, 2006.  That the plaintiff filed the motion with the student hearing office and the chief hearing officer.  A.R. 210.

21.    Undisputed.

22.    That Ms. Batson testified at hearing that a psycho-educational evaluation would not be completed. A.R. 525.

23.    Pursuant to LCvR 56.1 ". . . references to the parts of the record relied on" must be made.  Plaintiff's statement here is not supported by any reference to the record.

24.     Pursuant to LCvR 56.1 ". . . references to the parts of the record relied on"
must be made.  Plaintiff's statement here is not supported by any reference to
the record.  Defendant specifically disputes the statement that the
compensatory education plan was not offered during the summer. A.R. 152
and 552.

25.     That the compensatory education plan was not offered during the summer.
A.R. 152 and 552, and Plaintiff's statement of facts not in dispute #13.

26.     Pursuant to LCvR 56.1 ". . . references to the parts of the record relied on"
must be made.  Plaintiff's statement here is not supported by any reference to
the record.

27.     Pursuant to LCvR 56.1 ". . . references to the parts of the record relied on"
must be made.  Plaintiff's statement here is not supported by any reference to
the record.

28.     Pursuant to LCvR 56.1 ". . . references to the parts of the record relied on"
must be made.  Plaintiff's statement here is not supported by any reference to
the record.

29.     Pursuant to LCvR 56.1 ". . . references to the parts of the record relied on"
must be made.  Plaintiff's statement here is not supported by any reference to
the record.

30.     Pursuant to LCvR 56.1 ". . . references to the parts of the record relied on"
must be made.  Plaintiff's statement here is not supported by any reference to
the record.  Defendant specifically disputes that DCPS argument was that they

did not have the authority to provide more than VIS. A.R. transcript throughout.

31.     Undisputed.

32.     Undisputed.

33.     That Ms. Batson felt uncomfortable discussing the number of hours generally. A. R. 30.

34.     That the team agreed that the student needs to receive one hour of speech and language services per week, whether or not he is absent.  A.R. 31.

35.     That the student would automatically miss 17.5 hours of instruction if his asthma flairs up.  (This fact relies on how many days this student is absent.) A.R. 21.

36.     That work packets would only be offered.  One hour of one-to-one tutoring for each day missed was also still offered when the student returned to school. A.R. 27-31.

37.     That the parent's ability to work is protected under the IDEIA and is therefore relevant. IDEIA generally.

38.     Undisputed.

39.     That the parent's proposed plan was deemed sufficient by the team.  The notes specifically state that the DCPS plan was deemed sufficient.  A.R. 30-31.

40.     That work packets would only be offered.  One hour of one-to-one tutoring for each day missed was also still offered when the student returned to school. A.R. 27-31.

41.    That Ms. Smith further explained that VIS is not available on an "as needed" basis.  A.R. 31.

42.    That the student was unable to attend school during the summer of 2006.  A.R. generally.

43.    Undisputed.

44.    That compensatory education cannot be offered during the day.  IDEIA

45.    That any other options for a compensatory education plan were offered.  A.R. 27-31.

46.    That transportation is a relevant issue in this proceeding.  Complaint and Motion For Summary Judgment.

47.    That Plaintiff "outlined" the events in her status report. A party's report is their attorney's own characterization and recollection of events.  A.R. 56.

48.    That it had been over 60 days since the hearing convened on October 23, 2006.  A.R. 494.

49.    Pursuant to LCvR 56.1 ". . . references to the parts of the record relied on" must be made.  Plaintiff's statement here is not supported by any reference to the record.

50.    That <u>Blackman Jones</u> is relevant here.  Record generally.

51.    Undisputed.

52.    Pursuant to LCvR 56.1 ". . . references to the parts of the record relied on" must be made.  Plaintiff's statement here is not supported by any reference to the record.

53.    Pursuant to LCvR 56.1 ". . . references to the parts of the record relied on"
must be made.  Plaintiff's statement here is not supported by any reference to
the record.

54.    Undisputed.

55.    Pursuant to LCvR 56.1 ". . . references to the parts of the record relied on"
must be made.  Plaintiff's statement here is not supported by any reference to
the record.

56.    Pursuant to LCvR 56.1 ". . . references to the parts of the record relied on"
must be made.  Plaintiff's statement here is not supported by any reference to
the record.

57.    Pursuant to LCvR 56.1 ". . . references to the parts of the record relied on"
must be made.  Plaintiff's statement here is not supported by any reference to
the record.

58.    Pursuant to LCvR 56.1 ". . . references to the parts of the record relied on"
must be made.  Plaintiff's statement here is not supported by any reference to
the record.

59.    Pursuant to LCvR 56.1 ". . . references to the parts of the record relied on"
must be made.  Plaintiff's statement here is not supported by any reference to
the record.

60.    Pursuant to LCvR 56.1 ". . . references to the parts of the record relied on"
must be made.  Plaintiff's statement here is not supported by any reference to
the record.

61.    Pursuant to LCvR 56.1 ". . . references to the parts of the record relied on"
       must be made.  Plaintiff's statement here is not supported by any reference to
       the record.

62.    Pursuant to LCvR 56.1 ". . . references to the parts of the record relied on"
       must be made.  Plaintiff's statement here is not supported by any reference to
       the record.

63.    Pursuant to LCvR 56.1 ". . . references to the parts of the record relied on"
       must be made.  Plaintiff's statement here is not supported by any reference to
       the record.

64.    Pursuant to LCvR 56.1 ". . . references to the parts of the record relied on"
       must be made.  Plaintiff's statement here is not supported by any reference to
       the record.

<div style="margin-left: 50%;">

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General
for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

*/s/ Edward P. Taptich*
EDWARD P. TAPTICH [#012914]
Chief, Equity Section II

*/s/ Amy Caspari*
AMY CASPARI [#488968]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001

</div>

January 11, 2008