**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**CARRIE WILKINS, as next friend of**
**minor child D.W., et al.,**

                    **Plaintiffs,**

        **v.**                                              **Civil Action No.  07-0808 (JDB)**

**DISTRICT OF COLUMBIA,**

                    **Defendant.**

---

**MEMORANDUM OPINION**

        Plaintiffs D.W., a minor, and his mother, Carrie Wilkins, have brought this action

against the District of Columbia (the "District"), pursuant to the Individuals with

Disabilities Education Improvement Act of 2004 ("IDEIA"), 20 U.S.C. §§ 1400 et. seq.

Plaintiffs appeal from an adverse administrative decision rejecting their claim that the

District violated the IDEIA by failing to provide D.W. with a free appropriate public

education ("FAPE"). Presently before the Court are the parties' cross-motions for

summary judgment. For the reasons set forth below, the Court will deny plaintiffs'

summary judgment motion and will grant defendant's cross-motion.

**BACKGROUND**

I.        **Statutory and Regulatory Background**

        In order to receive federal funds for education, a state must ensure that "a free

appropriate public education is available to all children with disabilities residing in the

State."  20 U.S.C. § 1412(a)(1)(A).  A FAPE is provided through the development and

implementation of an Individual Education Program ("IEP") for each student.  See generally Winkelman v. Parma City Sch. Dist., 550 U.S. --, 127 S. Ct. 1994, 2000-01 (2007).  The IEP describes the student's present academic level, determines the student's educational goals, and sets out required educational and related services, including the extent of the student's participation in a regular classroom.  20 U.S.C. § 1414(d)(1)(A); 34 C.F.R. § 300.320(a).  A student's IEP is developed by a team that includes the student's parents, a regular education teacher, a special education teacher, a representative of the school district, an individual who can interpret evaluation results, personnel with particular knowledge of the student if applicable, and sometimes the student herself. 20 U.S.C. § 1414(d)(1)(B); 34 C.F.R. § 300.321(a).  In this case, the analogous group convened to develop D.W's IEP is known as the multi-disciplinary team ("MDT").

Once developed, the IEP is then implemented through appropriate placement in an educational setting suited to the student's needs.  See Roark ex rel. Roark v. Dist. of Columbia, 460 F. Supp. 2d 32, 35 (D.D.C. 2006).  The IDEIA requires that the parents of a student with a disability be members of any group making a decision regarding the student's placement.  20 U.S.C. § 1414(e); 34 C.F.R. § 300.327.  The placement decision, in addition to conforming to a student's IEP, should also consider the least restrictive environment and a setting closest to the student's home.  34 C.F.R. § 300.116(a), (b).

A parent dissatisfied with the IEP developed for his or her child has a right to a due process hearing conducted by the state or local education agency before an impartial hearing officer.  20 U.S.C. § 1415(f)(1), (3).  The decision of the hearing officer ("HOD") is final, and any party aggrieved by a HOD may challenge it in a civil action. Id. § 1415(i)(1), (2).

## II.    Factual Background

D.W. was, at the time this case was filed, an eleven year-old student at Thurgood Marshall Educational Center where he received special education services provided by the District of Columbia Public Schools ("DCPS") due to his bronchial asthma and Attention Deficit Hyperactivity Disorder ("ADHD"). Compl. ¶¶ 4-5. D.W.'s conditions allegedly caused him to be absent from school regularly, prompting Wilkins, in 2003, to start requesting that DCPS provide home bound tutoring services. Id. ¶¶ 7, 22. DCPS did not comply with Wilkins's request, and she filed a motion for a due process hearing before Hearing Officer Butler-Truesdale to be held on July 12, 2005. Administrative Record ("A.R.") at 327. After this hearing, on July 22, 2005, Butler-Truesdale issued an order for a mandatory multi-disciplinary team meeting to review D.W.'s evaluations and medical documents, to revise his individualized education plan if necessary, and to determine whether he required compensatory education. A.R. at 329. The order mandated that parent's counsel provide relevant medical documentation at least forty-eight hours prior to the meeting. A.R. at 329. DCPS did not convene the ordered meeting, prompting Wilkins to file another due process complaint on January 26, 2006. A.R. at 382.

DCPS convened a meeting on May 2, 2006 to resolve the issues in Wilkins's due process complaint. A.R. at 219.  The parties were unable to come to an agreement and a due process hearing was convened before Butler-Truesdale on May 22, 2006. A.R. at 295, 506. Based on the evidence presented at this hearing, Butler-Truesdale issued a final order on June 2, 2006. A.R. at 139.  However, prior to this order, the parties held an additional MDT meeting on May 23, 2006 to review D.W.'s IEP. A.R. at 150.

At this meeting, the Individualized Education Team, including D.W.'s special education teacher, his regular education teacher, and his speech and language pathologist, agreed that D.W.'s educational progress had been stunted due to his frequent absences, and that home bound services, as well as compensatory summer education, were necessary. A.R. at 151, 508.  However, Wilkins alleges that contrary to DCPS's statements at the hearing, no one with the authority to order such home instruction was present at the meeting the next day. Compl. at ¶ 24. Instead, according to Wilkins, Tiffany Batson, the Special Education Coordinator at Thurgood Marshall, again stated that she did not have the power to authorize such services and suggested that Wilkins look into Visiting Instruction Services in lieu of home bound services. A.R. at 152, 523, 524.  In response, DCPS argues that a need for home bound tutoring was not sufficiently presented, and that DCPS offered a program that they felt matched D.W.'s educational needs. Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s Mem.") at 4.

On June 2, 2006, based on the testimony provided at the May 22, 2006 hearing, Butler-Truesdale issued an order for full compliance with her earlier July 22, 2005 determination. Under the order, DCPS was required to convene a meeting to review D.W.'s evaluations and medical documents, to revise his IEP, to develop an annual education plan for D.W, and to provide one-on-one tutoring and speech and therapy services. A.R. at 2.  The order also stated that parent's counsel must provide relevant medical documentation at least forty-eight hours in advance of the meeting. A.R. at 4. After the issuance of this order, Wilkins sent a letter to DCPS stating that unless its position had changed with respect to the issues discussed on May 23, 2006, no such

meeting was necessary. A.R. at 136. The record does not include a response from DCPS. Thus, another MDT meeting was not held.

Wilkins then filed a motion for an expedited hearing requesting that DCPS fund a psycho-educational evaluation, 100 hours of compensatory education, and home bound education services. A.R. at 4. Wilkins alleges that her counsel filed this motion with both Hearing Officer Butler-Truesdale and Chief Hearing Officer David Smith on June 27, 2006. A.R. at 583. Butler-Truesdale, however, states that according to DCPS protocol, these copies should have only been sent to the Student Hearing Office. A.R. at 5. She further asserts that due to this mistake, the motion was not properly filed until August 1, 2006. A.R. at 9. On July 31, 2006, Wilkins requested that Butler-Truesdale retain jurisdiction over D.W.'s case. A.R. at 253. On August 9, 2006, Chief Hearing Officer Smith granted Wilkins's motion for an expedited hearing and scheduled a hearing for August 25, 2006 to be held before Butler-Truesdale. A.R. at 203-206.

At the hearing, Wilkins argued that DCPS's failure to fund the psycho-educational evaluation, 100 hours of compensatory education, and home bound education services was a denial of D.W.'s FAPE. A.R. at 504, 642. She also argued that DCPS had failed both to implement the current IEP (which calls for seventeen and a half hours per week of special education and one hour per week of speech and language therapy) and to draft an additional IEP for when he is absent from school for more than three days. A.R. at 5, 120-26, 152. In response, DCPS argued that: (1) Wilkins failed to show the need for home bound instruction outside of Visiting Instruction Services; (2) DCPS offered compensatory education for D.W. over the summer that Wilkins rejected and services

were scheduled to start again in the fall; and (3) the objection regarding D.W.'s psycho-evaluation was not ripe at the time it was made. Def.'s Mem. at 2.

At the close of the hearing, Butler-Truesdale issued an interim order mandating that: (1) the parties convene for another multi-disciplinary meeting on September 19, 2006 to discuss whether home instruction was needed; (2) the parties submit status reports by September 27, 2006 to update her on the outcome of that meeting; (3) the parties submit closing arguments in writing by September 1, 2006; and (4) the parties submit the following information: (a) D.W.'s attendance records from August 28, 2006 to present; (b) tracking forms for related services rendered since August 28, 2006; (c) records of any medically documented absences; and (d) the compensatory education plan completed at the September 19, 2006 meeting. A.R. at 5.

At the September 19, 2006 interim multi-disciplinary meeting, the MDT convened to discuss whether D.W.'s IEP should be modified due to a need for home bound instruction. A.R. at 27. However, Wilkins alleges that this issue could not properly be discussed because Batson stated that she did not feel comfortable talking about home bound services and that DCPS could only offer work packets to be sent home to D.W. through his siblings together with one hour of instruction per week for each absence. Compl. ¶¶ 82, 84, 96, 102, 105, 106. DCPS responds that it refused Wilkins's request not because of a lack of authority, but because Wilkins did not offer sufficient evidence to support such a service. Def.'s Mem. at 2. Butler-Truesdale agreed with DCPS; she notes in her HOD that "[t]he IEP meeting notes do not indicate that any DCPS personnel suggested that the issues to be addressed were beyond their immediate authority." A.R. at 6. The parties were again unable to reach an agreement on this issue.

The parties were also unable to agree upon D.W.'s compensatory education. On May 23, 2006, the MDT team had recommended 100 hours of compensatory education at the summer site. A.R at 152. Wilkins argues that D.W. could not attend these sessions because his condition worsened significantly if he spent any time outside during the summer. Pls.' Mem. Supp. Mot. Summ. J. (Pls.' Mem.") at 15. In response, DCPS asserted that Wilkins failed to provide sufficient medical evidence that D.W.'s condition warranted home bound services over the summer, but that they were willing to commence the services the following day, September 20, 2006, during school time. A.R. at 31, 528-29, 540. Wilkins disagreed with this proposal because compensatory education should not require D.W. to miss more regular schooling and should not be contingent upon him being healthy enough to attend school. Pls.' Mem. at 15. On September 27, 2006, pursuant to Butler-Truesdale's order, Wilkins submitted a status report contending that at the September 19th meeting DCPS had failed to draft an appropriate IEP as ordered by the July 22, 2005 determination. A.R. at 56-62, 327. Wilkins asserts, and the record supports, that DCPS did not file a status report stating its position. Compl. ¶¶ 131-132.

Butler-Truesdale issued a second interim order on November 11, 2006. A.R. at 53. Under this order, both parties were to submit more documents regarding D.W.'s attendance record, other tracking forms, records of medically documented absences, and the compensatory plan as completed at the September 19, 2006 meeting. A.R. at 53-54. Wilkins alleges that she requested the relevant documents from DCPS, but never received a response, and thus submitted what she had in her possession. Compl. ¶¶ 137-140. In January 2007, Butler-Truesdale contacted both parties and informed them that she had not received plaintiffs' supplemental disclosures. Id. ¶ 146. Because Butler-Truesdale

believed she needed additional information, she scheduled another hearing for January 19, 2007. Id. ¶ 155. Wilkins thereafter submitted a signed affidavit dated December 4, 2006, two letters from D.W.'s physicians, and a physician certificate. DCPS submitted D.W.'s current attendance records and tracking forms. A.R. at 6. Both parties agreed that the additional hearing scheduled for January 19, 2007, was unnecessary, and the hearing therefore did not go forward. Compl. ¶¶ 162-63.

On January 22, 2007, Butler-Truesdale issued her final HOD denying D.W. all requested relief because there was insufficient evidence that he had been denied a FAPE by DCPS. A.R. at 2-9. Plaintiffs then filed this civil action to challenge the administrative decision, setting forth numerous counts in their Complaint: (1) Butler-Truesdale was untimely in issuing her final order, see Compl. ¶ 179; (2) Butler-Truesdale acted outside her authority in setting another hearing for January 19, 2007, see id. ¶ 181; (3) Butler-Truesdale abused her authority in considering evidence outside the scope of the complaint in coming to her final decision, see id. ¶ 183; (4) Butler-Truesdale erred by placing the burden of proof on plaintiffs, see id ¶ 185; (5) Butler-Truesdale had concluded that D.W. had been denied a FAPE at the end of the 2005-2006 school year but did not take this finding into account in her January 22, 2007 final determination, see id. ¶¶ 23-24; and (6) Butler-Truesdale erred in relying on inaccurate and incorrect factual data that resulted in an incorrect final determination, see id ¶ 197.

The parties have cross moved for summary judgment. DCPS argues that Wilkins has failed to show by a preponderance of the evidence that Butler-Truesdale's final determination was wrong. DCPS also asserts that D.W. was not denied a FAPE because home bound services were not shown to be necessary, because Wilkins rejected DCPS's

offer for compensatory education hours in the summer of 2006, and because a psycho-educational evaluation is not warranted under the IDEIA. Finally, regarding procedural matters, DCPS argues that a hearing officer can extend deadlines when there is good cause, that D.C. Municipal regulations mandate that the plaintiff has the burden of proof in special education administrative hearings, and that any errors in the record are technical rather than substantive and are therefore irrelevant.

## STANDARD OF REVIEW

Under the IDEIA, "any party aggrieved by the findings and decision" rendered during administrative proceedings may "bring a civil action" in state or federal court without regard to the amount in controversy. 20 U.S.C. § 1415(i)(2), (i)(3)(A); 34 C.F.R. § 300.516(a) (2006). The reviewing court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C); 34 C.F.R. § 300.516(c). On review of an HOD, the burden of proof is on the party challenging the administrative determination, who must "'at least take on the burden of persuading the court that the hearing officer was wrong.'" Reid ex rel. Reid v. Dist. of Columbia, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988)). In evaluating whether a HOD was wrong, and ultimately whether a FAPE has been denied, the Supreme Court has established a two-part test to guide the analysis: "First, has the State complied with the procedures set forth in the [IDEIA]? And second, is the individualized educational program developed through the [IDEIA]'s procedures reasonably calculated to enable the child to receive educational benefits?" Bd. of Educ.

of Hendrick Hudson Central School Dist. v. Rowley, 458 U.S. 176, 206-07 (1982).  If

these requirements are met, the Court has explained, then defendants have "complied

with the obligations imposed by Congress and the courts can require no more."  Id. at

207.

The preponderance-of-the-evidence standard of review, the Supreme Court has

held, does not authorize unfettered de novo review.  Id. at 206.  Rather, consideration of

the record impliedly requires courts to give "due weight" to the administrative

proceedings, id., and "[f]actual findings from the administrative proceeding are to be

considered prima facie correct," S.H. v. State-Operated Sch. Dist. of Newark, 336 F.3d

260, 270 (3d Cir. 2003).  Therefore, courts may not substitute their own views for those

of the hearing officer, see Rowley, 458 U.S. at 206; Shaw v. Dist. of Columbia, 238 F.

Supp. 2d 127, 135 (D.D.C. 2002), and a court upsetting a hearing officer's decision "must

at least explain its basis for doing so," Kerkam, 862 F.2d at 887.  At the same time, "the

district court's authority to 'hear additional evidence at the request of a party,' and 'bas[e]

its decision on the preponderance of the evidence' . . . 'plainly suggest[s] less deference

than is conventional' in administrative proceedings."  Reid, 401 F.3d at 521 (quoting

Kerkam, 862 F.2d at 887).

## DISCUSSION

**I.      Procedural Violations: Counts 1-4**

Plaintiffs assert several procedural failures by Hearing Officer Butler-Truesdale.

Specifically, they contend that: (1) her final review was delayed and untimely; (2) she

acted outside of her jurisdiction in ordering another hearing; (3) she abused her discretion

by considering evidence outside the scope of the complaint; and (4) she misplaced the

burden of proof at the hearing. Although procedural safeguards in the education forum should not be taken lightly, the D.C. Circuit has held that procedural violations are actionable only if they affect the student's substantive rights. Lesesne v. Dist. of Columbia, 447 F. 3d 828, 834 (D.C. Cir. 2006); Kingsmore ex rel. Lutz v. Dist. of Columbia, 466 F. 3d 118, 119 (D.C. Cir. 2006); Schoenbach v. Dist. of Columbia, 309 F. Supp. 2d 71, 79 (D.D.C. 2004).

### A.    Count 1: Untimely Final Determination

Wilkins argues that under 34 C.F.R. § 300.515 and DCPS Standard Operating Procedure ("SOP") § 400.1(B), she has the right to a timely final determination after a due process hearing. Indeed, a public agency must ensure that a final decision is reached no later than forty-five days after the expiration of the thirty-day period following filing of the initial motion. See 34 C.F.R. § 300.515; D.C. Mun. Regs. tit. 5, § 3030.1 (2008); DCPS SOP §§ 400.1(B). Butler-Truesdale issued her final determination on January 22, 2007, roughly five months after the August 25, 2006 expedited due process hearing. A.R. at 2-9.

DCPS concedes that a hearing officer must, in fact, issue a final determination ten days after an expedited hearing, Def.'s Mem. at 12, but contends that this deadline can be extended for good cause shown.[1] Here, DCPS argues that such good cause existed as Butler-Truesdale was trying to augment an incomplete record. In making this assertion, DCPS relies on certain provisions of the DCPS SOP. But these sections merely state that a hearing officer has the discretion to extend a decision deadline upon request from either

---

[1] DCPS SOP ¶ 700.4 requires that after closing statements, the hearing record is closed, and the hearing officer must issue a written decision within ten days. DCPS SOP ¶ 1003 requires that the final decision must be issued within ten days following the hearing and no more than seventy-five days following the request for hearing.

party in the initial dispute. See DCPS SOP §§ 402, 700.4, and 1003. They do not state

that the hearing officer can dismiss the procedural guidelines at her own discretion even

with good cause. DCPS does not assert that it requested Butler-Truesdale to extend her

decision timeline. Thus, it appears that Butler-Truesdale violated procedural guidelines

regarding the timeliness of her decision. However, this does not necessarily mean that the

violations affected D.W.'s substantive rights. See Lesesne, 437 F.3d at 834.

    Wilkins contends that D.W.'s rights were affected as he suffered a continuous

educational harm due to Butler-Truesdale's tardiness. Pls.' Mem. at 21-22. Wilkins

argues that this harm is indicated by D.W's teacher's concerns about his lack of

educational progress. A.R. at 150-152, 509. At the May 23, 2006 meeting, D.W.'s regular

education teacher stated that she had been concerned about D.W. for the past two years

because "he's out so much that when he returns he's behind and it works on his self

esteem . . . there's a huge gap in his education because he has not had the opportunity to

learn." A.R. at 151. D.W.'s special education teacher stated that D.W. "reads on a 2nd

grade reading level . . . and usually needs one-on-one [instruction]." A.R. at 151. Wilkins

asserts that because of the delay in the final determination, the denial of these services

continued throughout the fall, further deteriorating D.W.'s educational progress. Pls.'

Mem. at 21-22; see also A.R. at 11.

    DCPS responds that D.W. was never denied a FAPE. Def.'s Mem. at 8. It

contends that Wilkins has failed to show that D.W.'s condition warrants home bound

instruction in general or compensatory education services. Id. at 2. DCPS further argues

that it offered compensatory education to D.W. at the May 23, 2006 meeting, but that

Wilkins denied the offer because she disagreed with the location where the services

would be provided. Id. at 11; Pls.' Mem. at 6-7; A.R. at 514. DCPS then offered the services again starting on September 20, 2006, but Wilkins still refused, this time because she felt that compensatory education should not take away time from a student's regular education. Pls.' Mem. at 15.

The Court recognizes the importance of procedural guidelines and safeguards, particularly in the field of educating children with disabilities. But the delay in Butler-Truesdale's final order did not violate D.W.'s substantive rights. Wilkins has not provided sufficient medical evidence to show that D.W.'s condition is chronic (rather than intermittent) and requires the requested home bound services. Wilkins only added two new doctor's notes and one standardized medical form to supplement the administrative record after the August 25, 2006 expedited hearing and the November 11, 2006 request for all medically-documented absences. A.R. at 20-22, 53-54. Thus, the MDT team and Butler-Truesdale had almost nothing to support Wilkins's contention that D.W.'s condition was chronic and that he required home tutoring. Both the notes and the form seem to support the notion that D.W.'s condition is irregular. Dr. Nguyen's August 29, 2006 note states: "Although [D.W.'s] asthma can flare up at any point . . . he may miss intermittent episodes of school . . . but usually not longer than 3-4 days." A.R. at 21. On the form, Dr. Nguyen notes that D.W.'s asthma is moderate/persistent rather than constant or chronic. A.R. at 20. On the basis of Dr. Nguyen's diagnosis, the MDT team decided that D.W.'s condition did not lead to long term absences and therefore on-going home instruction was unnecessary. A.R. at 29. To be sure, as Wilkins suggests, the MDT team recognized that home tutoring may be ideal for D.W. due to his academic troubles.

But they also found that DCPS's proposal to send home work packets and provide an hour of extra instruction per week was sufficient to meet his needs. A.R. at 30-31.

DCPS is not required to provide the most convenient or potential-maximizing educational program. Shaw, 238 F. Supp. 2d at 139. IDEIA's guarantee of a FAPE is that of a "basic floor of opportunity ... [that] consists of access to specialized instruction and related services which are individually designed to provide education benefit to the handicapped child." Rowley, 458 U.S. at 201. There is no requirement for a state to provide services "designed according to the parent's desires." Shaw, 238 F. Supp. 2d at 139; see also Kerkam, 862 F.2d at 886 ("[P]roof that loving parents can craft a better program than a state offers does not, alone, entitle them to prevail under the Act."). DCPS is only required to provide a program that is reasonably calculated to provide education benefits to the student. Rowley, 458 U.S. at 206. In light of this legal standard, Butler-Truesdale found that a refusal to provide home services did not imply a denial of a FAPE, and this Court agrees.

The Court also finds that DCPS's refusal to offer compensatory education services in D.W.'s home did not deny him a FAPE. DCPS was willing to provide compensatory services during the summer to comply with the June 2, 2006 final order, but these services could not be customized to take place at the student's home, A.R. at 540, and Wilkins did not provide an updated medical form that was necessary to start such a compensatory education program, A.R. at 536, 544-45, 547. Again, it seems that DCPS tried to offer a program that was reasonably designed to provide educational benefits, but Wilkins was delinquent in providing the necessary medical information. Id.

Most important to this issue of timeliness is that DCPS restarted the compensatory educational services on September 20, 2006. A.R. at 571-73.

Finally, the Court agrees that the psycho-evaluation issue was not ripe in May 2006. D.W.'s original triennial expired on August 7, 2003. A.R. at 369-75. Hence, D.W. was not due for a new evaluation until August 7, 2006 unless there was evidence that a change in disability was suspected in the student. The record shows that Wilkins first made her request at the May 23, 2006 meeting, and demanded relief for DCPS's refusal to provide it on June 27. The MDT meeting notes from May 23, 2006 clearly state that, at this juncture, DCPS did not suspect a change in disability. A.R. at 155. The record also shows that Wilkins did not suggest that D.W.'s condition had changed and failed to provide any additional information to support such a contention. Finally, DCPS is correct that 20 U.S.C. § 1414(2)(B) states that any re-evaluation must be performed at least every three years, and no more than once a year. Therefore, because DCPS had to provide a re-evaluation on August 7, 2006, it could not also provide one at Wilkins's request in the early summer of 2006. Butler-Truesdale correctly concluded that a failure to complete the evaluation before the August 7, 2006 expiration date was not a denial of a FAPE. In light of this and the other considerations discussed above, a delay in Butler-Truesdale's final determination did not violate D.W.'s substantive rights.

### B.    Count 2: Abuse of Discretion

Wilkins argues that Butler-Truesdale had no authority or jurisdiction to schedule an additional hearing to convene on January 19, 2007 in the absence of a request by either DCPS or herself. Pls.' Mem. at 22. This may true, but Wilkins does not indicate how this procedural violation affected D.W.'s substantive rights (although the Court

infers that it is related to the untimeliness argument above). The record clearly shows that the scheduled meeting never took place and that a final determination was issued days later. Def.'s Mem. at 13 n.7. Because Wilkins has not asserted that scheduling the meeting denied D.W. a FAPE, because the meeting did not take place, and because the Court has rejected plaintiffs' untimeliness argument, the Court finds that D.W.'s substantive rights were not violated by this procedural error.

      **C.**      **Count 3: Evaluation of Outside Evidence**

      Wilkins next asserts that Butler-Truesdale abused her discretion by considering evidence outside the scope of the original complaint. Pls.' Mem. at 22. According to DCPS SOP § 1003, "[t]he decision of the Hearing Officer shall be based solely upon the oral and written evidence presented at the hearing and any other additional written documents requested by the Hearing Officer prior to closing arguments," and "[f]indings of fact must be based solely on the evidence presented at the hearing." At the August 25, 2006 hearing, Butler-Truesdale agreed to accept closing arguments in writing by September 1, 2006, A.R. 644-45; see also A.R. 90, and therefore she could evaluate any documents requested before this date. DCPS SOP § 1003. The relevant guidelines offer the hearing officer abundant discretion to request information deemed necessary in his or her expert opinion. Indeed, the regulation is consistent with the standard of review in special education cases granting "deference to the expertise of the Hearing Officer and school officials responsible for the child's education." Lyons v. Smith, 829 F. Supp. 414, 418 (D.D.C. 1993) (citation omitted); see also S.H., 336 F.3d at 270.

      Butler-Truesdale requested and evaluated information other than that presented at the August 25, 2006 hearing before rendering her final decision. Nevertheless, in her final

order, she indicates that her determinations were still largely based on a <u>lack</u> of evidence. <u>See</u> A.R. at 8 ("Absent Petitioner's large medical record and proof that DCPS was aware of the contents of this record, this hearing officer can not make a finding of fact that DCPS failed to draft an appropriate IED that will meet his needs when he is unable to attend school due to Petitioner's medical conditions."). Because plaintiffs do not demonstrate how Butler-Truesdale's consideration of "outside evidence" violated D.W.'s substantive rights, the Court cannot conclude that D.W. was denied a FAPE based on the evaluation of this evidence.

### D.    Count 4: Incorrect Burden of Proof

Wilkins contends that she filed a motion for an expedited hearing on June 27, 2006, when the D.C. Municipal Regulations stated that DCPS had the burden of proof in an IDEIA case. Pls.' Mem. at 22-23. Accordingly, she argues that Butler-Truesdale erred in placing the burden of proof on plaintiffs. <u>Id.</u> at 23; <u>see also</u> A.R. at 6-9. DCPS responds that Wilkins improperly filed the motion on June 27, 2006, that it was not properly filed until after July 1, 2006, when the new D.C. Municipal Regulations went into effect, and hence that plaintiffs properly bore the burden of proof at the hearing. Def.'s Mem. at 14 n.9. Butler-Truesdale states that "[t]he motion for expedited hearing was filed on August 1, 2006." A.R. at 9. Moreover, DCPS's Expedited Scheduling Memorandum states that Wilkins's motion was filed on August 9, 2006. Under amended D.C. Mun. Regs. tit. 5, § 3030.3 (2008), "[t]he burden of proof shall be the responsibility of the party seeking relief; either the parent/or guardian of a child or the LEA."

Wilkins has not responded to the improper filing allegation. She simply maintains the argument that the motion was filed on June 27, 2006, before the relevant rule

changed. When reviewing the hearing officer's final determination, consideration of the record impliedly requires courts to give "due weight" to the administrative proceedings and "[f]actual findings from the administrative proceeding are to be considered prima facie correct," S.H., 336 F.3d at 270; see also Kerkam, 862 F.2d at 887 (stating that the party challenging an HOD must prove by a preponderance of the evidence that the HOD is incorrect). Indeed, a court may evaluate additional evidence at the request of either party, but no such request has been made here. Thus, it appears that Wilkins has failed effectively to rebut DCPS's claim that the motion was not filed until after July 1, 2006.

The administrative record does not offer an answer on this issue. There is documentation that indicates that Wilkins attempted to send the motion for an expedited hearing to the Student Hearing Office on June 27, 2006, in addition to the copies sent to Butler-Truesdale and Chief Hearing Officer Smith. A.R. at 129-130. The record shows that a copy of the motion was faxed to the attention of Sharon Newsome, the student hearing coordinator at the Student Hearing Office, on June 27, 2006. A.R. at 129-30, 203. However, this evidence remains inconclusive because all of these copies (sent to Newsome, Butler-Truesdale, and Smith) were transmitted to the same fax number. A.R. at 127-32. Hence, it is unclear exactly where and to whom these copies were sent.

DCPS raises an additional argument in support of their contention that Wilkins had the burden of proof. They argue that D.C. Mun. Regs. tit. 5, § 3030.3 (2008), states that the hearing officer's final determination must be based solely on the evidence presented at the hearing, and consequently the burden of proof is applied at the hearing. DCPS argues that it is irrelevant when the motion for the hearing was originally filed; the pertinent question is when the hearing took place. Because that was on August 25, 2006,

A.R. at 497, DCPS points out that the law had already shifted and plaintiffs were to bear the burden. The Court finds this argument unconvincing given the DCPS standard operating procedure manual, which reads: "As of June 30, 2006, DCPS Board of Education policy regarding the burden of proof was amended . . . [t]he revised rule shall apply to all hearing requests filed on or after Monday July 3, 2006." DCPS SOP § 700.5. This wording clearly states that the shift in the law applies to the date the motion was filed, rather than to the date of the hearing.

The parties and the administrative record have not offered a clear answer to the burden of proof question. In any event, the issue need not be resolved here. Even if DCPS held the burden of proof, it would have satisfied that burden with the evidence presented at the August 25, 2006 hearing. DCPS would only have to show that it offered a FAPE that was reasonably calculated to provide educational benefits. Rowley, 458 U.S. at 206-07. The Court finds that DCPS provided such evidence. DCPS demonstrated that Wilkins had not presented enough medical support to qualify D.W. for home bound instruction, and that DCPS had offered D.W. what the MDT had found to be sufficient. A.R. at 66-67, 522-24, 541, 544, 548-49. DCPS also provided testimony that compensatory services were offered during the summer of 2006 at the school site and that when Wilkins rejected that proposal, compensatory services were provided in the fall of 2006. A.R. 528-529, 569. Finally, DCPS offered evidence that a psychological evaluation of D.W. was not warranted when requested. A.R. at 525-526, 532, 561. As explained above, the Court believes that Butler-Truesdale did not err in finding that D.W. was not denied a FAPE. Consequently, despite the change in the D.C. regulation, the Court cannot infer that any procedural violation that occurred here caused D.W. substantive harm.

**II.    Substantive Violations: Counts 5-6**

    **A.    Count 5: Inconsistent Conclusion**

Wilkins contends, and the record supports, that Butler-Truesdale stated on August 25, 2006, that D.W. had been denied a FAPE at the end of the 2005-2006 school year. A.R. at 592, 604, 616, 642; see also A.R. at 616. DCPS responds that although Butler-Truesdale stated that D.W. had been denied a FAPE from May to June 2006, she based this statement on a conclusory statement made by Wilkins that was never supported by any medical evidence. Def.'s Mem. at 9 n.4. DCPS contends that Butler-Truesdale based her unofficial finding on Wilkins's argument that all seventeen and a half hours of instruction required by D.W.'s IEP should have been provided, instead of just the four hours supplied. A.R. at 602. However, DCPS argues that Visiting Instruction Services ("VIS") would only be responsible for all these hours if Wilkins could show that D.W.'s condition required home bound services, which plaintiffs failed to prove in the MDT meetings and in response to Butler-Truesdale's interim requests. A.R. at 528, 554-55. DCPS therefore argues that D.W.'s IEP hours could be fulfilled through other services. Def.'s Mem. at 9 n.4. DCPS contends that Butler-Truesdale realized, after reviewing the lack of evidence in the meeting notes and in the general record, that Wilkins had failed to support the notion that D.W. was eligible for home bound services. Hence, DCPS maintains that there was no error in not incorporating the previous finding of a denial of a FAPE in the final determination, id., and this Court agrees.

Butler-Truesdale plainly states as follows: "One thing . . . clear to me is that *if it is indeed true* that VIS is only available for the four hours a week and his IEP is calling for more instruction that that, then there does need to be a meeting to determine how that IEP

can be implemented . . . that is a denial of [FAPE]." A.R. at 602-604 (emphasis added). But Butler-Truesdale seemed to believe that most of the services provided to D.W. were already required to be offered in his home. A.R. at 605. When DCPS contested this point and stated that it was not going to provide services at D.W.'s home because Wilkins had not sufficiently shown such a need, Butler-Truesdale determined that a MDT meeting should convene to ascertain an appropriate IEP and whether that included home instruction. A.R. at 605, 610, 615-16. The record shows that Butler-Truesdale recognized that Wilkins needed to provide more medical documentation to support her contention that VIS should have provided all of D.W.'s IEP hours from May to June 2006. A.R. at 625-27. At the MDT meeting on September 19, 2006, Wilkins did not provide sufficient medical documentation to prove her allegations. A.R. at 309, 528, 554-55. That meeting and Wilkins's lack of medical support, then, effectively overturned Butler-Truesdale's earlier August 25, 2006 observation. This Court thus finds that Butler-Truesdale was not inconsistent in her final determination.

**B.     Count 6: Reliance on Inaccurate Record**

Finally, Wilkins lays out thirteen alleged errors in Butler-Truesdale's January 22, 2007 final determination. Pls.' Mem. at 23-26. Upon a review of the record, it appears that eleven of these mistakes are typographical, including misstated dates and mislabeled documents. Id. Here, these errors do not speak to substantive facts upon which Butler-Truesdale based her final decision, and hence they are similar to procedural errors in that they do not indicate a substantive denial of a FAPE. That leaves two alleged mistakes.

Wilkins argues that paragraph 1.8 in Butler-Truesdale's final determination, which indicates that Wilkins did not demonstrate that DCPS had failed to provide

someone with the proper authority to provide home bound instruction at the September

19, 2006 MDT meeting, is incorrect and unsupported by the meeting notes from that day.

Upon review of the September 19, 2006 meeting notes, however, the Court finds

Wilkins's argument to be incorrect. The notes show only that DCPS would not provide

home bound instruction based on the re-evaluation of D.W.'s augmented medical record,

not that DCPS stated that it did not have the authority to do so. A.R. at 30. The

September 19, 2006 meeting notes further state that "[m]embers of the MDT agreed that

the DCPS proposed plan [of sending home work packets after three or more days of

absence] is sufficient." A.R. at 67. Hence, the Court finds that Butler-Truesdale's

statement that "[t]he IEP notes do not indicate that any DCPS personnel suggested that

the issues to be addressed were beyond their immediate authority" is correct. A.R. at 6.

Wilkins also asserts that in paragraph 1.10 she was not ordered to provide medical

records to DCPS forty-eight hours before the September 19, 2006 meeting as alleged by

DCPS. Pls.' Mem. at 25. Her argument is that if she was not required to provide such

documentation, she cannot be held accountable for the lack of such information presented

for Butler-Truesdale's final determination. The Court finds Wilkins's argument

unpersuasive. Indeed, the June 2, 2006 order does not itself require that Wilkins provide

this information, but it does order full compliance with the July 22, 2005 final order. A.R.

at 142. In turn, that order mandates that DCPS convene an MDT meeting to revise

D.W.'s IEP if necessary, and that forty-eight hours prior to the meeting, Wilkins must

provide relevant medical documentation. A.R. at 329.

The MDT meeting convened on May 23, 2006. At this meeting, it became clear

that Wilkins had not provided the necessary materials for DCPS to make a determination

about whether D.W. required home bound services. A.R. at 309, 558. These medical documents were still missing by the September 19, 2006 MDT meeting, almost four months later. A.R. at 8, 27-28. Despite Butler-Truesdale's request that Wilkins provide "every bit of documentation . . . everything you have," prior to the September 19, 2006 meeting Wilkins only submitted two letters written by Dr. Nyugen. A.R. at 21-22, 625-27. Butler-Truesdale was forced to request medical evidence again in the November 11, 2006 Interim Order ("Prior to the issuance of a Final Order, this hearing officer requires that Petitioner . . . submit the following: the records of any medically documented absences"). Thus, it appears that over the course of the administrative proceedings Wilkins was required to provide more medical evidence but failed to do so. In light of that fact, Butler-Truesdale did not err in stating that she could not find that DCPS had denied D.W. a FAPE in the absence of a more complete medical record. A.R. at 8.

To be sure, Butler-Truesdale's January 22, 2007 final order is riddled with typographical mistakes. However, upon a careful review of the record, these mistakes did not affect D.W.'s substantive rights and thus do not reflect a denial of a FAPE.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court will deny plaintiffs' motion for summary judgment and will grant defendant's cross-motion for summary judgment. A separate order accompanies this Memorandum Opinion.

_____/s/_____
JOHN D. BATES
UNITED STATES DISTRICT JUDGE

Date: <u>August 18, 2008</u>